IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| FINISAR CORP., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 1:05-CV-264 |
| v. | § | |
| | § | |
| THE DIRECTV GROUP, INC., ET AL., | § | JUDGE RON CLARK |
| | § | |
| *Defendants*. | § | |
| | § | |

**ORDER STRIKING INVALIDITY DISCLOSURES**

Plaintiff Finisar Corp. ("Finisar") alleges that Defendants The DirecTV Group, Inc.,

DirecTV Holdings, LLC, DirecTV Enterprises, LLC, DirecTV Operations, LLC, DirecTV, Inc.,

and Hughes Network Systems, Inc. ("DirecTV") infringed on United States Patent No. 5,404,505

("the ` 505 patent"). The  ` 505 patent describes the transfer of information, from an information

database, to subscribers, upon request, through satellite transmission. Finisar has moved to strike

a number of prior art references relied upon by DirecTV's experts, and later disclosed in final

invalidity contentions, on the grounds that such prior art was not disclosed in DirecTV's

preliminary invalidity contentions, as required by the Patent Rules for Practice Before the Eastern

District of Texas ("P.R.").[1]

## I. Background

P.R. 3-3 requires a party opposing a claim of patent infringement to serve "Preliminary

Invalidity Contentions," which must identify "each item of prior art that allegedly anticipated

---

[1]The local patent rules for the Eastern District of Texas were modeled after the local patent rules adopted by the Northern District of California. The particular rules at issue in this case are almost identical to their N.D. Cal. counterparts. Accordingly, this court considers opinions by courts of the Northern District of California concerning its own local patent  rules as persuasive.

each asserted claim or renders it obvious." P.R. 3-3(a).  The party must also provide a "chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found . . . ." P.R. 3-3(c).  The scheduling order in this case required this to be done by August 15, 2005.

On March 8, 2006, three weeks after the court issued the claim construction order, DirecTV submitted the reports of two experts which mentioned fifty-eight prior art references that were not listed in its preliminary invalidity contentions.  Finisar claimed this prejudiced its case because its experts would not have time to review these new references, determine if new experts were needed, and submit rebuttal reports within the deadlines of the scheduling order.

DirecTV replied that some of the new references were necessitated by the report of Dr. Griffin, one of Finisar's experts.  DirecTV argued that although Finisar had not served Final Infringement Contentions, Dr. Griffin's report effectively constituted new infringement contentions, thus automatically allowing DirecTV to file new invalidity contentions, with new prior art references, under P.R. 3-6(1).

DirecTV also asserted that these new references were a good faith response to the court's claim construction order, and therefore could be included in its Final Invalidity Contentions pursuant to P.R. 3-6(b)(2).  DirecTV then served its Final Invalidity Contentions, listing the new references.

With a fast approaching trial date of June 5, 2006, the court, on March 14, 2006,  granted Finisar's request for expedited consideration of the motion.  Since Final Invalidity Contentions had been filed, Finisar was given three days to review these contentions, and determine which of the new prior art references it believed were not in compliance with the "good faith" provision

of P.R. 3-6(b)(2).  DirecTV was ordered to reply within three days by stating the specific line and page numbers of its Revised Preliminary Invalidity Contentions (served on November 21, 2005) which showed a proper and timely disclosure of the disputed prior art references.  Alternatively, DirecTV was required to state the reasons that new disclosures were made in good faith pursuant to P.R. 3-6(b)(2).  A hearing was then held on March 21, 2006 and a phone conference March 22, 2006.

## II. The Local Patent Rules

This dispute brings into sharp focus the tension between the necessity for orderly and complete discovery on the one hand, and the natural desire of  litigants to attain  important tactical advantages by delaying disclosure of key elements of their case.  Over time, the Federal Rules of Civil Procedure have been amended in favor of full and open discovery.  *See* Fed. R. Civ. P. 26 Advisory Committee note (1993 Amendments).  The Rules are to be "construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

The motive to delay disclosure is often even greater in patent cases than in other litigation,  because of the bifurcated nature of a patent suit.  The parties first dispute construction of claims - the definitions of the claim language in the patent. After the court construes the claims, usually following a *Markman* hearing, the parties join issue over assertions of infringement by the patent holder, and allegations of invalidity by the accused infringer.

The patent holder wants to know about every possible prior art reference that might invalidate its patent, so that it can carefully craft proposed definitions that make its patent

coverage as broad as possible, perhaps even broader than the inventor ever thought possible, without being so broad as to be  invalidated by some prior art reference.

On the other hand, the accused infringer wants to pin the patent holder to a claim construction it knows will be invalidated by prior art it has not disclosed, obtain a ruling from the court approving that construction, and then sandbag the patent holder with the prior art reference.

One author describes the problem as follows: The plaintiff is at one end of a "mine field," with each "mine" representing an invalidating piece of prior art.  The plaintiff wants to know where each and every mine is before stepping onto the field.  The defendant is at the other end of the field, and does not want to tell the plaintiff where any of the mines are, in the hope that Plaintiff will commit to a path, before it knows where not to step.  James M. Amend, *Patent Law: A Primer for Federal District Court Judges* 19 (1998).

In balancing these conflicting interests, the court looks first to the statute requiring  notice of invalidity defenses that depend upon prior art to be asserted in detail, at least thirty days before trial.  35 U.S.C. § 282.  Merely disclosing underlying documents, such as copies of patents, is not enough.  Failure to comply with the very specific notice requirements of Section 282 is grounds for prohibiting introduction of evidence of the prior art.  *Ferguson Beauregard/Logic Controls v. Mega Sys., L.L.C.*, 350 F.3d 1327, 1347 (Fed. Cir. 2003).

Some district courts have recognized that thirty days is not enough time to allow experts to evaluate such information, especially in a complicated case, and have adopted local rules requiring invalidity contentions to be filed early in the case.  E.D. Tex. P.R. 3-3 requires an accused infringer to provide preliminary invalidity contentions, within forty-five days after service of Plaintiff's Asserted Claims and Preliminary Infringement Contentions.   The

preliminary invalidity contentions must contain the information required by 35 U.S.C. § 282, as well as "a chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found . . . ."  These preliminary contentions are deemed  to be  the  final invalidity contentions.  However, P.R. 3-6 provides that a party may file amendments with respect to the information required by P.R. 3-3 if:

> (b)(1) a party claiming patent infringement has served "Final Infringement Contentions" pursuant to P.R. 3-6(a); or

> (b)(2) the party opposing a claim of patent infringement believes in good faith that the Court's Claim Construction Ruling so requires.

Local Patent Rules are a valid exercise of the court's authority to manage its docket in accordance with the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 83; *Edwards v. Cass County, Tex.*, 919 F.2d 273, 275 (5th Cir. 1990); *see also Pro-Mold & Tool Co., Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1574 (Fed. Cir. 1996) (when issues are not unique to the exclusive jurisdiction of the Federal Circuit, the court defers to the law of the regional circuit). The judges of the Eastern District of Texas unanimously adopted the Local Patent Rules.  They are posted on the Court's website, and each party was informed in the Order Governing Proceedings that they would apply.  The scheduling order in this case set deadlines for the parties to complete actions required by the various provisions of the Local Patent Rules.

A court has the inherent power to enforce its scheduling orders and to impose sanctions. *Flaska v. Little River Marine Const. Co.*, 389 F.2d 885, 887 n. 3 (5th Cir. 1968).  However, interpretation and enforcement of discovery provisions of the Local Patent Rules should not conflict with, and should harmonize with, the discovery provisions of the Federal Rules of Civil

Procedure.   Accordingly, in deciding whether the late filed prior art references should be excluded, or alternatively, whether the deadlines of scheduling order should be extended, the court considers the type of factors identified as important in cases interpreting Fed. R. Civ. 37(c)(1) (requiring exclusion of evidence that was not properly disclosed, unless the failure to disclose is harmless) and Fed. R. Civ. P. 6(b) (permitting the court to extend deadlines upon motion where the failure to act was the result of excusable neglect).   A non-exclusive list of factors considered by courts includes:

1. The danger of unfair prejudice to the non-movant;

2. The length of the delay and its potential impact on judicial proceedings;

3. The reason for the delay, including whether it was within the reasonable control of the movant;

4. The importance of the particular evidence, and if vital to the case, whether a lesser sanction would adequately address the other factors to be considered and also deter future violations of the court's scheduling orders, local rules, and the federal rules of procedure; and

5. Whether the offending party was diligent in seeking an extension of time, or in supplementing discovery, after an alleged need to disclose new evidence became apparent.

*See, e.g., Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (rule 37(c)(1) mandates that a trial court punish a party for failure to make disclosures under Rule 26, unless the violation was harmless or is substantially justified); *S & W Enters., L.L.C. v. Southtrust Bank of Alabama, N.A.*, 315 F.3d 533, 535 (5th Cir. 2003) (party seeking leave to amend a court's scheduling order must show "good cause," i.e., that the deadlines cannot reasonably be met despite the diligence of the party seeking the extension.); *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 (1993) (listing factors in determining excusable neglect).

6

### III. Analysis

P.R. 3-6(b)(1) allows  DirecTV to amend its invalidity contentions if Finisar served Final Infringement Contentions.  Alternatively, P.R. 3-6(b)(2) allows DirecTV to amend its invalidity contentions if it "believes in good faith that the Court's Claim Construction Ruling so requires." At the hearing, DirecTV agreed that only two of its new references should be considered under P.R. 3-6(b)(1): (1) the predecessor to the DirecTV system itself, Request for Information on Sky Cable; and (2) a textbook, The Architecture of Videotext Systems.

Finisar did not serve Final Infringement Contentions.  However, it appears that Dr. Griffin's report went well beyond an explanation of the preliminary infringement contentions, and  reasonably could be considered to constitute, in effect, new "Final Infringement Contentions."  P.R. 3-6(b)(1) allows a party to amend its invalidity contentions, without leave of court, once amended infringement contentions have been filed.  Therefore, there is no need to analyze whether DirecTV has acted in good faith with respect to the above two disclosures.

Of course, the right to amend under P.R. 3-6 is still subject to the court's and DirecTV's countervailing duty to avoid unfairly prejudicing Finisar "through eleventh-hour alterations." *IXYS Corp. v. Advanced Power Tech., Inc.*, 2004 WL 1368860 * 1 (N.D. Cal. June 16, 2004) (interpreting that court's Local Patent Rule 3-6).  The court does not find that Finisar will be unfairly prejudiced by a claim that DirecTV's predecessor itself  is prior art.  Showing that the patented system was invented before the accused system is the gravamen of Finisar's case.  This reference to Sky Cable  will be allowed, however DirecTV must chart the reference properly in accordance with P.R. 3-3(c).

DirecTV asserts that "Architecture of Videotext" contains a diagram and explanation that closely tracks the court's definition of "information database." There has not been a showing of unfair prejudice in the use of this textbook diagram. Finisar agrees that the extra week's time granted for its expert's report in the order granting its motion to expedite will be sufficient to respond to this reference, so it will be allowed.

DirecTV argues that the remaining references should be allowed under P.R. 3-6(b)(2). This exception is intended to allow a party to respond to an unexpected  claim construction by the court.  This does not mean that after every claim construction order, new invalidity contentions may be filed.  That would destroy the effectiveness of the local rules in balancing the discovery rights and responsibilities of the parties discussed above.  The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *IXYS Corp.,* 2004 WL 1368860 * 3.

In this case, DirecTV filed its Revised 3-3 Preliminary Invalidity Contentions on November 21, 2005.  By that time it had a broad description of the claim of infringement in Finisar's Complaint, paragraph 80; the more detailed information in Finisar's Preliminary Infringement Contentions (August 15, 2005) and Supplemental Infringement Contentions (August 30, 2005); and Finisar's proposed claim construction for each claim term in dispute contained in the Joint Claim Construction and Prehearing Statement (October 17, 2005). Nevertheless, DirecTV argued that their fifty-eight new references were permitted by P.R. 3-6(b)(2) because the  court's claim construction  was, as to many claim elements, far different

from anything they had anticipated or proposed when they filed the joint claim construction statement.

DirecTV did not adequately explain how the court's definition of any of the terms in dispute was so surprising, or differed so greatly from the proposals made by the parties, that it justifies admission of new prior art references two weeks before Finsar's deadline to submit rebuttal expert reports.[2]   DirecTV agreed to many of the definitions.  Many others were closer to DirecTV's proposal than to Finsar's.  Some of the new  references were to commonly known systems such as "The Internet, Including the Domain Name System."  It is difficult to argue that these were the result of exhaustive research that could only have been triggered by the court's surprising construction of a claim.

A party cannot argue that because its precise proposal for a construction of a  claim term is not adopted by the court, it is surprised and must prepare new invalidity defenses to meet claims of infringement.  In the first place, courts seldom simply adopt the construction of one party or the other.  Secondly, accepting such an argument would encourage parties to file narrow proposed constructions with an eye towards hiding important prior art until shortly before trial. Finally, one of the goals of the Federal Rules of Procedure and the Local Patent Rules is to speed up the litigation process and make it less expensive.  A party simply can not wait until shortly before trial to prepare its case.  Invalidity is an affirmative defense, and the party which does not properly investigate applicable prior art early enough to timely meet disclosure requirements risks exclusion of that evidence.  *Mega Sys.*, 350 F.3d at 1347.

---

[2] The one exception to this statement might be the court's conclusion that one term, used in two claims was indefinite.  But that ruling, as DirecTV admitted, eliminated its need to establish invalidity as to that claim language, thus reducing the number of applicable  prior art references.

Allowing these new references under P.R. 3-6(b)(2) would prejudice Finisar.  Extensive additional research would be needed, perhaps requiring experts in new fields.  Obviously there would be the additional expense as the experts and Finisar's attorneys reviewed the references and determined how they fit into DirecTV's asserted defenses.

At the very least the court would have to extend the discovery deadlines.  In a case where the parties are corporations, which theoretically will last forever, there is always the possibility of more delay.  DirecTV was willing to agree to a continuance, but extensions of deadlines can not be the answer to every late disclosure of information.  Enough time and money will eventually cure any prejudice caused by late disclosure of information, but that will not result in the "just, *speedy, and inexpensive* determination of every action."  Fed. R. Civ. P. 1. (emphasis added).

The delay in this case was fully within the control of DirecTV.  As noted, it had Finisar's infringement contentions, with accompanying documents, and even Finisar's proposed claim constructions more than four months before bringing up the new references.  While the court does not believe that DirecTV was deliberately hiding information, it could have done a more complete job of analysis and research earlier in the case in order to comply with its disclosure obligations.

Finally, DirecTV has not established that disallowing these new references is tantamount to a default judgement or that they are vital to its defense.  DirecTV was on notice of the rules,

had plenty of time to comply, and had sufficient information to guide an appropriate disclosure

of information.  The court finds no violation of due process in striking these new references.[3]

    IT IS THEREFORE ORDERED that references to the Sky Cable system and

"Architecture of Videotext" shall be allowed as part of DirecTV's invalidity defenses and that the

remaining references to which Finisar has objected shall **NOT** be introduced or described as prior art.

    So **ORDERED** and **SIGNED** this **28** day of **March, 2006.**


_____

Ron Clark, United States District Judge

---

[3] In response to the court's order regarding the expedited hearing, DirecTV removed a number of the new references from contention by agreeing that they would not be introduced as prior art.  There can be no prejudice to DirecTV as to these references.

11