IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| FINISAR CORP., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 1:05-CV-264 |
| v. | § | |
| | § | |
| THE DIRECTV GROUP, INC., ET AL., | § | JUDGE RON CLARK |
| | § | |
| *Defendants*. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER CONSTRUING CLAIM 25 OF UNITED STATES PATENT NO. 5,404,505

Plaintiff Finisar Corporation ("Finisar") filed suit against Defendants The DirecTV Group, Inc., DirecTV Holdings, LLC, DirecTV Enterprises, LLC, DirecTV Operations, LLC, DirecTV, Inc., and Hughes Network Systems, Inc. (collectively "DirecTV or Defendants") claiming infringement of United States Patent No. 5,404,505 ("the `505 patent or `505"). The parties seek a supplemental construction of Claim 25. Because claim construction is a matter of law for the court, and because the court desires to correctly construe the disputed terms, the court conducted a hearing on Claim 25. Having carefully considered the patent, the prosecution history, the parties' briefs, and the arguments of counsel, the court now makes the following findings and construes the disputed Claim 25 as follows.

## I.  Background

The court conducted a *Markman* hearing and issued a Memorandum and Opinion Construing Claim terms of United States Patent No. 5,404,505 [Doc. #57] February 17, 2006. DirecTV filed a Motion for Supplemental Construction of Claim 25.  Finisar responded and was not opposed to the supplemental construction.  The court granted DirecTV's motion [Doc. #119]

and the parties were given time to brief their positions.  On April 13, 2006, the Court held a

telephonic hearing on the supplemental construction.

## II. Claim Construction Standard of Review

Claim construction is a matter of law.  *Markman v. Westview Instruments, Inc.*, 517 U.S.

370, 116 S. Ct. 1384 (1996) ("*Markman II*").  "The duty of the trial judge is to determine the

meaning of the claims at issue, and to instruct the jury accordingly."  *Exxon Chem. Patents, Inc.*

*v. Lubrizoil Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995) (citations omitted).

"'[T]he claims of the patent define the invention to which the patentee is entitled the right

to exclude.'"  *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (citation

omitted).  "Because the patentee is required to 'define precisely what his invention is,' it is

'unjust to the public, as well as an evasion of the law, to construe it in a manner different from

the plain import of its terms.'"  *Phillips*, 415 F.3d at 1312 (quoting *White v. Dunbar*, 119 U.S.

47, 52 (1886)).

The words of a claim are generally given their ordinary and customary meaning.  *Phillips*

415 F.3d at 1312.  The "ordinary and customary meaning of a claim term is the meaning that the

term would have to a person of ordinary skill in the art in question at the time of the invention."[1]

*Id.* at 1313.  Analyzing "how a person of ordinary skill in the art understands a claim term" is the

starting point of a proper claim construction.  *Id.*

---

[1]

 Based on the patent and the representations of the parties at the *Markman* hearing held January 25, 2006, the court finds
that in this case such a person would have at least a Bachelor's degree, with a concentration of courses in computer
science, involving topics such as computer operation and programming, software engineering, and data transmission.
Depending on the university, this might be designated by a title such as electrical engineering, computer engineering,
or computer science.  The person would also have a minimum of two to three years experience in the fields of data
communications and software engineering.

A "person of ordinary skill in the art is deemed to read the claim term not only in context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.  Where a claim term has a particular meaning in the field of art, the court must examine those sources available to the public to show what a person skilled in the art would have understood disputed claim language to mean.  *Id.* at 1414.   Those sources "include 'words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'"  *Id.*  (citation omitted).

"[T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.  In these instances, a general purpose dictionary may be helpful.  *Id.*

However, the Court emphasized the importance of the specification.  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  A court is authorized to review extrinsic evidence, such as dictionaries, inventor testimony, and learned treaties.  *Phillips*, 415 F.3d at 1317.  But their use should be limited to edification purposes.  *Id.* at 1319.

The intrinsic evidence, that is, the patent specification, and, if in evidence, the prosecution history, may clarify whether the patentee clearly intended a meaning different from the ordinary meaning, or clearly disavowed the ordinary meaning in favor of some special meaning.  *See*

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995).  Claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated "clear intent" to deviate from the ordinary and accustomed meaning of a claim term by redefining the term in the patent specification.  *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999).

The "'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent."  *Phillips*, 415 F.3d at 1321.  However, the patentee may deviate from the plain and ordinary meaning by characterizing the invention in the prosecution history using words or expressions of manifest exclusion or restriction, representing a "clear disavowal" of claim scope.  *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002).  It is clear that if the patentee clearly intended to be its own lexicographer, the "inventor's lexicography governs."  *Phillips*, 415 F.3d at 1316.

### III. Claim Construction - The ' 505 patent, Claim 25

The disputed phrase appears in Claim 25.  Claim 25 is a method claim which is dependent on Claim 24, which itself is dependent on Claim 16.  Claim 25 is set out below with the disputed phrase in bold.

> 25.   The information transmission method of claim 24, wherein said information database includes video program materials as well as non-video information; said transmitting step transmits data packets containing at least selected portions of said video program materials on at least one of said multiple transmission channels and **transmits primarily non-video information on at least one other one of said multiplicity of transmission channels**; and at a multiplicity of said subscriber stations, receiving and storing video program materials.

The court previously defined "transmission channels," as used in claims 24 and 25 as "paths for transmitting electronic signals which are differentiated by their frequencies."

Finisar's proposed definition is:

"Transmits information that constitutes more non-video than video on at least a second transmission channel, i.e., there is information that constitutes more non-video than video on at least a second transmission channel."

DirecTV's proposed definition is:

"The transmission capacity of one other of the transmission channels is mostly used to transmit non-video information."

The parties seem to have similar definitions of "primarily" - DirecTV uses "mostly" and Finisar uses "more." But the court still must determine: "Mostly" what? "More" what? At first glance one might say "mostly" or "more" "non-video information." But how is that measured? Col. 5, ll. 23-26 describes the data stream on a single channel as being transmitted at the rate of 1.5 megabytes per second in "fixed size 10KB (kilobyte) data packets having a maximum size of 10,000 bytes." Figure 6 diagrams a data packet. Each data packet has an identifier, a function code, error detection codes and "a set of data" of any size up to the maximum chosen for the system. *See* '505 patent, col. 10, ll. 48-51. But, while a data packet has a fixed maximum size, there is no limit to how little information it contains.

Finisar first argued that one simply counts up the number of data packets labeled or identified as containing non-video information and compares that to the number of data packets labeled or identified as containing video information. Nothing in the claim or specification indicates that transmitting primarily non-video information simply means having more empty data packets with an identifier of "non-video."

At the first *Markman* hearing, the parties analogized data packets to train cars.  Here, an analogy would be to train cars labeled as containing a particular grain, say rice.  If more cars were labeled "rice" than were labeled "wheat," (or alternatively if more cars actually contained some rice) then the train would carry mostly rice.  So how does one compare fifty cars, each carrying a cup of rice with one caboose carrying fifty bushels of wheat?  Could that train be said to "primarily" carry rice?  Simply counting the labels on data packets, irrespective of their contents, renders "primarily" ineffective.

Finisar also argued that a transmission channel, which "transmits primarily non-video information" could be a frequency, which carried a great deal of video information, so long as there was some information (i.e., some data packets) on that frequency that contained "more non-video than video."  This is contrary to the wording of Claim 25.  The claim is dependant on Claim 24, which requires a method using "multiple transmission channels."  Claim 25 requires the information database to contain "video program material as well as non-video information."  "Data packets containing at least selected portions of said video program materials" must be transmitted on one of the multiple channels.  The method of claim 25 "transmits primarily non-video information" on at least one other channel.  If, as Finisar argues, all that is required is that some data packets on this other channel have more non-video than video information, then why is "primarily" included in the phrase?  What distinguishes the "one other channel" from the first?  One data packet a year which has mostly non-video information?

Continuing the parties' analogy, Finisar's construction would be like saying a train with a car carrying a ten pound bag of rice and ten cars each with fifty bushel baskets of wheat, carried "primarily" rice, because one car did.  The word "primarily" would be superfluous.  The court

cannot assume that a word in a claim was included accidently, or that it has no meaning. Whether the information transmitted by the patented method  is measured in data packets, bytes, or in transmission times, or by some other recognized unit of measurement, Claim 25 requires one of the multiple channels to carry more non-video information than video information. Therefore this claim term will be defined as follows:

> "transmits primarily non-video information on at least one other one of said multiplicity of transmission channels" means: "**most of the information which is transmitted on at least one of the frequencies is non-video information.**"

## IV.  Conclusion

The jury shall be instructed in accordance with the court's interpretation of the disputed claim terms in the ' 505 patent.

So **ORDERED** and **SIGNED** this **18** day of **April, 2006.**

_____

Ron Clark, United States District Judge