```
 1                  IN THE UNITED STATES DISTRICT COURT
                    FOR THE EASTERN DISTRICT OF TEXAS       F I L E D
 2                          BEAUMONT DIVISION
                                                          U.S. DISTRICT COURT
 3                                                       EASTERN DISTRICT OF TEXAS

      FINISAR CORPORATION          )      CIVIL ACTION NO.    JUL 1 2 2006
 4                                 )      1:05-CV-00264
                                   )                        DAVID J. MALAND, CLERK
 5              PLAINTIFF,         )      BEAUMONT, TEXAS DEPUTY
                                   )
 6      VS.                        )      JULY 6, 2006
                                   )      9:30 A.M.
 7      DIRECTV GROUP, INC., ET    )
        AL                         )
 8                                 )
                DEFENDANTS.        )
 9

10      ***************************************************************
                            TRANSCRIPT OF HEARING
11              BEFORE THE HONORABLE JUDGE RON CLARK
                      UNITED STATES DISTRICT JUDGE
12      ***************************************************************

13      APPEARANCES:

14      FOR PLAINTIFF:          MR. C J VEVERKA
                                MR. CHARLES L. ROBERTS
15                              WORKMAN NYDEGGER & SEELEY
                                60 EAST SOUTH GATE TOWER
16                              SALT LAKE CITY, UT 84111

17                              MR. LAWRENCE LOUIS GERMER
                                GERMER & GERTZ
18                              550 FANNIN, SUITE 500
                                BEAUMONT, TX 77701
19
                                MS. LUDMILA YAMALOVA
20                              FINISAR CORPORATION
                                1389 MOFFETT PARK DRIVE
21                              SUNNYVALE, CA 94089

22

        FOR DEFENDANTS:         MR. VICTOR GEORGE SAVIKAS
23                              MR. LOUIS TOUTON
                                MR. GREGORY A. CASTANIAS
24                              JONES DAY
                                555 FLOWER STREET, 5TH FLOOR
25                              LOS ANGELES, CA 90071
```



334

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

2

```
 1                        MR. J. THAD HEARTFIELD, JR.
                          LAW OFFICES OF J. THAD HEARTFIELD, JR.
 2                        2195 DOWLEN ROAD
                          BEAUMONT, TX 77706
 3
      COURT REPORTER:     ADA V. CHRISTY, CSR, CCR
 4                        8311 EARSEL LANE
                          ORANGE, TEXAS 77632
 5
      PROCEEDINGS RECORDED BY STENOGRAPH SHORTHAND; TRANSCRIPT
 6    PRODUCED BY CAT SYSTEM.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

3

1

## EXAMINATION INDEX

2                                                           PAGE

3   MOTIONS BY PLAINTIFF                                       5

4   **WITNESS:     BRIAN NAPPER**

5   DIRECT EXAMINATION
          BY MR. VEVERKA                                     26
6   CROSS-EXAMINATION
          BY MR. SAVIKAS                                     39
7
    **WITNESS:     RICHARD DONALDSON**
8
9   DIRECT EXAMINATION
          BY MR. SAVIKAS                                     52
    CROSS-EXAMINATION
10        BY MR. VEVERKA                                     61
    REDIRECT EXAMINATION
11        BY MR. SAVIKAS                                     68

12  **WITNESS:     THOMAS MCGEORGE**

13  DIRECT EXAMINATION
          BY MR. SAVIKAS                                     69
14  CROSS-EXAMINATION
          BY MR. ROBERTS                                     72
15
    MOTIONS BY DEFENDANTS                                    77
16
    REPORTER'S CERTIFICATION                                140
17

18

19

20

21

22

23

24

25

```
 1              THE COURT:  PLEASE BE SEATED.  ALL RIGHT.  I
 2   CALL THE FINISAR CORPORATION VERSUS DIRECTV GROUP, INC., ET AL,
 3   NO. 1:05-CV-0264.  WE'RE HERE ON THE POST-TRIAL MOTIONS AFTER
 4   THE JURY HAS RETURNED A VERDICT.  AND IS PLAINTIFF READY?
 5              MR. ROBERTS:  YES, YOUR HONOR.
 6              THE COURT:  AND IS DEFENDANT READY?
 7              MR. SAVIKAS:  YES, YOUR HONOR.
 8              THE COURT:  OKAY.  I HAVE RECEIVED THE VARIOUS
 9   BRIEFS THAT -- AND PAPERS THAT HAVE BEEN FILED IN CONNECTION
10   WITH THIS.  THERE'S A NUMBER OF DIFFERENT ISSUES TO BE TAKEN
11   UP, THE VARIOUS JUDGMENTS AS A MATTER OF LAW, THE QUESTION OF
12   ENHANCEMENT, THE QUESTION OF WHETHER OR NOT THE CASE IS
13   EXCEPTIONAL, WHETHER ATTORNEYS SHOULD BE AWARDED, AND IF SO,
14   HOW MUCH.  THE QUESTION OF WHETHER OR NOT INJUNCTION SHOULD BE
15   ISSUED, AND IF NOT, HOW A COMPULSORY LICENSE OR OTHER
16   ALTERNATIVE MIGHT BE STRUCTURED; AND THEN FINALLY, THE MATTER
17   OF HOW TO CALCULATE PREJUDGMENT INTEREST.  A LOT TO COVER.
18   SOME OF THOSE THINGS WERE PRETTY WELL COVERED, I THINK, IN THE
19   TESTIMONY AT TRIAL, WHICH THE COURT CAN MOSTLY STILL REMEMBER,
20   WHICH IS IN THE RECORD, OF COURSE.
21              SO, PLAINTIFF, YOU CAN GO AHEAD AND PRESENT AS
22   TO WHAT YOU THINK IS MOST IMPORTANT.  THERE IS A LIMIT, BUT, OF
23   COURSE, THAT'S SIMILAR TO WHAT YOU'D SEE IN AN APPELLATE COURT.
24   YOU'RE GOING TO HAVE TO PICK THE ISSUES YOU THINK ARE STILL
25   OPEN OR NEED SOME ELUCIDATION.
```

```
 1          MR. ROBERTS:  YOUR HONOR, AT THE TOP OF OUR

 2   LIST, OF COURSE, IS THE INJUNCTION.  I'D LIKE TO START BY JUST

 3   DISCUSSING BRIEFLY THE EBAY CASE.  I WAS SURPRISED WHEN I

 4   FINALLY READ THE EBAY CASE BECAUSE IN THE NEWS REPORTS IT

 5   SOUNDED LIKE EBAY HAD WON.  AND WHEN I READ THE CASE, I

 6   REALIZED THAT NEITHER PARTY HAD WON.  IN FACT, WHEN YOU READ

 7   THAT SUPREME COURT OPINION, YOU REALIZE THAT THE EBAY CASE IS

 8   REALLY A REBUKE OF THE DISTRICT COURT'S ACTION AS MUCH AS IT

 9   WAS A REBUKE OF THE FEDERAL CIRCUIT'S ACTION.

10          AND IN THAT CASE THE SAME ARGUMENTS ARE BEING

11   MADE HERE THAT ARE MADE HERE.  AND THAT IS IN A SITUATION WHERE

12   THE PLAINTIFF EXPRESSES A WILLINGNESS TO LICENSE ITS PATENTS

13   AND THE PLAINTIFF HAS A LACK OF COMMERCIAL ACTIVITY IN

14   PRACTICING THOSE PATENTS, THE DISTRICT COURT FOUND A

15   CATEGORICAL APPROACH THAT AN INJUNCTION SHOULD NOT ISSUE.  AND

16   THE SUPREME COURT TURNED THAT AROUND AND SAID THAT CATEGORICAL

17   RULE CANNOT BE SQUARE TO THE PRIOR SUPREME COURT DECISION, SUCH

18   AS THE CONTINENTAL PAPER BAG DECISION.

19          NOW, THE POINT TO BE TAKEN BY THE EBAY DECISION

20   IS THAT IS NOT MEANT TO BE A RADICAL DEPARTURE FROM PRIOR

21   PRACTICE.  IN FACT, THE SUPREME COURT REALLY EMPHASIZED THAT A

22   PAGE OF HISTORY IS WORTH A VOLUME OF LOGIC.  AND JUSTICE

23   ROBERTS NOTED THAT THE LONG TRADITION OF EQUITY PRACTICE IS NOT

24   SURPRISING GIVEN THE DIFFICULTY OF PROTECTING A RIGHT TO

25   EXCLUDE THROUGH MONETARY REMEDIES THAT ALLOW AN INFRINGER TO
```

1   USE AN INVENTION AGAINST THE PATENTEE'S WISHES.

2           SO, YOUR HONOR, WHAT WE'RE FACED WITH HERE IS AN

3   APPROXIMATE 200-YEAR HISTORY WHERE IN THE VAST MAJORITY OF THE

4   CASES, AN INJUNCTION IS ENTERED FOLLOWING A VERDICT SUCH AS IN

5   THE SITUATION OF OURS WHERE INFRINGEMENT IS FOUND, THE

6   APPROPRIATE REMEDY GOING FORWARD TO PROTECT THAT RIGHT TO

7   EXCLUDE IS AN INJUNCTION.  AND THAT'S WHAT WE WOULD ASK THE

8   COURT TO ENTER HERE TODAY.

9           NOW, I KNOW THE COURT HAS PREVIOUSLY EXPRESSED

10  ITS PRELIMINARY VIEW, I HOPE, THAT AN INJUNCTION IS NOT

11  APPROPRIATE IN THIS CASE, BUT I'D JUST ASK THE COURT TO

12  RECONSIDER THAT VIEW --

13          THE COURT:  WELL, KEEP IN MIND WHAT I POINTED

14  OUT WAS IS ON TWO OF THE FOUR POINTS TO BE CONSIDERED THAT

15  THERE WAS ALREADY VERY STRONG EVIDENCE IN THE RECORD.  I MEAN,

16  THAT WAS JUST A FACT AS TO WHAT EVIDENCE THERE ALREADY WAS.

17  AND THAT WAS MAINLY TO ASSIST COUNSEL ON BOTH SIDES IN USING

18  THE LIMITED TIME THEY HAVE TO FOCUS ON HOW TO DEAL WITH THAT.

19  I MEAN, THERE'S NO POINT IN IGNORING THE VERY DIRECT TESTIMONY

20  THAT'S ALREADY THERE, AND THAT WOULD BE AS TO WASTE EVERYBODY'S

21  TIME.  SO, IN TERMS OF VIEW OR NOT VIEW, IT IS -- IT WAS A

22  STATEMENT OF WHAT I SAW AS THE FACTS ALREADY IN THE RECORD ON

23  TWO OF, I THINK, FOUR MAJOR ISSUES FOR THE COURT TO CONSIDER.

24  AND OBVIOUSLY IF THERE WAS SOMETHING I MISSED IN THE RECORD,

25  THIS ALLOWED COUNSEL ON BOTH SIDES TO DIRECT MY ATTENTION TO

1  THE RECORD WHERE MAYBE I HAD MISSED SOMETHING OR TO PRESENT

2  DIFFERENT EVIDENCE.

3          MR. ROBERTS:  THANK YOU.  THE POINT I WOULD LIKE

4  TO MAKE ON THESE FACTORS IS, FIRST OF ALL, IF WE WERE A

5  COMPETITOR OF DIRECTV STANDING HERE TODAY, I DON'T THINK THERE

6  WOULD BE ANY QUESTION THAT WE WERE ENTITLED TO AN INJUNCTION.

7          NOW, THE FACT THAT WE'RE NOT A COMPETITOR DOES

8  NOT CHANGE THE ANALYSIS BECAUSE WE ARE -- HAVING FAILED TO

9  LICENSE THE PATENT, WE ARE IN A POSITION TO ENABLE A COMPETITOR

10  TO BE IN THAT POSITION OF BEING ABLE TO EXCLUDE DIRECTV.

11  WE -- AS WE POINTED OUT IN OUR BRIEF, WE COULD GO OUT AND

12  LICENSE THE PATENT TODAY ON AN EXCLUSIVE BASIS TO SOMEONE, AND

13  WHAT WE OFFER THEM IS THE RIGHT TO KEEP OTHERS OUT OF THE

14  INDUSTRY.  AND BECAUSE WE ARE UNLIKE SOME OF THESE OTHER

15  COMPANIES THAT ALREADY HAVE A HISTORY OF LICENSING ON A

16  NON-EXCLUSIVE BASIS, IF THE COURT WERE TO IMPOSE A COMPULSORY

17  LICENSE ON US, THE COURT IS, IN EFFECT, TAKING AWAY FROM US THE

18  ABILITY TO EXCLUDE THAT COMES WITH THE PATENTS.  AND WE HAVEN'T

19  VOLUNTARILY SURRENDERED THAT BY ENTERING INTO A LICENSED

20  PROGRAM WITH A DOZEN OTHER COMPANIES.  THIS IS NOT A CASE WHERE

21  WE'RE LICENSING WIDGETS FOR ABOUT $1.32 EACH, AND THE ONLY

22  THING WE'RE MISSING OUT ON IS SOME LICENSING ROYALTY.  WE

23  COULD -- WE COULD GO KNOCK ON DIRECTV'S MAJOR COMPETITOR'S DOOR

24  TOMORROW, OFFER THEM TO SELL THIS PATENT, OFFER TO LICENSE THIS

25  PATENT ON AN EXCLUSIVE BASIS AND PUT THEM IN THE VERY SHOES

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

8

1  THAT WE OCCUPY TODAY.  AND IT IS THAT POSITION THAT THE COURT

2  WOULD BE TAKING AWAY FROM US BY REQUIRING US TO LICENSE THIS

3  PATENT ON A COMPULSORY BASIS.

4          WHAT SHOULD HAPPEN HERE IS AN INJUNCTION SHOULD

5  BE ENTERED.  THAT GIVES DIRECTV SOME OPTION.  THEY CAN EITHER

6  DECIDE TO PULL THE PLUG ON THE WHOLE SYSTEM; THEY CAN NEGOTIATE

7  WITH US FOR A ROYALTY; OR, THEY CAN IMPLEMENT ONE OF THE

8  INEXPENSIVE NONINFRINGING ALTERNATIVES THAT THEY HAVE TESTIFIED

9  AND MAINTAINED EXIST THROUGHOUT THE PENDENCY OF THIS CASE.

10 NOW, THAT IS EXACTLY THE SITUATION THAT WE SAW IN A RECENT VERY

11 FAMOUS CASE OF NTP VERSUS RESEARCH IN MOTION.  NOW -- AND THE

12 POINT I WANT TO MAKE WITH THAT CASE IS THAT THERE THE JURY CAME

13 BACK WITH A VERDICT OF $23 MILLION.  SOME YEARS LATER WHEN THE

14 INJUNCTION WAS FINALLY ENTERED WHEN THE JUDGE SAYS, YOU KNOW, I

15 SEE NO REASON NOT TO ENTER THE INJUNCTION.  IT'S GOING TO

16 ENTER, AND WE SAW PRESS RELEASES ABOUT THAT.  WE SAW GOVERNMENT

17 INTERVENING.  FINALLY THERE WAS A SETTLEMENT.  AND WHAT BECAME

18 THE REALITY THROUGH THAT SETTLEMENT IS THAT RIM HAD NO

19 NONINFRINGING ALTERNATIVES.  THEY WERE UNWILLING TO PULL THE

20 PLUG, AND SO THEY PAID THE MONEY TO GET THE LICENSE.

21          NOW, IN THAT CIRCUMSTANCES THE MARKET DETERMINED

22 WHAT THAT LICENSE SHOULD BE.  THAT WAS AN ACTUAL NEGOTIATION

23 BETWEEN TWO PARTIES.  AND IN THIS CASE IF WE'RE TRYING TO

24 SIMULATE THAT MARKET RESPONSE WITH SOME SORT OF AN ONGOING

25 ROYALTY OR SOMETHING ELSE, IT'S A VIRTUAL IMPOSSIBILITY.

```
 1            NOW, I WOULD REFER THE COURT TO THE IN RE
 2    MAHURKAR CASE.  THE IN RE MAHURKAR CASE IS A NORTHERN DISTRICT
 3    OF ILLINOIS CASE, BUT WHAT'S INTERESTING ABOUT THAT CASE IS
 4    THAT IT WAS DECIDED BY JUDGE EASTERBROOK, WHO IS ONE OF THE
 5    FOREMOST ADVOCATES OF LAW ECONOMICS.  HE SITS ON THE 7TH
 6    CIRCUIT.  AND IN THAT CASE JUDGE EASTERBROOK NOTED:  THE
 7    INJUNCTION CREATES A PROPERTY RIGHT AND LEADS TO NEGOTIATIONS
 8    BETWEEN THE PARTIES.  A PRIVATE OUTCOME OF THESE NEGOTIATIONS
 9    WHETHER THEY END IN A LICENSE AT A PARTICULAR ROYALTY OR IN THE
10    EXCLUSION OF AN INFRINGER FROM THE MARKET IS MUCH PREFERABLE TO
11    A JUDICIAL GUESSTIMATE ABOUT WHAT A ROYALTY SHOULD BE.
12            SO WE'RE IN A POSITION HERE TODAY OF SAYING IF
13    AN INJUNCTION IS NOT GOING TO ENTER, WHAT DO WE DO ABOUT THAT
14    REMEDY?  IF THE REMEDY FOR THE VIOLATION OF THE RIGHT TO
15    EXCLUDE IS NOT AN INJUNCTION, HOW DO WE CALCULATE THE VALUE OF
16    WHAT THAT INJUNCTION WOULD BE?  THAT'S A VIRTUAL IMPOSSIBILITY.
17    WE CAN'T LOOK AT THE JURY'S VERDICT.  THE JURY VERDICT IS FOR
18    DETERMINING PAST ROYALTIES.  WE HAVE TO RELY ON THE MARKET TO
19    MAKE THAT DECISION.
20            NOW IN THIS CASE THERE, IS NO ESTABLISHED
21    ROYALTY FOR THIS PATENT.  AND THAT'S THE PROBLEM IS WE ARE NOT
22    SELLING WIDGETS AT $1.32 PER WIDGET OR LICENSING OUT OUR PATENT
23    TO OTHERS WHO SELL WIDGETS FOR $1.32.  SO THERE IS -- THERE IS
24    NO WAY TO APPROXIMATE WHAT THIS INJUNCTION WOULD BE WORTH TO
25    US.  AND THAT'S WHY WE SAY THE MARKET HAS TO -- HAS TO
```

1 DETERMINE THE VALUE OF THAT.  BY ENTERING THE INJUNCTION,

2 LETTING THESE FACTORS PLAY OUT.

3            NOW, THE OTHER PROBLEM THAT COMES UP, THE

4 SUGGESTION HAS BEEN MADE THAT THIS IS REALLY NO DIFFERENT THAN

5 THE Z4-CASE, AND WE SHOULD JUST FOLLOW WHAT JUDGE DAVIS DID

6 AND -- AND HAVE ANOTHER TRIAL OR ANOTHER ACTION TO DETERMINE

7 FUTURE DAMAGES AND JUST LET THEM GO ON WITH BUSINESS AS USUAL.

8 THERE ARE FEW DISTINCTIONS HERE.  IN THE Z4-CASE, MICROSOFT HAD

9 ALREADY SET FORTH A PLAN FOR DISCONTINUING THE USE OF THE

10 PATENTED INVENTION.  THE OTHER -- SO, IN EFFECT, THERE IS AN

11 INJUNCTION IN PLACE, A VOLUNTARY ONE BEING ADOPTED BY

12 MICROSOFT.  AND WHAT THEY'RE SAYING WAS, YOU KNOW, WE CAN'T DO

13 THIS TOMORROW, BUT HERE IS OUR PLAN.  WE'RE GOING TO TAKE THIS

14 OUT OF OUR NEW RELEASE OF WINDOWS IN 2007, WE'RE GOING TO PHASE

15 THIS OUT OF CURRENT PRODUCTS.  AND I THINK THAT THAT -- EXCUSE

16 ME, THE PLAN WAS WITHIN TWO OR THREE YEARS ALL INFRINGING RULES

17 WOULD CHANGE, AND THE VAST MAJORITY OF THAT WOULD STOP WITHIN

18 SEVEN MONTHS.  THAT'S ONE DISTINCTION.

19            THE SECOND DISTINCTION WAS IN MICROSOFT -- IN

20 THE Z4 MICROSOFT CASE, THE PATENT WAS TO A RELATIVELY MINOR

21 SOFTWARE MODULE, AND WHAT Z4 WAS ASKING WAS THAT MICROSOFT BE

22 ENJOINED FROM SELLING ITS MICROSOFT OFFICE SUITE OF PRODUCTS

23 AND ITS OPERATING SYSTEM, THE WINDOWS OPERATING SYSTEM.  SO

24 THEY WOULD HAVE THE VERY CONCERNED ADDRESSED BY THE SUPREME

25 COURT THAT YOU'VE GOT A PATENT ON A SMALL COMPONENT AND YOU'RE

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
11

1    ASKING THEM TO ENJOIN THE ENTIRE SYSTEM.   THAT IS NOT OUR CASE.

2    OUR PATENT AS WE'VE SEEN OVER THE TWO WEEKS OF TRIAL COVERS THE

3    ENTIRE SYSTEM.   SO WE'RE DISTINGUISHABLE ON THAT BASIS AS WELL.

4         HERE, IF WE'RE TO ADOPT JUDGE DAVIS'S

5    APPROACH -- BECAUSE THERE HAS BEEN NO EXPRESSION OF ANY PLAN ON

6    THE PART OF DIRECTV TO STOP INFRINGING, DO WE FILE ANOTHER

7    ACTION AND THEN COME BACK IN 12 MONTHS AND TRY THAT, AND THEN

8    WHEN THAT'S OVER WE FILE ANOTHER ACTION?   WE CONTINUE DOING

9    THAT THROUGH 2012.   THAT'S THE VERY PERPETUAL LITIGATION

10   PROBLEM THAT JUSTICE STOREY -- AND WE'VE ATTACHED HIS

11   COMMENTARIES, NOTES -- ENCOURAGES THE AWARD OF AN INJUNCTION IN

12   THE FIRST PLACE.

13        YOUR HONOR, WHAT I WOULD SUGGEST WE DO IS ENTER

14   THE INJUNCTION.   LET'S NOT TRY TO SIMULATE WHAT THE MARKET IS

15   GOING TO DO.   LET'S LET THESE FACTORS PLAY OUT.   DIRECTV HAS

16   CHOSEN TO BUILD THEIR SYSTEM ON INFRINGING TECHNOLOGY.   THEY

17   CANNOT BE HEARD TO COMPLAIN WHEN THEY'RE ASKED TO STOP DOING

18   THAT.   LET'S LET THESE FACTORS PLAY OUT.   MY SUGGESTION IS

19   THIS:   LET'S DO WHAT JUSTICE -- JUDGE EASTERBROOK DID IN THE

20   MAHURKAR CASE.   HE SAID:   I'M GOING TO ENTER THE INJUNCTION;

21   I'M NOT GOING TO STAY THE INJUNCTION; BUT I AM GOING TO GIVE

22   YOU ENOUGH TIME TO SEEK STAY BY THE FEDERAL CIRCUIT.

23        WE ARE REALLY TREADING IN NEW GROUND HERE.   THE

24   DISTRICT COURTS ARE GOING TO BE LOOKING FOR SOME GUIDANCE FROM

25   THE FEDERAL CIRCUIT.   WHY DON'T WE ENTER THE INJUNCTION, LET

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

12

```
 1   THEM SEEK A STAY FROM THE FEDERAL CIRCUIT.  THAT WILL GIVE THE
 2   FEDERAL CIRCUIT AN OPPORTUNITY IMMEDIATELY TO REACT TO WHAT THE
 3   SUPREME COURT HAS DONE AND PROCEED ON THAT BASIS.
 4              THE COURT:  WHAT'S SO DIFFICULT ABOUT WHAT THE
 5   SUPREME COURT HAS DONE IN TERMS OF EBAY AND JUST SAYING THAT
 6   THE PROPER ANALYSIS OF AN INJUNCTION ARE THE FACTORS THAT,
 7   JUDGES, YOU'VE ALWAYS USED; AND LAWYERS, YOU'VE ALWAYS ARGUED.
 8   I MEAN, I -- WHAT IS SO -- I MEAN, AS YOU JUST POINTED OUT,
 9   THAT'S NOT ANYTHING NEW.  THE SUPREME COURT SAID ISN'T ANYTHING
10   NEW, JUST REMINDING EVERYBODY TO STOP WANDERING OFF THE PATH,
11   GET BACK TO WHERE -- HOW WE'VE ALWAYS DONE INJUNCTIONS.
12              MR. ROBERTS:  WELL, IN THE PAST IN PATENT CASES
13   IS THAT IN THE VAST MAJORITY OF CASES AN INJUNCTION WILL ISSUE.
14              THE COURT:  RIGHT.  BUT THAT AGAIN -- WHAT THE
15   SUPREME COURT WAS REMINDING THE FEDERAL CIRCUIT AND ALL OF THE
16   JUDGES DEALING WITH PATENTS IS THAT STOP GOING OFF ON SOME
17   SEPARATE ANALYSIS, USE THE STANDARD INJUNCTION ANALYSIS, AND
18   YOU JUST SEEM TO INDICATE THAT -- YOU START OFF YOUR ARGUMENT
19   BY SAYING THIS IS NOT ANYTHING NEW, AND YOU'RE ENDING UP YOUR
20   ARGUMENT SAYING, YEAH, THIS IS -- WE NEED TO GET NEW GUIDANCE
21   FROM THE FED CIRCUIT AND THE SUPREME COURT ON WHAT TO DO WITH
22   THIS NEW IDEA.  WHAT'S NEW ABOUT THE STANDARD FACTORS SET OUT
23   IN EBAY.
24              MR. ROBERTS:  WHAT I'M CONCERNED ABOUT BEING NEW
25   IS THAT IF COURTS START DENYING INJUNCTIONS, THEN WE GET INTO
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

13

```
 1   THESE PROBLEMS THAT WE HAVEN'T FACED BEFORE IS:  HOW DO WE

 2   VALUE -- HOW DO WE VALUE THE INJUNCTION?  IF WE'RE GOING TO

 3   SUBSTITUTE A MONETARY REMEDY FOR THE INJUNCTION, HOW DO WE

 4   VALUE THAT?  WE SEE IN JUDGE DAVIS'S --

 5               THE COURT:  HOW IS THAT DIFFERENT THAN ALMOST

 6   ANY MAJOR COMMERCIAL COMPLICATED INJUNCTION CASE?  WE'VE BEEN

 7   DOING THAT FOR 200 YEARS.  I MEAN, YOU'RE ACTING LIKE IT'S --

 8   SHOW ME HOW IT'S DIFFERENT THAN THE SAME QUESTION YOU DEAL WITH

 9   WHEN YOU SUDDENLY -- I THINK THE EXAMPLE IN THE SEMINARS IS

10   ALWAYS THE GUY COMES TO YOUR OFFICE, IT'S ALWAYS 5:00 O'CLOCK

11   ON FRIDAY, AND THEY'RE GETTING READY TO CLEAR CUT ALL OF HIS

12   LAND, AND HOW ARE YOU GOING TO HANDLE THIS?  THIS IS ACTUALLY

13   THE OPENING OF A BAR JOURNAL ARTICLE.  AND YOU'VE GOT THAT SAME

14   THING, INJUNCTION, IRREPARABLE HARM, SO ON AND SO FORTH.  HOW

15   IS THIS DIFFERENT?

16               MR. ROBERTS:  WELL, IF YOU LOOK AT THE PAGE OF

17   HISTORY THAT THE SUPREME COURT REFERS TO IN PATENT CASES, YOU

18   CAN SEE THAT WHAT IS -- WHAT IS TRADITIONALLY DONE -- AND I

19   THINK IT IS A RESULT OF THE FOUR-PRONG INQUIRY.  WHAT IS

20   TRADITIONALLY DONE IS THE INJUNCTION IS ENTERED.  AND THAT'S

21   HOW THEY GET AROUND THESE PROBLEMS.  AND SO WHERE THERE'S A

22   DIFFICULTY IN VALUING THE INJUNCTION, THE ANSWER IS NOT TO

23   VALUE THE INJUNCTION, BUT TO ENTER THE INJUNCTION.  SO THE

24   ARGUMENT REALLY IS WHERE THERE'S THOSE KINDS OF PROBLEMS THAT

25   EXIST, THE ANSWER IS TO ENTER THE INJUNCTION, NOT TO GET OFF ON
```

1    SOME ANALYSIS ON HOW WE'RE GOING TO VALUE THIS BECAUSE IT IS

2    THE VERY DIFFICULTY OF THAT ANALYSIS THAT ENCOURAGES THE ENTRY

3    OF THE INJUNCTION IN THE FIRST PLACE.  AND THAT'S WHY IN THE

4    ONLY CASES WHERE INJUNCTIONS SHOULD BE DENIED ARE CASES WHERE

5    THERE IS A VERY ESTABLISHED ROYALTY FOR THE PATENT, AND IT'S

6    EASY TO VALUE.  AND THIS IS NOT ONE OF THOSE CASES

7    UNFORTUNATELY.

8              THE COURT:  SO WE TAKE SEVEN CITIZENS OFF THE

9    STREET WITH MAYBE A COUPLE OF THEM HAVING A COLLEGE EDUCATION,

10   TELL THEM TO FIGURE OUT ON THE BASIS OF THE FANTASY WORLD, AS

11   SOME LAWYERS IN THIS COURT CALLED IT, WHAT THE REASONABLE

12   ROYALTY SHOULD BE.  BUT A JUDGE WHO HAS BEEN WORKING THROUGH

13   THIS FOR ALMOST A YEAR, READ ALL THE TEXT, HOPEFULLY HAD SOME

14   EXPERIENCE, AND IN THE COURT OF APPEALS WITH A VAST NUMBER

15   OF -- I MEAN, THEY'VE GOT STAFF ATTORNEYS AND ENDLESS

16   EXPERIENCE -- CAN'T DO IT?

17             MR. ROBERTS:  WELL, LET ME PUT THIS A DIFFERENT

18   WAY.  THE PROBLEM IS THIS.  THE PATENT CONFERRED THE RIGHT TO

19   EXCLUDE, AND WHAT IS THAT RIGHT FOR US?  IF THAT RIGHT IS HELD

20   BY A COMPETITOR OF DIRECTV, WHAT WOULD THAT BE WORTH TO THEM?

21   TO BE ABLE TO SHUT DOWN DIRECTV.  IF THAT'S WHAT THIS PATENT

22   DOES, IF IT SHUTS DOWN DIRECTV, WOULDN'T THAT RIGHT BE WORTH

23   MILLIONS AND MILLIONS AND MILLIONS OF DOLLARS TO A COMPETITOR?

24   WHAT I'M SAYING IS WE STILL HAVE THE ABILITY TO TAKE THIS

25   PATENT TO A COMPETITOR, GIVE THEM AN EXCLUSIVE LICENSE,

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
15

1   TRANSFER THAT RIGHT TO EXCLUDE OVER TO THEM, EITHER THROUGH A

2   TRANSFER OF TITLE, OR THROUGH A LICENSE, AND LET THEM EXERCISE

3   THAT.  SO THE PROBLEM BECOMES HOW DO WE VALUE THE VIOLATION OF

4   THAT RIGHT?  IF WE'RE GOING TO SUBSTITUTE A MONETARY AWARD FOR

5   THE INJUNCTION, HOW DO WE -- HOW DO WE VALUE THAT?  IF WE GO TO

6   DIRECTV'S COMPETITOR AND SAY:  WHAT IS IT WORTH TO YOU?  IT'S

7   WORTH MILLIONS AND MILLIONS.  HOW DO WE -- HOW DO WE ASK A

8   JURY?  HOW DO WE ASK A JUDGE?  HOW DO WE ASK A COURT OF APPEALS

9   TO VALUE THAT?  AND THAT'S WHY IN THE MAHURKAR CASE, IT SAYS:

10  JUDICIAL GUESSTIMATES DO NOT CUT IT.  YOU'VE GOT TO LET THE

11  MARKET MAKE THAT VALUE DETERMINATION.  AND THAT'S WHY ON EBAY,

12  WHEN THE JURY AWARDED 23 MILLION, THE PARTIES EVENTUALLY SOLD

13  FOR 612.5 MILLION.  WHO WOULD HAVE THOUGHT THAT THE RIGHT TO

14  EXCLUDE IN THAT CASE WAS WORTH OVER $600 MILLION?

15          AND THAT'S THE PROBLEM WE'RE DEALING WITH.  YOU

16  SAY, OKAY, THE JURY CAME BACK WITH 79 MILLION, BUT WHAT IS THE

17  RIGHT TO EXCLUDE GOING FORWARD WORTH?  IS IT 612.5?  IS IT

18  MORE?  HOW DO WE -- WE ARE NOT IN A POSITION TO MAKE THAT

19  DETERMINATION.  AND THAT IS THE VERY PROBLEM THAT WE'RE FACED

20  WITH AND WHY THE INJUNCTION SHOULD ISSUE IN THE FIRST PLACE

21  BECAUSE COURTS ARE NOT IN A POSITION TO SIMULATE THE MARKET ON

22  THIS POINT.

23          THE PUBLIC INTEREST PRONG IS ONE WHEREIN PATENT

24  CASES -- THE ONLY CASES I COULD FIND WHERE THEY FOUND THAT

25  PUBLIC INTEREST ON THE PART OF THE DEFENDANT OVERWEIGHS THE

1    RIGHT TO AN INJUNCTION OR WHETHER THERE IS A CRITICAL PUBLIC

2    INTEREST.  WE QUOTE THE HYDROTECH CASE, 849 F.2ND AT 15 --

3    EXCUSE ME, AT 1458.  THERE -- THIS WAS A PRELIMINARY INJUNCTION

4    CASE -- PRELIMINARY INJUNCTION WAS DENIED TO PRODUCTS NOT

5    HAVING TO DO WITH A CRITICAL PUBLIC INTEREST.  IN OTHER WORDS,

6    THE INJUNCTION WAS NOT ALLOWED AS TO CANCER AND HEPATITIS KITS,

7    BUT IT WAS ALLOWED FOR PREGNANCY KITS.  SO THAT'S A SITUATION

8    WHERE -- YOU KNOW, THERE IS A PUBLIC INTEREST, THEY BUILT A

9    BUSINESS ON THIS, BUT THEY SAID WHERE THERE'S A CRITICAL PUBLIC

10   INTEREST WE'RE NOT GOING TO ALLOW THE INJUNCTION.  IF YOU LOOK

11   AT THE WIND SURFING CASE, THE COURT MAKES IT CLEAR THAT -- THAT

12   WHEN YOU -- WHEN YOU BUILD YOUR ENTIRE BUSINESS ON

13   INFRINGEMENT, THAT YOU ARE NOT GOING TO BE HEARD IN A COURT OF

14   EQUITY WHEN YOU SAY, WELL, TO ENJOIN ME FROM MY INFRINGING

15   ACTIVITIES IS TO HURT MY BUSINESS.  THAT'S JUST NOT A FACTOR TO

16   BE CONSIDERED BY THE COURTS OF EQUITY.

17              SO IT SEEMS THAT IN THIS CASE ALL OF THE FACTORS

18   ARE IN DIRECTV'S FAVOR -- EXCUSE ME -- FINISAR'S FAVOR, AND

19   THERE IS NO REASON NOT TO ENTER AN INJUNCTION.  AND AGAIN,

20   WE'RE VERY MUCH DISTINGUISHABLE FROM THE APPROACH JUDGE DAVIS

21   IS TAKING IN THAT THERE -- IT'S ALMOST A DE FACTO INJUNCTION

22   WHERE MICROSOFT HAS AGREED TO TAKE THIS OFF THE MARKET.  HERE

23   WE'VE GOT UNTIL 2012 BEFORE THIS PATENT EXPIRES.  AND WHAT IS

24   OUR REMEDY FOR DOING THAT?  FILING CASE AFTER CASE, IT'S JUST A

25   PROCEDURAL NIGHTMARE.  IT'S THE TYPE OF PERPETUAL LITIGATION

1    THAT WE SHOULDN'T HAVE TO GO THROUGH.  AND THAT'S WHY AN

2    INJUNCTION SHOULD BE ENTERED IN THIS CASE.

3              IF THE COURT HAS NO FURTHER QUESTIONS ON THAT,

4    I'LL MOVE OVER TO THE ATTORNEY'S FEES ISSUE.

5              THE COURT:  OKAY.

6              MR. ROBERTS:  OF COURSE, THE PRIMARY BASIS THAT

7    WE'RE ASKING FOR ATTORNEY'S FEES IN THIS CASE IS THE JURY'S

8    UNANIMOUS FINDING OF WILLFUL INFRINGEMENT.  THE CASES ARE CLEAR

9    THAT WILLFULNESS ALONE IS SUFFICIENT TO FIND EXCEPTIONALITY AND

10   TO AWARD ATTORNEY'S FEES.  AND I SUPPOSE WE COULD CITE THE

11   COURT A HUNDRED CASES THAT STAND FOR THAT.  THERE'S ALSO

12   INSTANCES OF LITIGATION MISCONDUCT THAT WE'VE CITED TO IN OUR

13   BRIEF.  THE COURT IS FAMILIAR WITH THOSE HAVING BEEN PARTY TO

14   ALL OF THOSE MOTIONS AND HEARINGS.  THE HIGHLIGHTS OF THAT ARE

15   THAT WE FILED -- I THINK, BY OUR COUNT 19 PAPERS HAD TO BE

16   FILED.  AND I KNOW -- I DON'T MEAN MOTIONS, BUT I DO MEAN

17   PAPERS, AND WE USE THAT TERM INTENTIONALLY.  NINETEEN PAPERS

18   HAD TO BE FILED BECAUSE OF BASIC RULE VIOLATIONS, AND DIRECTV

19   NOTES IN THEIR BRIEF, YOU KNOW, SOME OF THAT IS TO BE EXPECTED.

20   I ACKNOWLEDGE THAT SOME OF THAT IS TO BE EXPECTED.  BUT IN THIS

21   CASE IT WAS AN EXTRAORDINARY AMOUNT OF PROBLEMS THAT WE

22   ENCOUNTERED.  EVERY TIME WE TURNED AROUND, WE HAD TO FILE

23   ANOTHER MOTION BECAUSE WE'RE SEEING NEW THINGS BEING POSTED ON

24   US THAT HADN'T BEEN PROPERLY DISCLOSED PURSUANT TO THE LOCAL

25   RULES, THE OBLIGATION TO DISCLOSURE.  THOSE ISSUES WERE ARGUED

```
 1   IN NO LESS THAN SIX HEARINGS, AND THE COURT WAS A PARTY TO

 2   THOSE.  I WON'T DWELL ON THOSE.

 3              DIRECTV ARGUES THAT THEY'RE, IN FACT, THE

 4   PREVAILING PARTY IN THIS LITIGATION.  I CAN GIVE YOU 79 MILLION

 5   REASONS WHY THEY'RE NOT THE PREVAILING PARTY, BUT I WOULD

 6   INSTEAD CITE TO THE BECKMAN INSTRUMENTS CASE AT 892 F.2ND AT

 7   1553.  WHERE THE COURT SAID:  WHEN INFRINGEMENT IS FOUND TO BE

 8   WILLFUL, THE POLICY BEHIND SECTION 285 OF DISCOURAGING

 9   INFRINGEMENT MIGHT JUSTIFY IMPOSING ALL OF THE PATENT OWNER'S

10   ATTORNEY'S FEES ON THE INFRINGER EVEN IF THE INFRINGER

11   PREVAILED AS TO SOME OF THE CLAIMS IN SUIT.  SO EVEN THOUGH

12   SOME OF OUR CLAIMS WERE HELD INVALID ON EARLY SUMMARY

13   JUDGMENTS, WHEREIN THIS CASE INFRINGEMENT WAS WILLFUL, AN AWARD

14   OF ATTORNEY FEES IS JUSTIFIED, AND WE WOULD ASK FOR SUCH.

15              ON ENHANCEMENT, AGAIN WE'VE OUTLINED ALL OF THE

16   FACTORS SET FORTH IN READ V. PORTEC.  I DON'T WANT TO GO OVER

17   THE BRIEF AGAIN, BUT I WOULD NOTE THAT HERE WE HAVE A SITUATION

18   WHERE THE JURY AWARD IN COMPARISON TO DIRECTV'S ABILITY TO PAY

19   IS VERY SMALL.  I WOULD -- I WOULD DARE SAY THAT THE AWARD

20   DOESN'T EVEN SHOW UP AS A BLIP ON THEIR FINANCIAL RADAR SCREEN.

21   TO ENHANCE THAT BECAUSE PART OF THE POLICIES TO BE ENFORCED ARE

22   TO BE PROMOTED BY ENHANCING THE AWARD ARE TO DETER

23   INFRINGEMENTS.  AND BECAUSE THIS WAS FOUND TO BE WILLFUL, THE

24   ONLY WAY TO DO THAT IS TO TREBLE DAMAGES IN THIS CASE.  WE'VE

25   GOT A SITUATION WHERE THEY CLAIM:  WELL, WE ACTED IN GOOD
```

1   FAITH.  WE'VE GOT AN OPINION FROM COUNSEL.  BUT WHAT, IN FACT,

2   WE SAW WHEN THE EVIDENCE CAME OUT IS THAT THE OPINION THEY GOT

3   WAS RECEIVED BY IN-HOUSE COUNSEL AND PUT IN A DRAWER.  HE SAYS

4   HE REVIEWED IT.  HE SAYS HE MADE THE DECISION ON IT, BUT IF IT

5   WAS SOMETHING OF THIS MAGNITUDE, WOULDN'T THERE AT LEAST BE A

6   MEETING ABOUT THAT OPINION?  WOULDN'T THERE AT LEAST BE SOME

7   INDICATION OF THE COMPANY RELYING ON THAT OPINION?  IT'S ONE

8   THING TO GET AN OPINION.  FIRST OF ALL, THE OPINION THEY GOT WE

9   SAW EVIDENCE THAT IT WAS BASED ON INCOMPLETE INFORMATION,

10  INCOMPLETE TECHNICAL INFORMATION.  SO WHEN THE OPINION CAME IN,

11  WAS AN ENGINEER ASKED TO REVIEW THAT?  NO.  NO.  MR. ARCENEAUX

12  TESTIFIED THAT HE NEVER REVIEWED IT UNTIL HE WAS PREPARING FOR

13  HIS DEPOSITION IN THIS CASE.  NO TECHNICAL PERSON EVER REVIEWED

14  THAT OPINION TO EVEN SEE IF IT WAS ACCURATE IN SPITE OF THE

15  FACT THAT THE OPINION ITSELF SAID:  WE ASK YOU TO CONFIRM THE

16  ACCURACY OF THIS TECHNICAL INFORMATION.  LET US KNOW IF IT'S

17  NOT RIGHT SO THAT WE CAN AMEND THAT IF WE NEED TO.

18          SO WE'VE GOT A SITUATION WHERE THE OPINION IS

19  OBTAINED.  IT LOOKS LIKE THEY'RE CROSSING THEIR T'S AND DOTTING

20  THEIR I'S, BUT WHEN IT COMES IN, IT GETS PUT IN A DRAWER.  NO

21  MEETING WAS HELD TO DISCUSS IT.  WHERE IS THE CORPORATE

22  RELIANCE ON THAT OPINION?  IT'S ONE THING TO GET THE OPINION,

23  BUT YOU NEED TO HAVE A BUSINESS DECISION RELYING ON THAT

24  OPINION TO AVOID THE KIND OF PROBLEM THAT WE'RE FACING HERE

25  TODAY.

1    AND THAT IN ADDITION TO THE OTHER FACTORS ON

2 ENHANCEMENT ARE WHY THE JUDGMENT SHOULD BE TREBLED IN THIS

3 CASE.  AND AGAIN, I NOTE THAT EVEN TREBLING THE JUDGMENT IS

4 GOING TO BARELY SHOW UP ON DIRECTV'S RADAR SCREEN.

5    WE HAVE WITH US TODAY A MR. BRIAN NAPPER, WHO IS

6 OUR DAMAGES EXPERT.  I DON'T KNOW IF IT WOULD BE APPROPRIATE AT

7 THIS TIME TO PUT HIM ON THE STAND AND TO TALK ABOUT SOME OF

8 THESE ISSUES.  I GUESS SOME OF THIS DEPENDS ON WHERE THE COURT

9 IS INCLINED TO GO.  MR. NAPPER IS PREPARED TO TALK ABOUT THE

10 DIFFICULTY IN EVALUATING THE INJUNCTION, ADDITIONAL INFORMATION

11 THAT WOULD BE NEEDED TO PERFORM THAT VALUATION.  HE'S NOT HERE

12 PREPARED TO GIVE A NUMBER BECAUSE OF THE DIFFICULTY OF THAT AND

13 COMPLEXITY OF THAT ANALYSIS.  SO, I GUESS IT DEPENDS ON WHERE

14 THE COURT IS INCLINED TO GO.  IF YOU WANT TO GET INTO THE

15 DETAILS OF THAT, WE WOULD BE HAPPY TO PUT HIM ON, OR WE CAN

16 MOVE RIGHT INTO THE PREJUDGMENT AND POSTJUDGMENT INTEREST.

17    THE COURT:  OKAY.  POSTJUDGMENT INTEREST IS

18 ESTABLISHED BY STATUTE.  I DIDN'T EVEN SEE IN THE BRIEFS THERE

19 WAS MUCH DISCUSSION OR CONTROVERSY ON THAT.  THERE'S A STATUTE

20 ON THAT.  IS THERE SOMETHING I MISSED?

21    MR. ROBERTS:  NO.  I THINK YOU'RE RIGHT.

22    THE COURT:  OKAY.  PREJUDGMENT INTEREST, BOTH

23 SIDES HAVE AGREED THAT THE TEXAS STATUTORY SCHEME OF SIX

24 PERCENT IS PROPER.  YOUR CALCULATION WAS ON THE .14 PERCENT OF

25 THE ROYALTY FEE BASIS, AND THEIRS WAS BASED ON THE $1.32 PER

```
1   SET TOP BOX BASIS.  BUT TAKING A LOOK AT YOUR CHARTS, IT COMES

2   OUT LIKE, WHAT, WITHIN A MILLION DOLLARS OF EACH OTHER?

3                MR. ROBERTS:  SOMEHOW WE STILL MANAGED TO BE

4   $700,000 APART.

5                THE COURT:  YEAH.  IT WAS FAIRLY CLOSE ON THAT.

6   SO, YOU MIGHT TOUCH BRIEFLY ON THAT, BUT YOU'RE PRETTY DARN

7   CLOSE, BOTH OF YOU THERE.  AND SINCE YOU'RE AGREEING ON THE SIX

8   PERCENT, YOU'RE AGREEING ON THE STATUTORY SCHEME, YOU'RE

9   AGREEING ON THE MONTHS, YOUR DIFFERENCES ARE FAIRLY MINOR.  YOU

10  WANT TO MAYBE HIGHLIGHT THOSE.  BUT IF YOU'VE GOT A WITNESS TO

11  BE TALKING ABOUT, AS I MENTIONED BEFORE, EITHER THE INJUNCTION

12  OR HOW ONE WOULD CALCULATE A COMPULSORY LICENSE, THIS IS YOUR

13  OPPORTUNITY TO GET THAT ON THE RECORD.

14               MR. VEDERKA:  OKAY.  YOUR HONOR, WITH RESPECT TO

15  THE PREJUDGMENT INTEREST --

16               THE COURT:  AND JUST FOR THE RECORD, SINCE WE

17  HAVE A DIFFERENT COURT REPORTER -- CHRIS IS ON VACATION --

18  PLEASE GO AHEAD AND IDENTIFY EACH SPEAKER AS YOU STAND UP.  I

19  KNOW YOU'VE ALL GIVEN YOUR NAMES, BUT I WANT TO BE VERY SURE

20  SHE HAS THAT FOR THE RECORD.

21               MR. VEDERKA:  C. J. VEDERKA ON BEHALF OF

22  FINISAR.  THAT'S SPELLED V-E-D-E-R-K-A.  THE ISSUE ON

23  PREJUDGMENT INTEREST IS TWO-FOLD, AND I CAN ADDRESS IT VERY

24  QUICKLY.  YOU'RE CORRECT THAT WE'VE AGREED ON THE TEXAS

25  STATUTORY RATE WHICH IS SIX PERCENT.  DIRECTV CONTENDS THAT
```

1   INTEREST SHOULD NOT BE COMPOUNDED, THAT IT SHOULD BE SIMPLE

2   INTEREST.  FINISAR ASKS THAT THE COURT COMPOUND INTEREST

3   ANNUALLY.  WITH RESPECT TO THE ANNUAL COMPOUNDING, WE JUST

4   BELIEVE THAT MORE CLOSELY RELATES TO THE COMMERCIAL REALITIES

5   THAT FINISAR WOULD FACE WHETHER WITH RESPECT TO LENDING OR

6   BORROWING MONEY.  I -- I CHALLENGE ANYONE IN THE ROOM TO FIND A

7   BANK THAT WILL LOAN THEM MONEY WITHOUT COMPOUNDING INTEREST.

8   AND THE PURPOSE OF THE COURT'S DISCRETION TO AWARD PREJUDGMENT

9   INTEREST IS TO PUT THE -- PUT THE AGGRIEVED PARTY IN A POSITION

10  THAT MOST CLOSELY TRACKS WHERE HE WOULD HAVE BEEN IF THEY

11  HADN'T BEEN OUT THE MONEY THAT'S GOING TO BE AWARDED.  SO WE

12  WOULD URGE THAT THE COURT COMPOUND THE PREJUDGMENT INTEREST

13  ANNUALLY.  THAT'S A CONSERVATIVE APPROACH.

14          I WOULD LIKE TO DIRECT THE COURT'S ATTENTION TO

15  ONE CASE.  THAT IS -- IT'S ACTUALLY THE BECKMAN CASE THAT WAS

16  SPOKEN TO EARLIER WHEN IT WAS ON REMAND.  THE COURT IN THAT

17  CASE COMPOUNDED THE PREJUDGMENT INTEREST ANNUALLY, AND WITH

18  RESPECT TO ATTORNEY'S FEES UNDER SECTION 285 COMPOUNDED THOSE

19  AT TEN PERCENT ANNUAL RATE QUARTERLY.  YOU COULD, IN YOUR

20  DISCRETION, COMPOUND THE INTEREST DAILY.  AND SO IT'S OUR

21  POSITION THAT COMPOUNDING ANNUALLY IS A CONSERVATIVE APPROACH,

22  AND WE'D ASK THE COURT TO ADOPT THAT.

23          WITH RESPECT TO THE OTHER DEPARTURE BETWEEN THE

24  TWO PARTIES' CALCULATIONS, ONE IS THAT OUR CALCULATION OF

25  INTEREST WHILE COMPOUNDED YEARLY TALLIES THE MONEY ON A DAILY

```
 1   BASIS.  DIRECTV IS TALLYING THE MONEY ON WHAT IS CALLED A

 2   MID-MONTH CONVENTION.  WE BELIEVE THAT OUR CALCULATION MORE

 3   APPROPRIATELY TRACKS HOW DIRECTV'S BUSINESS WORKS.  I THINK

 4   THAT THE COURT CAN TAKE JUDICIAL NOTICE THAT DIRECTV DOESN'T

 5   GET ITS PAYMENTS FROM 15 MILLION SUBSCRIBERS ALL IN ONE DAY

 6   EVERY MONTH, AND THAT THEY PROBABLY PAY THEIR MONEY EVERY --

 7   YOU KNOW, PAYMENTS COME IN EVERY DAY, WHICH IS WHY WE ADDED THE

 8   MONEY EVERY DAY.  WE HAVEN'T COMPOUNDED THE INTEREST EVERY DAY,

 9   BUT DIRECTV IS TAKING ONE MONTH -- ONE DAY IN A MONTH AND

10   TAKING AN AVERAGE BETWEEN THE TWO TIMES.  AND MR. NAPPER'S

11   GROUP IS THE ONE THAT HAS CALCULATED THAT INTEREST FOR US AND

12   COULDN'T --

13              THE COURT:  BUT IN TERMS OF -- AS YOU TALKED

14   ABOUT -- THIS WAS A COMMERCIAL BUSINESS OR LICENSE AND MAYBE

15   THERE'S SOME EVIDENCE FOR THIS, FOR EXAMPLE, ON THEIR IMPEG

16   LICENSE OR ONE OF THE OTHERS, IT WOULD SEEM UNLIKELY THAT

17   THEY'RE MAKING PAYMENTS EVERY DAY OR CALCULATING EVERY DAY.  I

18   MEAN, NORMALLY IT WOULD BE ON A MONTHLY OR BIWEEKLY BASIS OR

19   SOMETHING LIKE THAT.  AND FOR THAT MATTER, WHEN YOU START TALK

20   ABOUT DOING IT DAILY, ARE YOU DOING IT THE DAY THAT THE

21   CUSTOMER SENT THE CHECK?  ARE YOU DOING IT THE DAY THE CHECK

22   CLEARED OR THE DAY THEY SIGNED THE AGREEMENT?  I MEAN, WHAT --

23              MR. ROBERTS:  WE'RE JUST MAKING THE POINT THAT,

24   YOU KNOW, AT LEAST IN DIRECTV'S BUSINESS, IN THE OPERATION OF

25   THEIR BUSINESS, THEY RECEIVE MONEY EVERY DAY.
```

1       THE COURT:  WELL, YEAH.

2           MR. ROBERTS:  AND SO IT WAS OUR POSITION THAT

3   THAT MORE CLOSELY TRACKED HOW -- THE COMMERCIAL REALITIES OF

4   DIRECTV.

5           THE COURT:  BUT AREN'T WE TALKING ABOUT MAKING

6   YOUR CLIENT WHOLE?  IN OTHER WORDS, THE LOSS THAT THEY WOULD

7   HAVE -- AND NORMALLY THEY WOULD BE GETTING A CHECK MONTHLY,

8   MAYBE EVEN LESS FREQUENTLY THEN, I'M NOT SURE.  BUT PROBABLY NO

9   MORE THAN MONTHLY.  AND THAT WOULD BE THEIR LOST OPPORTUNITY

10  COSTS.  THEY COULD HAVE -- IF THEY HAD THAT MONEY IN HAND AT

11  THE BEGINNING OF EACH MONTH OR BEGINNING OF EACH TWO WEEKS,

12  THEY COULD PRESUMABLY HAVE EITHER INVESTED IT IN SOME GOOD

13  OPPORTUNITY OR TAKEN A LOW RISK INVESTMENT OF A TREASURY BILL

14  FOR LESS OR SOMETHING IN BETWEEN.  THAT'S WHAT THE SIX PERCENT

15  WINDS UP STATUTORILY IT BEING KIND OF A COMPROMISE.  I JUST --

16  I GUESS I'M NOT SURE -- THE POLICY ISSUE IS TO COMPENSATE YOU

17  FOR LOST OPPORTUNITY COST, AND YOU'RE GOING TO -- HOW THEY GET

18  THE MONEY IN AS OPPOSED TO HOW YOU WOULD NORMALLY GET IT.

19          MR. VEDERKA:  RIGHT.  AND FINISAR IS IN THE

20  BUSINESS OF PART OF ITS BUSINESS IS LICENSING ITS INTELLECTUAL

21  PROPERTY, GETS MONEY IN.  THIS IS FROM FINISAR'S STANDPOINT AND

22  AT DIFFERENT TIMES.  AND WE THOUGHT THAT THAT MORE CLOSELY

23  APPROXIMATED THE COMMERCIAL REALITIES OF THE PARTIES.

24          THE COURT:  DO YOU HAVE ANY EVIDENCE THAT

25  FINISAR LICENSES ARE GETTING DAILY CHECKS FROM SOMEBODY, OR ARE

```
 1   THEY NORMALLY --

 2                MR. VEDERKA:  I DON'T THINK --

 3                THE COURT:  I IMAGINE A BUSINESS DOING THAT, AND

 4   SURELY THEY'RE SENDING THEM EVERY TWO WEEKS, EVERY MONTH OR

 5   SOMETHING.

 6                MR. VEDERKA:  WELL, I -- AGAIN, WE DIDN'T ADDUCE

 7   ANY EVIDENCE ON EXACTLY WHEN.

 8                THE COURT:  OKAY.

 9                MR. VEDERKA:  BUT THAT IS PART OF THE DIFFERENCE

10   IN THE METHODOLOGY AND IN TERMS OF THE DETAILS.  WHEN

11   MR. NAPPER PRESENTS SOME OTHER TESTIMONY, WE COULD ASK HIM

12   ABOUT THAT.

13                THE COURT:  OKAY.

14                MR. VEDERKA:  WE'D LIKE TO CALL MR. BRIAN

15   NAPPER.

16                THE COURT:  VERY GOOD.

17                (THE WITNESS IS SWORN IN.)

18                MR. VEDERKA:  YOUR HONOR, I THINK WE JUST HAVE

19   THREE SLIDES WE MIGHT USE WITH MR. NAPPER.  COULD I APPROACH

20   AND BRING A COPY OF THOSE?

21                THE COURT:  PLEASE.

22                        BRIAN NAPPER,

23   HAVING BEEN DULY SWORN, TESTIFIED AS FOLLOWS:

24           D I R E C T   E X A M I N A T I O N

25   BY MR. VEDERKA:
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
26

```
 1   Q.    GOOD MORNING, MR. NAPPER.

 2   A.    GOOD MORNING, MR. VEDERKA.

 3   Q.    AT TRIAL YOU TESTIFIED CONCERNING YOUR CALCULATIONS FOR

 4   PAST DAMAGES; IS THAT CORRECT?

 5   A.    THAT'S CORRECT.

 6   Q.    AND YOU UNDERSTAND THAT PART OF WHAT WE'RE DOING TODAY IS

 7   CONSIDERING IMPOSITION OF DAMAGES GOING FORWARD IN LIEU OF

 8   INJUNCTION, IF ULTIMATELY JUDGE CLARK DETERMINES THAT AN

 9   INJUNCTION IS NOT APPROPRIATE?

10   A.    THAT'S MY UNDERSTANDING THAT THE COURT IS CONSIDERING

11   ALTERNATIVE OPTIONS, YES.

12   Q.    AND IN YOUR OPINION IN MAKING SUCH CALCULATION, WOULD YOU

13   CONSIDER DIFFERENT INFORMATION THAN YOU CONSIDERED IN

14   DETERMINING PAST DAMAGES?

15   A.    YES, ABSOLUTELY.   THE TYPES OF INFORMATION -- LET'S TAKE A

16   STEP BACK.   THE CONSTRUCT OF THE 1995 DAMAGES OPINION ARE BOTH

17   DIRECTV'S DAMAGES EXPERT, AS WELL AS MYSELF, IS A HYPOTHETICAL

18   NEGOTIATION BACK IN 1995.   AND WHAT THAT DOES IS ROLLS --

19   ESSENTIALLY ESTABLISHES A ROYALTY RATE TO BE PAID PLACING

20   VARIOUS WEIGHTS ON INFORMATION THAT ARE IN OR AROUND THE TIME

21   OF THE HYPOTHETICAL NEGOTIATION.   AND THEN AS TIME ELAPSES YOU

22   PLACE ESSENTIALLY ALL OTHER THINGS BEING EQUAL LESS WEIGHT AS

23   INFORMATION IS FURTHER OUT INTO THE PROJECTED PERIOD OF TIME.

24   SO IN THIS CASE, AS I DID, YOU PLACE LESS WEIGHT ON

25   INFORMATION, FOR EXAMPLE, 2000, THE YEAR 2000 FORWARD, 2001,
```

1    2002, 2003.  AND ESSENTIALLY IN COMING UP WITH AN APPROPRIATE

2    ROYALTY RATE, IT'S APPLIED AGAINST THE ROYALTY BASE.  IN MY

3    CASE I BELIEVE IT'S FINISAR'S REVENUE OF DIRECTV BECAUSE OF THE

4    ASSISTED ASPECT OF THE PATENT.  AND WHAT WE DO AND WHAT WE

5    PRESENTED TO THE JURY THEN IS APPLYING THAT RATE ON THE REVENUE

6    STREAM UP TO THE TIME OF TRIAL PRESUMING AN INJUNCTION WOULD BE

7    ISSUED BY THE COURT.

8    Q.    OKAY.  AND WOULD THAT VERY APPROACH CREATE A DIFFERING

9    RESULT, IN YOUR OPINION?

10   A.    YES.  ESSENTIALLY, WITHOUT THE PRESUMPTION OF AN

11   INJUNCTION, THEN IT ESSENTIALLY PUTS US IN A POSITION OF TODAY

12   FINISAR AND DIRECTV SITTING DOWN, AGAIN UNDER INFRINGEMENT

13   FOUND TO BE USING THE PATENT OF VALIDITY AND ENFORCEMENT, ET

14   CETERA.  AND ESSENTIALLY ALSO WITH WILLFULNESS, BEING FOUND TO

15   BE WILLFULLY INFRINGING ON THE PATENT AND THESE TWO PARTIES NOW

16   SIT DOWN TODAY.  AND IF I WERE ASKED TO REVIEW AND ANALYZE WHAT

17   THAT RESULT WOULD BE BASED UPON MY INFORMATION OR KNOWLEDGE OF

18   THE CASE, I BELIEVE THAT THERE WOULD BE OTHER INFORMATION THAT

19   I WOULD PLACE MORE WEIGHT ON THAN I DID ORIGINALLY.

20   Q.    OKAY.  WELL, YOU'VE PREPARED A SHORT LIST OF SOME OF THE

21   INFORMATION THAT YOU WOULD NEED TO CONSIDER.

22              MR. VEDERKA:  CAN YOU PUT THAT UP ON THE SCREEN,

23   PLEASE, SUE?

24   Q.    (BY MR. VEDERKA)  ALL RIGHT.  HERE IN THIS FIRST SLIDE,

25   YOU HAVE PRIMARY CHANGES FROM THE 1995 CONCEPT.  WHAT DID YOU

1    INTEND TO IMPART BY THAT?

2    A.    ESSENTIALLY WHAT I JUST SAID, WHICH IS AS WE SIT HERE NOW

3    IN JULY 2006 THE MARKETPLACE IS COMPLETELY DIFFERENT THAN THE

4    1995 HYPOTHETICAL NEGOTIATION BETWEEN FINISAR AND DIRECTV.

5    Q.    AND I BELIEVE THAT YOU HAVE POINTED OUT SOME OF THESE

6    ESTABLISHED MARKET DATA POINTS, THE FIRST ONE BEING DIRECTV'S

7    MAJORITY MARKET SHARE.  HOW DID THAT AFFECT --

8                THE COURT:  YES?

9                MR. SAVIKAS:  MAY I MAKE AN OBJECTION.

10               THE COURT:  SURE.

11               MR. SAVIKAS:  WE DID NOT SEE ANY OF THESE

12   DEMONSTRATIVES, AND I THOUGHT OUR EARLIER AGREEMENT WAS WE GET

13   THEM AT 9 O'CLOCK THE DAY BEFORE, SO THIS IS THE FIRST TIME

14   THAT WE'RE SEEING THEM.

15               MR. VEDERKA:  THIS IS, YOU KNOW --

16               THE COURT:  IF YOU MADE SUCH AN AGREEMENT, I

17   MEAN, I GUESS YOU HAVE TO LIVE WITH YOURSELF ETHICALLY.  I'LL

18   LET YOU GO ON IF --

19               MR. VEDERKA:  WELL, I THINK --

20               THE COURT:  YOU CAN MAKE AGREEMENTS --

21               MR. VEDERKA:  I MADE AN AGREEMENT WITH RESPECT

22   TO THAT DURING THE TRIAL.  I HAD NOT CONSIDERED THIS HEARING TO

23   BE, YOU KNOW, A CONTINUATION OF TRIAL.  I APOLOGIZE IF I'VE

24   BROKEN SOME AGREEMENT.  I HAD NO PROBLEM -- THESE ARE NOT

25   VERY -- THESE ARE NOT CONTROVERSIAL SLIDES.

```
 1              THE COURT:  I'M GOING TO OVERRULE THE OBJECTION.
 2   BUT -- BUT GO AHEAD.
 3              MR. VEDERKA:  OKAY.  THANK YOU, YOUR HONOR.
 4   Q.   (BY MR. VEDERKA)  WITH RESPECT TO THE FIRST DATA POINT YOU
 5   HAVE, WHAT IMPACT WOULD THAT HAVE ON YOUR ANALYSIS?
 6   A.   WELL, ESSENTIALLY -- AND YOU CAN EVEN CATEGORIZE A NUMBER
 7   OF THESE SITUATIONS WHERE THE MARKET IN 2006 IS DIFFERENT THAN
 8   IN 1995.  FOR THE DBS MARKETPLACE IN GENERAL AND DIRECTV'S
 9   POSITIONING WITHIN THAT MARKETPLACE, AND THESE ARE JUST SOME OF
10   THE OBSERVATIONS, FACTS REALLY THAT AS DIRECTV SITS HERE TODAY
11   HAVING TO NEGOTIATE RIGHTS TO THE 505 PATENT, IT WOULD BE A
12   CERTAINTY NOW VERSUS BACK IN 1995 WHERE IT WAS CLEARLY LESS
13   THAN CERTAIN.  FOR EXAMPLE, ON THE PREVIOUS SLIDE THE FACT THAT
14   THEY WERE A -- THEY ARE NOW A 56 PERCENT MARKET SHARE OWNER IN
15   A TWO-PLAYER MARKETPLACE.  THAT'S THE FIRST POINT.  THE
16   INSTALLED SUBSCRIBER BASE IS NOW 15 MILLION AND GROWING.  AND
17   THEN ESSENTIALLY THE PRODUCT ASSESS THE CURRENT PROFITABILITY.
18   IF I RECALL SOME QUESTIONS AT TRIAL REGARDING CURRENT
19   PROFITABILITY, AND CERTAINLY THE REVENUES AND PROFITS OF
20   DIRECTV NOW IS WITH CERTAINTY A VERY PROFITABLE VENTURE BY
21   PRETTY MUCH ANY MEASURE YOU WANT TO APPLY TO IT.
22   Q.   AND WITH RESPECT TO COMPETITION, THERE IS A DIFFERENCE
23   BETWEEN WHAT THE PARTIES PERCEIVED IN 1995 AND WHAT WE
24   UNDERSTAND NOW, CORRECT?
25   A.   THAT IS CORRECT.  THERE WAS -- WHILE THERE IS SOME
```

```
 1    INDICATION THAT DIRECTV HAD A LITTLE BIT OF A FIRST MARKET
 2    ADVANTAGE, THEY WERE VERY CONCERNED ABOUT OTHER COMPANIES THAT
 3    WERE GETTING INTO THE DBS BASE, PRIMESTAR, ECHOSTAR CERTAINLY
 4    AT THAT TIME AND OTHER COMPANIES, MAYBE THREE OR FOUR OTHERS.
 5    ESSENTIALLY, AS WE -- SO ACTUALLY THE MARKETPLACE IN 1995.  NOW
 6    AS WE SIT HERE IN 2006, DIRECTV ONLY HAS ONE COMPETITOR, AND
 7    THAT'S ECHOSTAR.  AND SO THAT'S A DIFFERENT SITUATION NOW
 8    PROVEN, IF YOU WILL, AS OPPOSED TO 1995 WHERE IT MIGHT BE AN
 9    EVENTUALITY, BUT YOU HAVE TO TAKE INTO ACCOUNT THE RISK THAT
10    THAT'S GOING TO MATERIALIZE.  AND THAT A CABLE IS STILL A
11    COMPETITOR TO THE DBS MARKETPLACE, BUT EVEN NOW TO LESSER
12    DEGREE THAN WHAT WAS ANTICIPATED BACK IN 1995.
13    Q.   OKAY.  COULD WE PROCEED --
14              THE COURT:  HOLD ON A SECOND.  SO TELL ME HOW
15    COST OF ENTRY ARE GOING TO FIGURE INTO THIS, THIS KIND OF
16    SATELLITE BUSINESS.  YOU'VE ONLY GOT ONE OTHER COMPETITOR
17    BASICALLY.  I GUESS A CLASS THAT MIGHT BE CALLED OLIGOPOLY.
18    YOU'VE GOT COST OF ENTRY INTO THE MARKET, NOT A CHANCE OF
19    TRYING TO SELL TO A BUNCH OF COMPETING BUYERS.  YOU'VE --
20    ACCORDING TO YOU, WE'VE ONLY GOT ONE OTHER ONE OUT THERE AND
21    CABLE TO A LESSER DEGREE.  AREN'T THERE BOTH FACTORS THERE THAT
22    WOULD TEND TO RAISE THE VALUE AND ALSO LOWER IT?
23              THE WITNESS:  I WHOLEHEARTEDLY AGREE, YOUR
24    HONOR.  I THINK IT'S AN EXCELLENT POINT.  FOR EXAMPLE, IF YOU
25    GO BACK TO 1995, HAD AN AGREEMENT BEEN STRUCK WITH DIRECTV BACK
```

1   IN 1995 IN THE HYPOTHETICAL WORLD, ONE COULD CONCEIVE THE

2   ARGUMENT AS WELL THAT FINISAR WOULD HAVE HAD AN OPPORTUNITY TO

3   LICENSE TO PRIMESTAR, TO LICENSE TO THREE OR FOUR OTHER DBS

4   COMPANIES AT THAT POINT IN TIME WHOSE ROYALTIES ARE NOW

5   FOREGONE POTENTIALLY OR COLLAPSED INTO FINISAR'S OPPORTUNITY

6   WITH ECHOSTAR AND DIRECTV.

7           THE COURT:  BUT NOW WE'RE TALKING

8   ABOUT -- LET'S LOOK AT TODAY.

9           THE WITNESS:  SURE.

10          THE COURT:  WE'VE ALREADY GOT WHAT THE JURY HAS

11   IN THE PAST.  BUT RIGHT NOW YOU HAVE -- WHAT YOU'RE SAYING IS

12   DIRECTV WITH 56 PERCENT MARKET SHARE AND ONLY ONE COMPETITOR

13   AND JUST -- PARTLY I WANT TO GET THIS OUT FOR THE RECORD IS:

14   WHAT ARE THE COSTS OF ENTRY INTO THIS KIND OF BUSINESS?

15          THE WITNESS:  I AGREE, YOUR HONOR, THAT IT IS A

16   FAIRLY SIGNIFICANT BARRIER TO ENTRY FOR OTHER COMPANIES AT THIS

17   POINT IN TIME.

18          THE COURT:  IN TERMS OF BILLIONS, RIGHT?  IT'S

19   UP THERE AND SO FORTH.

20          THE WITNESS:  I WOULD SAY THAT IN TERMS OF

21   BILLIONS OR MORE, PERMITTING NECESSARY TO GET SATELLITES UP

22   THERE, THAT THERE ARE -- I WOULD BE -- I'D BE MORE SURPRISED

23   THAN NOT IF THERE'S A THIRD ENTRANT INTO THE DBS MARKETPLACE.

24   THE COMPETITION IS GOING TO COME FROM CABLE AS MUCH AS IT

25   POSSIBLY CAN.

1    THE COURT:  ALL RIGHT, SO YOU DO HAVE THE

2  POSSIBILITY OF SELLING TO ECHOSTAR PERHAPS, AND THEN AS COUNSEL

3  HAS ARGUED THEY MIGHT HAVE THE ABILITY TO ELIMINATE DIRECTV,

4  BUT IS THAT REALISTIC IN TERMS OF THE CAPITAL REQUIREMENTS THAT

5  WOULD BE NEEDED TO TAKE OVER 15 MILLION CUSTOMERS.  FOR

6  EXAMPLE, ARE THE SET TOP BOXES INTERCHANGEABLE, OR DOES

7  ECHOSTAR HAVE A DIFFERENT KIND?

8    THE WITNESS:  THAT'S A GOOD QUESTION.  I BELIEVE

9  THERE ARE SOME DIFFERENCES.  MY IMPRESSION IS THAT THERE'S BEEN

10  SOME SORT OF CONVERGENCE IN THE MARKETPLACE, THAT THE SET TOP

11  BOX IS BECOMING MORE OF A COMMODITY BETWEEN THE TWO COMPANIES.

12  I STILL THINK THERE ARE SOME DIFFERENCES.

13    THE COURT:  AND MAYBE WITH A DISH OR WHATEVER IS

14  BRINGING IN THE SIGNAL.  THERE HAS TO BE SOME KIND OF

15  CONVERTERS, AS I RECALL ON THE DISH ITSELF COMING IN.

16    THE WITNESS:  THAT'S CORRECT.  I WOULD IMAGINE,

17  ALTHOUGH I'M NOT A TECHNICAL EXPERT, IT WOULDN'T SURPRISE ME

18  AGAIN THAT THERE IS SOME DIFFERENCES IN THE TECHNOLOGY.  SO

19  YOUR POINT IS A GOOD ONE, YOUR HONOR, IN TERMS OF THE ABILITY

20  OF ECHOSTAR TO SERVICE IF YOUR POINT IS THAT $15 MILLION -- 15

21  MILLION SUBSCRIBERS OF DIRECTV, I WOULD SAY THAT THERE WOULD

22  HAVE TO BE SOME INVESTMENT BY ECHOSTAR.  CERTAINLY BY ECHOSTAR

23  VIS-A-VIS SOME OTHER NEW ENTRY INTO THE MARKETPLACE, ALTHOUGH I

24  WOULDN'T DISMISS THAT NECESSARILY, BUT --

25    THE COURT:  AND YOU'D HAVE THE SAME KIND OF

1    BARRIERS OF ENTRY OR VARIOUS EXPANSION OF THE CABLE.  WHEREAS

2    IN THE CITY, THEY PROBABLY HAVE THEIR CABLE NETWORKS OUT IN THE

3    AREAS WHERE, I GUESS, SATELLITE TV WAS INITIALLY POPULAR, IN

4    THE RURAL AREAS, THERE ARE MANY AREAS STILL NOT SERVED BY

5    CABLE, SO THERE THAT WOULD BE AT COST.

6              THE WITNESS:  I WOULD AGREE THAT TO EXTEND TO

7    THOSE PARTICULAR RURAL AREAS WOULD BE SOME INVESTMENT, ALTHOUGH

8    OBVIOUSLY WITH ECHOSTAR THEY DO HAVE THEIR SATELLITES THERE TO

9    TRY --

10             THE COURT:  I WAS TALKING ABOUT THE OTHER

11   COMPETITOR, CABLE.

12             THE WITNESS:  I'M SORRY.  THE CABLE CERTAINLY

13   WOULD STILL BE CHALLENGED WITH RESPECT TO RURAL, ALTHOUGH IT'S

14   MY UNDERSTANDING HAVING DONE SOME WORK FOR A COUPLE OF CABLE

15   COMPANIES IN THE ELECTRICAL PROPERTY BASIS, THAT THEY HAVE

16   VASTLY IMPROVED THEIR ABILITY TO REACH THE RURAL AREAS BECAUSE

17   THEY KNEW THAT THAT WAS A COMPETITIVE SHORTCOMING OF THEIRS.

18             THE COURT:  OKAY.  GO AHEAD.

19             MR. VEDERKA:  OKAY.  SUSAN, COULD WE PROCEED TO

20   THE NEXT SLIDE?

21   Q.   (BY MR. VEDERKA)  OKAY.  AND WITH RESPECT TO ADDITIONAL

22   PRIMARY CHANGES FROM THE 1995 CONSTRUCT, YOU WOULD WANT TO

23   CONSIDER ADDITIONAL DIRECTV LICENSES?

24   A.   YES.  AS I -- THE COURT WOULD RECALL DIRECTV SIGNED AN

25   AGREEMENT WITH GEM STAR IN 2004, I BELIEVE, I TESTIFIED IN THE

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
34

```
 1   1995 CONSTRUCT THAT GAVE A LITTLE BIT LESS WEIGHT TO THAT

 2   BECAUSE OF THE LENGTH OF TIME BETWEEN 1995 AND 2004.  I WOULD

 3   PLACE MORE WEIGHT ON THAT AS WE SIT HERE IN 2006.  A PRIMARY

 4   TAKE AWAY IN ADDITION WITH THE TIVO AGREEMENT SIGNED IN 2002,

 5   THE PRIMARY TAKE AWAY IS WITH CONSTRUCT.  WHAT WOULD THE

 6   ROYALTY STRUCTURE LOOK LIKE?

 7   Q.    AND WHAT WOULD THAT CONSTRUCT BE?

 8   A.    THE CONSTRUCT EVEN FURTHER CONFIRMED BY USING THESE TWO

 9   AGREEMENTS IN ADDITION TO THE MACROVISION AGREEMENTS WHICH ARE

10   THE THREE SOLE AGREEMENTS THAT DIRECTV AS AN ENTITY ASSIGNED IS

11   ALL ON A PERCENTAGE OF REVENUE OR A PER SUBSCRIBER BASIS, NOT

12   ON HARDWARE, NO ON SET TOP BOXES.

13   Q.    I BELIEVE THAT'S RELATED TO THE LAST POINT ON THE DIRECTV

14   NO LONGER HAS A CORPORATE RELATIONSHIP WITH A SET TOP BOX

15   MANUFACTURER?

16   A.    IT'S MY UNDERSTANDING THAT THE HUGHES NETWORK SYSTEM,

17   WHICH WAS A SISTER COMPANY TO DIRECTV, WAS SOLD RECENTLY

18   2004-2005 TIME FRAME, I BELIEVE, TO THOMPSON, ANOTHER SET TOP

19   BOX MANUFACTURER, SO THAT DOES MAKE SENSE.  SO DIRECTV HAS NO

20   RELATIONSHIP WHATSOEVER IN TERMS OF A CORPORATE RELATIONSHIP

21   WITH ANY SET TOP BOX MANUFACTURER.

22   Q.    OKAY.  AND I BELIEVE YOU'VE ALSO SAID THAT THERE WOULD BE

23   SOME ADDITIONAL OR UPDATED INFORMATION THAT YOU WOULD WANT TO

24   CONSIDER.

25             MR. VEDERKA:  CAN WE PROCEED WITH THE NEXT
```

1   SLIDE, SUSAN?

2   Q.   (BY MR. VEDERKA)   AND HERE YOU'VE BROKEN THAT DOWN INTO

3   FINANCIAL AND I BELIEVE LICENSING.

4   A.   YES, EXACTLY.   THE TITLE INFORMATION NOT AVAILABLE AND

5   NEEDING UPDATE IS -- I'VE BROKEN INTO TWO BUCKETS, FINANCIAL

6   AND LICENSING.   SO THE FINANCIAL, IT WOULD BE IMPORTANT, I

7   THINK, AGAIN FOR THE MARKET DYNAMICS TO WORK OUT WHAT WOULD BE

8   THE AGREEMENT BETWEEN DIRECTV AND FINISAR TODAY TO LOOK AT NOW

9   PROJECTION PREPARED TODAY FOR REVENUE OPERATING PROFIT BEFORE

10  DEPRECIATION AND AMORTIZATION, SERIALIZE THE PATENT 2012.

11            IF YOU RECALL IN THE 1995 CONSTRUCT WHILE THAT

12  WAS MENTIONED IN PASSING, LESS WEIGHT WAS PLACED ON THAT

13  INCLUDING BY THE COURT BECAUSE OF IT EXISTING SO FAR REMOVED

14  FROM THE 1995 HYPOTHETICAL NEGOTIATION.

15            IN ADDITION, THIRD PARTY ANALYST PROJECTIONS ARE

16  OFTEN USEFUL.   WE RELIED UPON SOME BACK IN THE 1995 TIME FRAME.

17  CERTAINLY I'D LIKE TO SEE WHAT THE THIRD PARTY ANALYST ARE

18  PREDICTING FOR DIRECTV FOR THE LIFE OF THE PATENT, WHICH IS

19  ONLY ABOUT SIX YEARS TO RUN FROM TODAY THROUGH 2012.

20  Q.   AND WHAT ARE -- WHAT ARE QUARTERLY EARNING COST?

21  A.   ESSENTIALLY, I BELIEVE WE ASKED FOR THIS INFORMATION

22  PREVIOUSLY, BUT DIRECTV, SINCE THEY WEREN'T A PUBLIC ENTITY IN

23  1995 THROUGH 2003, DID NOT HAVE SUCH INFORMATION.   THESE ARE

24  QUARTERLY EARNINGS CALLS FOR ANALYST WHERE DIRECTV IS

25  EXPLAINING ITS BUSINESS, PROJECTING WHERE IT THINKS ITS GROWTH

1    IS GOING TO BE, WHAT ARE ITS CHALLENGES, HOW IT'S GOING TO ADD

2    SUBSCRIBERS, ET CETERA.  SO THOSE ARE OFTEN USEFUL INFORMATION

3    AS KIND OF MOUTH PIECES OF DIRECTV INDIVIDUALS TO THE

4    MARKETPLACE AS TO WHAT THEY'RE INTENDING TO DO, WHAT ARE THEIR

5    FUTURE PLANS, AND NOT BY BEING ENCOMPASSED IN THE CURRENT AND

6    PROJECTED GROWTH RATES FOR SUBSCRIBERS.  I WOULD ALSO LOOK AT

7    DIRECTV'S CURRENT MARKET CAPITALIZATION, WHAT THE VALUE OF THE

8    MARKETPLACE PLACES ON THE DIRECTV CONTRASTING THAT WITH 1995

9    MARKET CAP, WHICH IS OBVIOUSLY SIGNIFICANTLY LESS.  AND I'D

10   PROBABLY WANT TO GET AN UPDATE ON ACQUISITION COSTS PER

11   SUBSCRIBER UNDER THE AUSPICES OF ESSENTIALLY DIRECTV, IF THEY

12   LOSE SUBSCRIBERS BY ANY WAY, SHAPE OR FORM AS A RESULT OF 505

13   PATENT OR LACK OF ACCESS TO IT, HOW MUCH IT WOULD COST THEM TO

14   REACQUIRE THOSE SUBSCRIBERS.

15   Q.   AND THE LAST POINT, THE NATURE OF EXISTING CONTRACTS?

16   A.   AN IMPORTANT CONSIDERATION NOW AS OPPOSED TO BACK IN 1995,

17   LESS SO IN 1995, IS DIRECTV HAS LONG TERM NOW CONTRACTS, AS I

18   UNDERSTAND IT, WITH CONTENT OR COMPONENT PROVIDERS, CONTENT

19   BEING THE MEDIA COMPANIES STREAMING THEIR CONTENT THROUGH

20   DIRECTV'S SYSTEM TO THE HOME, AND ALSO THEY HAVE SOME COMPONENT

21   PROVIDERS MEANING PERHAPS SET TOP BOX MANUFACTURERS AND OTHER

22   HARDWARE.  SO THE IMPACT TODAY OF AN INABILITY TO STREAM THEIR

23   CONTENT TO CONSUMERS MAY HAVE AN IMPACT ON THOSE CONTRACTS.

24   AND IT MAY BE DIFFERENT THAN IN 1995.

25             MR. VEDERKA:  OKAY.  LET'S PROCEED TO THE LAST

1   SLIDE, SUSAN, PLEASE.

2   Q.   (BY MR. VEDERKA)   AND HERE ARE --

3                THE COURT:   WAIT A MINUTE.   WAIT A MINUTE.

4   YOU'RE SAYING THE CONTRACTS -- TELL ME THIS AGAIN ABOUT HOW

5   THAT AFFECTS THEIR ABILITY TO STREAM CONTENT.

6                THE WITNESS:   ESSENTIALLY, AS I UNDERSTAND IT,

7   YOUR HONOR -- AND PERHAPS I MISSPOKE -- IT'S THE EXISTING

8   CONTRACTS BETWEEN DIRECTV AND CONTENT, LET'S SAY IT'S DISNEY OR

9   SOME OTHER MEDIA COMPANY THAT'S SUPPLYING CONTENT THROUGH

10  DIRECTV, AND THEY HAVE A CONTRACT WITH DIRECTV.   THE POINT IS

11  HERE IS THAT THOSE TYPES OF CONTRACTS MAY BE DIFFERENT IN 2006

12  THAN THE TERMS OR THE NUMBER OF THOSE CONTRACTS BACK IN 1995.

13  AND SO THE IMPACT OF THOSE CONTRACTS, HOW DOES THAT GET VALUED

14  NOT INTERRUPTING THOSE CONTRACTS IN TERMS OF A POTENTIAL

15  INJUNCTION OR A STOPPING OF SERVICE, I.E., DIRECTV NOT BEING

16  ABLE TO STREAM THAT CONTENT TO THE CONSUMERS, AND DOES THAT

17  HAVE AN IMPACT ON THE CONTRACTS IN PLACE OR ANY FUTURE

18  CONTRACTS THAT DIRECTV IS CURRENTLY NEGOTIATING.

19                THE COURT:   OKAY.

20  Q.   (BY MR. VEDERKA)   AND FINALLY, INFORMATION THAT YOU WOULD

21  WANT TO EVALUATE IN TERMS OF LICENSING.

22  A.   I TOUCHED ON THIS PREVIOUSLY.   THERE ARE A SERIES OF TIVO

23  AGREEMENTS FROM, I THINK, 1999 TO 2002, INCLUDING SOME RECENT

24  AMENDMENTS, AND I'D WANT TO CONSIDER, AS I SIT HERE TODAY, THE

25  TIVO AGREEMENTS, LOOK AT THEM MORE CAREFULLY.   THERE IS ONE

```
 1   ASPECT OF THAT AGREEMENT, WHICH IS A BROADER RELATIONSHIP

 2   GRANTED, THAT HAS TO DO WITH PATENT LICENSING AND TECHNOLOGY

 3   LICENSING.  AND I WOULD CONSIDER THAT, AS WE SIT HERE TODAY.

 4   BACK IN 1995, I DID NOT CONSIDER IT.  AND IF THERE'S ANY OTHER

 5   RECENT DIRECTV AND/OR OTHER INDUSTRY AGREEMENTS THAT MIGHT HAVE

 6   SOME RELEVANCE AGAIN AS WE SIT HERE IN 2006.  SO THAT'S THE

 7   TYPE OF INFORMATION I THINK WOULD BE APPROPRIATE TO CONSIDER,

 8   ANALYZE, AND PLACE APPROPRIATE WEIGHT ON EITHER LESS WEIGHT OR

 9   MORE WEIGHT IN DETERMINING WHAT A RATE MIGHT BE EVEN IN THEIR

10   COMPULSORY LICENSE BETWEEN FINISAR AND DIRECTV.

11   Q.    OKAY.   THANK YOU.   NOW, WHEN YOU TESTIFIED AT TRIAL IN

12   CALCULATING PAST DAMAGES, YOU TESTIFIED IT WAS YOUR OPINION

13   THAT A PER SET TOP BOX ROYALTY METHODOLOGY WAS INAPPROPRIATE;

14   IS THAT RIGHT?

15   A.    THAT'S CORRECT.

16   Q.    WOULD THAT STILL BE YOUR OPINION WITH RESPECT TO DAMAGES

17   GOING FORWARD?

18   A.    I THINK EVEN MORE SO TODAY GIVEN THAT THE JUMP START

19   AGREEMENT IN 2004 AND THE ONE PATENT OR TECHNOLOGY LICENSE

20   AGREEMENT BETWEEN TIVO AND DIRECTV IN 2002 CLEARLY INDICATES TO

21   ME BACK IN 1995 ONLY HAD ONE AGREEMENT THAT HAD BEEN SIGNED

22   WITH MACROVISION BETWEEN DIRECTV AND ANOTHER TECHNOLOGY OWNER.

23   HERE NOW I HAVE, IN ESSENCE, THREE AGREEMENTS, ALL OF WHICH ARE

24   BASED ON A RUNNING ROYALTY BASED UPON A PER SUBSCRIBER WHICH

25   CORRELATES TO REVENUE OR ON A REVENUE BASIS AND NOT ON A SET
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

```
 1    TOP BOX.  DIRECTV IS YET TO SIGN AN AGREEMENT TO PAY ON A SET

 2    TOP BOX BASIS, AND EVEN FURTHER REMOVED FROM THAT, THEY'VE

 3    ACTUALLY GOTTEN RID OF THEIR SET TOP BOX ENTITY WHICH WAS

 4    HUGHES NETWORK SYSTEMS.  THERE WAS NO REASON REALLY TO PAY ON

 5    THE SET TOP BOX BASIS.

 6    Q.   SO, IN YOUR OPINION, BASED ON THE INFORMATION YOU DO HAVE,

 7    THE RUNNING ROYALTY METHODOLOGY IS EVEN MORE APPROPRIATE THAN

 8    IT WAS WITH RESPECT TO CALCULATION OF PAST DAMAGES?

 9    A.   I WOULD SAY THAT'S EVEN MORE -- MORE CONCRETE, THAT IT

10    WOULD BE MORE ON A RUNNING ROYALTY PERCENTAGE OF SALES BASIS;

11    YES, SIR.

12              MR. VEDERKA:  THANK YOU, MR. NAPPER.

13              MR. ROBERTS:  IF I COULD JUST OFFER SOME

14    CONCLUSIONARY REMARKS, YOUR HONOR.

15              THE COURT:  WELL, I'M GOING TO ALLOW AN

16    OPPORTUNITY FOR SOME CROSS-EXAMINATION.

17              MR. ROBERTS:  OH, THANK YOU.

18              THE COURT:  MR. SAVIKAS.

19              C R O S S   E X A M I N A T I O N

20    BY MR. SAVIKAS:

21    Q.   GOOD MORNING, MR. NAPPER.

22    A.   HI, MR. SAVIKAS, HOW ARE YOU?

23    Q.   I'M WELL.  THANK YOU.

24              ARE YOU AWARE OF ANY REPORTED CASE FROM THE

25    FEDERAL CIRCUIT IN WHICH HYPOTHETICAL NEGOTIATIONS WERE
```

1  CONSIDERED AFTER A JURY VERDICT?

2  A.   AN INTERESTING QUESTION.  I'M GOING THROUGH, I BELIEVE,

3  VIRTUALLY ALL OF THE CASES, WITH ONE EXCEPTION THAT I'VE BEEN

4  INVOLVED WITH WHERE THE PLAINTIFF HAS BEEN PREVAILED ON THE

5  ISSUES OF VALIDITY AND INFRINGEMENT, HAD AN INJUNCTION ISSUED.

6  SO THERE WOULD BE NO NEED FOR A HYPOTHETICAL -- HYPOTHETICAL

7  NEGOTIATION.  IT WOULD BE MARKET DYNAMICS DICTATING WHAT

8  HAPPENS AFTER THAT POINT.

9  Q.   SO YOU'RE NOT AWARE OF THE COURT EVER CONDUCTING

10 HYPOTHETICAL NEGOTIATIONS AFTER A JURY VERDICT?

11 A.   AGAIN, IT'S ALWAYS BEEN AN INJUNCTION WITH ONE EXCEPTION.

12 Q.   ARE YOU FAMILIAR WITH THE TERM "COMPULSORY LICENSE"?

13 A.   GENERALLY, YES.

14 Q.   ARE YOU FAMILIAR WITH THE COURTS IMPOSING A COMPULSORY

15 LICENSE AFTER A JURY VERDICT AND NOT GRANTING AN INJUNCTION?

16 A.   I'M FAMILIAR WITH THAT.  I DON'T BELIEVE IT'S BEEN ANY OF

17 THE PROJECTS I'VE WORKED ON HAS THAT OCCURRED.  MY PRESUMPTION

18 IS -- AND MY KNOWLEDGE IS THAT IT'S PRIMARILY BECAUSE -- I'M

19 SORRY.  THERE'S BEEN ONE CASE I'VE WORKED ON WITH ZENITH WHERE

20 THERE WAS 30 SOME ODD LICENSES, AND SO A COMPULSORY LICENSE WAS

21 GRANTED BY THE COURT BECAUSE THAT WAS AN ESTABLISHED ROYALTY

22 RATE.  SO I'M NOT FAMILIAR -- I'M FAMILIAR WITH THAT CAN OCCUR

23 ON OCCASION.

24 Q.   AND WHAT WAS THE COMPULSORY LICENSE RATE GRANTED IN THAT

25 CASE?  DID YOU SAY IT WAS AN ESTABLISHED ROYALTY?

1   A.    IT WAS.

2   Q.    AND THEY DIDN'T TAKE INTO ACCOUNT, QUOTE, THE VALUE OF AN

3   INJUNCTION?

4   A.    VIRTUALLY EVERY TV MANUFACTURER HAD SIGNED UP FOR THE

5   RATE, AND THERE HAD BEEN NO VARIANCE IN THE RATE.  SO THEY --

6   THE -- ESSENTIALLY THERE WAS NO ANALYSIS PERFORMED OR DESIRED

7   IN TERMS OF THE VALUE OF AN INJUNCTION FOR THAT PARTICULAR

8   FACT.

9   Q.    NOW DURING THE TRIAL YOU TESTIFIED AS TO A REASONABLE

10  ROYALTY RATE THAT WOULD BE INCLUDED IN A LICENSE THAT WOULD BE

11  EXECUTED BY DIRECTV AND FINISAR; DID YOU NOT?

12  A.    YES.   THAT'S CORRECT.

13  Q.    AND YOU ASSUMED THE DURATION OF THAT LICENSE WOULD BE

14  UNTIL THE EXPIRATION OF THE PATENT; ISN'T THAT CORRECT?

15  A.    AS DID DIRECTV'S DAMAGES EXPERT; THAT'S RIGHT.

16  Q.    SO YOU DIDN'T -- IN YOUR TESTIMONY IN FRONT OF THE JURY,

17  YOU DIDN'T ASSUME THAT THERE WOULD BE AN INJUNCTION ENTER IN

18  COMING UP WITH YOUR ROYALTY RATE, CORRECT?

19  A.    WELL, COMING UP WITH MY DAMAGES, I ABSOLUTELY DID.  MY

20  DAMAGES CUT OFF THE REVENUES THE ACCUSED --

21  Q.    I UNDERSTAND THAT.  BUT IN DETERMINING WHAT THE RATE AND

22  THE BASE WOULD BE, YOU DID NOT ASSUME THAT THERE WOULD BE AN

23  INJUNCTION?

24  A.    ONE OF THE GEORGIA PACIFIC FACTORS IS THE DURATION OF THE

25  LICENSE AGREEMENT, AND I PRESUMED THAT THAT LICENSE AGREEMENT

```
 1   WOULD RUN THROUGH THE LIFE OF THE PATENT; THAT IS CORRECT.

 2   Q.   OKAY.  HOW DO YOU RECONCILE THE JURY VERDICT WITH YOUR

 3   OPINION THAT THE DAMAGES SHOULD HAVE BEEN $1.7 BILLION?

 4   A.   I HAVE -- I CANNOT RECONCILE THAT.  THERE'S ABSOLUTELY --

 5   ABSENCE OF INFORMATION AS TO WHAT THE TOOLS OR ANALYSIS OR

 6   EMPHASIS OR WEIGHTS THAT THE JURY PLACED ON THE INFORMATION

 7   THAT IT WAS PRESENTED.

 8   Q.   WE TALKED ABOUT THE IMPEG DECODERS AND ENCODERS DURING

 9   YOUR TESTIMONY AT TRIAL.  AM I CORRECT THAT YOU TESTIFIED THAT

10   NONE OF THE LICENSES FOR THE IMPEG DECODERS AND ENCODERS IS

11   BASED ON A PERCENTAGE OF GENERAL REVENUE?

12   A.   TESTING MY MEMORY NOW, MR. SAVIKAS.  BUT I BELIEVE THAT IS

13   CORRECT, THAT NONE OF THOSE LICENSES ARE BASED UPON A

14   PERCENTAGE OF REVENUE BASIS FOR THE SET TOP BOXES.

15   Q.   ARE YOU AWARE OF ANY TECHNOLOGY IN THE SATELLITE

16   TELEVISION BUSINESS THAT IS BASED ON A GROSS REVENUE?

17   A.   WELL, I GUESS NOT TO -- I HESITATE BECAUSE GROSS REVENUES

18   CAN BE DEFINED AS, FOR EXAMPLE, THE MACROVISION AGREEMENT WITH

19   DIRECTV HAD TO DO WITH THE GROSS REVENUES -- THE BASE WAS THE

20   GROSS REVENUES DERIVED FROM THE USE OF THE MACROVISION

21   TECHNOLOGY FOR SECURITY ISSUES.  SO IF DIRECTV HAD A REVENUE

22   THAT THEY CHARGED YOU AND I ON A PAY PER VIEW BASIS, THEY'D PAY

23   IT ON A PERCENTAGE OF THAT REVENUE.

24   Q.   RIGHT.  BUT IT WASN'T THE GROSS REVENUES OF THE COMPANY,

25   WAS IT?
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

43

1    A.    IT WAS NOT.

2    Q.    OKAY.   EITHER MR. ROBERTS OR MR. VEDERKA SAID THAT

3    DIRECTV'S ENTERPRISE WAS BASED ON INFRINGING TECHNOLOGY.   DID

4    YOU HEAR THAT STATEMENT?

5    A.    I BELIEVE I DID, YES.

6    Q.    NOW, DIRECTV WAS IN BUSINESS AND BROADCASTING LONG BEFORE

7    THE FINISAR PATENT ISSUED, CORRECT?

8    A.    AGAIN, NOT TO QUIBBLE.   LONG BEFORE -- I BELIEVE THEY WERE

9    BROADCASTING BEFORE --

10   Q.    WELL, YOU TESTIFIED ABOUT AN AWARD THAT THEY GOT IN

11   FEBRUARY OF 1995 THAT'S THE MOST SUCCESSFUL CONSUMER

12   ELECTRONICS PRODUCT?

13   A.    YEAH.   THEY LAUNCHED -- I BELIEVE IT'S FEBRUARY 1995,

14   AGAIN NOT TO CORRECT YOU, MR. SAVIKAS; AND, YES, THEY HAD BEEN

15   BROADCASTING BEFORE.   I DON'T KNOW ABOUT LONG BEFORE, BUT THEY

16   HAD BEEN BROADCASTING BEFORE THE 505 PATENT ISSUE.

17   Q.    AND THE 505 PATENT CAME OUT IN APRIL OF 1995, CORRECT?

18   A.    THAT'S MY RECOLLECTION, YES.

19   Q.    ALL RIGHT.   ONE OF YOUR SLIDES YOU SAID THAT ECHOSTAR IS

20   THE ONLY DBS COMPETITOR; DO YOU RECALL THAT TESTIMONY?

21   A.    YES.   AS WE SIT HERE TODAY, YES.

22   Q.    ARE YOU AWARE THAT ECHOSTAR TRIED TO BUY DIRECTV ON ONE

23   OCCASION?

24   A.    YES.

25   Q.    AND ARE YOU AWARE THAT THE JUSTICE DEPARTMENT BROUGHT AN

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
44

```
 1   ANTI-TRUST SUIT AGAINST ECHOSTAR TO PREVENT THAT ACQUISITION?
 2   A.   I DON'T KNOW ABOUT THE FOUR RAMIFICATIONS, BUT I BELIEVE
 3   THERE WAS SOME TALK ABOUT IT ONLY FROM -- ON MY KNOWLEDGE ONLY
 4   FROM THE GENERAL PRESS.
 5   Q.   WELL, THE COMPLAINT WAS ATTACHED TO THE -- I'M SORRY.   THE
 6   JUSTICE DEPARTMENT COMPLAINT WAS ATTACHED TO FINISAR'S
 7   COMPLAINT IN THIS CASE.   DO YOU RECALL THAT?
 8   A.   I DON'T.   I'M SORRY.
 9   Q.   AND DO YOU RECALL THAT THE JUSTICE DEPARTMENT SAID THAT
10   THERE COULD NOT BE A SINGLE SATELLITE PROVIDER IN THIS COUNTRY?
11   A.   I DON'T RECALL THAT, EITHER.
12   Q.   DO YOU RECALL THAT A PRESS RELEASE TO THAT EFFECT IS
13   ATTACHED TO FINISAR'S COMPLAINT IN THIS CASE?
14   A.   I DON'T RECALL.
15   Q.   WOULD IT SURPRISE YOU THAT THE ECHOSTAR SET TOP BOXES ARE
16   TOTALLY INCOMPATIBLE WITH DIRECTV'S BOXES?
17   A.   AGAIN, I'VE SEEN THERE'S SOME INDICATIONS THAT THERE'S
18   SOME CONVERGENCE, A DESIRE TO COMODITIZE SET TOP BOXES AND MAKE
19   THEM COMPATIBLE.   BUT AS I UNDERSTAND IT AS WE SIT HERE TODAY,
20   THAT THEY ARE DIFFERENT.   THEY ARE DIFFERENT, THAT ONE CAN'T
21   TALK TO THE OTHER.
22   Q.   YOU HAVE -- AS I RECALL, YOU HAVE A DISH SYSTEM, RIGHT?
23   A.   I HAVE A DIRECTV SYSTEM.
24   Q.   YOU CAN'T GET A DISH SIGNAL, CAN YOU?
25   A.   NOT THAT I'M AWARE OF, NO.
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

45

```
 1   Q.    OKAY.   YOU TALKED ABOUT CABLE BEING A COMPETITOR.   ARE YOU
 2   AWARE OF THE INTRODUCTION OF THE FIBER OPTIC TELEVISION SYSTEMS
 3   NOW BEING OFFERED BY THE LOCAL BELLS?
 4   A.    NO.
 5   Q.    DO YOU KNOW ABOUT VERIZON OFFERING THEIR FIOS SYSTEM?
 6   A.    I DON'T.
 7   Q.    THE GEM STAR MONTHLY ROYALTY THAT YOU TALKED ABOUT, THAT'S
 8   NOT A PERCENTAGE OF ANY GROSS REVENUE, IS IT; THAT'S SIMPLY A
 9   FIXED AMOUNT PER MONTH?
10   A.    WELL, IT'S -- IT IS BASED UPON ULTIMATELY -- NOT BASED
11   UPON -- IT RELATES TO GROSS REVENUE BECAUSE IT'S BASED UPON
12   NUMBER OF SUBSCRIBERS THAT CORRELATES TO REVENUE EARNED BY
13   DIRECTV, SO --
14   Q.    IS IT --
15   A.    -- 20 CENTS PER SUBSCRIBER PER MONTH.
16   Q.    20 CENT PER SUBSCRIBER PER MONTH.   THAT'S IRRESPECTIVE OF
17   HOW MUCH PROFIT OR REVENUE DIRECTV GENERATES.
18   A.    THAT IS NOT -- THAT IS -- YOU ARE RIGHT.   IT IS DIVORCED
19   FROM THE AMOUNT THAT SUBSCRIBER IS CHARGED FOR THE DIRECTV
20   SERVICE.   BUT OBVIOUSLY THE NUMBER OF SUBSCRIBERS RELATES TO
21   DIRECTV'S REVENUES.
22   Q.    AND YOU SAID DIRECTV NO LONGER HAS THE CORPORATE
23   RELATIONSHIP WITH THE SET TOP BOX MANUFACTURER, AS I RECALL?
24   A.    THAT WAS MY UNDERSTANDING.
25   Q.    DO YOU KNOW NOW HOW DIRECTV SECURES ITS SET TOP BOXES?
```

1    A.    I DON'T HAVE ANY SPECIFIC KNOWLEDGE OF THAT.  I DO NOTE

2    THAT THERE WAS SOME DIFFICULTY IN DIRECTV ACTUALLY DETERMINING

3    HOW MANY SET TOP BOXES THAT THEY'VE DELIVERED TO CONSUMERS,

4    WHICH DOESN'T SURPRISE ME SINCE THEY'RE NOT A SET TOP BOX

5    MANUFACTURER.

6    Q.    OKAY.  HAVE YOU EVER TESTIFIED IN CONNECTION WITH A

7    COMPULSORY ROYALTY?

8    A.    ONLY THE ONE EXAMPLE I GAVE WHERE I'M FAMILIAR WITH THE

9    COMPULSORY -- WELL, I WOULD SAY A LICENSE THAT WAS IMPOSED UPON

10   THE INFRINGER.

11   Q.    ARE YOU FAMILIAR --

12   A.    I DON'T BELIEVE I'VE TESTIFIED -- I PROVIDED TESTIMONY IN

13   THAT CASE, SO I'M NOT QUITE SURE WHAT YOU MEAN BY COMPULSORY

14   LICENSE.

15   Q.    DID YOU -- WERE YOU THE ONE WHO OPINED THAT FIVE PERCENT

16   WAS THE APPLICABLE ROYALTY RATE?

17   A.    I DIDN'T SAY ANYTHING ABOUT A FIVE PERCENT RATE.

18   Q.    I'M SORRY, THE ESTABLISHED RATE.  YOU SAID THERE WAS AN

19   ESTABLISHED RATE IN THAT CASE?

20   A.    THERE WERE 30 AGREEMENTS THAT WERE WITHIN EYELASHES OF

21   EACH OTHER, AND SO, YES, I OPINED AS TO THAT PARTICULAR RATE.

22   Q.    AND IN GRANTING THE COMPULSORY LICENSE, THE COURT ADOPTED

23   THE RATE -- THE ESTABLISHED RATE THAT YOU TESTIFIED ABOUT?

24   A.    THEY -- I'M NOT SURE THEY RELIED UPON MY TESTIMONY AS MUCH

25   AS THEY ESSENTIALLY LOOKED AT THE 30 DIFFERENT LICENSE

1  AGREEMENTS AND USED THAT INFORMATION TO MAKE A DETERMINATION.

2  Q.   ALL RIGHT.

3  A.   I'M NOT SURE HOW --

4  Q.   IN --

5  A.   -- WHAT RELIANCE THEY PLACED ON MY TESTIMONY.

6  Q.   IN DECIDING THE COMPULSORY ROYALTY RATE, SHOULD THIS COURT

7  TAKE INTO ACCOUNT THE JURY VERDICT AT ALL?

8  A.   THE -- IT WOULD SEEM TO ME THAT THE CHALLENGE IN TAKING

9  ACCOUNT OF THE JURY VERDICT WOULD BE TO TRY TO UNDERSTAND HOW

10  THE JURY DETERMINED THAT AMOUNT AND WHAT IT TOOK INTO

11  CONSIDERATION AND WHAT EMPHASIS IT PLACED ON THE VARIOUS

12  INFORMATION AND EVIDENCE THEY HAD AVAILABLE TO IT.  SO I WOULD

13  BE -- IT WOULD BE -- OBVIOUSLY, THE COURT BEING MORE WISE THAN

14  I IN THESE SITUATIONS SHOULD DO WHAT IT SHOULD.  IF YOU'RE

15  ASKING ME WHAT I WOULD DO, I WOULD BE VERY CAUTIOUS IN USING

16  THAT INFORMATION IN ANY MEANINGFUL WAY.

17  Q.   SHOULD THE COURT CONSIDER THE GROSS AMOUNT AT ALL?

18  A.   I THINK THE -- AGAIN, I'M NOT HERE TO TELL THE COURT

19  EXACTLY WHAT TO DO.  IF YOU'RE ASKING WHAT I WOULD DO, I WOULD

20  CONSIDER IT IN THE CONTEXT OF ALL THE OTHER PIECES OF

21  INFORMATION, WHICH I BELIEVE MAY HAVE MORE RELEVANCE THAN AN

22  AMOUNT THAT IS UNKNOWN -- OF UNKNOWN DETERMINATION, OF UNKNOWN

23  EMPHASIS ON THE FACTORS TO CONSIDER.

24  Q.   AND AM I CORRECT THAT THIS IS THE FIRST CASE IN WHICH

25  YOU'VE BEEN CALLED AFTER A VERDICT TO TESTIFY ABOUT A

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
48

1   HYPOTHETICAL NEGOTIATION?

2   A.   YES.

3                MR. SAVIKAS:  NOTHING FURTHER, YOUR HONOR.

4                THE COURT:  ANY MORE QUESTIONS OR MAY THE

5   WITNESS STEP DOWN?

6                MR. VEDERKA:  I DON'T HAVE ANY REDIRECT, YOUR

7   HONOR.

8                THE COURT:  ALL RIGHT.  YOU MAY STEP DOWN, SIR.

9                THE WITNESS:  THANK YOU, YOUR HONOR.

10               MR. ROBERTS:  IF I MAY, YOUR HONOR.

11               THE COURT:  COUNSEL, I THINK AT THIS TIME WHAT

12  WE'LL DO IS WE'RE GOING TO TAKE A BREAK UNTIL FIVE OF TO GIVE

13  THE COURT REPORTER AND EVERYBODY ELSE A LITTLE REST, AND THEN

14  WE'LL CONTINUE.  WE'LL BE IN RECESS UNTIL FIVE OF.

15               (RECESS.)

16               THE COURT:  GO AHEAD, COUNSEL.

17               MR. ROBERTS:  THANK YOU, YOUR HONOR.  JUST A

18  COUPLE OF COMMENTS.  I WOULD SUGGEST TO THE COURT THAT THE

19  REASON MR. NAPPER HAS NOT TESTIFIED ABOUT A NEW HYPOTHETICAL

20  NEGOTIATION IN POST VERDICT CASES BEFORE IS THAT IN THOSE CASES

21  WHAT WE TYPICALLY FIND IS THERE IS AN ESTABLISHED ROYALTY.  AND

22  BECAUSE THERE'S AN ESTABLISHED ROYALTY, THERE IS NO ANALYSIS

23  NEEDED.  THAT POINT REALLY HIGHLIGHTS THE FACT WHY IN THIS CASE

24  AN INJUNCTION SHOULD BE ISSUED BECAUSE OF THE DIFFICULTY IN

25  EVALUATING THE VALUE OF THE RIGHT TO EXCLUDE.

1          THE OTHER POINT I WANTED TO MAKE HERE IS THAT

2    BECAUSE DIRECTV'S INFRINGEMENT HAS BEEN DETERMINED TO BE

3    WILLFUL, ANY ONGOING PRACTICE OF THE PATENT BY DIRECTV SHOULD

4    BE SUBJECT TO TREBLE DAMAGES.  SO SHOULD THE COURT DECIDE TO

5    ENTER A ROYALTY OR SOME OTHER COMPULSORY LICENSE GOING FORWARD,

6    THE AMOUNT THAT DIRECTV SHOULD BE PAYING UNDER THAT SHOULD TAKE

7    INTO ACCOUNT THE FACT THAT THAT REALLY IS WILLFUL INFRINGEMENT

8    AND THAT WE'RE LICENSING WILLFUL INFRINGEMENT.

9          THE COURT:  THAT'S A NEAT ARGUMENT, COUNSEL, BUT

10   AS A MATTER OF ALMOST LAW, ONCE A JURY HAS FOUND INFRINGEMENT

11   IN A TRIAL, ANY FUTURE USE OF THE -- OF THE PATENT OR OF THE

12   INVENTION WOULD ALMOST -- I MEAN, AS A MATTER OF LAW BE

13   WILLFUL.  HOW COULD IT BE OTHERWISE?  YOU KNOW FOR AN ABSOLUTE

14   FACT THAT YOU'RE INFRINGING, AND YOU DO IT ANYWAY.

15         MR. ROBERTS:  MY VERY POINT.

16         THE COURT:  YOU'RE GOING TO STAND UP AND SAY NO,

17   IT'S NOT WILLFUL.  SO THAT WOULD APPLY IN EVERY CASE WHETHER

18   THE JURY FOUND WILLFULNESS IN THE PAST OR NOT.  AND I'VE NEVER

19   SEEN A CASE THAT SAID:  WELL, ALL FUTURE DAMAGES SHOULD ALWAYS

20   BE TREBLED BECAUSE THEY'RE ALWAYS WILLFUL.  I MEAN, THAT --

21   UNLESS YOU'VE GOT A CASE TO THAT EFFECT.

22         MR. ROBERTS:  WELL, I BELIEVE THERE ARE SOME

23   CASES IN THE BRIEF WHERE IT TALKED ABOUT IMPOSING DAMAGES FOR A

24   PERIOD DURING, SAY, A STAY OF AN INJUNCTION AND WHERE THE COURT

25   ENHANCED THOSE DAMAGES BY A FURTHER AMOUNT.  I THINK THAT THE

```
 1   FACTOR 50 PERCENT --

 2               THE COURT:  WELL, IF YOU'RE -- BECAUSE IT'S NOT

 3   EXACTLY A COMPULSORY LICENSE.  IT'S A SHORT PERIOD OF TIME

 4   WHERE THEY'RE SAYING THERE SHOULDN'T BE AN INJUNCTION, WE WANT

 5   TIME FOR A STAY AND SO ON AND SO FORTH.

 6               MR. ROBERTS:  AND DURING MR. NAPPER'S

 7   EXAMINATION, I WENT BACK AND CHECKED THE COURT'S COMMENTS ON

 8   THE LAST DAY OF TRIAL AFTER THE JURY VERDICT CAME BACK.  AND

 9   ONE OF THE COMMENTS THE COURT MADE WAS THAT THE PATENT HAS

10   NEVER BEEN USED AND THAT WE HAD UNCONVERTED TESTIMONY BY

11   DR. LEVINSON TO THAT EFFECT.  AND I WOULD JUST MERELY POINT OUT

12   THAT IT WAS THAT VERY ARGUMENT THAT THE SUPREME COURT REJECTED

13   IN EBAY AS PROVIDING A CATEGORICAL APPROACH FOR DENYING AN

14   INJUNCTION.  AND IN FACT, THERE IS -- THE CONTINENTAL PAPER BAG

15   DECISION BY THE U.S. SUPREME COURT STANDS FOR THAT VERY

16   PROPOSITION.  IT SAYS THE FEDERAL COURTS HAVE THE RIGHT TO

17   ENTER AN INJUNCTION, EVEN THOUGH THE PATENTEE -- AND I THINK

18   THE LANGUAGE IN THAT DECISION WAS -- UNREASONABLY FAILED TO

19   PRACTICE THE INVENTION.  THE PROBLEM THAT WE'RE REALLY

20   FACING --

21               THE COURT:  LET ME MAKE IT VERY CLEAR FOR THE

22   RECORD, YES, YOU'RE CORRECT.  BUT THAT'S ALWAYS BEEN THE LAW.

23   YOU CAN'T JUST PICK ONE OF THE FOUR FACTORS AND IMPOSE A

24   CATEGORICAL DECISION ON INJUNCTIONS AND NONINJUNCTION.  BUT

25   JUST BECAUSE YOU CAN'T, THAT DOESN'T MEAN YOU SHOULDN'T
```

```
 1   CONSIDER THAT FACTOR.

 2              MR. ROBERTS:  RIGHT.  AND I'M JUST -- MY POINT

 3   IS WHEN YOU CONSIDER THAT FACTOR, BY NECESSITY COMES OUT IN

 4   FAVOR OF FINISAR.  THE OTHER POINT THE COURT MADE IN THOSE

 5   COMMENTS WAS THAT THE DETRIMENT TO THE PUBLIC.  AND HERE, OF

 6   COURSE, WE'RE NOT OPPOSING SOME SORT OF A PHASE OUT PERIOD IN

 7   ORDER TO ENABLE DIRECTV TO INTEGRATE DESIGN ALTERNATIVES.  OF

 8   COURSE, AS I MENTIONED THERE'S ALWAYS THE POSSIBILITY OF THEM

 9   NEGOTIATING A LICENSE.  THEY HAVE NOT MADE A CASE FOR THE

10   CRITICAL PUBLIC INTEREST, WHICH IS REALLY WHAT IS REQUIRED

11   UNDER THIS FACTOR.

12              FINALLY, I WOULD NOTE THAT BECAUSE OF THE

13   SITUATION HERE WHERE WE'RE TRYING TO VALUE WHAT THIS INJUNCTION

14   WOULD BE WORTH, WE'RE TRYING TO VALUE DAMAGES ONGOING, WE HAVE

15   THE ADDITIONAL PROBLEM THAT THERE ARE ISSUES WHERE FINISAR

16   WOULD HAVE A RIGHT TO A JURY TRIAL.  JURY TRIAL FACT ISSUES

17   ABOUT DAMAGES ARE NECESSARILY GOING TO ARISE AND, IN FACT, I

18   BELIEVE THAT'S WHY JUDGE DAVIS IN THE Z4 CASE SEVERED POST

19   VERDICT DAMAGES.  AND SO AGAIN WE SEE THE DIFFICULTY OF ONGOING

20   LITIGATION ARISING BY FAILURE TO ENTER THE INJUNCTION.  THAT'S

21   ALL WE HAVE FOR NOW, YOUR HONOR.

22              THE COURT:  ALL RIGHT.

23              MR. SAVIKAS:  YOUR HONOR, WE'RE GOING TO PRESENT

24   THE TESTIMONY OF RICH DONALDSON AND THEN THOMAS MCGEORGE, AND

25   THEN MR. CASTANIAS IS GOING TO MAKE THE ARGUMENTS --
```

1          THE COURT:  ALL RIGHT.

2          MR. SAVIKAS:  -- IN RESPONSE TO FINISAR'S CASE.

3   SO I'D LIKE TO CALL MR. RICHARD DONALDSON TO THE STAND, PLEASE.

4          **RICHARD DONALDSON,**

5   HAVING BEEN FIRST DULY SWORN, TESTIFIED AS FOLLOWS:

6          I D I R E C T   E X A M I N A T I O N

7   BY MR. SAVIKAS:

8   Q.    WOULD YOU STATE YOUR NAME FOR THE RECORD AGAIN, SIR.

9   A.    RICHARD DONALDSON.

10  Q.    AND ARE YOU THE SAME RICHARD DONALDSON WHO TESTIFIED AT

11  TRIAL ON THE APPROPRIATE DAMAGE ANALYSIS?

12  A.    YES, I AM.

13  Q.    SINCE THE DATE OF YOUR TESTIMONY, HAS YOUR OPINION ON THE

14  CORRECT REASONABLE ROYALTY RATE CHANGED AT ALL?

15  A.    NO, IT HAS NOT.

16  Q.    AND WHY NOT?

17  A.    BECAUSE I HADN'T SEEN ANYTHING NEW THAT WOULD CHANGE THE

18  ROYALTY STRUCTURE AS FAR AS WHAT WE'VE CALLED THE CONSUMER

19  ELECTRONICS ROYALTY MODEL.

20  Q.    NOW, TO GIVE CREDENCE AND HONOR TO THE JURY VERDICT, DO

21  YOU HAVE AN OPINION AS TO THE APPROPRIATE WAY TO COMPUTE

22  DAMAGES FROM THE DATE OF TRIAL TO THE EXPIRATION OF THE 505

23  PATENT SHOULD THE COURT GRANT A COMPULSORY LICENSE?

24  A.    YES, I DO.  I THINK BASICALLY TWO THINGS:  FIRST, THE

25  ROYALTY STRUCTURE WHICH WE'VE TALKED ABOUT WHICH I TESTIFIED

1    ABOUT BEING THE CONSUMER ELECTRONICS MODEL, WHICH IS A FIXED

2    FEE PER SET TOP BOX BASICALLY, I THINK THAT IS THE MODEL.  IT

3    APPEARS TO BE THE MODEL MOST CLOSELY ALIGNED WITH WHAT THE JURY

4    LIKELY DID, PLUS IT REPRESENTS OR IS CONSISTENT WITH INDUSTRY

5    PRACTICE, WHICH I DISCUSSED IN MY PRIOR TESTIMONY.  SO THE

6    ROYALTY STRUCTURE IS ASSUMING THE ELECTRONICS MODEL IS CORRECT,

7    AND ALSO LOOKING AT THE AMOUNT OF DAMAGES OR WHAT THE JURY

8    DETERMINED TO BE A REASONABLE ROYALTY, I THINK IF YOU COMPUTE

9    THAT IT COMES OUT TO $1.32 PER SET TOP BOX.  AND I THINK IF

10   THAT WERE CONTINUED FORWARD, THAT WOULD GIVE RECOGNITION OF THE

11   MAGNITUDE OF A REASONABLE ROYALTY THAT THE JURY CONSIDERED.

12                THE COURT:  ALL RIGHT.  LET ME -- LET ME ASK A

13   COUPLE OF QUESTIONS HERE.  THERE SEEMS TO HAVE BEEN A

14   TREMENDOUS AMOUNT OF PROBLEM COMING UP WITH A TOTAL OF NUMBER

15   OF SET TOP BOXES.  IN FACT, YOU YOURSELF EVEN THOUGH YOU WERE

16   THEIR EXPERT WEREN'T GIVEN THE TOTAL NUMBER UNTIL JUST BEFORE

17   TRIAL.  PLAINTIFFS EVEN OBJECTED TO THE LAST MINUTE CHANGE

18   WHERE I THINK YOU ALMOST CLOSE TO DOUBLED YOUR ESTIMATE.  HOW

19   CAN I NOW ENTER SOME KIND OF A JUDGMENT SAYING -- IT DOESN'T

20   MATTER WHAT IT IS, A DOLLAR, $2, $5 PER SET TOP BOX WHEN THEY

21   CAN'T TELL ME OR TELL ANYBODY ELSE HOW MANY SET TOP BOXES THEY

22   HAVE OR ARE INSTALLING?

23                THE WITNESS:  YOUR HONOR, I THINK THE NEXT

24   WITNESS WILL GO INTO MORE DETAIL, BUT WHAT HAS HAPPENED IS --

25                THE COURT:  ALL RIGHT.  IS YOUR NEXT WITNESS THE

```
 1   ONE THAT'S GOING TO KNOW --

 2                 MR. SAVIKAS:  HE'LL KNOW ABOUT THE FUTURE, BUT

 3   MR. DONALDSON CAN EXPLAIN WHAT THE PROBLEM WAS IN THE

 4   CALCULATION.

 5                 THE COURT:  WELL, I'M NOT WORRIED ABOUT THE PAST

 6   RIGHT NOW.  THE JURY HAS DONE THAT.  I'M WONDERING ABOUT THE

 7   FUTURE AND THIS PROBLEM WAS SUCH A BIG PROBLEM IN THE PAST,

 8   WHAT CONFIDENCE CAN I HAVE IT WON'T BE A BIG PROBLEM IN THE

 9   FUTURE.

10                 MR. SAVIKAS:  ALL RIGHT.

11                 THE COURT:  GO AHEAD.  AND IF YOU'VE GOT ANOTHER

12   WITNESS WHO REALLY KNOWS THAT, THERE'S NO POINT IN WASTING -- I

13   MEAN, THIS WITNESS'S TIME ON THAT.

14                 THE WITNESS:  I CAN JUST COMMENT VERY BRIEFLY,

15   AND THE WITNESS CAN GO INTO MORE DETAIL IS THAT DIRECTV HAS

16   CHANGED THE WAY THAT IT PURCHASES SET TOP BOX.  IT HAS A DIRECT

17   RELATIONSHIP NOW WITH ALL THE SET TOP BOX MANUFACTURERS WHERE

18   IT BUYS THE COMPLETE OUTPUT FOR DIRECTV USE.  AND BECAUSE OF

19   THAT, THEY NOW HAVE COMPLETE CONTROL OVER THE SET TOP BOXES,

20   AND IT'S A VERY EASY STRAIGHTFORWARD CALCULATION.  THEY KEEP

21   TRACK OF THIS, AND THE NUMBERS ARE VERY READILY AVAILABLE.

22                 THE COURT:  ALL RIGHT.

23   Q.   (BY MR. SAVIKAS)  THIS $1.32 PER SET TOP BOX, HOW DOES

24   THAT COMPARE WITH THE RANGE OF ROYALTIES THAT YOU TESTIFIED

25   ABOUT AT TRIAL?
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

55

1  A.    WELL, IT FALLS WITHIN A CLUSTER.  I CONSIDERED A NUMBER OF

2  THINGS LOOKING AT RELEVANT LICENSES AT OR ABOUT THE TIME OF THE

3  HYPOTHETICAL NEGOTIATIONS.  AND THEY RANGE FROM LIKE TEN CENTS

4  TO 12 CENTS PER SET TOP BOX PER UNIT UP TO, YOU KNOW, THE IMPEG

5  LICENSES WHICH WERE 2.50 TO $4.  AND THEY WERE $4 AND THEN THEY

6  DECREASED TO 2.50.  THEN SOME OF THE STARSIGHT LICENSES FOR SET

7  TOP BOXES WERE IN THE RANGE OF 3.50 TO 5.50.

8               THE COURT:  HOLD ON.

9  A.    $1.32 --

10              THE COURT:  HOLD ON.  HOLD ON.  YOU SAID

11  STARSIGHT?

12              THE WITNESS:  STARSIGHT, YES.

13              THE COURT:  AND REFRESH MY MEMORY HOW

14  STARSIGHT -- ISN'T THAT TECHNOLOGY LICENSED BY DIRECTV?

15              THE WITNESS:  IT'S -- LICENSES WERE WITH HUGHES

16  NETWORK SYSTEM, ONE OF THE OTHER DEFENDANTS.

17              THE COURT:  AND WHAT WAS THE RANGE OF THAT?

18              THE WITNESS:  IT WENT FROM 3.50 TO 5.50 PER SET

19  TOP BOX; AND STARSIGHT HAD, I THINK, SEVEN PATENTS THAT RELATED

20  TO ELECTRONIC PROGRAM GUIDES.

21              THE COURT:  ALL RIGHT.  GO AHEAD.

22  Q.    (BY MR. SAVIKAS)  ARE YOU AWARE OF ANY LICENSE IN THE

23  SATELLITE TELEVISION BUSINESS THAT IS BASED ON A PERCENTAGE OF

24  GROSS REVENUE?

25  A.    NO, SIR, I AM NOT.

1   Q.    AND AS A PARADIGM FOR GOING FORWARD, WOULD IT BE

2   REASONABLE TO HAVE THE COURT -- I'M NOT -- HAVE THE COMPULSORY

3   LICENSE BASED ON A PERCENTAGE OF GROSS REVENUE?

4   A.    NO, I DON'T THINK IT WOULD BE BECAUSE INDUSTRY PRACTICE

5   DOESN'T REFLECT THAT.  I MEAN, IT'S -- SO I THINK IT WOULD NOT

6   BE APPROPRIATE.

7   Q.    ARE YOU IN AGREEMENT WITH MR. NAPPER'S OPINION THAT IT

8   WOULD NOW BE PROPER TO HAVE THE COURT CONDUCT THE NEW

9   HYPOTHETICAL NEGOTIATION AS OF JUNE 2006?

10   A.    NO, I'M NOT.

11   Q.    WHY NOT?

12   A.    WELL, FOR -- FOR A NUMBER OF REASONS.  FIRST OF ALL, ALL

13   THE -- WHAT I THINK THE RELEVANT ISSUES WERE, IF YOU LOOK AT --

14   WERE CONSIDERED AT THE ORIGINAL, WERE CONSIDERED IN MY ANALYSIS

15   AND ALSO IN MR. NAPPER'S ANALYSIS, WILL YOU CONSIDER WERE THE

16   HYPOTHETICAL NEGOTIATIONS, THE PATENTS VALID, PATENTS

17   INFRINGED?  YOU LOOK AT WHETHER THE LICENSE IS EXCLUSIVE OR

18   NONEXCLUSIVE.  YOU LOOK AT THE LIFE OF THE PATENT.  YOU LOOK AT

19   THE IMPORTANCE OF THE TECHNOLOGY.  AND YOU LOOK AT ALL THESE

20   THINGS AND DETERMINE WHAT IS A REASONABLE ROYALTY FOR THE LIFE

21   OF THE PATENT IF THE PARTIES ACTUALLY SIT DOWN AND NEGOTIATED.

22   NONE OF THAT HAS CHANGED, SO I DON'T THINK YOU NEED -- I DON'T

23   SEE WHAT WOULD BE ADDED BY A NEW HYPOTHETICAL NEGOTIATIONS.

24   AND THE DIFFICULTY WITH NEW HYPOTHETICAL NEGOTIATIONS, IF YOU

25   DID IT IN 2006, YOU KNOW, ONE OF THE GROUND RULES FOR

1    HYPOTHETICAL NEGOTIATIONS IS THAT BB4 INFRINGEMENT COMMENCES.

2    THAT'S TO DO AWAY WITH THIS DISTORTION OF WHAT A FAIR VALUE FOR

3    THE PATENT WOULD BE BECAUSE OF THE THREAT OF LITIGATION.   AND

4    THAT'S EXACTLY WHAT WOULD HAPPEN IF YOU HAD NEW HYPOTHETICAL

5    NEGOTIATIONS NOW.

6    Q.    DO YOU AGREE THAT FINISAR'S ABILITY, AS THEY SAY IN THEIR

7    BRIEF, TO GRANT EXCLUSIVE LICENSES WOULD BE DESTROYED IF THE

8    COURT DOES NOT ORDER AN INJUNCTION?

9    A.    NOT AT ALL.

10   Q.    AND WHY NOT, SIR?

11   A.    BECAUSE IT'S VERY COMMON IN LICENSING -- AND I'VE BEEN

12   ENGAGED IN A NUMBER OF LICENSES WHERE THERE IS A PREEXISTING

13   LICENSE AND A COMPANY NOW -- A PATENT OWNER NOW CHOOSES IT --

14   CHOOSES TO LICENSE IT AND WILL GRANT AN EXCLUSIVE LICENSE TO

15   SOMEONE ELSE SUBJECT TO THE EXISTING LICENSE.   SO, FOR EXAMPLE,

16   FINISAR COULD GRANT AN EXCLUSIVE LICENSE TO STARSIGHT SATELLITE

17   OR SIRIUS SATELLITE FOR RADIO SATELLITE BROADCASTING SUBJECT TO

18   WHATEVER RIGHTS DIRECTV MIGHT HAVE.   BUT IT DOESN'T -- THAT

19   DOES NOT DESTROY YOUR RIGHT TO GRANT SUBSEQUENT EXCLUSIVE

20   LICENSES.   IT JUST HAS TO SUBJECT TO.

21   Q.    HAVE YOU EVER BEEN INVOLVED IN A COURT CASE IN WHICH YOU

22   TESTIFIED AS TO A LUMP SUM ROYALTY FOR THE ENTIRE LIFE OF THE

23   PATENT WHICH WAS THEN ALLOCATED BY THE COURT?

24   A.    WELL, YES, THE -- UNDER APPROPRIATE CIRCUMSTANCES, YOU MAY

25   COME UP WITH A LUMP SUM.   IN A HYPOTHETICAL NEGOTIATION, YOU

1   MAY DETERMINE THAT A REASONABLE ROYALTY IS A LUMP SUM FOR THE

2   LIFE OF THE PATENT.  AND THEN TO -- IT IS NECESSARY TO ALLOCATE

3   THAT LUMP SUM BACK TO THE DATE OF THE TRIAL.  AND I'VE DONE

4   THAT ON MORE THAN ONE OCCASION, AND THAT WAS THE APPROPRIATE

5   ANALYSIS.

6   Q.   OKAY.  DO YOU AGREE WITH FINISAR'S POSITION AS STATED IN

7   THEIR BRIEF THAT THEY WOULD NOT BE ABLE TO SELL ITS PATENT

8   UNLESS THE COURT ORDERS AN INJUNCTION?

9   A.   NO, I DON'T SEE HOW THAT CHANGES AT ALL.  THEY COULD --

10  THEY COULD SELL IT TO ANYONE WHO MIGHT HAVE WANT TO BUY IT.  IT

11  WOULD STILL BE SUBJECT TO WHATEVER ENCUMBRANCES THERE ARE,

12  WHICH MIGHT BE A LICENSE TO DIRECTV.  BUT THEY COULD STILL SELL

13  IT.

14  Q.   DO YOU AGREE THAT ANY COURT ORDERED ROYALTY WOULD HAVE AN

15  IMPACT ON FINISAR'S LICENSING EFFORTS?

16  A.   YES.  IT WILL HAVE AN EFFECT.  IT'S GOT TO HAVE AN EFFECT.

17  THE VERY FACT -- WHETHER THERE'S A COMPULSORY LICENSE OR NOT,

18  THE VERY FACT THAT THE JURY DECIDED WHAT A REASONABLE ROYALTY

19  WOULD BE, AND THAT'S PUBLIC INFORMATION, THAT'S GOING TO HAVE

20  AN EFFECT ON WHAT HAPPENS IN THE FUTURE.  I MEAN, THAT'S THE

21  WAY IT IS IN REAL LIFE.

22  Q.   YOU HEARD MR. NAPPER TESTIFY ABOUT THE GEM STAR LICENSE.

23  DOES THE GEM STAR LICENSE COMPORT WITH YOUR TESTIMONY ABOUT THE

24  INDUSTRY'S STANDARD IN THIS CASE?

25  A.   NOT REALLY.  I THINK GEM STAR IS SOMEWHAT OF AN ANOMALY

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
59

1   FOR A NUMBER OF REASONS.

2   Q.    WHAT ARE THE REASONS?

3   A.    WELL, ONE THING, IT'S NOT A PATENT ONLY LICENSE.   THERE

4   ARE OTHER -- OTHER RIGHTS THAT ARE INCLUDED IN THE GEM STAR,

5   SOME SERVICES, SOME RIGHTS TO DATA, TRADEMARKS, THINGS OF THAT

6   NATURE.   ANOTHER THING IS THE GEM STAR PATENT PORTFOLIO IS A

7   COMBINATION OF THREE PATENT PORTFOLIOS.   YOU HAVE GEM STAR, YOU

8   HAVE TV GUIDE, AND YOU HAVE STARSIGHT.   GEM STAR PURCHASED TV

9   GUIDE AND STARSIGHT.   AND ALL OF THOSE PATENTS TOGETHER,

10  THERE'S OVER 200 PATENTS THAT DIRECTLY RELATE TO ELECTRONIC

11  PROGRAM GUIDES.   SO JUST A NUMBER OF PATENTS AND THE FACT THAT

12  THREE PATENT PORTFOLIOS WERE INVOLVED.   ALSO, AT THE TIME OF

13  THE GEM STAR LICENSE, YOU KNOW, GEM STAR AND DIRECTV WERE

14  BASICALLY SISTER COMPANIES.   NEWS CORP OWNED 80 PERCENT OF GEM

15  STAR AND THEN PURCHASED DIRECTV, SO THAT CERTAINLY FIGURED IN

16  THE OVERALL LICENSING STRUCTURE.

17  Q.    IS IT STILL YOUR OPINION THAT THE APPROPRIATE MODEL IN THE

18  SATELLITE INDUSTRY AND CONSUMER ELECTRONICS INDUSTRY IS A PER

19  SET TOP BOX MODEL?

20  A.    YES, SIR, IT IS.

21  Q.    DOES THE IMPEG ARRANGEMENT CONTINUE TO REPRESENT THE

22  INDUSTRY PRACTICE?

23  A.    YES, IT IS A VERY GOOD EXAMPLE.

24  Q.    AND IS YOUR ANALYSIS BASED ONLY THE IMPEG LICENSE?

25  A.    NO.   THERE ARE -- THERE ARE OTHER LICENSING ARRANGEMENTS

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
60

1   THAT, YOU KNOW, I THINK I DISCUSSED IN MY TESTIMONY.  LIKE

2   DOLBY, LIKE STARSIGHT, LIKE THOMPSON AND HNS, SET TOP BOX

3   LICENSE AGREEMENTS, THINGS OF THIS NATURE.

4   Q.   OKAY.  AND FINALLY WITH RESPECT TO YOUR DAMAGE REPORT

5   WHERE WE HAD SOME DIFFICULTY, WAS THAT DIFFICULTY CAUSED BY

6   TRYING TO ASCERTAIN HOW MANY SET TOP BOXES HAD BEEN ACTIVATED

7   IN THE PAST?

8   A.   YES.  THAT WAS THE -- THAT WAS THE DIFFICULTY.

9   Q.   OKAY.

10              MR. SAVIKAS:  NOTHING FURTHER.  THANK YOU.

11              THE COURT:  LET ME -- DO YOU RECALL THE RANGE

12  FOR THE DOLBY SET OF PATENTS?

13              THE WITNESS:  YES, SIR.  IT WENT FROM 12 CENTS

14  PER UNIT UP TO $1.65, AND IT WAS BASED ON VOLUME.  THE 12 CENTS

15  WAS -- I FORGET HOW MANY, MAYBE OVER THREE MILLION UNITS.  YOU

16  GOT A VOLUME DISCOUNT THEN, THAT WENT ALL THE WAY DOWN TO 12

17  CENTS.

18              THE COURT:  AND YOU SAID THE THOMPSON?

19              THE WITNESS:  THOMPSON, I BELIEVE, WAS $2.50 A

20  SET TOP BOX AT THAT TIME.

21              THE COURT:  GEM STAR, AS I UNDERSTAND, IS THAT

22  THE 20 CENTS PER SUBSCRIBER PER MONTH?

23              THE WITNESS:  THAT IS CORRECT; YES, SIR.

24              THE COURT:  ALL RIGHT.  THANK YOU.  DO YOU HAVE

25  ANY QUESTIONS?

```
 1              MR. VEDERKA:  I DO, YOUR HONOR.

 2            C R O S S   E X A M I N A T I O N

 3   BY MR. VEVERKA:

 4   Q.    GOOD AFTERNOON, MR. -- WELL, I GUESS IT'S STILL MORNING,

 5   MR. DONALDSON.

 6   A.    GOOD MORNING.

 7   Q.    AGAIN, THIS IS C. J. VEVERKA ON BEHALF OF FINISAR.

 8   MR. DONALDSON, IS IT YOUR UNDERSTANDING THAT DIRECTV HAS

 9   SEVERAL NON-INFRINGING ALTERNATIVES IT COULD QUICKLY PUT INTO

10   PLACE IF IT WANTED TO OR NEEDED TO?

11   A.    MY ANALYSIS AT THE TIME OF HYPOTHETICAL NEGOTIATIONS IN

12   1995, AND IN 1995 THEY CERTAINLY DID.  I HAVE NOT ANALYZED WHAT

13   WOULD HAPPEN TODAY.

14   Q.    SO YOU -- YOU CAN'T TESTIFY ONE WAY OR THE OTHER IF THERE

15   EXISTS SUBSTANTIAL NON-INFRINGING ALTERNATIVES TO DIRECTV

16   TODAY?

17   A.    I HAVE NOT ANALYZED THAT; NO, SIR.

18   Q.    I BELIEVE YOU TESTIFIED THAT THE -- WELL, LET ME ASK YOU

19   THIS QUESTION:  YOU HAVE NOT CONTACTED ANYONE FROM THE JURY,

20   HAVE YOU?

21   A.    NO, SIR.

22   Q.    AND YOU'RE NOT AWARE OF ANYONE FROM DIRECTV OR DIRECTV'S

23   COUNSEL CONTACTING ANYONE FROM THE JURY?

24   A.    NO, SIR.

25   Q.    AND SO YOU REALLY DON'T KNOW WHAT METHODOLOGY THAT THE
```

1    JURY USED IN DETERMINING ITS ROYALTY -- ITS DAMAGE AMOUNT,

2    CORRECT?

3    A.   I CANNOT KNOW PRECISELY.

4    Q.   AND YOU ALSO DON'T KNOW THAT -- THAT MEANS YOU DON'T KNOW

5    THAT THE JURY ADOPTED YOUR PER SET TOP BOX METHODOLOGY; ISN'T

6    THAT ALSO CORRECT?

7    A.   I DO NOT KNOW THAT FOR ABSOLUTE CERTAINTY; IT'S CERTAINLY

8    LIKELY.

9    Q.   YOU BELIEVE IT'S CERTAINLY LIKELY.  YOU'RE BASING THAT ON

10   YOUR SPECULATION, THOUGH, BECAUSE YOU DON'T KNOW WHAT HAPPENED

11   IN THIS JURY ROOM; IS THAT CORRECT?

12   A.   NO.  WHAT I'M BASING IT ON IS THE CLUSTER OF ROYALTY RATES

13   I TALKED ABOUT AND THE $1.32 FALLING RIGHT IN THE MIDDLE OF

14   THAT MAKES IT HIGHLY LIKELY THAT THEY USED THAT APPROACH.

15   Q.   YOU'RE SAYING YOU HAVE A GUESS, BUT IT'S EDUCATED?

16   A.   I THINK IT'S EDUCATED; YES, SIR.

17   Q.   BUT IT'S STILL A GUESS, ISN'T IT?

18   A.   I'M NOT GOING TO ARGUE ABOUT SEMANTICS.

19   Q.   NOW YOU ARGUED ABOUT A CLUSTER OF RANGES FOR SET TOP BOX

20   AGREEMENTS THAT YOU -- THAT YOU CONSIDERED OR TESTIFIED ABOUT.

21   I BELIEVE THAT YOU STATED THERE WAS A RANGE OF TEN CENTS TO

22   $2.50; IS THAT RIGHT?

23   A.   UP TO $5.50.

24   Q.   UP TO $5.50.  BUT IT WASN'T YOUR -- YOU TESTIFIED TO THE

25   JURY THAT THE APPROPRIATE AMOUNT WOULD BE 30 SOME CENTS PER SET

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

63

1  TOP BOX, DIDN'T YOU?

2  A.   THAT IS CORRECT; YES, SIR.

3  Q.   YOU DIDN'T TELL THE JURY I BELIEVE THAT YOU SHOULD

4  CONSIDER THIS RANGE OF TEN CENTS TO $5 PER SET TOP BOX AND

5  FIGURE OUT A CALCULATION OF DAMAGES WITHIN THAT RANGE ON YOUR

6  OWN, DID YOU?

7  A.   NO.  I TESTIFIED TO THE JURY THE DIFFERENT RATES AND SAID

8  IT WAS MY CONCLUSION IT SHOULD BE 30 CENTS.

9  Q.   RIGHT.  SO YOU DIDN'T GIVE THE JURY A RANGE OF SET TOP

10  BOX -- LUMP SUM PER SET TOP BOX AMOUNTS TO CHOOSE FROM; YOU

11  TOLD THEM WHAT YOU THOUGHT THE RANGE -- WHAT THE PRECISE NUMBER

12  SHOULD HAVE BEEN?

13  A.   YES.  BECAUSE IN THE RANGE THAT I LOOKED AT, YOU THEN HAVE

14  TO LOOK AT THE GEORGIA PACIFIC FACTORS, THE AVAILABILITY OF

15  NONINFRINGING ALTERNATIVES TO ADJUST THAT RANGE, AND I DID ALL

16  THAT ANALYSIS AND DETERMINED IT WOULD BE 30 CENTS.

17  Q.   I JUST WANT CLARIFY THAT YOU DIDN'T PROPOSE THAT RANGE TO

18  THE JURY FOR THEM TO USE THEMSELVES TO MAKE THEIR OWN

19  CALCULATION?

20  A.   NO.  I DID DISCUSS THE DIFFERENT ROYALTY RATES, HOWEVER.

21  Q.   NOW AT TRIAL, MR. DONALDSON, I BELIEVE YOU ACKNOWLEDGED

22  THAT SOME OF THE AGREEMENTS YOU CONSIDERED IN MAKING YOUR

23  CALCULATIONS WERE ENTERED INTO BY DIRECTV AND SOME OTHERS LIKE

24  HUGHES NETWORK SYSTEM; ISN'T THAT CORRECT?

25  A.   THAT IS CORRECT.

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

64

1  Q.    AND, FOR EXAMPLE, ONE OF THE AGREEMENTS ENTERED INTO BY

2  DIRECTV WAS THE MACROVISION AGREEMENT; ISN'T THAT ALSO CORRECT?

3  A.    THAT IS CORRECT.

4  Q.    AND THAT AGREEMENT WAS NOT ENTERED INTO BY HUGHES NETWORK

5  SYSTEMS?

6  A.    THAT IS ALSO CORRECT.

7  Q.    AND I BELIEVE THAT YOU ALSO CHARACTERIZED THE MACROVISION

8  AGREEMENT AS INCLUDING A RUNNING ROYALTY STRUCTURE; THAT'S

9  CORRECT, ISN'T IT?

10  A.    YES.   THAT'S CORRECT.

11  Q.    NOW, ANOTHER AGREEMENT THAT YOU HIGHLIGHTED WE'VE TALKED

12  ABOUT IT TODAY WAS THE IMPEG AGREEMENT.

13            THE COURT:  AND WHAT WAS THE MACROVISION RUNNING

14  ROYALTY AGREEMENT RATE?  I'M SURE YOU'RE GOING TO FOLLOW UP,

15  COUNSEL, BUT I'D LIKE TO WRITE IT DOWN NOW.

16            THE WITNESS:  IT'S -- THEY HAVE THREE DIFFERENT

17  RANGES DEPENDING UPON WHETHER ITS CONTENTS PROTECTION FOR PAY

18  PER VIEW AND IT WAS JUST BASIC, IT WAS 0.75 PERCENT OF WHAT

19  DIRECTV CHARGED TO A CUSTOMER FOR THAT PAY PER VIEW EVENT.

20  THEY WERE --

21            THE COURT:  ZERO WHAT?

22            THE WITNESS:  0.75 PERCENT, SO LESS THAN ONE

23  PERCENT.  SO, IF THEY PAID $3, IT WOULD BE LESS THAN ONE

24  PERCENT OF THE $3 WOULD BE THE ROYALTY RATE.  AND THEN THEY HAD

25  TWO OTHER -- THREE OTHER CATEGORIES, TWO OF THEM THE SAME.

```
1   THEY HAD AN EARLY VIEW WINDOW, SOMETHING TO THAT EFFECT, WHERE

2   YOU GOT AN EARLY RELEASE OF A MOVIE.  THEN THE RATE WOULD BE, I

3   BELIEVE, IT WAS ONE PERCENT OF WHAT THE CUSTOMER PAID OR THREE

4   PERCENT OF ROUGHLY THE GROSS PROFITS.  IT WAS WHAT THE CUSTOMER

5   PAID, SUBTRACT WHAT DIRECTV HAD TO PAY TO GET THAT PROGRAMMING.

6   AND THEN IT WOULD BE LIKE THREE PERCENT OF THAT; OR FOR REAL,

7   REAL EARLY REVIEW, IT WOULD BE FOUR PERCENT OF THAT BASICALLY

8   GROSS PROFIT.

9                THE COURT:  I RECALL THE TESTIMONY NOW.  GO

10  AHEAD.

11  Q.   (BY MR. VEVERKA)  NOW WITH RESPECT TO THE IMPEG AGREEMENT,

12  THAT WAS ENTERED INTO BY HUGHES NETWORK SYSTEMS, CORRECT?

13  A.   THAT IS CORRECT.

14  Q.   I BELIEVE YOU TESTIFIED THAT DIRECTV DID NOT ENTER INTO

15  THAT AGREEMENT?

16  A.   THAT IS CORRECT.

17  Q.   AND I BELIEVE THAT YOU WENT ON RECORD BOTH AT TRIAL AND IN

18  YOUR DAMAGE REPORT ARTICULATING THAT BOTH DIRECTV AND HUGHES

19  NETWORK SYSTEMS HAS ENTIRELY DIFFERENT BUSINESS MODELS?

20  A.   THEY HAD DIFFERENT BUSINESS MODELS.

21  Q.   HUGHES NETWORK SYSTEMS BEING A HARDWARE MANUFACTURER,

22  CORRECT?

23  A.   THAT WOULD BE ONE OF THE DIFFERENCES, YES.

24  Q.   MR. DONALDSON, YOU'RE FAMILIAR WITH THE 25 PERCENT RULE OR

25  THE RULE OF THUMB METHODOLOGY COMMONLY USED IN PATENT DAMAGES
```

```
 1   CALCULATIONS, AREN'T YOU?

 2   A.   I'M AWARE OF THE 25 PERCENT RULE.  HOW COMMONLY IT'S USED

 3   IS UP IN THE AIR.

 4   Q.   I BELIEVE IN YOUR EXPERT REPORT YOU DESCRIBED IT AS A RULE

 5   OR METHODOLOGY COMMONLY USED?

 6   A.   OKAY.

 7   Q.   YOU WOULD AGREE WITH THAT?  THAT'S FAIR?

 8   A.   THAT'S FAIR.

 9   Q.   OKAY.  AND YOU ALSO STATED IN YOUR EXPERT REPORT THAT THE

10   RULE OR METHODOLOGY IS MOST PROPERLY APPLIED TO PROFIT FROM

11   OPERATIONS, PARTICULARLY IN HIGH TECH INDUSTRIES, SUCH AS DBS;

12   IS THAT ALSO CORRECT?

13   A.   I BELIEVE SO.

14   Q.   AND WHEN YOU SAY PROFITS OF OPERATIONS, YOU MEAN

15   OPERATION -- THAT'S CALLED OPERATING PROFITS; IT'S ANOTHER WAY

16   OF SAYING OPERATING PROFITS, ISN'T IT?

17   A.   IT IS.

18   Q.   WHAT IS YOUR UNDERSTANDING THE DIFFERENCE BETWEEN

19   OPERATING PROFITS AND, SAY, OTHER TYPES OF PROFITS?

20   A.   WELL, THERE'S A NUMBER OF MEASURES.  THE MOST COMMON WOULD

21   BE GROSS PROFITS WHICH IS JUST REVENUES -- BASICALLY REVENUES

22   MINUS COST OF GOODS.  THEN YOU HAVE PROFIT FROM OPERATIONS,

23   WHICH DEDUCTS ADDITIONAL EXPENSES, OVERHEAD, R&D, THINGS OF

24   THAT NATURE.  THEN YOU HAVE NET PROFIT, WHICH IS STILL A

25   FURTHER -- YOU HAVE NET PROFIT BEFORE TAX, NET PROFIT AFTER
```

1   TAX, SO THE VARIOUS MEASURES.

2   Q.    OKAY.   AND UNDER THE -- UNDER THE 25 PERCENT RULE OR THE

3   RULE OF THUMB, A LICENSEE PAYS 25 PERCENT OF ITS OPERATIONAL

4   PROFITS TO THE PATENTEE, CORRECT?

5   A.    WELL, THAT'S NOT WHAT THE 25 PERCENT RULE SAYS.   IT'S A

6   TOOL THAT YOU MIGHT USE AS A STARTING POINT.   IT DOESN'T SAY

7   DIRECTLY YOU APPLY THE 25 PERCENT RULE, AND THAT'S IT.   IT'S A

8   STARTING POINT.   IT'S A TOOL.   BUT IT DOES RELATE TO PROFIT

9   FROM OPERATIONS AS THE BEST MEASURE.

10  Q.    25 PERCENT AND OPERATIONAL PROFITS IS THE STARTING POINT

11  UNDER THAT RULE, CORRECT?

12  A.    THAT IS -- THAT'S THE MOST COMMONLY USED.

13  Q.    AND THAT -- AND THAT IS BASED ON REVENUE; THAT'S NOT ON A

14  LUMP SUM BASIS, CORRECT, WHEN YOU'RE TALKING IN TERMS OF

15  OPERATIONAL PROFIT?

16  A.    IT'S BASED UPON THE AMOUNT OF OPERATIONAL PROFIT.

17  Q.    OKAY.  ARE YOU AWARE THAT DIRECTV FORECASTS OPERATING

18  PROFIT FOR 2006 TO 2012 RANGING FROM 5.3 PERCENT TO 11.7

19  PERCENT?

20  A.    I THINK THAT MIGHT BE CORRECT IN ONE OF THE FORECASTS.

21  Q.    OKAY.

22              THE COURT:   WHAT WERE THOSE NUMBERS AGAIN?

23              MR. VEVERKA:   FROM 2006 TO 2012 OPERATING

24  PROFITS ARE FORECAST AS RANGING FROM 5.3 PERCENT TO 11.7

25  PERCENT.

1    THANK YOU, MR. DONALDSON.  THAT'S ALL THE

2  QUESTIONS I HAVE.

3    MR. SAVIKAS:  JUST ONE OR TWO QUESTIONS, YOUR

4  HONOR.

5    **R E D I R E C T   E X A M I N A T I O N**

6  BY MR. SAVIKAS:

7  Q.   MR. DONALDSON, MR. VEVERKA ASKED YOU ABOUT THE

8  IMPEG-DIRECTV RELATIONSHIP.  UNDER THIS NEW PARADIGM WHERE

9  DIRECTV BUYS ALL OF THE OUTPUT FROM THE BOX MANUFACTURERS, HOW

10  IS THE LICENSING IN INTELLECTUAL PROPERTY HANDLED?

11  A.   DIRECTV SPECIFIES TO THE SET TOP MANUFACTURERS THOMPSON,

12  SONY, WHOMEVER THEY ARE, WHAT THAT SET TOP BOX HAS TO INCLUDE,

13  THE SPECIFICATION.  THEY ALSO SPECIFY THAT THEY WILL OBTAIN THE

14  LICENSES NECESSARY TO OPERATE, INCLUDING IMPEG, DOLBY, THINGS

15  OF THIS NATURE.  AND THOSE -- THE COST OF THOSE LICENSES ARE --

16  ARE PART OF THE BILL AND MATERIALS FOR THOSE SET TOP BOXES THAT

17  DIRECTV THEN PAYS FOR.  SO DIRECTV DIRECTS THEM TO OBTAIN THOSE

18  LICENSES ON THAT BEHALF OF DIRECTV, AND THEN THEY PAY THE SET

19  TOP BOX.  THEY REIMBURSE THEM FOR THEM BASICALLY.

20    MR. SAVIKAS:  ALL RIGHT.  THANK YOU, SIR.

21  NOTHING FURTHER.

22    THE COURT:  ANYTHING FURTHER?  ALL RIGHT.  YOU

23  MAY STEP DOWN.

24    THE WITNESS:  THANK YOU.

25    MR. SAVIKAS:  WE CALL THOMAS MCGEORGE.

THOMAS MCGEORGE,

HAVING BEEN FIRST DULY SWORN, TESTIFIED AS FOLLOWS:

R E D I R E C T   E X A M I N A T I O N

BY MR. SAVIKAS:

Q.   WOULD YOU STATE YOUR FULL NAME FOR THE RECORD, SIR.

A.   MY NAME IS THOMAS MCGEORGE.

Q.   AND ARE YOU EMPLOYED BY DIRECTV, INC.?

A.   YES, I AM.

Q.   AND WHAT IS YOUR CURRENT TITLE?

A.   I'M CURRENTLY VICE PRESIDENT OF SUPPLY CHAIN MANAGEMENT

FOR DIRECTV.

Q.   AND WHAT ARE YOUR PRESENT RESPONSIBILITIES?

A.   MY PRESENT RESPONSIBILITY IS TO PLAN AND PURCHASE FOR

DIRECTV ALL THEIR EQUIPMENT NEEDS.

Q.   AS OF TODAY, WOULD YOU DESCRIBE HOW DIRECTV BUYS AND

DISTRIBUTES ITS SET TOP BOXES?

A.   SURE.  WE PURCHASE EQUIPMENT FROM SET TOP BOXES FROM SEVEN

TO EIGHT DIFFERENT MANUFACTURERS DIRECTLY.  THEY MANUFACTURE

AND SELL DIRECTV BRANDED BOXES TO US.  WE MOVE THOSE BOXES INTO

OUR WAREHOUSING SYSTEM.  AND THEN SUBSEQUENTLY WE REDISTRIBUTE

THOSE BOXES TO OUR INSTALLERS FOR CUSTOMER INSTALLATION.

Q.   DO THE MANUFACTURERS SELL THEIR DIRECTV BOXES TO ANYBODY

ELSE?

A.   NO, THEY DON'T.  THEY'RE EXCLUSIVE TO US.

Q.   IF I WERE TO GO TO BEST BUY OR CIRCUIT CITY AND BUY A

1  DIRECTV BOX, WHERE WOULD THAT BOX COME FROM?

2  A.    THAT BOX WOULD COME THROUGH THE SUPPLY CHAIN ORGANIZATION

3  AT DIRECTV.   WE WOULD DISTRIBUTE THAT BOX FROM OUR WAREHOUSE TO

4  A BEST BUY OR CIRCUIT CITY.

5  Q.    HOW MANY WAREHOUSES DO YOU HAVE?

6  A.    WE CURRENTLY HAVE THREE WAREHOUSES.

7  Q.    AND DO THE SET TOP BOX MANUFACTURERS EVER DROP SHIP ANY

8  DIRECTV BOXES?

9  A.    95 PERCENT OF THE BOXES THAT WE BUY COME THROUGH OUR

10  WAREHOUSING SYSTEM.   FIVE PERCENT -- ROUGHLY FIVE PERCENT OF

11  THE BOXES GO DIRECT FROM THE MANUFACTURER TO OUR CUSTOMER.

12  ELECTRONICALLY WE HANDLE THAT TRANSACTION THROUGH OUR

13  WAREHOUSE.   WE JUST DON'T PHYSICALLY HANDLE THE SET TOP BOX

14  MOVING THROUGH OUR WAREHOUSE.

15  Q.    NOW, HOW LONG HAS DIRECTV HAD IN PLACE THIS METHOD OF

16  PURCHASING ITS BOXES?

17  A.    WE TOOK OVER FULL FULFILLMENT, FULL ACQUISITION AND

18  DISTRIBUTION EARLY 2005.

19  Q.    AND BEFORE THAT DATE, HOW WERE THE SET TOP BOXES

20  DISTRIBUTED?

21  A.    ROUGHLY BEFORE 2005 ROUGHLY 20 TO 30 PERCENT OF THE SET

22  TOP BOXES WERE PURCHASED BY DIRECTV AND REDISTRIBUTED BY

23  DIRECTV.   THE OTHER 70 TO 80 PERCENT WERE MANUFACTURED BY THE

24  MANUFACTURERS, AND THEY HANDLED THE RELATIONSHIP WITH THE

25  CUSTOMER, BOTH FROM DISTRIBUTING THE EQUIPMENT AS WELL AS

1  TAKING CALLS IF THEY HAD A PIECE -- IF THEY HAD A PROBLEM WITH

2  THE EQUIPMENT.

3  Q.    AND THAT SYSTEM IS TOTALLY CHANGED TODAY?

4  A.    THAT'S CORRECT.

5  Q.    WHAT KIND OF MANAGEMENT OR INVENTORY SYSTEM DO YOU EMPLOY?

6  A.    WE USE A -- SAP SYSTEM, R3, THEY CALL IT.  IT'S AN

7  INVENTORY TRACKING SYSTEM.  WE USE THAT SYSTEM AS OUR INVENTORY

8  OF RECORD.

9  Q.    AND DOES IT KEEP TRACK OF ALL OF YOUR INVENTORY WHETHER IT

10  COMES DIRECTLY TO YOU OR IS DROP SHIPPED?

11  A.    ALL INVENTORY THAT WE MANAGE BOTH WITHIN OUR WAREHOUSE AS

12  WELL AS DROP SHIP IS MANAGED THROUGH OUR SAP R3 SYSTEM.

13  Q.    IF THE COURT WERE TO REQUIRE DIRECTV TO PROVIDE FINISAR

14  AND THIS COURT WITH MONTHLY OR QUARTERLY REPORTS OF ALL SET TOP

15  BOXES SHIPPED BY DIRECTV OR DROP SHIPPED BY MANUFACTURERS,

16  COULD YOU PROVIDE SUCH REPORTS?

17  A.    YES, WE COULD.

18  Q.    AND COULD YOU PROVIDE SUCH REPORTS QUICKLY?

19  A.    YES, WE COULD.

20  Q.    AND WOULD THOSE REPORTS BE ACCURATE?

21  A.    YES, THEY WOULD BE.

22  Q.    WHY DO YOU SAY THEY WOULD BE ACCURATE?

23  A.    WELL, WE TAKE A LOT OF -- WE PAY A LOT OF ATTENTION TO THE

24  INTEGRITY OF THE INFORMATION AND OUR INVENTORY SYSTEM.  WE

25  ACTUALLY COUNT PARTS EVERY DAY AND RECONCILE DAILY TO INSURE

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

72

1    THAT THE INTEGRITY OF THE INFORMATION IS ACCURATE.

2    Q.   AND UNDER OATH YOU COULD CONFIRM THE ACCURACY OF YOUR

3    INVENTORY SYSTEM?

4    A.   YES, I CAN.

5             MR. SAVIKAS:   THANK YOU.   NOTHING FURTHER, YOUR

6    HONOR.

7             C R O S S   E X A M I N A T I O N

8    BY MR. ROBERTS:

9    Q.   CHARLES ROBERTS FOR FINISAR.   MR. MCGEORGE, IS IT YOUR

10   UNDERSTANDING THAT WHEN A NEW SUBSCRIBER SIGNS UP WITH DIRECTV,

11   HE GETS A FREE DISH AND A NUMBER OF SET TOP BOXES?

12   A.   THAT'S MY UNDERSTANDING.

13   Q.   AND IS IT ALSO YOUR UNDERSTANDING THAT THOSE -- THE

14   CURRENT SET TOP BOXES ONLY PERMIT THE USE OF ONE TELEVISION?

15   A.   PER BOX PER TV.

16   Q.   AND DOES DIRECTV STILL SELL SET TOP BOXES THAT DO NOT HAVE

17   A DIGITAL VIDEO RECORDER IN THEM?

18   A.   YES.

19   Q.   SO IT'S POSSIBLE TO GET A DVR SET TOP BOX OR JUST A PLAIN

20   SET TOP BOX?

21   A.   THAT IS CORRECT.

22   Q.   AND IS IT YOUR UNDERSTANDING THAT CURRENT SET TOP BOXES

23   EACH HAVE ONLY ONE SMART CARD?

24   A.   THAT'S CORRECT.

25   Q.   AND YOU'RE AWARE THAT SOME CURRENT SET TOP BOXES ALLOW

1  SIMULTANEOUS RECORDING OF A SHOW AND ALLOW YOU TO WATCH ANOTHER

2  SHOW ON TELEVISION; IS THAT CORRECT?

3  A.   YEAH.  I'M -- THAT IS REALLY NOT PART OF MY

4  RESPONSIBILITY.  MY RESPONSIBILITY IS REALLY THE MANAGEMENT OF

5  INVENTORY, NOT, YOU KNOW, THE FUNCTIONALITY OF THE BOX IN THE

6  HOME, SO...

7  Q.   SO DO YOU KNOW WHETHER IT'S POSSIBLE IN A DIRECTV SET TOP

8  BOX THAT HAS A DIGITAL VIDEO RECORDER IN IT TO BE WATCHING ONE

9  TV SHOW WHILE SIMULTANEOUSLY RECORDING ANOTHER ONE?

10  A.   FROM PERSONAL EXPERIENCE, YES.

11  Q.   AND THAT'S BECAUSE THAT SET TOP BOX HAS NOT ONE, BUT TWO

12  TUNERS IN IT; IS THAT RIGHT?

13  A.   THAT'S CORRECT.

14          THE CLERK:  MR. ROBERTS, YOUR TIME IS UP.

15          THE COURT:  I'M GOING TO ALLOW YOU TWO MORE

16  MINUTES TO HANDLE THE QUESTIONING.  BUT, AS I STATED AT THE

17  CLOSE OF THE JURY PORTION OF THE TRIAL, I WAS GOING TO ALLOW

18  EACH SIDE AN HOUR, SO I'LL ALLOW YOU A FEW MORE MINUTES TO

19  FINISH YOUR QUESTIONING HERE.  GO AHEAD.

20          MR. ROBERTS:  THANK YOU, YOUR HONOR.

21  Q.   (BY MR. ROBERTS)  ARE YOU AWARE OF PLANS OF DIRECTV TO

22  ROLL OUT A HOME MEDIA CENTER SYSTEM COMPRISED OF A MAIN SERVER

23  AND SMALLER RECEIVER UNITS AT EACH TV?

24  A.   I'M AWARE OF IT, YES.

25  Q.   AND WOULD EACH OF THOSE SMALLER RECEIVER UNITS, IN YOUR

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

74

1   OPINION, BE CONSIDERED TO BE A SET TOP BOX?

2   A.   I'M NOT SURE I'M QUALIFIED TO ANSWER THAT.

3   Q.   ARE YOU AWARE THAT SOME SET TOP BOXES -- DIRECTV SET TOP

4   BOXES TODAY CAN BE EQUIPPED WITH A BROADCOM OR ST CHIP WHICH

5   CAN PROVIDE OUTPUT OF TWO DIFFERENT PROGRAMS TO TWO DIFFERENT

6   TELEVISIONS?

7   A.   I'M NOT QUALIFIED TO ANSWER THAT AS WELL.

8        MR. ROBERTS:  MAY I JUST APPROACH THE WITNESS,

9   YOUR HONOR, WITH AN EXHIBIT?

10        THE COURT:  YOU MAY.

11   Q.   (BY MR. ROBERTS)  MR. MCGEORGE, I'LL ASK YOU, HAVE YOU

12   EVER SEEN THIS BROADCOM PRODUCT BRIEF BEFORE?

13   A.   NO, I HAVEN'T.

14   Q.   I NOTE ON HERE THAT THIS BRIEF SAYS THAT IT IS TALKING

15   ABOUT A SINGLE SHIP -- EXCUSE ME -- A SINGLE CHIP SATELLITE SET

16   TOP BOX DECODER.  AND IT INDICATES IN THE LEFT-HAND COLUMN

17   UNDER FEATURES THAT -- IT MAKES REFERENCE TO THE DVB/DIRECTV

18   DECODER.  DO YOU SEE THAT?

19   A.   YES, I DO.

20   Q.   AND IN THE RIGHT-HAND COLUMN UNDER THE SUMMARY OF BENEFITS

21   UNDER THE SECOND BULLET POINT IN THE SUBPARAGRAPH, IT

22   INDICATES:  "SIMULTANEOUSLY SUPPORTS TWO TVS WITH INDEPENDENT

23   PROGRAMMING AND ONSCREEN DISPLAYS."  DO YOU SEE THAT?

24   A.   I DO.

25   Q.   NOW MY QUESTION TO YOU IS:  IN A DIRECTV SET TOP BOX, IT'S

1  FIT WITH ONE OF THESE BROADCOM CHIPS WHERE YOU CAN ACTUALLY

2  DRIVE TWO TELEVISIONS OFF IT.  WOULD THAT, IN YOUR OPINION,

3  CONSTITUTE TWO SET TOP BOXES OR ONE?

4  A.   YOU KNOW, I'M NOT THE TECHNICAL PART OF DIRECTV HERE.  I

5  MANAGE THE MOVEMENT AND PURCHASING OF DIRECTV SET TOP BOXES, SO

6  I -- I REALLY CAN'T COMMENT ON IT.

7  Q.   DO YOU HAVE ANY IDEA HOW LONG IT WILL BE BEFORE SET TOP

8  BOXES ARE AVAILABLE THAT INCLUDE MULTIPLE TUNERS AND A LARGE

9  HARD DRIVE SO THAT A SUBSCRIBER ONLY NEEDS ONE BOX TO DRIVE ALL

10 THE TELEVISIONS IN THEIR HOME?

11 A.   I'M NOT AWARE OF WHEN IT WILL BE AVAILABLE, NO.

12              MR. ROBERTS:  THANK YOU.  NO QUESTIONS, YOUR

13 HONOR.

14              MR. SAVIKAS:  NOTHING FURTHER, YOUR HONOR.

15              THE COURT:  DO YOU HAVE ANY FORECAST ON HOW MANY

16 SET TOP BOXES YOU'RE PLANNING ON DISTRIBUTING DURING THIS

17 COMING YEAR?

18              THE WITNESS:  YES, WE DO.

19              THE COURT:  ALL RIGHT.  WHAT IS IT?

20              THE WITNESS:  I DON'T HAVE THE DOCUMENT WITH ME,

21 BUT I THINK THE NUMBER IS SOMEWHERE IN THE 15 MILLION RANGE FOR

22 2006.

23              THE COURT:  AS I UNDERSTAND IT, IN THE LAST --

24 WELL, SINCE 1999, IT WAS SOMETHING IN THE RANGE OF 59 MILLION

25 BOXES.  IS THAT THE NUMBER EVERYBODY WAS USING?  YEAH, WELL,

1    SOMEWHERE BETWEEN 55 MILLION AND 59 MILLION IS WHAT I THINK THE

2    NUMBERS CAME OUT TO BE.  BUT AT THE SAME TIME, AS I UNDERSTAND

3    IT, THE TOTAL NUMBER OF SUBSCRIBERS IS 15 MILLION; IS THAT

4    RIGHT?

5             THE WITNESS:  THAT'S CORRECT.

6             THE COURT:  SO THERE WAS SOME DISCUSSION AT

7    TRIAL INVOLVING WHAT THEY CALLED, I GUESS, CHURN AND SO FORTH.

8    WHY IF YOU HAVE 15 MILLION SUBSCRIBERS -- I GUESS THERE'S SOME

9    PEOPLE ADDING AND DROPPING -- IS THE TOTAL OF NUMBER OF BOXES

10   SO MUCH GREATER THAN THE TOTAL NUMBER OF SUBSCRIBERS?

11            THE WITNESS:  WELL, THERE'S A CERTAIN AMOUNT

12   OF -- YOU KNOW, EACH CUSTOMER CARRIES MORE THAN ONE BOX.

13            THE COURT:  OKAY.

14            THE WITNESS:  AND THERE IS A CERTAIN LEVEL OF

15   CUSTOMERS THAT CHURN OUT, THAT LEAVE DIRECTV.  AND TYPICALLY

16   THOSE BOXES STAY IN THE FIELD.  THEY'RE NOT ACTIVATED.  THEY'RE

17   DEACTIVATED, SO THEY'RE VIRTUALLY A DEAD BOX IN THE FIELD.

18            THE COURT:  ALL RIGHT.

19            THE WITNESS:  DOES THAT ANSWER YOUR QUESTION?

20            THE COURT:  YES.  ALL RIGHT.  YOU MAY STEP DOWN,

21   SIR.

22            MR. CASTANIAS:  THANK YOU, YOUR HONOR.  MAY IT

23   PLEASE THE COURT.  GREG CASTANIAS FOR THE DEFENDANTS.  I'LL TRY

24   TO BE BRIEF BECAUSE OUR BRIEFS THAT WE FILED ON JUNE 28TH AND

25   YESTERDAY SHOULD LAY OUT MOST OF THE POINTS.  AND I THINK THE

```
 1   COURT APPRECIATES MANY OF THEM.  BUT I'LL ADDRESS -- I'M SORRY.

 2                   THE COURT:  I THOUGHT YOU SAID THERE WAS A THIRD

 3   WITNESS, OR DID I ALREADY MISS HIM?

 4                   MR. SAVIKAS:  NO.  THERE WAS ONLY TWO.

 5                   THE COURT:  OKAY.  I'M SORRY.  I THOUGHT YOU

 6   GAVE ME THREE NAMES.  GO AHEAD.

 7                   MR. CASTANIAS:  IN ANY EVENT, YOUR HONOR, I'LL

 8   BRIEFLY ADDRESS FIVE ISSUES:  ONE, THE ISSUE OF THE INJUNCTION

 9   AND WHY A COMPULSORY LICENSE DOES WORK HERE; TWO, THE

10   ENHANCEMENT ISSUE; THREE, ATTORNEY'S FEES; FOUR, PREJUDGMENT

11   INTEREST; AND FINALLY, FIVE, THE ISSUE OF COST.

12                   LET ME FIRST TURN TO THE ISSUE OF THE

13   INJUNCTION.  OUR PAPERS HAVE LAID OUT OUR POSITION ON THIS

14   ISSUE.  THERE'S NOTHING CATEGORICAL ABOUT WHAT WE'RE SUGGESTING

15   TO THE COURT.  THIS IS EXACTLY THE CASE WHERE AN INJUNCTION

16   WOULD BE INAPPROPRIATE.  WITH REGARD TO IRREPARABLE INJURY,

17   FINISAR DOES NOT COMMERCIALIZE.  THE COURT NOTED THE TESTIMONY

18   OF DR. LEVINSON AND MR. RAWLS AFTER THE JURY RETURNED ITS

19   VERDICT.  FINISAR HAS NEVER ANSWERED THOSE POINTS.

20                   WITH REGARD TO THE ADEQUACY OF MONEY DAMAGES TO

21   COMPENSATE BEARS REPEATING, THAT'S ALL FINISAR EVER WANTED.

22   THEIR TRIAL FEE WAS -- ALL WE WANTED WAS A LICENSE.  THOSE ARE

23   THE TWO POINTS ON WHICH THE COURT IDENTIFIED THAT THERE WAS

24   ALREADY STRONG EVIDENCE.

25                   SO LET ME TURN TO THE OTHER TWO NOW.  HARM TO
```

1   THE PUBLIC.  WE PUT IN OUR BRIEF FILED YESTERDAY THE POINTS

2   ABOUT THE FCC'S AND THE DEPARTMENT OF JUSTICE ANTI-TRUST

3   DIVISION FINDINGS WITH RESPECT TO THE PUBLIC INTEREST.  THOSE

4   HAVE NOT BEEN ANSWERED BY FINISAR IN ITS ARGUMENTS TODAY.  THEY

5   WERE NOT MENTIONED IN THE BRIEF.  MR. NAPPER COULD NOT OPINE ON

6   THOSE, EVEN THOUGH THE DEPARTMENT OF JUSTICE'S PRESS RELEASE

7   WAS ATTACHED TO FINISAR'S VARIED COMPLAINT IN THIS CASE.

8           FINALLY, WITH RESPECT TO THE BALANCE OF HARMS,

9   WE POINTED THAT OUT IN OUR BRIEF YESTERDAY AS WELL.  DIRECTV

10  WOULD SUFFER GOVERNMENTAL AND OTHER PENALTIES, AS WELL AS

11  SERIOUS ECONOMIC HARM.  FINISAR WILL GET PAID.  THE BALANCE OF

12  HARMS IS WILDLY, WILDLY TIPPED AGAINST US.

13          THE COURT:  WAIT A MINUTE.  WHAT PENALTIES IS

14  DIRECTV GOING TO SUFFER IF I GRANT AN INJUNCTION?

15          MR. CASTANIAS:  DIRECTV, AS WE POINTED OUT IN

16  OUR BRIEF YESTERDAY, COULD SUFFER THE LOSS OF ALL OF ITS

17  BROADCASTING LICENSES THAT THE FCC HAS GRANTED IN THE PUBLIC

18  INTEREST HERE AS WELL.  THOSE ARE THE SORTS OF PENALTIES IN

19  ADDITION TO THE SERIOUS ECONOMIC --

20          THE COURT:  HOW LONG A PERIOD OF TIME DO THEY

21  HAVE TO BE SHUT DOWN BEFORE THAT HAPPENS?  I MEAN, OBVIOUSLY

22  HURRICANE COMES THROUGH AND WIPES EVERYTHING OUT, THEY DON'T

23  WITHDRAW YOUR LICENSES FOR A DAY OR A WEEK SHUTDOWN.

24          MR. CASTANIAS:  I THINK THAT WOULD BE UP TO THE

25  FCC.  IT IS A RISK.  I THINK THAT'S PROBABLY THE FAIREST WAY TO

1    PUT IT.

2            THE COURT:  YOU'VE GOT NO IDEA IN THE CODE OF

3    FEDERAL REGULATIONS OR IN THE LICENSE LANGUAGE ITSELF OR

4    ANYTHING ELSE, THAT WOULD GIVE AN INDICATION OF -- I MEAN,

5    OBVIOUSLY IT WOULDN'T BE A VOLUNTARILY.  IT WOULD BE ALMOST A

6    FORCE MEASURE, AND THE COURT'S NOT -- I'M NOT TRYING TO SAY I'M

7    AN ACT OF GOD, BUT IT'S SURELY OUTSIDE YOUR CONTROL.

8            MR. CASTANIAS:  YOUR HONOR, I THINK NO RESPONSE

9    TO THAT PART WOULD BE APPROPRIATE, BUT WITH REGARD TO --

10           THE COURT:  THE HIGHER COURTS MAYBE, BUT NOT ME.

11           MR. CASTANIAS:  WITH REGARD TO -- WITH REGARD TO

12   THE FCC, THE CODE OF FEDERAL REGULATIONS PROVISION -- AND I

13   HAVE TO MAKE SURE I GET THE TITLE CORRECT FOR YOU HERE -- IS --

14   IT IS IN THE COMMUNICATIONS TITLE, BUT I WISH I COULD TELL YOU

15   THAT I HAVE THAT MEMORIZED OFF THE TOP OF MY HEAD, 47 CFR, AND

16   IT'S SECTION 25.161, IN PARTICULAR 25.161 (C) DEALING WITH THE

17   AUTOMATIC TERMINATION OF STATION AUTHORIZATION.  AND WHETHER

18   THAT -- I MEAN, THAT IN AND OF ITSELF WOULD BE HARM TO DIRECTV.

19   EVEN IF, FOR EXAMPLE, THERE WAS A SHUTDOWN, THE FCC DECIDED TO

20   TERMINATE OUR LICENSE.  THAT MEANS THAT WE NOW HAVE A

21   GOVERNMENTAL POTENTIAL BARRIER TO ENTRY -- REENTRY INTO THE

22   MARKET EVEN IF WE COULD GET A NONINFRINGING ALTERNATIVE.

23           LET ME TURN TO FINISAR'S EXCLUSIVE LICENSE

24   THEORY.  AS WE POINTED OUT IN OUR BRIEF YESTERDAY, IT'S JUST

25   ANOTHER CREATIVE WAY OF ARGUING THAT THE PATENT'S RIGHT TO

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

```
 1    EXCLUDE IS ALWAYS IRREPARABLE HARM.  IT COULD NEVER BE REMEDIED

 2    THROUGH MONEY.  AND TODAY WE HEARD THAT EBAY DIDN'T REALLY

 3    CHANGE THE LAW.  I -- I MUST CONFESS THAT WE COMPLETELY

 4    DISAGREE WITH THAT.  I THINK JUDGE DAVIS DISAGREED WITH IT IN

 5    THE Z4 DECISION.  AND MORE TO THE POINT, I THINK IT'S WORTH

 6    NOTING THAT THEY'VE GIVEN YOU TWO BRIEFS IN THIS CASE

 7    SUGGESTING WHAT THE LAW IS.  WHAT THEY GAVE YOU WAS THE

 8    SOLICITOR GENERAL'S BRIEF.  AND THEY LOST BECAUSE THE SOLICITOR

 9    GENERAL WANTED AFFIRMANCE IN THE EBAY, AND THEY DIDN'T GET IT.

10    AND THEY GAVE YOU THE RESPONDENT'S BRIEF FILED BY MERCEXCHANGE

11    IN THE EBAY CASE.  AND, AGAIN, THAT WAS THE PARTY SEEKING

12    AFFIRMANCE.  AND IF YOU LOOK AT THE LAST LINE OF JUSTICE

13    THOMAS'S OPINION FOR THE MISSOURI, THE CASE WAS REVERSED.  IT

14    WAS REMANDED.  THE INJUNCTION WAS VACATED.

15             SO IF THE COURT NEEDS ANY ADDITIONAL EVIDENCE

16    THAT THE LAW HAS CHANGED, IT'S RIGHT ON THE FACE OF EBAY.  LET

17    ME RESPOND TO JUST THE --

18             THE COURT:  WELL, I GUESS ANOTHER WAY YOU CAN

19    LOOK AT IT IS THE SUPREME COURT HAS PUT THE LAW BACK TO WHERE

20    IT ALWAYS HAS BEEN IN INJUNCTIONS, AND IT'S JUST THE -- THEY'RE

21    IN EFFECT SAYING THAT THE FIFTH CIRCUIT GOT A LITTLE OFF TRACK.

22             MR. CASTANIAS:  THAT'S AN EXCELLENT WAY OF

23    PUTTING IT THERE, YOUR HONOR, BECAUSE THAT ANSWERS THE HEAVY

24    RELIANCE ON THE IN RE MAHURKAR DECISION FROM JUDGE EASTERBROOK,

25    A DISTINGUISHED JUDGE TO BE SURE, AN APPELLATE JUDGE SITTING AS
```

1    A DISTRICT JUDGE BY DESIGNATION IN THAT CASE.  BUT IT'S VERY

2    SIMPLE, THAT IN MAHURKAR HE WAS FOLLOWING THE OLD RULE.  IF YOU

3    LOOK AT THE PORTION OF THE DECISION THAT DISCUSSES THE ENTRY OF

4    AN INJUNCTION, HE STARTS FROM THE PREMISE IN THE RICHARDSON

5    CASE DECIDED BY THE FEDERAL CIRCUIT IN, I BELIEVE, 1988, THAT

6    INJUNCTION SHOULD ISSUE IN A PATENT CASE ONCE INFRINGEMENT HAS

7    BEEN FOUND.  THAT'S EXACTLY WHAT THE SUPREME COURT UPSET IN THE

8    EBAY CASE.  AND THAT SHOWS WHY MAHURKAR ISN'T TERRIBLY USEFUL

9    HERE.  THAT'S OLD LAW.

10              SECOND POINT THEY MADE IS WE NEED TO LET THE

11   MARKET VALUE THE PATENT.  WELL, THE JURY HAS VALUED THIS

12   PATENT.  AND WE DIDN'T HEAR ANY RESPONSE FROM FINISAR WITH

13   RESPECT TO OUR CITATION OF THE SHATTERPROOF GLASS CASE.  IN THE

14   SHATTERPROOF GLASS CASE, THE FEDERAL CIRCUIT'S ENDORSEMENT IS

15   EXACTLY WHAT WE'RE SUGGESTING THE COURT DO HERE.  IT EVEN USES

16   THE TERM "COMPULSORY LICENSE."  THAT'S NOT A BAD THING.  IT'S

17   NOT TO BE FORBIDDEN.  THAT'S EXACTLY WHAT WE HAVE TO DO HERE.

18   AND IN THE SHATTERPROOF GLASS CASE, THE DISTRICT COURT IMPOSED

19   THE SAME ROYALTY RATE FOR THE POST VERDICT COMPULSORY LICENSE

20   AS THE JURY HAD FOUND FOR THE PREVERDICT REASONABLE ROYALTY.

21              THE COURT:  BUT HOW DO I FIGURE THAT OUT GIVEN

22   THAT WE HAVE -- HAVE BEEN VERY CLEAN EXCEPT FOR THE $20,250.25?

23              MR. CASTANIAS:  WELL, THE POINT IS, YOUR HONOR,

24   THAT THE -- THE JURY'S VERDICT IS THE JURY'S VERDICT.  THAT'S

25   THE VALUATION OF THE PATENT.  AND I THINK EVERYBODY HERE

1    AGREES, ALL THE WITNESSES, ALL OF THE LAWYERS, WE DON'T KNOW

2    EXACTLY WHAT WENT ON IN THAT ROOM; BUT WE DO KNOW THAT A

3    VALUATION WENT ON IN THAT ROOM.  AND THAT'S THE VALUATION.  AND

4    IT'S NOT EXACTLY $1.32.  IT'S $1.32.09 OR SOMETHING LIKE THAT.

5    IT CARRIES ON SEVERAL DIGITS.  SO THE MATH IS NOT -- IS NOT

6    PERFECT TO THE CENTS, BUT THAT'S FINE.  WE CAN -- WE CAN

7    APPROXIMATE AND HONOR THE JURY'S VERDICT HERE WITH THE GOING

8    FORWARD COMPULSORY ROYALTY RATE.

9              THE COURT:  AND HOW DO I DEAL WITH THE PROBLEM

10   THAT WAS BROUGHT UP AND THE ONE I WORRIED ABOUT BEFORE IN THAT

11   YOU'VE GOT SOME CUSTOMERS HAVING THREE OR FOUR BOXES, SOME OF

12   THE NEW BOXES MAYBE WILL HANDLE A COUPLE DIFFERENT TV SETS.

13   EVIDENTLY YOU'RE NOW TRACKING YOUR BOXES BETTER.  WHY SHOULDN'T

14   I BE LOOKING AT SOMETHING LIKE GEM STAR AND LOOKING AT A PER

15   SUBSCRIBER?  THAT WOULD SEEM TO BE A LITTLE BIT EASIER WAY OF

16   KEEPING A CONTROL.  WE DON'T HAVE TO WORRY ABOUT CHANGES IN

17   TECHNOLOGY.  IT'S A SUBSCRIBER -- BASE IT ON THAT SOMEHOW.

18             MR. CASTANIAS:  THE COURT -- THE COURT COULD DO

19   THAT.  WE WOULDN'T URGE THAT THE COURT DO THAT BECAUSE AS I

20   REMEMBER THE PROOFS THAT CAME IN THIS CASE, THE INFRINGEMENT

21   THAT WAS ALLEGED HAD TO BE DONE IN PART AT LEAST AT THE SET TOP

22   BOX LEVEL.  AND SO A METRIC THAT'S BASED ON NUMBER OF SET TOP

23   BOX PLACES IN THE SERVICE -- PLACED INTO SERVICE IS IT'S CLEAN.

24   AS MR. MCGEORGE TESTIFIED, IT'S VERY EASY FOR US TO CALCULATE.

25   IT'S VERY EASY FOR US TO MAKE REGULAR REPORTS TO THE COURT WITH

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
83

1    REGARD TO THE NEW SET TOP BOXES PLACED INTO SERVICE.

2              THE COURT:  BUT ON THE OTHER HAND, THE AMOUNT OF

3    MONEY DOESN'T COME FROM BOXES; IT COMES FROM PEOPLE.  I MEAN,

4    THAT'S WHO YOU'RE CHARGING FOR THIS.  SO, FOR THAT MATTER, I

5    GUESS IT COULD BE BY HOUSEHOLD, TOO.  I'M NOT SURE WHETHER

6    SUBSCRIBERS -- I GUESS IT WOULD NOT BE TYPICAL TO HAVE MORE

7    THAN ONE SUBSCRIBER BY HOUSEHOLD.

8              MR. CASTANIAS:  I DON'T -- I DON'T THINK THAT

9    WOULD BE TYPICAL.  I DON'T THINK THERE'S BEEN ANY EVIDENCE ON

10   THAT, BUT I THINK THE MOST IMPORTANT POINT, YOUR HONOR, IS WHAT

11   MR. DONALDSON TOLD YOU TODAY AND WHAT HE TOLD YOU AT TRIAL.

12   AND THAT IS THE PER SET TOP BOX APPROACH IS THE INDUSTRY

13   STANDARD.  THAT SEEMS TO ME TO BE THE TIE BREAKER.

14             THE COURT:  GO AHEAD.

15             MR. CASTANIAS:  BUT, WITH RESPECT TO FINISAR'S

16   CLAIMS THAT, OH, THIS IS GOING TO ENGENDER MULTIPLE LITIGATION.

17   NO.  THE COMPULSORY LICENSE HERE WOULD BE PAID THROUGH THE LIFE

18   OF THE PATENT IF THE VERDICT REMAINS IN PLACE.  YOU DON'T EVEN

19   NEED TO SEVER OFF ANOTHER CASE.  THIS IS A SIMPLE MATHEMATICAL

20   CALCULATION.

21             TO THEIR POINT THAT A JURY TRIAL WOULD BE

22   REQUIRED ON THESE ISSUES, WE DISAGREE.  THIS SORT OF POST

23   VERDICT ACCOUNTING IS AN EQUITABLE MATTER FOR THE COURT, AND

24   IT'S FOR THE COURT.  IN MUCH THE SAME WAY THAT AN EMPLOYMENT

25   CASE IS FRONT PAID, IT'S TRADITIONALLY BEEN AN ISSUE FOR THE

```
 1   COURT WHERE BACK PAY MIGHT BE DECIDED BY THE JURY.

 2              FINALLY, THE POINT ABOUT WILLFUL INFRINGEMENT

 3   AND MULTIPLYING THE DAMAGES ON POST VERDICT X BY DIRECTV, I

 4   THINK THE COURT RECOGNIZED ONE OF THE FLAWS IN THAT ARGUMENT.

 5   THERE'S ANOTHER FLAW IN IT, TOO, AND THAT THIS IS THAT IF

 6   THERE'S A COMPULSORY LICENSE HERE, IT'S NOT INFRINGEMENT.

 7   SECTION 271 A OF THE PATENT CODE SAYS:  WHOEVER WITHOUT

 8   AUTHORITY MAKES USE OR SELLS OFFERS FOR SALE, AND SO ON IS AN

 9   INFRINGEMENT.  THAT WOULD BE WITH AUTHORITY.

10              UNLESS THE COURT HAS FURTHER QUESTIONS ON THE

11   ISSUE OF THE INJUNCTION AND THE ISSUE OF THE GOING FORWARD

12   ROYALTY RATE, LET ME TURN TO THE MATTER OF ENHANCEMENT.

13              THE COURT:  WELL, LET'S GET BACK TO -- YOU'RE

14   ARGUING FOR A SET TOP BOX FEE, ONE TIME FEE, AND YOU'RE

15   SUGGESTING $1.32 BASED ON YOU'RE DIVIDING OUT, I GUESS, THE 55

16   MILLION WHAT THE JURY AWARDED OR SOMETHING LIKE THAT.  BUT

17   OBVIOUSLY NEITHER I NOR ANY OTHER COURT OR ANY JURY WANTS TO

18   SEE THIS AGAIN, AND SO I ENTER A COMPULSORY LICENSE OF WHATEVER

19   X DOLLARS PER SET TOP BOX.  HOW IS THAT GOING TO BE CALCULATED?

20   I MEAN, COUNSEL BROUGHT UP PRETTY GOOD POINT AND TECHNOLOGY

21   CHANGES.  IS THE HOME ENTERTAINMENT UNIT INCORPORATING SET TOP

22   BOX TECHNOLOGY AS SET TOP BOX.  IT COULD HANDLE SEVERAL TV'S.

23   THE OLD METHOD WAS ONE BOX PER TV, AND THAT WOULD HAVE

24   OBVIOUSLY RESULTED IN MORE REVENUE FOR THEM THAN A NEW BOX THAT

25   CAN HANDLE MULTIPLE TV'S.  IF IT HADN'T DONE IT IN '95 ON YOUR
```

1  SET TOP BOX METHOD, IT WOULD HAVE BEEN, OKAY, WHATEVER.  EVEN

2  IF TAKING YOUR EXPERT, 30 CENTS PER SET TOP BOX, EVERY SINGLE

3  SET TOP BOX WOULD GIVE THEM 30 CENTS.  NOW, YOU GET INTO 2006,

4  2007 AND SET TOP BOXES ARE DIFFERENT.  THEY'RE NOT JUST SELLING

5  ONE PER SUBSCRIBER, RATHER THAN THREE OR FOUR PER SUBSCRIBER.

6  HOW DO I -- HOW DO I INCORPORATE THAT?

7             MR. CASTANIAS:  WELL, I THINK, YOUR HONOR, THAT

8  THE -- AS I MENTIONED BEFORE, THIS IS AN EQUITABLE

9  DETERMINATION FOR THE COURT.  AND IF WE'RE GOING TO CONTINUE TO

10  BE PAYING IN ROYALTIES AND PROVIDING REPORTS TO THE COURT,

11  THERE'S GOING TO BE A MINIMAL AMOUNT OF CONTINUED INVOLVEMENT

12  ON THE COURT'S PART.  I THINK THAT'S INHERENTLY PART OF A

13  COMPULSORY LICENSE PROGRAM.  BUT IT'S GOING TO BE MINIMAL.  AND

14  TO THE EXTENT THAT THAT ISSUE COMES UP IN THE FUTURE, THEN IT

15  CAN BE RESOLVED EITHER BY FIRST DISCUSSIONS WITH COUNSEL AS TO

16  HOW THAT METRIC IS BEING APPLIED WITHIN THE INDUSTRY.  WE'RE

17  CERTAINLY GOING TO HAVE OTHER -- OTHER EVIDENCE FROM THE WAY

18  THAT THE OTHER LICENSES ARE DEALT WITH BECAUSE AGAIN THE SET

19  TOP BOX METRIC IS THE INDUSTRY STANDARD.  IT'S THE IMPEG WAY OF

20  DOING BUSINESS.  AS MR. DONALDSON TALKED ABOUT THE OTHER WAYS

21  THAT THE PER SET TOP BOX APPROACH IS USED IN THE INDUSTRY.

22  WE'RE CERTAINLY NOT GOING TO BE WRITING ON A CLEAN SLATE THERE.

23  WE'RE GOING TO HAVE SOME EXPERIENCE.

24             THE COURT:  WAS THE IMPEG LICENSE ACCEPTED AS AN

25  EXHIBIT?

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

86

1        MR. CASTANIAS:  I BELIEVE IT WAS, YOUR HONOR.

2        MR. SAVIKAS:  WOULD YOU LIKE THE NUMBER?

3        THE COURT:  WELL, THE NUMBER, AND DOES ANYBODY

4   KNOW WHAT -- DOES IT HAVE ANYTHING IN THERE ABOUT WHAT IS A SET

5   TOP BOX, BECAUSE THAT'S, IN EFFECT, WHAT THE QUESTION COMES UP,

6   THAT A SET TOP BOX UNDER THE OLD TECHNOLOGY IS SOMETHING THAT

7   RUNS ONE TV OR IS A SET TOP BOX ANY OLD THING THAT HAPPENS TO

8   RUN ONE TO A THOUSAND TVS?  GO AHEAD.  I MEAN, THAT'S JUST A

9   QUESTION THAT COMES UP IN ALL THIS.

10        MR. CASTANIAS:  SURE.  WE'LL TRY TO ANSWER THAT.

11        THE COURT:  I THINK PLAINTIFFS HAVE MADE A POINT

12   THERE THAT NEEDS TO BE LOOKED AT.

13        MR. CASTANIAS:  I'M INFORMED OF TWO THINGS, YOUR

14   HONOR, WHICH MAY BE HELPFUL.  FIRST, IT'S DEFENDANT'S

15   EXHIBIT 223; IS THAT CORRECT?  222 AND 223.  AND SECONDLY,

16   MR. TOUTON INFORMS ME THAT THOSE ARE ACTUALLY CALCULATED ON A

17   PER DECODER BASIS, WHICH WE VIEW AS EQUIVALENT TO PER SET TOP

18   BOX.  AND TO THE EXTENT THAT THAT'S HELPFUL WITH REGARD TO NEW

19   TECHNOLOGY, THAT MAY BE USEFUL FOR THE COURT AND FOR THE

20   PARTIES AS WELL.

21        THE COURT:  I'M SORRY.  DID YOU SAY 223?

22        MR. CASTANIAS:  I BELIEVE IT'S 223 AND 222 ARE

23   THE IMPEG LICENSES, DEFENDANT'S EXHIBITS.

24        MR. TOUTON:  YOUR HONOR, LOUIS TOUTON HERE.

25        THE COURT:  YES.

```
 1            MR. TOUTON:  FILL IN A LITTLE BIT ON THE SECOND

 2   POINT THAT MR. CASTANIAS JUST GAVE, IS THAT THE IMPEG LICENSE

 3   MEASURES THE ROYALTY IN TERMS OF DECODERS, THAT IS, THE

 4   CIRCUITRY IN THE BOX THAT PRODUCES A UNIQUE OUTPUT THAT A

 5   TELEVISION COULD RECEIVE.  AND, THEREFORE, IN A BOX THAT

 6   HYPOTHETICALLY IN THE FUTURE COULD SUPPORT TWO TELEVISIONS,

 7   THERE WOULD BE TWO DECODERS AND TWO ROYALTIES DUE UNDER THE

 8   IMPEG LICENSE.

 9            THE COURT:  I'M SORRY --

10            MR. TOUTON:  THERE'S A DEFINITION --

11            THE COURT:  PARAGRAPH 1.14 AND 1.15, WHERE THEY

12   START TALKING ABOUT WHERE DECODING PRODUCTS, DECODING SOFTWARE

13   IS IN THAT LICENSE AND THEN -- OKAY.  ALL RIGHT.  GO AHEAD.

14            MR. CASTANIAS:  THANK YOU, YOUR HONOR.  IF I CAN

15   TURN TO THE ISSUE OF ENHANCEMENT FOR A MOMENT.  IT'S WORTH

16   TREATING BOTH THE ISSUE OF ENHANCEMENT AND ATTORNEY'S FEE

17   SOMEWHAT TOGETHER BECAUSE THE STANDARDS ARE SIMILAR, ALTHOUGH

18   THEY'RE NOT IDENTICAL.  AND FINISAR'S CLAIMS OF ENTITLEMENT ARE

19   BASED IN ESSENCE ON THE SAME TWO FACTORS.  BUT LET ME START

20   WITH ENHANCEMENT BECAUSE IT'S BASED AS MR. ROBERTS SAID

21   PRIMARILY ON THE JURY'S FINDING OF WILLFUL INFRINGEMENT.

22            NOW YOUR HONOR HAS CARRIED AND CONTINUES TO

23   CARRY OUR MOTION FOR JMOL OF NONWILLFULNESS, AND THAT MOTION

24   SHOULD BE GRANTED AT THE APPROPRIATE TIME.  FINISAR'S

25   WILLFULNESS CASE IN THIS LITIGATION BASICALLY BOILS DOWN TO
```

1    DIRECTV KNEW OF THE PATENT AND YET CONTINUED TO INFRINGE.  WE

2    POINTED OUT IN YESTERDAY'S BRIEF AND IN OUR JMOL MOTIONS,

3    THAT'S NOT THE LAW.  IN FACT, THE FEDERAL CIRCUIT HAS SUSTAINED

4    TRIAL COURT GRANT OF JMOL, OF NONWILLFULNESS IN QUITE SIMILAR

5    CIRCUMSTANCES.  IN FACT, WHAT DIRECTV AND MR. CROOK DID IN

6    RESPONSE TO FINISAR'S ACTIONS WAS NOT REASONABLE AS A MATTER OF

7    LAW, THEN WILLFULNESS REALLY DOESN'T MEAN MUCH OF ANYTHING.  IN

8    FACT, WHAT WE SUBMIT IS THAT THE COURT SHOULD FOLLOW THE

9    APPROACH THAT THE FEDERAL CIRCUIT TOOK IN THE RECORPORATION

10   CASE, WHICH IS THE CASE THAT LAYS OUT THE ENHANCEMENT FACTORS.

11   BUT THAT CASE FOUND NO WILLFULNESS AS A MATTER OF LAW, AND IT

12   WAS IN ESSENCE FOR TWO REASONS:  ONE, BECAUSE THERE WAS NO

13   COPYING; AND TWO, BECAUSE THERE WAS A COMPETENCE OPINION LETTER

14   REASONABLY RELIED UPON, THE SAME THAT WE HAVE HERE.

15                  BUT THE QUESTION THAT FINISAR HAS PUT BEFORE THE

16   COURT TODAY IS THE MATTER OF ENHANCED DAMAGES.  AND THEY'VE

17   OFFERED NOTHING BUT A SUGGESTION THAT YOU DO THE MAXIMUM AND

18   TREBLE THE DAMAGES IN THIS CASE.  AND WHAT WE'RE REALLY TALKING

19   ABOUT HERE, YOUR HONOR, IS PUNITIVE DAMAGES.  IN THE SUPREME

20   COURT'S PUNITIVE DAMAGES CASE STATE CONDUCT HAS TO BE PRETTY

21   REPREHENSIBLE TO ALLOW PUNITIVE DAMAGES CONSISTENT WITH THE DUE

22   PROCESS CLAUSE.  UNDER RECORPORATION, THAT'S BASICALLY WHAT THE

23   COURT IS USING THOSE FACTORS TO HELP IT FIND.  THE WORDS OF

24   THAT DECISION IS TO ASSIST THE TRIAL COURT IN EVALUATING THE

25   DEGREE OF THE INFRINGER'S CULPABILITY.

 1          NOW, OUR BRIEFS HAVE SHOWN THAT THERE IS JUST

 2   NOT THE LEVEL OF CULPABILITY OR REPREHENSIBILITY PRESENT HERE

 3   TO JUSTIFY AWARDING PUNITIVE DAMAGES IN ANY AMOUNT TO FINISAR.

 4   I'M NOT GOING TO REPEAT THOSE SHOWINGS, BUT I DO WANT TO

 5   EMPHASIZE THE FOLLOWING:  ONE, NO COPYING IN THIS CASE.

 6   DIRECTV WAS ON THE MARKET BEFORE THE 505 PATENT EVEN ISSUED.

 7   NUMBER TWO, MR. CROOK OBTAINED A COMPETENT, DETAILED 55-PAGE

 8   LONG INFRINGEMENT OPINION FROM MR. ZIMMERMAN AND REASONABLY

 9   RELIED UPON.  THERE IS NO REQUIREMENT, AS FINISAR ARGUED TO THE

10   JURY AND REPEATS IN ITS BRIEF HERE.  BUT AN OPINION ADDRESSED

11   BOTH NONINFRINGEMENT AND INVALIDITY.  THAT'S THE GRACO AGAINST

12   BINKS IN 60 FED. 3RD.  FINISAR'S CRITICISMS OF MR. ZIMMERMAN'S

13   OPINION IN THIS CASE HAVE BEEN AT BEST THE SORT OF AROUND THE

14   EDGES, NITPICKING CRITICISMS, AND THEY DO NOT UNDERMINE ITS

15   ESSENTIAL COMPETENCE.

16          ANOTHER POINT, THIS CASE WAS AND REMAINS BY ANY

17   MEASURE CLOSE.  THAT WAS EXACTLY THE WORD THIS COURT USED IN

18   DESCRIBING OUR CONTINUED TO BE CARRIED MOTION FOR SUMMARY

19   JUDGMENT AND NOW JUDGMENT AS A MATTER OF LAW WITH RESPECT TO

20   ANTICIPATION BASED ON THE DEXA (PHONETIC) ARCHITECTURE

21   VIDEOTECH SYSTEMS TEXTBOOK.  THE COURT SAID IT WAS VERY, VERY

22   CLOSE.

23          IN ADDITION, WE PREVAILED ON EIGHT OF THE 15

24   CLAIMS IN THIS SUIT.  SEVEN OF THEM WERE FOUND BY THIS COURT TO

25   BE INVALID AND INDEFINITE, AND EIGHT CLAIMED 25 WAS DROPPED

1   VIRTUALLY ON THE EVE OF TRIAL AND STIPULATED TO BE

2   NONINFRINGING BY FINISAR.  AND THAT DID -- CONTRARY TO WHAT

3   FINISAR SAYS IN ITS BRIEF OF YESTERDAY, QUOTE, ALTER THE

4   RELATIONSHIP OF THE PARTIES BECAUSE FINISAR NOW HAS SEVEN

5   CLAIMS THAT IT CAN'T USE AGAINST ANYBODY ANYWHERE ANYTIME

6   ANYMORE.

7           IN ADDITION, SHOWING MORE OF THE CLOSENESS OF

8   THIS CASE THIS COURT HAS CONTINUED TO CARRY SEVERAL OF THE

9   GROUNDS IN OUR JMOL MOTIONS, ALL THAT ARE NONINFRINGMENT

10  MOTIONS.  AND EVEN THE ISSUE OF WILLFULNESS, WHICH WAS THE

11  SUBJECT OF ONE OF THOSE MOTIONS, IS AT THE VERY LEAST A CLOSE

12  ISSUE.

13          ANOTHER FACTOR UNDER THE RECORPORATION CASE,

14  THERE WAS NO EFFORT ON THE PART OF DIRECTV TO CONCEAL ITS

15  MISCONDUCT.  AND MOREOVER, THERE WAS NO MOTIVATION TO HARM

16  FINISAR, NOTWITHSTANDING THE ALLEGATION MADE IN FINISAR'S JUNE

17  28TH BRIEF THAT WE INTENDED HARM TO A LICENSING PROGRAM OF

18  FINISAR.  YOU CAN'T FIND A SINGLE PIECE OF EVIDENCE THAT LEADS

19  TO THAT CONCLUSION IN THIS CASE.  THAT IS ATTORNEY ARGUMENT.

20          IN SHORT, YOUR HONOR, OUR CONDUCT WAS IN GOOD

21  FAITH AND NOWHERE NEAR THE SORT OF REPREHENSIBLE CONDUCT THAT

22  MERITS PUNITIVE OR ENHANCED DAMAGES.

23          NOW, TURNING TO A COUPLE OF THE POINTS THAT

24  FINISAR MADE WITH REGARD TO ENHANCEMENT THIS MORNING, WHAT I

25  HEARD A LOT ABOUT WAS DIRECTV'S ABILITY TO PAY.  WHILE THAT

1   MIGHT BE APPROPRIATE TO CONSIDER UNDER THE RECORPORATION

2   FACTORS ONCE THE COURT HAS DETERMINED THAT THERE'S

3   REPREHENSIBLE PUNISHABLE CONDUCT, THAT'S NOT THE CASE HERE.

4   THERE ISN'T A FACTOR THAT SHOWS EGREGIOUS REPREHENSIBLE CONDUCT

5   HERE.

6           I HEARD THEM ALSO SAY THAT MR. CROOK PUT THE

7   ZIMMERMAN OPINION IN A DRAWER.  HE DIDN'T HOLD A MEETING; HE

8   DIDN'T HAVE A TECHNICAL PERSON REVIEW IT.  WELL, I'M SURE THAT

9   THAT OPINION EVENTUALLY WENT INTO A FILE CABINET.  BUT IT WAS

10  READ, AND IT WAS RELIED UPON.  AND DIRECTV DID NOT CHANGE

11  BECAUSE MR. CROOK HAD A COMPETENT OPINION LETTER THAT SAID

12  YOU'RE NOT INFRINGING.

13          MOREOVER, I URGE THE COURT TO TAKE A LOOK AT THE

14  ZIMMERMAN OPINION LETTER.  LOOK AT THE NUMBER OF PAGES IN THAT

15  EXHIBIT DEVOTED TO DISCUSSING OF THE TECHNICAL ASPECTS OF HOW

16  THE GUIDE SYSTEM WORKS.  IT'S HARD TO SAY THAT THAT WAS WRONG.

17  IN FACT, I DON'T THINK FINISAR'S EVER SAID THAT IT WAS WRONG

18  WITH RESPECT TO ITS DESCRIPTION OF THE GUIDE SYSTEM.  WHAT IT

19  SAID IS IT DIDN'T ADDRESS THE REST OF THE SYSTEM.

20          BUT LET ME NOW TURN TO THE ISSUE OF ATTORNEY'S

21  FEES BECAUSE THE ONE FACTOR IN RECORPORATION I'VE LEFT OUT IS

22  THE ONE THAT THEY ADDRESS UNDER THE HEADING OF ATTORNEY'S FEES.

23  AS I MENTIONED BEFORE, THE STANDARDS HERE ARE SIMILAR, BUT NOT

24  QUITE IDENTICAL.  THEIR MAIN CASE FOR ATTORNEY'S FEES IS THEY

25  SAY WHILE THE JURY FOUND WILLFULNESS, THAT'S ENOUGH, YOU SHOULD

1    AWARD US OUR FEES.  BUT SECTION 285 ISN'T A SIMPLE FEE SHIFTING

2    STATUTE, EVEN IN THE CASE OF WILLFULNESS.  THE COURT STILL HAS

3    TO FIND THE CASE EXCEPTIONAL, AND THE COURT'S BURDEN IN THAT

4    CASE IS TO FIND IT BY CLEAR AND CONVINCING EVIDENCE.  EVEN WERE

5    THE COURT TO FIND IT EXCEPTIONAL, IT WOULD THEN HAVE TO MAKE

6    THE FURTHER DETERMINATION THAT ATTORNEY'S FEES WERE MERITED.

7    THAT'S THE MODINE MANUFACTURING CASE IN 970 S.2D., CITED IN OUR

8    BRIEF.

9             FOR THE SAME SORTS OF REASONS THAT I'VE OUTLINED

10   WITH REGARDS TO ENHANCEMENT, THE ATTORNEY'S FEES HERE SHOULD

11   ALSO BE DENIED.  THIS CASE WAS CLOSED ON NUMEROUS GROUNDS.

12   EVEN IF FINISAR'S WILLFULNESS CLAIM IS NOT OVERTURNED ON JMOL,

13   THAT ISSUE ITSELF WAS TOO CLOSE TO MERIT FEES.  WE PREVAILED ON

14   EIGHT OUT OF THE 15 CLAIMS IN THE SUIT, AND THE CASE WAS

15   LITIGATED FAIRLY AND WELL ON BOTH SIDES.  IN ALL THOSE REGARDS

16   THIS CASE WAS NOT EXCEPTIONAL WITHIN THE MEANING OF SECTION

17   285.

18             NOW THAT SAID, IT IS APPROPRIATE FOR US TO

19   BRIEFLY COMMENT ON THE ACCUSATIONS THAT ARE LACED THROUGHOUT

20   FINISAR'S MAIN BRIEF, THE ACCUSATION OF LITIGATION MISCONDUCT.

21             THE COURT:  WELL, I'M SURE YOU DISAGREE WITH ALL

22   OF THEM.

23             MR. CASTANIAS:  WELL -- AND INDEED I'M NOT GOING

24   TO GO THROUGH THEM.

25             THE COURT:  THAT'S PUT IN YOUR BRIEFS.  I MEAN,

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

1    YOU MIGHT WANT TO PROPERLY GET INTO THE ISSUE OF THE -- YOU'D

2    MENTIONED COST AND YOU'D MENTIONED THE CALCULATION OF

3    PREJUDGMENT INTEREST.

4              MR. CASTANIAS:  RIGHT.  I'D JUST LIKE TO MAKE

5    ONE MORE POINT WITH REGARD TO THE FEES AND --

6              THE COURT:  ALL RIGHT.

7              MR. CASTANIAS:  WE DON'T CLAIM TO BE THE ONLY

8    PREVAILING PARTY HERE.  I BELIEVE I HEARD THERE'S 79 MILLION

9    REASONS WHY WE'RE NOT THE PREVAILING PARTY.  OUR CLAIM IS THAT

10   WE WERE ALSO THE PREVAILING PARTY BECAUSE WE INVALIDATED SEVEN

11   CLAIMS AND WON ON AN EIGHTH.  THE MANILDRA DRILLING CASE WHICH

12   IS FINISAR'S CASE THAT IT CITED IN ITS BRIEF FILED YESTERDAY

13   SAYS WITH HANDLING A COMPETITOR'S PATENT BE DECLARED INVALID

14   MEETS THE DEFINITION OF PREVAILING PARTY.  THE SAME GOES FOR

15   THE CASE OF FINLAND STEEL CITED IN OUR BRIEF.

16             LET ME TURN VERY QUICKLY TO THE ISSUE OF

17   PREJUDGMENT INTEREST.  AS THE COURT HAS NOTED, WE DON'T OPPOSE

18   FINISAR'S REQUEST FOR INTEREST AT THE TEXAS STATUTORY RATE; BUT

19   WHAT WE DO SAY IS THAT THE TEXAS STATUTORY RATE AS A MATTER OF

20   STATUTORY CONSTRUCTION IS SIMPLE INTEREST.  THAT'S THE

21   EQUITY -- IF YOU'LL EXCUSE ME FOR JUST A SECOND, YOUR HONOR,

22   LET ME GRAB THE CASE.  THAT'S THE T8 VERSUS MUTUAL LIFE

23   INSURANCE OF NEW YORK CASE OUT OF THIS DISTRICT IN 1997, IN

24   FACT IT'S EVEN OUT OF THIS DIVISION.  IT SAYS THAT UNDER THE

25   TEXAS STATUTE IT ALLOWS FOR INTEREST AT THE RATE OF SIX PERCENT

1   PER ANNUM, WHICH THE TEXAS COURTS HAVE INTERPRETED AS MEETING

2   SIMPLE INTEREST.  THAT'S AT 893 TO 894 OF 965 F. SUPP.  THE

3   COURT GOES ON TO SAY IN A LATER PORTION OF THE OPINION, AGAIN

4   DISCUSSING THE TEXAS STATUTE:  THIS SIX PERCENT PER ANNUM IS

5   SIMPLE INTEREST, AND IT CITES THE GORMAN AGAINST LIFE INSURANCE

6   COMPANY OF NORTH AMERICA CASE AT 859 SOUTHWESTERN 2D. 382, OUT

7   OF THE TEXAS COURT OF APPEALS, HOUSTON, FIRST DISTRICT, 1993

8   AND CHEMICAL COMPANY VERSUS DEHAVEN, 824 SOUTHWESTERN 2D. 257,

9   ALSO OUT OF THE HOUSTON TEXAS APPEALS COURT 14TH DISTRICT, AND

10  THEN A SOUTHERN DISTRICT OF TEXAS CASE OF HARTFORD ACCIDENT AND

11  INDEMNITY, 862 F. SUPP. 160.  OUR POINT WITH REGARD TO

12  COMPOUNDING IS THIS:  THE TEXAS STATUTE SAYS IT'S SIMPLE.

13  THAT'S THE WAY THE INTEREST SHOULD BE CALCULATED.  ALSO ADD

14  THAT WITH REGARD TO THE PARTICULAR METRICS WITH REGARD TO THE

15  COMPOUNDING CALCULATIONS THAT FINISAR OFFERS, ALL THEY OFFERED

16  TODAY WAS SUPPOSITIONS AND HOW DIRECTV PROBABLY GETS ITS MONEY

17  TO SUPPORT THOSE CALCULATIONS.  AND WE DON'T HAVE ANY EVIDENCE

18  ON THAT, AND I THINK THE COURT POINTED OUT THAT THERE -- IT WAS

19  A LITTLE BIT OF UNREALITY TO DOING IT ON A DAILY BASIS.

20          FINALLY, LET ME ADDRESS THE ISSUE OF COST VERY

21  BRIEFLY.  FINISAR SAYS IT'S NOT TIME TO ASK FOR COSTS.  WE

22  BELIEVE THIS IS EXACTLY THE SORT OF THING THAT SHOULD BE

23  DETERMINED NOW, CAN BE DETERMINED NOW, AND IT SHOULD BE DENIED

24  NOW.

25          AGAIN, I POINT OUT DEFENDANTS PREVAIL ON EIGHT

1 CLAIMS; FINISAR, ON SEVEN.  WE'RE NOT CLAIMING TO BE THE

2 PREVAILING PARTY, BUT WE ARE CLAIMING THAT WE WOULD BE ENTITLED

3 TO OFFSET IN THAT CIRCUMSTANCES, SO THE ISSUE OF COST WASHES

4 OUT.

5 　　　　　IN ADDITION, BECAUSE SEVEN OF THE 505 PATENT

6 CLAIMS WERE DECLARED INVALID AND HAVE NOT TO THIS POINT BEEN

7 DISCLAIMED AT THE PATENT AND TRADEMARK OFFICE, SECTION 288 OF

8 TITLE 35, THE PATENT LAWS, THIS ENTITLES FINISAR TO COSTS IN

9 THIS CASE.  FINISAR'S REQUEST FOR COST SHOULD BE DENIED.

10 　　　　　THE COURT:  LET ME ASK YOU.  IN THE -- ATTACHED

11 TO ONE OF YOUR BRIEFS, I'VE GOT DEFENDANT'S RECALCULATION,

12 PLAINTIFF'S CALCULATION OF PREJUDGMENT INTEREST, AND THEN GOT

13 DEFENDANT'S RECALCULATIONS.  NOW YOU HAVE IN THERE COMPOUNDED

14 ANNUALLY.  AND YOU COME UP WITH $13 MILLION AS OPPOSED TO THEIR

15 $14 MILLION.  THAT'S WHAT I'M UNDERSTANDING THE DIFFERENCE HERE

16 TO BE?

17 　　　　　MR. CASTANIAS:  IF THE COURT REJECTS THE TEXAS

18 LAW THAT SAYS THAT THE INTEREST IS SIMPLE INTEREST, THAT WOULD

19 BE THE DIFFERENCE.  BUT IF YOU TURN BACK TO EXHIBIT 1 -- I

20 THINK YOU'RE LOOKING AT EXHIBIT 2, YOUR HONOR.

21 　　　　　THE COURT:  OKAY.

22 　　　　　THE CLERK:  YOUR TIME IS UP.

23 　　　　　MR. CASTANIAS:  YOUR HONOR, I'LL TRY TO ANSWER

24 THIS QUESTION, AND THEN I'LL BE DONE.

25 　　　　　THE COURT:  ALL RIGHT.

```
 1                 MR. CASTANIAS:  DO YOU HAVE EXHIBIT 1 IN FRONT

 2    OF YOU?  IF NOT, I CAN GET IT.

 3                 THE COURT:  I HAVE IT.

 4                 MR. CASTANIAS:  EXHIBIT 1 SHOWS AT SIMPLE

 5    INTEREST, THE NUMBER WOULD BE 11,163,697.

 6                 THE COURT:  OKAY.  ALL RIGHT.

 7                 MR. CASTANIAS:  THANK YOU, YOUR HONOR.

 8                 MR. ROBERTS:  WE JUST HAVE TWO MINUTES FOR

 9    REBUTTAL, YOUR HONOR?

10                 THE COURT:  ALL RIGHT.

11                 MR. ROBERTS:  I JUST WANTED TO POINT OUT THAT ON

12    DETERMINING COSTS UNDER THE STATUTE, IT'S NOT POSSIBLE TO JUST

13    DISCLAIM A PATENT CLAIM THAT'S INVALID UNLESS YOU KNOW IT'S

14    INVALID AT THE TIME.  SO ASKING US TO DISCLAIM THAT PRIOR TO

15    THE FILING OF SUIT IS REALLY AN EXERCISE IN CLAIRVOYANCE IN

16    THAT YOU MUST NOT HAVE THE STATUTE SHOULD BE CONSTRUED.  I

17    DON'T KNOW IF THIS IS IN THE PAPERS, BUT IF YOU TAKE THE JURY'S

18    DAMAGES FINDINGS, DIVIDE THAT INTO THE REVENUE, I BELIEVE THE

19    RATE IS .1428 PERCENT.  THAT WOULD OBVIOUSLY BE PREFERABLE TO

20    $1.32 PER SET TOP BOX BASIS BECAUSE OF THE DIFFICULTIES WE'VE

21    OUTLINED IN IDENTIFYING WHAT A SET TOP BOX IS.

22                 FINALLY, THE SHATTERPROOF GLASS CASE IS REALLY

23    AN ANOMALY.  IN THAT CASE THE PLAINTIFF ASKED FOR FOUR PERCENT.

24    THE JURY GAVE HIM FIVE PERCENT, AND THE PLAINTIFF SAID THAT'S

25    GREAT, WE'LL TAKE IT.  AND IT WAS THE DEFENDANT WHO OPPOSED
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

1    THAT ENTRY, THAT COMPULSORY LICENSE POST VERDICT, NOT THE

2    PLAINTIFF.  SO THE ISSUES THAT WERE PRESENT IN THIS CASE WERE

3    REALLY NOT LITIGATED IN THAT CASE.

4              FINALLY, THE MAHURKAR CASE IS USEFUL BECAUSE OF

5    THE ECONOMIC ANALYSIS PROVIDED BY JUDGE EASTERBROOK ON THE

6    VALUE OF AN INJUNCTION.  AND HERE THE BALANCE OF THE HARM, THEY

7    TALKED ABOUT THE FCC LICENSE, BUT WE REALLY SEE NO EVIDENCE

8    ABOUT THAT, JUST SOME QUOTING OF THE STATUTE, AND WE DON'T KNOW

9    REALLY WHAT THE IMPACT OF THAT WOULD BE.  THANK YOU, YOUR

10   HONOR.

11             THE COURT:  ALL RIGHT.

12             MR. CASTANIAS:  YOUR HONOR, ONE POINT.  THE .14,

13   WHATEVER THE NUMBERS WERE THAT WERE OFFERED BY MR. ROBERTS IN

14   REBUTTAL, THIS IS THE FIRST TIME WE'VE HEARD THAT BECAUSE IT'S

15   NOT IN THE BRIEF.  IT'S A LITTLE LATE FOR US TO BE ABLE TO

16   RESPOND TO THAT.

17             THE COURT:  OKAY.  WE'VE GOT -- ACTUALLY I'D

18   NORMALLY TAKE A BREAK, BUT I'VE GOT A DOCTOR'S APPOINTMENT THIS

19   AFTERNOON, SO I'M GOING TO GO AHEAD AND MAKE MY ANNOUNCEMENTS

20   NOW.

21             FIRST, BEFORE I FORGET BECAUSE OF THE BULK OF

22   PAPER EXHIBITS, I AM GOING TO ORDER THAT THE PARTIES GET

23   TOGETHER, TAKE THE ADMITTED EXHIBITS, GO AHEAD AND PUT THEM ON

24   DISK LIKE YOU DID WITH ALL THE OTHER LISTS, AND THAT'S WHAT THE

25   DEPUTY CLERK WILL KEEP OR OUR CLERK'S OFFICE WILL KEEP.  IT'S

1  THE DISK FORM OF THEM.  AND THEN THE PARTIES WILL BE

2  RESPONSIBLE FOR KEEPING THE ORIGINALS.  AND SHOULD THE HIGHER

3  COURT ASK FOR A COPY OF ONE OR ANOTHER, THEN YOU'LL BE

4  RESPONSIBLE FOR GETTING IT UP.  AND IF THERE WINDS UP BEING

5  SOME KIND OF A PROBLEM OVER, GEE, THAT ISN'T THE REAL EXHIBIT

6  THAT'S BEING SET FORWARD, THE COURT SHOULD HAVE THE ELECTRONIC

7  COPY.  THAT'LL MEAN OBVIOUSLY SOME COOPERATION WHERE YOU VIEW

8  EACH OTHER'S VERSIONS.  SOME OF THEM -- I THINK THERE ARE A

9  COUPLE OF THEM THAT'S REDACTIONS OR A PAGE TAKEN OUT OR

10 SOMETHING LIKE THAT; BUT I'D LIKE TO GET THAT DONE SO THAT OUR

11 LIMITED STORAGE SPACE DOWNSTAIRS IS NOT COMPLETELY TAKEN UP

12 WITH THESE BOXES, ESPECIALLY IN VIEW OF THE NUMBER OF PATENT

13 CASES I'M GETTING IN.  IF I -- I SHOULD HAVE THOUGHT OF THAT

14 EARLIER, BUT THAT'S WHAT I WANT DONE ON THAT.  WE'LL KEEP THE

15 ELECTRONIC VERSION.  YOU'LL BE RESPONSIBLE FOR THE ORIGINALS OF

16 YOUR OWN.  IF THERE'S ANY DISPUTE, THEN THE ELECTRONIC VERSION

17 WILL BE THE ONE, SO I SUGGEST THAT BOTH SIDES CHECK THAT

18 ELECTRONIC, MUTUALLY EXCHANGE THOSE, MAKE SURE THEY'RE CORRECT

19 AND THEN HANG ON TO THEM.

20         ALL RIGHT.  AS FAR AS THE -- I'LL START OFF WITH

21 THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON THE GECSEI

22 TEXTBOOK, THAT'S DOCUMENT, I BELIEVE, 106 AND THE MOTIONS FOR

23 JMOL ON ANTICIPATION.  TAKING A LOOK AT ANTICIPATION, THE COURT

24 REFERS TO BROWN VERSUS 3M AT 265 FED.3RD, 1349, FIFTH CIRCUIT

25 2001.  AND THAT CASE TEACHES A NUMBER OF THINGS, BUT ONE OF

1    THOSE IS THAT ANTICIPATION SUFFICIENT TO PRECLUDE PATENT

2    PROTECTION MEANS A LACK OF NOVELTY.  IT'S A QUESTION OF FACT.

3    AND FOR ANTICIPATION TO PRECLUDE PATENT PROTECTION, EVERY

4    ELEMENT AND LIMITATION OF THE CLAIMED INVENTION MUST BE FOUND

5    IN A SINGLE PRIOR REFERENCE.  AND THEN THEY POINT OUT -- THIS

6    IS A SHORTHAND WAY -- THAT WHICH INFRINGES A PATENT, IT LATER

7    WINDS UP ANTICIPATING AN EARLIER.  IN OTHER WORDS, YOU

8    BASICALLY HAVE TO LAY OUT THE INVENTION IN THE ANTICIPATED

9    REFERENCE.  I THINK BOTH EXPERTS ON BOTH SIDES UNDERSTOOD THAT.

10              LOOKING AT A SUMMARY JUDGMENT, AT THE SUMMARY

11   JUDGMENT FIRST, ALL FACTS AND DISPUTES HAVE TO BE RESOLVED IN

12   FAVOR OF THE NONMOVEMENT.  IN THAT CASE -- IN THIS CASE IT

13   WOULD BE -- WOULD HAVE TO BE RESOLVED IN FAVOR OF FINISAR.  AND

14   TO SOME DEGREE IT WAS CLOSE, BUT THE STANDARD, OF COURSE, IS

15   CLEAR AND CONVINCING EVIDENCE TO OVERCOME THE PRESUMPTION OF

16   INVALIDITY.

17              NOW MR. EDEN'S REBUTTLE IN THE COURT'S MIND WAS

18   SOMEWHAT CONFUSING.  IT KEPT FOCUSING ON THINGS THAT DR. TJADEN

19   REALLY DIDN'T SAY AND TALKING ABOUT THAT 10.5 DIAGRAM RATHER

20   THAN TAKING A LOOK AT THE TEXT ITSELF.  BUT ON THE OTHER HAND,

21   DR. TJADEN'S AFFIDAVIT THE WAY HE CHARTED EXACTLY WAS NOT

22   CLEAR.  I CAN TELL YOU, THE COURT HAD THE VERY DIFFERENT

23   IMPRESSION THAT TO COMBINE THE CHART DESCRIPTION FOR ONE STEP

24   OR THE CHART DESCRIPTION FOR ANOTHER STEP, AND TO COMBINE THAT

25   WITH PARTS OF THE TEXT THAT WEREN'T EVEN CHARTERED OR MENTIONED

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

100

```
1    IN THE AFFIDAVIT.  THAT MIGHT GET PRETTY CLOSE TO ANTICIPATION.

2    BUT THAT'S NOT CLEAR, IT'S NOT CONVINCING, AND IT'S THE LIGHT

3    MOST FAVORABLE TO NONMOVEMENT.  SO MOTION FOR SUMMARY JUDGMENT

4    IS DENIED.

5            THEN WHEN WE TAKE A LOOK AT THE JUDGMENT AS A

6    MATTER OF LAW, OF COURSE, THERE WE'RE TAKING A LOOK AT THE

7    STANDARD OF REVIEW ON A JMOL, AND AS IT'S PRETTY COMMON LAW,

8    THE COURT CAN'T MAKE CREDIBILITY DETERMINATIONS, CAN'T WEIGH

9    CONFLICTING EVIDENCE.  THAT'S REEVES VERSUS SANDERSON PLUMBING

10   AT 530 US. 133 -- THAT'S AT PAGE 155 -- 120 SUPREME COURT,

11   2097, PAGE 2110, AND THAT'S 2000.

12           THE CASES HAVE RECOGNIZED THE JUDGMENT, AS A

13   MATTER OF LAW, IS A HEAVY BURDEN.  TAKE A LOOK AT THE PINEDA

14   VERSUS UNITED PARCEL SERVICES CASE, 360 FED. 3RD, 483, AND THEY

15   ALSO USE LANGUAGE SUCH AS IF REASONABLE PERSONS COULD DIFFER ON

16   INTERPRETATION, AND THE MOTION SHOULD BE DENIED.  JMOL IS GOING

17   TO BE GRANTED WHEN THE FACTS AND INFERENCES POINT SO STRONGLY

18   AND OVERWHELMINGLY IN FAVOR OF ONE PARTY IF THE COURT BELIEVES

19   REASONABLE MEN COULD NOT ARRIVE AT A CONTRARY VERDICT.  WE SEE

20   THAT IN WALLACE VERSUS METHODIST HOSPITAL SYSTEM, 271 FED. 3RD,

21   212 AT PAGE 219, FIFTH CIRCUIT OF 2001.

22           AND THEN AGAIN LOOKING AT REEVES, THE SUPREME

23   COURT SAID THAT NORMALLY BE GRANTED ONLY WHEN THERE'S NO

24   LEGALLY SUFFICIENT EVIDENTIARY BASIS FOR A REASONABLE JURY TO

25   FIND FOR THE PARTY ON AN ISSUE, ONE SET PARTY HAS BEEN FULLY
```

1    HEARD.

2              AND SO LOOKING AT CASES AND WHAT THE COURT HAS

3    TO DO IS, OF COURSE, SHOULD FIRST DRAW ALL REASONABLE

4    INFERENCES IN FAVOR OF THE NONMOVEMENT, ELLIS VERSUS WEESLER,

5    258 FED. 3RD, 326:  GIVE CREDENCE TO EVIDENCE SUPPORTING

6    MOVEMENT THAT IS UNCONTRADICTED AND UNIMPEACHED.  AND THAT'S

7    ELLIS VERSUS WEESLER, AND I'VE GOT TO SAY THAT THERE'S ALMOST

8    NO EVIDENCE IN THIS CASE IS UNCONTRADICTED OR UNIMPEACHED IN

9    ONE WAY OR ANOTHER.  AND THEN TAKE INTO ACCOUNT MOVANT'S BURDEN

10   OF PROOF.  THAT'S SET OUT IN THE HARSKO VERSUS KIRKEN CASE, 965

11   FED. SUPP, 580, PAGE 584.  THAT'S OUT OF THE DISTRICT COURT OF

12   MARYLAND, PENNSYLVANIA, 1997.  IT WAS A PATENT CASE.  AND GIVEN

13   THE VARIOUS BURDENS OF PROOF IN A PATENT CASE, IT MAKES A LOT

14   OF SENSE.

15             SO AS TO JUDGEMENT AS A MATTER OF LAW

16   DR. TJADEN'S BURDEN OR DEFENDANT'S BURDEN WOULD HAVE BEEN ON

17   ANTICIPATION WAS STILL CLEAR AND CONVINCING EVIDENCE.  AND

18   AGAIN, I'VE GOT TO SAY THAT WITH THE TESTIMONY PROVIDED BY

19   MR. EATON, IT CERTAINLY SEEMED THAT A CASE FOR ANTICIPATION

20   MIGHT HAVE BEEN MADE.  BUT, ON THE OTHER HAND, I'VE GOT TO TAKE

21   INTO CONSIDERATION THAT I'VE READ THE GECSEI BOOK, HAD DONE A

22   LOT MORE STUDY THAN WAS ACTUALLY JUST PRESENTED AT TRIAL.  AND

23   I'VE GOT TO LOOK WHEN I'M LOOKING AT THIS, WHAT WAS PRESENTED

24   TO THE JURY.  AGAIN, TO THE JURY THERE WERE PARTS OF THAT BOOK

25   THAT WERE NOT CHARTED OR MENTIONED BY DR. TJADEN IN HIS

1   TESTIMONY.  HE CHOSE TO USE SUMMARIES FOR THE STEPS TO EACH

2   CLAIM RATHER THAN THE LANGUAGE OF THE CLAIM ITSELF.  THAT WAS

3   CONFUSING, AND I MADE A NOTE THAT EVEN MR. TOUTON SEEMED TAKEN

4   A LITTLE ABACK WHEN THAT FIRST WENT UP ON THE BOARD.  THE JURY

5   WAS INSTRUCTED THAT DIRECTV HAD TO PROVE BY CLEAR AND

6   CONVINCING EVIDENCE EACH AND EVERY STEP OF A CLAIM WAS PRESENT

7   IN THE GECSEI BOOK.  HIS TESTIMONY USED SUMMARIES AND

8   CONCLUSION AND ANIMATION THAT WAS NOT IN THE BOOK.  NOW BRIEF

9   USE IN ANIMATION CAN SOMETIMES EXPLAIN A DIAGRAM, BUT THOSE

10  ANIMATED JELLY BEANS, FOR EXAMPLE, IN FIGURE 10.5 COULD ALSO BE

11  SEEN AS JUST AN EXTRAPOLATION OR INTERPRETATION OF THE DIAGRAM

12  THAT WASN'T IN THE BOOK ITSELF, WASN'T REALLY TAKEN FROM THE

13  TEXT, AND IT MAY NOT HAVE BEEN CLEARLY AND CONVINCING -- OR IT

14  WASN'T CLEARLY AND CONVINCING ESTABLISHED, IF THAT'S THE

15  INTERPRETATION THAT ONE SKILLED IN THE ART PRIOR TO

16  NOVEMBER 1991 WOULD HAVE DRAWN.  AND, OF COURSE, THE JURY IS

17  ENTITLED TO DISBELIEVE DR. TJADEN.  THEY COULD DISCOUNT HIS

18  CREDIBILITY -- CREDIBILITY BASED ON ANY NUMBER OF FACTORS,

19  INCLUDING THE AMOUNT HE WAS PAID, THE AMOUNT OF TIME HE TOOK,

20  ANY NUMBER OF FACTORS WHICH THEY'RE INSTRUCTED THEY CAN

21  CONSIDER.  AND THEY'RE ENTITLED TO CONSIDER THE ALTERNATE

22  EXPLANATIONS FOR THE DIAGRAMS AND THE ANIMATED DIAGRAM GIVEN BY

23  MR. EATON.

24          I'VE INDICATED MR. EATON'S TESTIMONY FROM THE

25  COURT'S POINT OF VIEW MAY NOT HAVE BEEN CLEAR AND CONVINCING,

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

103

```
 1   BUT THAT WASN'T HIS BURDEN.  IT'S WASN'T FINISAR'S BURDEN TO
 2   PROVE BY CLEAR AND CONVINCING; IT WAS DEFENDANT'S BURDEN.
 3   TECHNICALLY, DEFENDANT -- PLAINTIFF COULD BE SILENT ON THAT
 4   ISSUE AND THE OTHER SIDE JUST MIGHT NOT MAKE THE BURDEN AND
 5   COULD JUST TAKE HIM ON CROSS EXAMINATION.  SO IN THE END
 6   DEFENDANT -- DIRECTV HAD THE BURDEN OF PROOF BY CLEAR AND
 7   CONVINCING EVIDENCE.  THE JURY DIDN'T FIND THAT HE MADE IT --
 8   THEY MET IT, AND THE COURT CAN'T POINT TO ANY EVIDENCE THAT WAS
 9   CLEAR AND CONVINCING OR SO OVERWHELMING REASONABLE JURY SHOULD
10   HAVE FOUND OTHERWISE.  MOTION FOR JUDGMENT AS A MATTER OF LAW
11   ON THAT ISSUE IS DENIED.
12             THEN WE GO ON TO THE LATCHES.  NOW, HERE THE
13   JURY'S OPINION OR VERDICT IS ADVISORY.  IT'S AN EQUITABLE
14   DEFENSE, AND THE COURT HAS TO LOOK AT THE PARTICULAR FACTS AND
15   CIRCUMSTANCES OF THIS CASE, WEIGH THE EQUITIES OF THE PARTIES.
16   THAT'S THE AC HACKERMAN COMPANY VERSUS KHCHAIDES CONSTRUCTION,
17   960 FED. REPORTER 2D. 1020, FED CIRCUIT 1992.  AND HERE DIRECTV
18   WOULD HAVE HAD THE BURDEN TO PROVE TWO FACTORS:  ON, DEFENDANT
19   DELAYED FILING SUIT FOR UNREASONABLE LENGTH OF TIME, THE TIME
20   PLAINTIFF KNEW OR SHOULD HAVE KNOWN OF ITS CLAIM AGAINST THE
21   DEFENDANT, AND THE DELAY OPERATED A PREJUDICE OR INJURY TO
22   DEFENDANT.  THAT'S AT PAGE 1032 OF THE HACKERMAN CASE.
23   MATERIAL PREJUDICE IS ESSENTIAL FOR A LATCHES DEFENSE, AND THEY
24   TALK ABOUT THAT IN THE HACKERMAN CASE AT PAGE 1033.
25   EVIDENTIARY PREJUDICE ARISES WHEN THE DELAY CAUSES DOCUMENTS TO
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

104

1   BE LOST, UNRELIABILITY OF MEMORY, DEATH OF WITNESSES, SO FORTH.

2   ECONOMIC PREJUDICE ARISES IF THE DEFENDANT WOULD HAVE LOST

3   MONETARY INVESTMENTS OR INCURRED DAMAGES WHICH COULD HAVE BEEN

4   PREVENTED BY AN EARLIER SUIT.

5           NOW, THERE WAS SOME EVIDENCE BY SAUSVILLE THAT

6   HE BROUGHT THE PATENT TO THE ATTENTION OF HUGHES IN 1997 AND

7   THEN SOME EVIDENCE BROUGHT OUT BY MR. SAVIKAS ON CROSS

8   EXAMINATION THAT HE KNEW OR SHOULD HAVE BEEN ABLE TO FIGURE OUT

9   THE DIRECTV SYSTEM INFRINGED.  THAT WAS MAINLY BASED ON

10  SUPPOSEDLY HOW SMART HE WAS.  BUT THE PROBLEM HERE FROM THE

11  JURY'S POINT OF VIEW AND THE COURT'S POINT OF VIEW IS

12  DIRECTV'S -- LIKE BOTH PARTIES DID AND COUNSEL ARE ENTITLED TO

13  DO, BUT I THINK YOU HAVE TO BE CAREFUL WHEN YOU'RE DOING THIS

14  TO A JURY BECAUSE THEN THEY HAVE CONFLICTING EVIDENCE ARGUING

15  BOTH SIDES OF THE ISSUE.  FROM THE JURY'S POINT OF VIEW AND

16  FROM YOUR EVIDENCE ON BOTH SIDES AND IF THERE'S CONFLICTING

17  EVIDENCE, JMOL CAN'T BE GRANTED.  WE HAD A PROFESSOR FROM MIT

18  EXPLAIN THAT DIRECTV'S METHOD WAS FAR DIFFERENT FROM THAT OF

19  THE PATENT.  AND ON THE OTHER SIDE SHOW THAT SAUSVILLE, WHO A

20  SHORT TIME IN 1997 WAS EMPLOYED AS A SALESMAN FOR FINISAR,

21  SHOULD HAVE INSTANTLY KNOWN OF THE INFRINGEMENT.  WHEN YOU'VE

22  GOT THAT KIND OF CONFLICT, THE COURT CAN'T FAULT THE JURY FOR

23  FAILING TO FIND LATCHES, AND AS A MATTER OF EQUITY THE COURT

24  DOESN'T FIND THE ARGUMENT VERY CONVINCING.  DIRECTV ALSO ARGUED

25  THAT FINISAR COULD HAVE BROUGHT A SET TOP BOX, ANALYZED THE

1   SYSTEM TO DETERMINE INFRINGEMENTS, AND THAT RAISES THE QUESTION

2   IS:  ARE PATENT HOLDER REQUIRED TO ASSUME THAT TECHNOLOGY

3   ASSOCIATED WITH THEIR FIELD IS INFRINGING, INVESTIGATE IT AND

4   TAKE ACTION?  THE MERE USE OF SATELLITES AND TV DOESN'T MAKE IT

5   INFRINGING OR EVEN USE FOR PROGRAM DATA.

6           THE SIX-YEAR PRESUMPTION DOESN'T REALLY HELP

7   DIRECTV.  JUST LIKE MOST PRESUMPTIONS, IT'S A BURSTING BUBBLE

8   PRESUMPTION.  WE SEE THAT AT 960 FED. 2D. AT 1037 THERE IN THE

9   HACKERMAN CASE.  WE HAVE SAUSVILLE, LEVINSON, AND RAWLS SAYING

10  THEY DIDN'T KNOW OF THE POSSIBLE INFRINGEMENT UNTIL THE TIME

11  WITHIN THE SIX YEARS BEFORE SUIT.  YES, THERE WAS SOME CROSS

12  EXAMINATION OF THEM, BUT THERE'S NO REAL BASIS TO FIND THEY'RE

13  NOT CREDIBLE.

14          THE LETTER WAS SENT IN 2004 AND THEN SOME 400

15  DAYS LATER SUIT WAS FILED, SO AGAIN, LOOKING AT BURDENS OF

16  PROOF HERE, MAYBE FINISAR COULD HAVE KNOWN ABOUT THE

17  INFRINGEMENT; BUT IT'S JUST AS LIKELY THAT THEY DIDN'T AND

18  SHOULD NOT HAVE.  SO THE COURT FINDS IT'S NOT BEEN SHOWN BY A

19  PREPONDERANCE OF THE EVIDENCE AND CERTAINLY NOT TO ANY HIGHER

20  STANDARD OF PROOF THAT FINISAR KNEW OF POTENTIAL INFRINGEMENT

21  BY DIRECTV PRIOR TO 2003 AND FINDS IT'S NOT BEEN SHOWN BY A

22  PREPONDERANCE OF THE EVIDENCE.

23          MORE IMPORTANTLY, IN THE ISSUE OF ECONOMIC

24  PREJUDICE, WHICH IS ANOTHER ISSUE, THERE'S NO REAL EVIDENCE OF

25  ECONOMIC PREJUDICE.  THERE WAS TESTIMONY OF SUPPOSEDLY TWO

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

106

```
 1   INEXPENSIVE ALTERNATIVES.  SUPPOSEDLY THEY COST ABOUT $800,000
 2   TOTAL.  IT COULD HAVE BEEN USED.  BUT THERE WAS NO TESTIMONY
 3   WHY THEY WEREN'T USED OR WHY THEY WOULD HAVE BEEN -- IT WOULD
 4   BE MORE EXPENSIVE TO USE THEM NOW THAN IT WOULD HAVE BEEN BACK
 5   THEN.  THE COURT CAN IMAGINE THAT WAS TRUE, BUT I DIDN'T HEAR
 6   ANY TESTIMONY ABOUT THAT FROM THE DEFENDANT.  THE DEFENDANT'S
 7   BEEN MAKING GOOD PROFITS.  NOTHING INDICATES THEY CAN'T
 8   CONTINUE MAKING GOOD PROFITS AND GOOD REVENUES, EVEN IF THERE
 9   WAS A COMPULSORY LICENSE.  AND SO NO REAL EXPLANATION ABOUT WHY
10   THERE HAVE BEEN ECONOMIC PREJUDICE IF THIS HAD BEEN BROUGHT UP
11   AT THE DAY THAT THE PATENT WAS ISSUED OR -- YEAH, THE DAY THE
12   PATENT ISSUED.  AND THEN EVIDENTIARY PREJUDICE, YOU GET INTO
13   WHERE DOCUMENTS AND WITNESSES AND SO FORTH WHERE THERE WAS SOME
14   HINT BY MS. FERGUSON OF DOCUMENTS BEING HARD TO FIND AND SOME
15   COPIES OF DOCUMENTS BEING A LITTLE DIFFERENT, BUT SHE NEVER
16   TESTIFIED, FOR EXAMPLE, THAT THERE WAS A DOCUMENT DISPOSAL
17   PROGRAM IN PLACE OR BEEN A FIRE THAT DESTROYED A BUNCH OF
18   DOCUMENTS.  YES, THERE'S BEEN SOME CHANGE OF CORPORATION, BUT
19   YOU'D EXPECT KEY DOCUMENTS WOULD BE KEPT.  NO TESTIMONY ABOUT
20   KEY WITNESS BEING MISSING.  WE HAD TESTIMONY FROM THE FIRST CEO
21   OR PRESIDENT, MR. HARTENSTEIN.  WE HAD MS. FERGUSON, WHO WAS
22   THERE FROM THE BEGINNING, SHE SAID, IN HER JOB IN MARKETING.
23   AND THEN ROBERT ARCENEAU, I BELIEVE, WHO HAD TESTIFIED THAT HE
24   WAS THERE FROM AT LEAST 1992, AND HE WAS RESPONSIBLE FOR THIS
25   PROGRAMMING.  AND I THINK THAT HE PUT HIMSELF THE ULTIMATE
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
107

1   AUTHORITY OR THE ABSOLUTE AUTHORITY ON THE SYSTEM.  SO THERE'S

2   NO INDICATION THAT ANY DELAY, EVEN IF THERE HAD BEEN A LONG

3   DELAY, WOULD SOMEHOW PREJUDICE DIRECTV.  SO THEN DIRECTV

4   DOESN'T MEET IT'S BURDEN ON THIS.  AND THE JURY WASN'T

5   CONVINCED, AND MORE IMPORTANTLY, NEITHER IS THE COURT.  SO, THE

6   MOTION FOR SUMMARY -- ANY MOTION FOR SUMMARY JUDGMENT AND THE

7   JUDGMENT AS A MATTER OF LAW ON LATCHES ARE DENIED.

8            NOW, WE THEN GET INTO THE INDUCED INFRINGEMENTS,

9   AND IN LIGHT OF THE FINDING OF DIRECT INFRINGEMENT BY THE JURY

10  MAY BE MOOT.  THE BURDEN ON THIS ISSUE IS ON FINISAR BY A

11  PREPONDERANCE OF THE EVIDENCE.  AND THERE WAS AMPLE EVIDENCE OF

12  JOINT INFRINGEMENT BY THE NAMED DEFENDANTS.  BUT THE COURT

13  CONCLUDES INSUFFICIENT EVIDENCE AS TO ANYBODY OTHER THAN THE

14  NAMED DEFENDANTS BEING INVOLVED IN ANY TYPE OF INFRINGEMENT.

15  SO THE COURT CONCLUDES THERE IS NO LEGALLY SUFFICIENT BASIS FOR

16  A JURY TO FIND INDUCED INFRINGEMENT AS WHO WAS INDUCED OTHER

17  THAN THE NAMED DEFENDANTS ALREADY.  SO THE DEFENDANT'S MOTION

18  FOR JMOL ON INDUCED INFRINGEMENT IS GRANTED.  AGAIN, THE COURT

19  RECOGNIZES THIS MAY BE MOOT.  AND SIMILARLY, AS TO THE

20  CONTRIBUTORY INFRINGEMENT, FINISAR HAS THE BURDEN BY A

21  PREPONDERANCE OF THE EVIDENCE.  AMPLE EVIDENCE OF JOINT

22  INFRINGEMENT OF THE NAMED DEFENDANTS.  INSUFFICIENT EVIDENCE AS

23  TO ANYBODY OTHER THAN THE NAMED DEFENDANTS BEING INVOLVED.  NO

24  REAL EVIDENCE OF A SALE OF AN ITEM OR METHOD THE ALLOWED

25  SOMEONE ELSE TO INFRINGE.  AND SO, AGAIN, THE COURT CONCLUDES

1  THERE IS LEGAL INSUFFICIENT -- THERE IS NO LEGALLY SUFFICIENT

2  THAT A JURY FIND CONTRIBUTORY INFRINGEMENT.  DEFENSE MOTION FOR

3  JMOL ON CONTRIBUTORY INFRINGEMENT IS GRANTED.

4           NOW, WILLFUL INFRINGEMENT, DEFENDANT HAS A JMOL

5  ON THAT.  HERE, THE BURDEN IS ON THE DEFENDANT TO PROVE BY

6  CLEAR AND CONVINCING EVIDENCE.  AND THE COURT HAS TO BE MINDFUL

7  OF VARYING DEGREES OF WILLFULNESS RANGING FROM WHAT YOU MIGHT

8  TALK ABOUT AS A NEGLIGENT DISREGARD OF PATENT HOLDER'S RIGHTS

9  CHOOSING NOT TO INVESTIGATE TOO CLOSELY OR QUICKLY TO A

10 DELIBERATE VIOLATION OF THOSE RIGHTS, DELIBERATELY COPYING,

11 STEALING EMPLOYEES, STEALING DOCUMENTS.  AND IT'S TAKEN FROM

12 THE VIRGINIA PANEL CORPORATION VERSUS MACK PANEL COMPANY, 133

13 FED. 3RD. 860, FIFTH CIRCUIT, 1997.  IT'S SPECIFICALLY AT PAGE

14 867 AND ALSO AT NOTE 4 ON PAGE 867.

15          NOW, THE FACTORS THAT THE COURT SHOULD LOOK AT

16 TO SEE IF THERE WAS LEGALLY INSUFFICIENT EVIDENCE AS SET OUT

17 BASICALLY IN THE JURY INSTRUCTIONS IS WAS THE INFRINGER -- AND

18 THIS IS ON WILLFUL -- DID THE INFRINGER DELIBERATELY COPY THE

19 IDEAS OF ANOTHER, DID THEY DELIBERATELY COPY THE IDEAS OF

20 ANOTHER?  NO EVIDENCE OF THAT.  IF THERE HAD BEEN, IT WOULD

21 INDICATE A MORE SEVERE FORM OF INFRINGEMENT INVOLVING KNOWING

22 VIOLATION AT THE VERY START.  THIS FACTOR IS IN DIRECTV'S

23 FAVOR.  WHETHER THE INFRINGER ONLY KNEW THE OTHER -- THE

24 OTHER'S PATENT PROTECTION INVESTIGATED THE SCOPE OF THE PATENT

25 AND FORMED A GOOD FAITH BELIEF THAT IT WAS INVALID OR NOT

1    INFRINGED.  THERE WAS SOME EVIDENCE ON THIS, BUT CLEARLY THE

2    LETTER WAS SENT IN 2004.  MR. CROOK SEEMED WELL QUALIFIED IN

3    THE FIELD OF PATENT LAW, NEVER EXPLAINED HOW HE HIMSELF OR HIS

4    DIRECT STAFF DETERMINED THE INFRINGEMENT.  THERE'S AN

5    INDICATION HE THOUGHT THERE WAS NO INFRINGEMENT, BUT CLEARLY

6    THERE'S NO EVIDENCE ABOUT WHY HE MIGHT HAVE THOUGHT IT WAS

7    INVALID OR INDEFINITE.  IT SEEMED LIKE HE WOULD HAVE BEEN WELL

8    QUALIFIED, BUT AS SET OUT IN EARLY HEARINGS AND EARLIER

9    RULINGS, DIRECTV CHOSE NOT TO LIST HIM AS AN EXPERT, CHOSE NOT

10   TO PROVIDE ANY OPINIONS HE MIGHT HAVE AS A WILLFULNESS OPINION.

11   AND THERE MAY HAVE BEEN GOOD TACTICAL REASONS TO DO THIS, SUCH

12   AS NOT WANTING TO WAIVE THE ATTORNEY-CLIENT PRIVILEGE; BUT

13   THAT'S DEFENDANT'S CHOICE.  WHEN YOU MAKE TACTICAL CHOICES IN A

14   CASE LIKE THIS, AND YOU WANT TO PROTECT SOME THINGS, YOU LOSE

15   THE OPPORTUNITY TO USE THAT.  NOW, HE DID TESTIFY ABOUT

16   CONTACTING OUTSIDE COUNSEL.  THAT PROCESS WASN'T PARTICULARLY

17   QUICK.  THERE WAS SOME EXPLANATION.  TAKE OVER DIRECTV, SHAKE

18   UP AT THE LAW FIRM, BUT THAT'S NOT ENOUGH TO OVERTURN THE

19   JURY'S VERDICT ON WILLFULNESS.  AND THERE IS EVIDENTLY THERE

20   WAS NEVER ANY REAL INVESTIGATION OR OPINION ON VALIDITY.  THE

21   OUTSIDE FIRM DIDN'T LOOK AT THAT, AND THAT WAS REALLY -- WHEN

22   THE COURT HAS BEEN CALLING THIS CASE CLOSE, THAT'S WHAT WAS

23   CLOSE.  YOU READ THAT OPINION, I'M SORRY, READ THAT PATENT AND

24   YOU RIGHT AWAY -- I MEAN, I THINK ANYBODY LOOKS AT THAT AND

25   SAYS THAT SEEMS TO HAVE SOMETHING TO DO WITH SATELLITE TV OR

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
110

```
 1    CABLE TV OR THAT KIND OF THING.  AND ON THE OTHER HAND, YOU
 2    THINK THIS HAS BEEN GOING ON FOR YEARS BEFORE 1995.  SURELY
 3    THERE'S SOMETHING, I MEAN, ODD ABOUT THIS.  BUT THAT'S WHAT I
 4    MEAN BY CLOSE, WHEN YOU TAKE A FIRST LOOK AT IT AND YOU LISTEN
 5    TO THE ANTICIPATION OF EVIDENCE AND ALL, IT'S CLOSE, BUT
 6    INFRINGEMENT WASN'T, WHEN YOU GET INTO WILLFULNESS, I HEARD
 7    VIRTUALLY NO TESTIMONY AT ALL ON THE PART OF DIRECTV THAT THEY
 8    REALLY INVESTIGATED WHAT WOULD LOGICALLY SEEM TO HAVE BEEN
 9    THEIR GOOD DEFENSES, INVALIDITY, INDEFINITENESS.  SO THIS
10    FACTOR HAS TO BE IN FINISAR'S FAVOR IN DECIDING WILLFULNESS.
11              WHETHER DIRECTV HAD A SUBSTANTIAL DEFENSE ON
12    INFRINGEMENT, I REASONABLY BELIEVE THE DEFENSE WOULD BE
13    SUCCESSFUL IF LITIGATED, AND THERE WERE DEFENSES TO THE CLAIMS.
14    DEFINITENESS ON MANY CLAIMS IS GRANTED.  INFRINGEMENT ISSUE IS
15    VERY HARD TO DEFEND.  ANTICIPATION, OBVIOUS DEFENSES MIGHT --
16    WITH A DIFFERENT PRESENTATION OR DIFFERENT CROSS EXAMINATION
17    MIGHT HAVE CONVINCED SOME JURIES.  BUT, THE PREMISE IS
18    CONSIDERING THE PREVIOUS CONSIDERATION, THERE WASN'T EVIDENCE
19    THAT THIS WAS ACTUALLY CONSIDERED OR DECIDED BY DIRECTV.
20    MR. CROOK MAY HAVE MADE THE DECISION.  NO DISCUSSION THAT
21    MANAGEMENT LOOKED AT IT, EVALUATED IT, WEIGHED COST BENEFIT OR
22    ANYTHING LIKE THAT.  THIS ONE, THIS FACTOR TILTS TOWARD
23    FINISAR.
24              WHETHER DIRECTV MADE A GOOD FAITH EFFORT TO
25    AVOID INFRINGING A PATENT, FOR EXAMPLE, BY TAKING REMEDIAL
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

111

1    ACTION BY CEASING INFRINGING ACTIVITY OR ATTEMPTING TO GO

2    AROUND THE PATENT, NO EVIDENCE OF ANY ATTEMPT TO AVOID

3    INFRINGEMENT.  THERE WAS SOME TESTIMONY ABOUT SOME FAIRLY CHEAP

4    ALTERNATIVES GOING AS HIGH AS $800,000, BUT NO EVIDENCE THEY

5    WERE IMPLEMENTED, NO EVIDENCE BY MANAGEMENT OR MR. CROOK OR

6    ANYBODY SAT DOWN AND SAID, WELL, WE'VE GOT THESE IMPLEMENT --

7    OR THESE ALTERNATIVES, BUT IF WE ADOPT THEM, THEY'LL IMPOSE

8    THESE COSTS OR MAKE THIS SERVICE THIS MUCH WORSE OR IT WILL

9    CAUSE OUR VIEWERS THESE PROBLEMS.  NO LIKELIHOOD OF ANALYSIS

10   OF, WELL, WE'VE GOT AN 80 PERCENT CHANCE OF PREVAILING ON

11   INVALIDITY, SO WE'VE GOT A -- WE DON'T REALLY NEED TO TAKE

12   THESE EFFORTS.  NO COST BENEFIT ANALYSIS, SO AGAIN THIS

13   FAVOR -- THIS FACTOR, I'M SORRY, MAKING A GOOD FAITH EFFORT TO

14   AVOID INFRINGING THE PATENT AT -- TILTS TOWARDS FINISAR.

15            WHETHER DIRECTV TRIES TO COVER UP ITS

16   INFRINGEMENT, NO EVIDENCE OF COVER UPS.  THEY KEPT ON WITH THE

17   SAME PROCEDURES THEY ALWAYS USED.  THEY TOOK SOME TIME IN

18   GETTING THEIR OPINIONS, BUT THAT'S NOT THE SAME AS A COVER UP.

19   THERE IS NO INDICATION OF HIDING OR DESTROYING DOCUMENTS.  TV

20   WAS OUT, AND THAT THEY THEMSELVES -- DIRECTV POINTS OUT, DIDN'T

21   MEAN THAT, YOU KNOW, SET TOP BOXES ARE THERE, BUT CLEARLY

22   LOOKED AT.  SO THAT ONE FAVORS DIRECTV.

23            WHETHER DIRECTV WOULD HAVE GONE ON A LEGAL

24   OPINION THAT APPEARED TO BE WELL SUPPORTED AND BELIEVABLE, THE

25   DEVISED METHOD IS NOT INFRINGED OR IT WAS INVALID, YES, THERE

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
112

1    WAS AN OPINION.  IT CAME AFTER THE LAWSUIT WAS FILED.  AND NO

2    DISCUSSION OF AN OPINION OR DISCUSSION BY MANAGEMENT OR MR.

3    CROOK EARLIER WHEN THEY FIRST GOT THAT LETTER.  SO THERE'S SOME

4    REASONABLE EFFORT ON INFRINGEMENT, BUT NONE ON ANALYSIS AND

5    VALIDITY.  SO, THE COURT CONCLUDES THE WILLFULNESS HERE IS NOT

6    THE DIRECT COPYING AND DELIBERATELY STEALING OF IDEAS OR

7    PIRATING OF EMPLOYEES OR SOMETHING LIKE THAT KIND OF

8    WILLFULNESS; BUT CONSIDERING THE FACTORS THAT ARE SUPPOSED TO

9    BE CONSIDERED AND THE ONES THAT ARE SET UP FOR THE JURY, THERE

10   WAS LEGALLY SUFFICIENT EVIDENCE FOR A JURY TO FIND WILLFULNESS.

11   AND SO THE JUDGMENT, AS A MATTER OF LAW, IS DENIED.

12            THE JMOL -- AND OBVIOUSLY BOTH SIDES MOVED TO

13   THAT, AND THAT'S PRETTY CLOSE TO THE ANALYSIS ON ANTICIPATION

14   THAT I JUST GAVE.  DIRECTV HAD THE BURDEN BY CLEAR AND

15   CONVINCING EVIDENCE.  IT SEEMED THAT THERE WAS A DISCUSSION OF

16   COMBINING REFERENCES AND ESPECIALLY THE MOTIVATION FOR DOING

17   THE COMBINATION WAS NEITHER CLEAR NOR CONVINCING.  THE BEST

18   EVIDENCE TO MOTIVATE TO COMBINE WAS PROBABLY WHAT CAME FROM

19   MR. EATON, AND HIS INFERENCE OF WHAT WAS GOING ON WITH VIDEO

20   TEXT.  BUT THE JURY IS ENTITLED TO CREDIT HIS DENIAL OF

21   OBVIOUSNESS OVER THE TESTIMONY OF DIRECTV'S WITNESSES, NO REAL

22   ATTEMPT WAS MADE TO USE EATON BY DEFENDANT FOR THAT PURPOSE.

23            THEN WE HAVE THESE SHORTHAND SUMMARIZATION OF

24   STEPS IN THE CLAIM.  THAT'S A LITTLE CONFUSION THERE, AND NO

25   REAL SHOWING THAT THESE ANIMATIONS AND SO FORTH WOULD HAVE BEEN

```
 1   OBVIOUSLY SOMEONE SKILLED IN THE ART.  AND, YEAH, THE
 2   PERFUNCTORY QUESTION IS ASKING IS HE GOING TO TESTIFY WHAT
 3   SOMEONE SKILLED IN THE ART BACK THEN SHOULD HAVE KNOWN.  BUT
 4   IT'S GOT TO BE CLEAR AND CONVINCING, NOT JUST A PERFUNCTORY
 5   LOSS OR -- AGAIN, THE COURT FINDS WHEN YOU HAVE A BURDEN OF
 6   PROOF THAT CLEAR AND CONVINCING EVIDENCE THERE WAS CONFLICTS IN
 7   THE EVIDENCE, AND THERE'S JUST INSUFFICIENT EVIDENCE FOR THE
 8   COURT TO CONCLUDE THAT NO REASONABLE JURY COULD HAVE FOUND THE
 9   WAY THEY DID ON OBVIOUSNESS.  SO THAT JMOL IS DENIED.
10                  NEXT WE TAKE A LOOK AT DAMAGES.  NOW HERE UNDER
11   35 USC 284, THE COURT MAY ENHANCE DAMAGES UP TO THREE TIMES.
12   AND IN GENERAL WHEN A JURY FINDS WILLFUL ENHANCEMENT, AN
13   ENHANCEMENT OF DAMAGES IS APPROPRIATE.  THAT'S SET OUT IN
14   RECORPORATION VERSUS PORTEC INC. CASE, AND WE SEE THAT AT 970
15   FED. 2D. 816, PAGES 826, 827.  THAT WAS AGGREGATED ON THE
16   GROUNDS BY THE BACHMAN VERSUS WESTVIEW INSTRUMENTS CASE WITH A
17   NINE FACTOR THAT'S SET OUT IN REED, BUT THAT NINE FACTOR
18   ANALYSIS HAS BEEN APPROVED AFTER MARKMAN IN SUCH CASES, SUCH AS
19   ODETICS VERSUS STORAGE TECHNOLOGY, 185 FED. 3RD. 1259 AT 1274
20   FED. CIRCUIT 1999, SO THE COURT WILL USES THOSE -- THAT
21   NINE-POINT ANALYSIS.  AND A LOT OF THIS ISN'T COVERED UNDER THE
22   WILLFULNESS, BUT WHETHER AN INFRINGER DELIBERATELY COPIED THE
23   IDEAS OF ANOTHER, NO EVIDENCE OF THAT.  THAT FACTOR TENDS
24   TOWARD DIRECTV.  WHETHER THE INFRINGER KNEW -- OR WHETHER THE
25   INFRINGER WHEN HE KNEW OF THE OTHER'S PATENT PROTECTION
```

1   INVESTIGATED THE SCOPE OF THE PATENT AND FORMED A GOOD FAITH

2   BELIEF THAT IT WAS INVALID OR NOT INFRINGED, AND THIS IS THE

3   SAME ANALYSIS I DID BEFORE IN FACTOR TWO OF WILLFUL ANALYSIS.

4   AND FOR THE SAME REASONS STATED, THIS FACTOR SUPPORTS

5   ENHANCEMENT.  THERE WAS SOME INVESTIGATION OVER A LONG PERIOD

6   OF TIME OR RELATIVELY LONG PERIOD OF TIME OF INFRINGEMENT NOT

7   AN INVALIDITY.

8             THE INFRINGER'S BEHAVIOR AS A PARTY TO

9   LITIGATION, BOTH SIDES WORKED HARD TO REPRESENT THEIR

10  INTERESTS, THE COUNSEL PROFESSIONAL ON BOTH SIDES.  BOTH SIDES

11  AT VARIOUS TIMES ATTEMPTED TO AVOID OR DELAY DISCLOSURE OF

12  EVIDENCE.  BUT THE COURT PERCEIVED THAT NOT AS A BAD FAITH, BUT

13  JUST BASED ON TECHNICAL DECISIONS OF THE LAWYERS, WHICH AS THE

14  COURT MENTIONED IN AN EARLIER RULING IS CONSIDERED IMPORTANT IN

15  PATENT CASES.  AND THAT WAS DEALT WITH BY THE EXCLUSION OF

16  LIMITATION OF EVIDENCE.  AND SO THIS COURT FINDS THAT THAT

17  FACTOR IN THIS CASE DOESN'T SUPPORT ENHANCEMENT.

18            DEFENDANT'S SIZE AND FINANCIAL CONDITION, BOTH

19  COMPANIES IN THIS CASE ARE LARGE AND WELL-FUNDED.  IT'S TRUE

20  DEFENDANTS PROBABLY LARGER THAN FINISAR.  NO SHOWING THAT

21  SOMEHOW HANDICAPPED FINISAR OR THAT SOMEHOW DEFENDANT TOOK

22  UNFAIR ADVANTAGE OF THEIR COMBINED SIZE.  THE FACT THAT THEY

23  HAVE -- MERELY THE FACT THAT THEY'RE BIG AND HAVE A LOT OF

24  MONEY IS REALLY NOT CONSIDERED A REASON TO IMPOSE ADDITIONAL

25  DAMAGES.  AND IT COULD BE, BUT THE AMOUNT OF DAMAGES WE'RE

1  TALKING ABOUT IN THIS CASE, WHAT PEOPLE TALKED ABOUT WAS 79

2  MILLION IS NOT VERY MUCH.  I GUESS AS ONE OF MY PARTNERS USED

3  TO SAY:  A WHOLE LOT BETTER THAN A POKE IN THE EYE OF A SHARP

4  STICK.  WE'RE TALKING ABOUT A LOT OF MONEY HERE; AND YEAH,

5  MAYBE NOT A LOT COMPARED TO 1.6 BILLION.  BUT I THINK IT'S

6  IMPORTANT TO GET DOWN TO REALITY.  THERE'S A LOT OF MONEY

7  INVOLVED HERE, EVEN FOR A LARGE CORPORATION.

8            THE CLOSENESS OF THE CASE, CLOSENESS OF THE --

9  THE CASE WAS CLOSE ON SEVERAL ISSUES.  INFRINGEMENT WASN'T A

10 CLOSE CALL PARTICULARLY IN THE COURT'S VIEW, BUT ANTICIPATION

11 AND OBVIOUSNESS WERE CLOSE.  WILLFULNESS FELL SOMEWHERE IN

12 BETWEEN.  THIS FACTOR DOESN'T STRONGLY SUPPORT AN ENHANCEMENT

13 OR A MAJOR ENHANCEMENT.  THE DURATION OF THE DEFENDANT'S

14 MISCONDUCT, IT'S UNCONTESTED DIRECTV HAS BEEN USING THE METHODS

15 SINCE THE PATENT WAS ISSUED.  BUT WHAT'S MORE IMPORTANT THERE'S

16 NO EVIDENCE OF ANY ATTEMPT TO CHANGE AFTER GETTING THE LETTER

17 IN 2004 OR OF ANY ATTEMPT TO DO A REAL RISK ANALYSIS ON AN

18 INFRINGEMENT CLAIM OR COST BENEFIT ANALYSIS OF THE ALTERNATIVE

19 CONTINUING.  THOSE WERE JUST WENT ON BUSINESS AS USUAL.  NOW,

20 MR. CROOK DID SOME THINGS, BUT NOTHING -- NO DISCUSSION OF

21 MANAGEMENT GETTING TOGETHER AND AGAIN DOING A REAL SOLID

22 ANALYSIS OF WHAT WAS GOING ON.  SO THIS FACTOR DOES SUPPORT

23 SOME ENHANCEMENT.  THE REMEDIAL ACTION BY THE DEFENDANT, AFTER

24 THE 2004 LETTER THERE WAS NONE.  SO, THIS FACTOR WOULD SUPPORT

25 ENHANCEMENT.

```
 1              DEFENDANT'S MOTIVATION FOR HARM, NO EVIDENCE OF
 2     A DELIBERATE PLAN TO HARM FINISAR.  DIRECTV WAS OPERATING
 3     BEFORE PATENT WAS ISSUED.  THIS FACTOR DOES NOT SUPPORT
 4     ENHANCEMENT.  WHETHER DEFENDANT ATTEMPTED TO CONCEAL ITS
 5     CONDUCT, NO ATTEMPT BY DIRECTV TO CONCEAL WHAT THEY WERE DOING.
 6     SO THAT ONE GOES IN DIRECTV'S FAVOR.
 7              NOW THE POLICY OF SECTION 284 IS TO FULLY
 8     COMPENSATE PLAINTIFF AND TO REMOVE ANY INCENTIVE TO INFRINGE IN
 9     THE HOPE THAT THE ONLY DOWNSIDE IS GOING TO BE A JUDGMENT THAT
10     MERELY IMPOSES A REASONABLE ROYALTY.  THAT POLICY IS DISCUSSED
11     IN A LOT OF THE AUTHORITIES AND IN SOME OF THE CASES.  SO YOU
12     GOT A CASE OF CLEAR WILLFUL -- IN THAT CASE OF A CLEAR, WILLFUL
13     INFRINGEMENT AND THERE IS LOW ACTUAL DAMAGES, AN AWARD UP TO
14     THREE TIMES MIGHT FULLY IMPLEMENT CONGRESS'S POLICY TO DETER
15     INFRINGEMENT TO FULLY COMPENSATE THE INVENTOR.  IT CAN'T
16     REASONABLY BE ARGUED WHERE THERE'S NO COPYING OR STEALING OF
17     IDEAS AND NO ABUSE BY THE INFRINGER THAT WHERE INFRINGERS
18     ARE -- FOR EXAMPLE, $400 MILLION OVER THE TIME OF THE
19     INFRINGEMENT AND THE DAMAGE AWARD, FOR EXAMPLE, THE JURY COME
20     BACK WITH, SAY, A BILLION DOLLARS -- NEITHER OF THOSE NUMBERS
21     ARE WHAT WAS ASKED FOR IN THIS CASE -- IF SOME KIND OF BLIND
22     DOUBLING OR TREBLING WOULD BE ANYTHING BUT AN UNJUSTIFIED
23     TRANSFER OF WEALTH.  SO, THE COURT HAS TO CONSIDER NOT JUST
24     PERCENTAGES OF HOW MUCH ENHANCEMENT THERE WOULD BE, BUT THE
25     ABSOLUTE DOLLARS INVOLVED.  IT'S EASY TO SAY I'LL JUST DOUBLE
```

1   IT.  WELL, AT THE $100,000 LEVEL, THAT'S ONE THING.  AT THE $79

2   MILLION LEVEL, THAT'S SOMETHING ENTIRELY DIFFERENT.  THERE HAS

3   TO BE SOME CAREFUL ANALYSIS OF THAT.  WE HAVE SUBSTANTIAL

4   DAMAGES AWARD BY THE JURY.  ON THE OTHER HAND, DIRECTV'S

5   METHODS RESULTS IN SUBSTANTIAL REVENUE.  EVEN THOUGH IT HAS

6   SUBSTANTIAL COSTS, WHICH RESULTS IN A HEALTHY PROFIT AND LIKELY

7   GOING TO BE EVEN MORE PROFITABLE IN THE FUTURE.

8        IF YOU HAVE A JURY FINDING OF WILLFULNESS, THE

9   COURT IS SAID BY LEGAL AND SUFFICIENTLY EVIDENCE, YOU HAVE

10  UNEXPLAINED DELAY IN INVESTIGATION OF AND CONSIDERATION OF

11  INFRINGEMENT, AND MORE IMPORTANTLY, INVALIDITY, GREAT DEAL OF

12  INCOME, ALTHOUGH ACCOMPANIED BY A VERY HIGH COST OPERATION.  SO

13  THE COURT IS FACED WITH IMPLEMENTING THE TWIN POLICIES OF

14  DETERRING INFRINGEMENT, ESPECIALLY WILLFUL INFRINGEMENT, FULLY

15  COMPENSATING FINISAR FOR USE OF ITS INVENTION DESCRIBED IN THE

16  SEVEN CLAIMS IN ISSUE.

17       SO, BASED ON ALL OF THAT, THE COURT IS GOING TO

18  ORDER AN ENHANCEMENT AND FIND AN ENHANCEMENT IS REASONABLE IN

19  THIS CASE BASED ON THE FACTORS THAT THE -- THE COURT HAS JUST

20  SET OUT OF $25 MILLION.  AND THAT'S A LITTLE BIT MORE THAN

21  30 PERCENT OF THE DAMAGES FOUND BY THE JURY.  BUT AGAIN, IT'S

22  NOT -- AS I SAID BEFORE, I'M NOT DOING THIS ON JUST A BLIND

23  PERCENTAGE BASIS.  I'M TRYING TO LOOK AT THE TOTAL ABSOLUTE

24  NUMBERS ALSO ON THAT.

25       NOW, THE NEXT QUESTION IS UNDER 35 USC, SECTION

1    285, THE COURT CAN AWARD REASONABLE ATTORNEY'S FEES TO THE

2    PREVAILING PARTY IN AN EXCEPTIONAL CASE.  THIS IS A TWO-STEP

3    PROCESS.  FIRST, THE DISTRICT COURT HAS TO DETERMINE IF THE

4    CASE WAS EXCEPTIONAL.  AND HERE THE PREVAILING PARTY HAS THE

5    BURDEN OF PROOF BY CLEAR AND CONVINCING EVIDENCE.  THAT'S SET

6    OUT IN PERRICONE VERSUS MEDICIS PHARMACEUTICAL COMPANY, 432

7    FED. 3RD. 1368 AT 1380, FIFTH CIRCUIT 2005.

8            AFTER DETERMINING THE CASE IS EXCEPTIONAL,

9    DISTRICT COURT HAS TO DETERMINE WHETHER ATTORNEY'S FEES ARE

10   APPROPRIATE.  WE SEE THAT ALSO IN THE PERRICONE CASE AND IN THE

11   CYBER CORPORATION VERSUS FAX TECHNOLOGIES, 138 FED. 3RD. 1448,

12   PAGE 1460, FIFTH CIRCUIT 1998.  NOW, THAT THEY'RE SERIOUSLY

13   DECLARING A CASE EXCEPTIONAL AND WITH WILLFUL INFRINGEMENT, BAD

14   FAITH, LITIGATION MISCONDUCT, UNPROFESSIONAL BEHAVIOR.  YOU SEE

15   THAT AT NQ VERSUS C CHANGE.  THAT'S AT 436 FED. 3RD 1317-1319,

16   FIFTH CIRCUIT 2006.  AND THEN OTHER CRITERIA INCLUDE THE DEGREE

17   OF CULPABILITY, CLOSEST TO THE QUESTIONS, LITIGATION BEHAVIOR,

18   AND OTHER FACTORS WHERE FEE SIFTING MAY SERVE AS INSTRUMENT OF

19   JUSTICE.  SEE THAT IN NATIONAL PRESTO INDUSTRIES, INC., VERSUS

20   WEST BEND COMPANY, 76 FED. 3RD, 1185, 1197, FIFTH CIRCUIT 1996

21   AND ALSO BROOK TREE VERSUS ADVANCED MICRO DEVICES, INC., 977

22   FED. 2ND. 1555, PAGE 1582, FIFTH CIRCUIT 1992.

23           AND THE COURT LOOKS AT THE S. C. JOHNSON & SON,

24   INC., VERSUS CARTER WALLACE, INC., TALKING ABOUT PAGE 781 FED.

25   2ND. 198, PAGE 201, FIFTH CIRCUIT 1986.  WELL, THAT'S NOW

```
 1    GOING TO BE AN OLDER CASE.  EVEN AN EXCEPTIONAL CASE DOESN'T

 2    REQUIRE IN ALL CIRCUMSTANCES TO BE AWARDED ATTORNEY'S FEES, AND

 3    THEY GOING OVER SOME FACTORS THERE.  LOOKING AT FACTORS -- AND

 4    ALTHOUGH THEY'RE VERY SIMILAR TO ONES WE'VE ALREADY LOOKED AT

 5    ON EXCEPTIONALS.  TAKE A LOOK AT THE CLOSENESS OF THE CASE,

 6    AGAIN AS THE COURT HAD SAID, CLOSE ON SEVERAL ISSUES, NOT ON

 7    INFRINGEMENT PERHAPS, BUT ON ANTICIPATION OBVIOUS, WILLFULNESS

 8    IS SOMEWHERE IN BETWEEN.  THIS FACTOR ISN'T STRONGLY IN SUPPORT

 9    OF ATTORNEY'S FEES.  IT'S GENERALLY ACCEPTED IN THE UNITED

10    STATES USING THE AMERICAN RULE, COURTS SHOULDN'T ABROGATE THE

11    AMERICAN RULE AND SHIFT ATTORNEY'S FEES IN CASES WHERE THERE

12    ARE POTENTIALLY VALID AND HARD-FOUGHT ISSUES.  JUST BECAUSE YOU

13    LOSE DOESN'T MEAN YOUR ATTORNEY'S FEES SHOULD GO AGAINST YOU

14    ABSENT A STATUTE.

15              LITIGATION BEHAVIOR, AS I'VE SAID, BOTH SIDES

16    WORKED HARD TO REPRESENT THEIR CLIENT'S INTERESTS.  THE

17    COUNSEL, I THOUGHT, WERE PROFESSIONAL.  AGAIN, THERE WAS DELAYS

18    TRYING TO -- ATTEMPTS TO AVOID DISCLOSURE, AND THE COURT

19    PERCEIVED THAT AS TACTICAL, NOTHING EXCEPTIONAL, ATTORNEYS

20    MAKING TACTICAL CHOICES AND THE PREJUDICE DEALT WITH BY THE

21    COURT'S RULING ON LIMITING OR EXCLUDING EVIDENCE.  THIS DOESN'T

22    SUPPORT SHIFTING THE BURDEN ON ATTORNEY'S FEES.  THE CONDUCT OF

23    THE PARTIES, YOU KNOW, THIS HAS BEEN ANALYZED ABOVE.

24    PREVIOUSLY NO INDICATIONS DELIBERATE COPYING, NO THEFT OF

25    SECRETS, NO INDUCING EMPLOYEES TO COME OVER TO DIRECTV.
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

120

1    HANDLING OF THE SUIT WAS NOT PARTICULARLY EXCEPTIONAL IN A

2    COMPLICATED CASE LIKE THIS, ESPECIALLY GIVEN THE AMOUNT OF

3    MONEY INVOLVED.  THIS DOESN'T SUPPORT A FINDING THE CASE WAS

4    EXCEPTIONAL.

5            CULPABILITY OF INFRINGER, YES, DIRECTV INFRINGED

6    ON SEVEN CLAIMS OF THE PATENT.  BUT THEY HAD A GOOD DEFENSE ON

7    INDEFINITENESS ON OTHERS.  OTHER CLAIMS ARE NOT INFRINGED AT

8    ALL.  THEY WERE SLOW TO RESPOND, THE 2004 LETTER FROM FINISAR,

9    BUT AGAIN THE COMPANY WAS IN TURMOIL.  THE LAW FIRM WENT

10   THROUGH A CHANGE.  CONGRESS WENT OUT OF ITS WAY IN SECTION 285

11   TO REQUIRE CASES TO BE EXCEPTIONAL.  SO EVERY INFRINGER IS NOT

12   ENTITLED -- INTENDED TO PAY ATTORNEY'S FEES.  AND SO THIS

13   FACTOR HERE ON THE CULPABILITY OF INFRINGER GIVEN THAT IT'S NOT

14   EXTENSIVE OR NO MORE THAN OTHER PEOPLE FOUND INFRINGING DOESN'T

15   SUPPORT A FINDING OF EXCEPTIONALNESS OR AWARD.

16           WILLFUL INFRINGEMENT, THIS WAS FOUND BY THE

17   JURY.  AND THIS IS A FACTOR THAT WOULD SUPPORT AN AWARD OF

18   ATTORNEY'S FEES, BUT AS NOTED HERE THE WILLFULNESS IS NOT A

19   DELIBERATE COPYING OR POACHING OF EMPLOYEES TALENTS, SUPPORT IS

20   NOT AS STRONG AS IT MIGHT BE IN SOME CASES.  THEN THE COURTS

21   LOOK AT OTHER FACTORS.  FINISAR PREVAILED, NOT ON EVERY CLAIM.

22   ONLY SEVEN CLAIMS WERE FOUND TO BE INFRINGED, MANY HELD TO BE

23   INDEFINITE.  AND WHILE THERE IS OVERLAP IN THE FACTORS USED TO

24   DETERMINE EXCEPTIONALNESS AND ENHANCEMENT, THEY HAVE TO BE

25   ANALYZING BY THE POLICY REASONS BEHIND 284 AND 285.

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
121

1    ENHANCEMENT OF 284, COURT IS TRYING TO PUT THE PATENT HOLDER IN

2    POSITION IT WOULD HAVE BEEN ABSENT INFRINGEMENT TO DETER OTHERS

3    FROM INFRINGING.  BUT YOU'VE GOT ENHANCEMENT, YOU'VE GOT

4    PREJUDGMENT INTEREST AND COST TO ACCOMPLISH THIS.

5             CONGRESS WANTED MORE IN DECIDING ATTORNEY'S FEES

6    UNDER 285.  THEY COULD HAVE LEFT OUT THE WORD "EXCEPTIONAL."

7    THEY COULD HAVE HAD A C15 PROVISION LIKE IN THE CIVIL RIGHTS

8    ACT CASES WHERE BASICALLY IT'S PRETTY WELL ASSUMED IF YOU WIN A

9    CIVIL RIGHTS CASE, YOU GET ATTORNEY'S FEES.  WE'VE GOT A PATENT

10   CASE LIKE THIS WORTH MILLIONS, PERHAPS BILLIONS AT STAKE

11   BETWEEN WELL-FUNDED CORPORATIONS.  UNLIKE THE CIVIL RIGHTS

12   CASES WHERE YOU'RE TRYING TO ENCOURAGE PRIVATE ATTORNEYS

13   GENERAL TO TAKE ON UNPOPULAR AND DIFFICULT CASES, PROBABLY NOT

14   MUCH OTHER THAN THE RAW DIFFICULTY OF FLAUNTING THE LAW, NOT

15   REALLY A NEED TO ENCOURAGE ATTORNEYS TO TAKE ON THIS CASE FOR

16   THE SOCIAL GOOD.

17            SO FOR THESE REASONS, THE COURT FINDS THE CASE

18   IS NOT EXCEPTIONAL UNDER SECTION 285.  ATTORNEY'S FEES ARE NOT

19   GOING TO BE AWARDED.  JUDGMENT IS GOING TO BE AS THE JURY

20   AWARDED, $78,720,250 -- I'M SORRY, $78,720,250.25 WITH

21   PREJUDGMENT INTEREST.  AND THEN TAKING A LOOK AT THAT, THE

22   COURT NOTES THAT THE PARTIES HAVE AGREED THAT A SIX PERCENT

23   RATE SET OUT BY THE STATE OF TEXAS IS APPROPRIATE.  OBVIOUSLY,

24   IN A FEDERAL CASE THE COURT IS NOT BOUND BY THAT.  IT COULD

25   HAVE GONE AS HIGH AS -- THE PRIME RATE COULD HAVE BEEN DOWN TO

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

122

1   THE T BILL RATE, ALL KINDS OF RATES TO USE.  BUT IT DOES SEEM

2   THAT -- AND IN LIGHT OF THE DECISION, THE COURT -- AND THE

3   EVIDENCE IS GOING TO MAKE IT, IT DOES SEEM THAT THE

4   CALCULATIONS ON A PER SET TOP BOX METHOD AS SET OUT AT THE SIX

5   PERCENT RATE, AND IT ALSO DOES APPEAR SINCE THE IDEA HERE IS TO

6   COMPENSATE THE PLAINTIFF FOR THE LOSS OF THE USE OF THE MONEY,

7   THAT IT SHOULD BE COMPOUNDED ANNUALLY.

8            SO IT WILL BE AT THE SIX PERCENT RATE.  IT WILL

9   BE BASED ON THE AMOUNT AWARDED BY THE JURY AS SHOWN HERE ON

10  THE -- AND I CAN'T QUITE TELL FROM THESE EXHIBITS EXACTLY HOW

11  IT'S WORKING.  BUT WHAT I WANTED IS THAT BASED ON THE SET TOP

12  BOX CALCULATION COMPOUNDED ANNUALLY AS SHOWN IN THESE VARIOUS

13  EXHIBITS THAT BOTH SIDES SEEM TO HAVE ON SHOWING THE AMOUNTS

14  PER YEAR, WHICH IF I'M UNDERSTANDING THIS CORRECT OR CORRECTLY

15  IS GOING TO WORK OUT -- BUT I MAY HAVE TO DO SOME RECALCULATION

16  OF IT.  I THINK IT'S VARIOUS FIGURES ON HERE WAS 11 MILLION, 14

17  MILLION, 13 MILLION.  THERE MAY HAVE TO BE SOME RECALCULATION

18  OF IT, BUT IT WILL BE BASED ON THE -- THE SALES SHOWN EACH

19  PERIOD, BUT THEN COMPOUNDED ANNUALLY.

20           MR. ROBERTS:  YOUR HONOR, JUST TO SEE IF I'M

21  CORRECT, I BELIEVE YOU MISSPOKE WHEN YOU RECITED THE JURY'S

22  VERDICT.  I THINK YOU SAID 720,000 WHEN IT WAS 920,000.

23           THE COURT:  I MAY HAVE DONE THAT.  YOU'RE RIGHT.

24  $78,920,250.25.  THANK YOU.  I FIGURED BY NOW YOU-ALL WOULD BE

25  ASLEEP.  OKAY.  PLUS, THERE'LL BE AN ENHANCEMENT THAT THE COURT

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

123

1  EARLIER STATED OF THE 25 MILLION, AND THEN POST JUDGMENT

2  INTEREST ON ALL OF THAT AT THE STATUTORY RATE UNDER, I BELIEVE,

3  IT'S 28 USC, SECTION 1961.

4          THE NEXT ISSUE WE GET INTO IS WHETHER OR NOT

5  THERE SHOULD BE AN INJUNCTION.  AND THERE WAS SOME INDICATION,

6  DISCUSSION ABOUT ALL THE DIFFICULTIES IN FIGURING OUT THESE

7  DAMAGES AND WHETHER THERE SHOULD BE AN INJUNCTION AND SO FORTH.

8  BUT THE SCHEDULING ORDER MADE IT CLEAR THAT DAMAGES DISCOVERY

9  WAS SUPPOSED TO HAVE BEEN DONE EARLIER.  OBVIOUSLY WHETHER OR

10  NOT THERE SHOULD BE AN INJUNCTION OR A COMPULSORY LICENSE OR

11  WHATEVER IS SOMETHING THE PARTIES KNOW ABOUT IT, AND THE COURT

12  SEES IN THIS CASE GIVEN THE AMOUNT OF EVIDENCE, IT HAS NO

13  REASON TO BELIEVE THAT AT SOME FUTURE DATE -- I THINK I CAN

14  MAKE THAT DECISION NOW.

15          NOW 35 USC, SECTION 283 PROVIDES THAT THE COURTS

16  HAVING JURISDICTION, CAN GRANT INJUNCTION AND, OF COURSE, THE

17  PRINCIPLES OF EQUITY.  AND THE EBAY CASE WITH EBAY, INC.,

18  VERSUS MERCEXCHANGE, 126 SUPREME COURT 1837, THE SUPREME COURT

19  HAS SAID LET'S GO BACK TO THE -- WE WILL GO BACK TO THE

20  STANDARD FACTORS.  IN GOING THROUGH THESE, WE HAVE IRREPARABLE

21  INJURY.  THE EVIDENCE INDICATES TO THIS COURT THAT THERE IS

22  REALLY NO IRREPARABLE INJURY TO THE PLAINTIFF.  THEY HAVE

23  RAISED THIS ARGUMENT OF THE RIGHT TO EXCLUDE EVERYBODY ELSE,

24  AND THAT THAT PERHAPS COULD BE PRICELESS AND SHOULD BE PART OF

25  THE CONSIDERATION.  BUT IT'S ALSO UNCONTESTED THEY NEVER SOLD

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
124

1    THE RIGHTS TO THE PATENT, NEVER MADE THE SLIGHTEST EFFORT TO

2    EVER USE THE PATENT.  WITH NO SUCCESS AT ALL IN THE PAST, IT'S

3    A LITTLE FAR FETCHED TO SAY THEY CAN SELL EXCLUSIVE RIGHTS TO

4    COMPETITORS WHO WEREN'T INVOLVED IN THE SUIT.  IT'S EASY -- AND

5    YES, AS A PRACTICAL MATTER HAVING THIS VERDICT IS HELPFUL, BUT

6    THIS JUDGMENT DOESN'T DECLARE -- AND AS FAR AS I KNOW DISTRICT

7    COURTS DON'T DECLARE PATENTS VALID FOR ALL PURPOSES FOR EVEN

8    THE NEXT CASE.  WE KNOW THAT IN THIS CASE, THE PLAINTIFF PROVED

9    BY A PREPONDERANCE OF THE EVIDENCE THAT DIRECTV INFRINGES SEVEN

10   CLAIMS.  AND WE KNOW THAT DIRECTV FAILED TO PROVE INVALIDITY BY

11   CLEAR AND CONVINCING EVIDENCE.  THAT GIVES FINISAR AN ENHANCED

12   BARGAINING POSITION.  BUT IT'S NOT AN AUTOMATIC TICKET TO CASH

13   IN ON THE PATENT WITH OTHERS OR TO EXCLUDE EVERYONE.

14              AND THE COURT HAS TO BE A LITTLE CONCERNED ABOUT

15   THIS IDEA OF EXCLUSION IN A FIELD WHERE THERE ARE TWO

16   COMPETITORS.  AND THEN TAKING IN MIND CONGRESS THROUGH THE

17   ANTI-TRUST LAW HAS INDICATED AN AVERSION TO MONOPOLY,

18   ESPECIALLY A MONOPOLY THAT AFFECTS SO MANY PEOPLE.  AND IF THE

19   COURT WAS TO GRANT AN INJUNCTION, YES, MAYBE SOMETHING COULD BE

20   WORKED OUT; BUT FOR WHATEVER PERIOD THE INJUNCTION WAS IN

21   PLACE, YOU'D HAVE ONE COMPANY AS THE SOLE SATELLITE PROVIDER.

22   AND IT'S ALSO GOT TO BE RECOGNIZED IN ANTI-TRUST LAW, WHICH THE

23   COURT IS FAMILIAR WITH, KIND OF DEPENDS ON WHAT ADMINISTRATION

24   IS PUSHING IT.  SOME ADMINISTRATIONS PUSH HARDER THAN OTHERS.

25   WHO THE ATTORNEY GENERAL OF THE COUNTRY -- WHAT FOCUS THEY WANT

```
 1   TO MAKE ON IT.  BUT CONGRESS HAS THAT ACT IN PLACE.  IT DOES

 2   SEEM PERHAPS IMPRUDENT FOR A DISTRICT COURT TO SIMPLY DECIDE

 3   THAT IT'S GOING TO ISSUE AN INJUNCTION THAT RESULTS IN A TOTAL

 4   MONOPOLY OF SOMETHING LIKE SATELLITE TV FOR THE NATION.

 5              AND IN TERMS OF IRREPARABLE INJURY, GIVEN THE

 6   FACT THAT THERE ARE DAMAGES AVAILABLE AND FUTURE DAMAGES

 7   AVAILABLE, IT DOESN'T SEEM IRREPARABLE.

 8              REMEDIES AT LAW, FINISAR HAS GOT THE JUDGMENT

 9   FOR THE FULL AMOUNT FOUND BY THE JURY, PLUS PREJUDGMENT

10   INTEREST, PLUS A SUBSTANTIAL ENHANCEMENT, PLUS COST OF COURT

11   WHICH THE COURT IS GOING TO AWARD, ALSO.  IT'S HARD TO ARGUE

12   THAT IT'S NOT BEEN FULLY COMPENSATED FOR DAMAGES TO DATE.  AND

13   THEN AS TO FUTURE, THE COURT IS GOING TO FIND A COMPULSORY

14   LICENSE TO ADEQUATELY COMPENSATE FINISAR FOR DIRECTV'S USE OF

15   THE INVENTIONS, ESPECIALLY SINCE FINISAR EVIDENTLY NEVER HAD

16   THE WILL NOR THE MEANS TO IMPLEMENT THE PATENT ITSELF.

17              SO, HARDSHIP, THE HARDSHIP INVOLVED IN ENJOINING

18   DIRECTV WOULD BE ENORMOUS.  YES, IT'S TRUE THAT YOU CAN'T

19   REALLY CONSIDER YOURSELF TOO MUCH ABOUT PROFITS TO

20   CORPORATIONS.  IF YOU'VE GOT A THOUSAND EMPLOYEES, THOUSANDS OF

21   EMPLOYEES OUT OF WORK, RIPPLE EFFECT ON ALL THE CONTENT

22   PROVIDERS PROBABLY INCALCULABLE.  15 MILLION PEOPLE LOSE THE

23   AVAILABILITY TO VIEW THEIR TV.  SOME WOULD SAY THIS IS A

24   BLESSING, AND ONE OF THE BRIEFS SAID SOMETHING ABOUT THAT.  BUT

25   IT'S NOT A BLESSING TO INVALIDS OR SHUT-INS OR MILLIONS OF
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

126

1   RURAL PEOPLE WHO DEPEND ON TV FOR NEWS AND EVERYTHING ELSE.   ON

2   THE OTHER HAND, FINISAR IS HARD PRESSED TO SHOW A HARDSHIP IN

3   RECEIVING OVER A $100 MILLION FROM A PATENT WHICH HAS BEEN ON A

4   SHELF FOR SOME TEN YEARS WITH NO RETURN AT ALL, ESPECIALLY WHEN

5   THERE HASN'T BEEN A PENNY INVESTED IN ITS DEVELOPMENT OR

6   IMPLEMENTATION AFTER ISSUANCE ACCORDING TO -- ACCORDING TO THE

7   EVIDENCE.   AN APPROPRIATELY WORDED COMPULSORY LICENSE COULD

8   CONTINUE THE FLOW OF INCOME AND STILL ALLOW FINISAR TO MARKET

9   THE PATENT NOW, AND IT HAS THE ANTI-BARGAINING TOOL OF THE JURY

10  VERDICT AND JUDGMENT.

11              AND THEN AS FAR AS PUBLIC INTERESTS, THE COURT

12  CAN'T SEE ANY PUBLIC INTEREST SERVED BY ENJOINING DIRECTV.   THE

13  PUBLIC POLICY OF THE TERM INFRINGEMENT HAS FOR REASONS

14  PREVIOUSLY DISCUSSED AND ADDRESSED BY THE MONEY JUDGMENT.

15  THERE'S NO PUBLIC INTEREST IN ARBITRARILY LIMITING SATELLITE TV

16  TO MILLIONS OF VIEWERS.   THE WHOLE PATENT SYSTEM ITSELF IS A

17  PUBLIC INTEREST IN TECHNOLOGY BEING USED AND IMPROVED UPON.   SO

18  THE COURT DOESN'T SEE THAT THERE'S -- PUBLIC INTEREST WOULD BE

19  SERVED BY AN INJUNCTION.   SO THE REQUEST FOR AN INJUNCTION IS

20  DENIED.

21              THEN WE GET INTO THE COMPULSORY LICENSE, AND

22  WE'VE HAD A LOT OF TESTIMONY ABOUT THAT TODAY.   COMPULSORY

23  LICENSE CAN BE GRANTED TO A PATENTEE WHO'S BEEN UNABLE TO

24  PREVAIL IN A REQUEST FOR INJUNCTIVE RELIEF.   AND FOSTER VERSUS

25  AMERICAN MACHINE AND FOUNDRY COMPANY, 492 FED. 2D. 1317, PAGE

1   1324, FED. CIRCUIT.  THIS IS -- MAY NOT BE FED. CIRCUIT.  IT'S

2   A 1974 CASE.  AND THE PLAINTIFF IN THEIR BRIEF ASSERTS THAT

3   AFTER REVIEWING THE GEORGIA-PACIFIC FACTOR, THE COURT SHOULD

4   AWARD A REASONABLE ROYALTY OF THREE PERCENT OF REVENUE.

5   DEFENDANTS CONTEND THAT DAMAGES SHOULD BE A $1.32 PER SET TOP

6   BOX.

7           THERE SEEMS TO BE SOME DISCREPANCY.  SOME OF THE

8   EXHIBITS TALK ABOUT 55-MILLION SET TOP BOXES, BUT I THINK

9   MR. DONALDSON TESTIFIED IN HIS MOST RECENT REPORT IT WAS

10  59-MILLION SET TOP BOXES DURING THE DAMAGE PERIOD, AND THERE'S

11  SOME INDICATION THERE'S LIKELY TO BE 15 MILLION COMING UP THIS

12  COMING YEAR.  THE COURT RECOGNIZES THAT THE GEORGIA-PACIFIC

13  FACTORS ARE FREQUENTLY USED IN TERMS OF INSTRUCTING THE JURY ON

14  A REASONABLE ROYALTY IN A HYPOTHETICAL SITUATION IN THE PAST;

15  BUT IT DOESN'T SEE ANY REASON AT ALL WHY THESE SAME FACTORS

16  CAN'T BE USED IN -- TO HELP THE COURT ANALYZING WHAT WOULD BE

17  AN APPROPRIATE ROYALTY AMOUNT.  SO LOOKING AT THAT THE

18  ROYALTIES RECEIVED BY THE PATENTEE FOR LICENSING THE PATENT

19  SUIT, THERE HASN'T BEEN ANY ROYALTIES RECEIVED BY THEM IN THE

20  PAST, NONE AT ALL.  NO ONE'S TAKEN THEM UP ON IT.  THERE WAS

21  SOME TESTIMONY ABOUT UNACCEPTED OFFERS.  TO SELL; UNACCEPTED

22  OFFERS, TO BUY.  IN THE COURT'S MIND, THAT'S REALLY WEAK

23  EVIDENCE.  THE -- WHAT WE HAVE, OF COURSE, IS THE JURY VERDICT,

24  BUT THE JURY DETERMINED WHAT'S IN THE PAST.  IT'S A LITTLE

25  DIFFICULT TO FIGURE OUT WHAT THAT WAS.  IT SEEMS MOST LIKELY IT

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

128

1    WAS ON A SET TOP BOX BASIS.   HARD TO BELIEVE THEY WOULD HAVE

2    GONE THROUGH A .14 ROYALTY.   REALLY, THAT'S NOT A BIG CONCERN

3    THERE UNDER THE -- UNDER THE GEORGIA-PACIFIC ANALYSIS.

4                  THE COURT WOULD INDICATE THAT ITS OPINION THAT

5    THE GROSS REVENUE MODEL IS SOMEWHAT UNWORKABLE BECAUSE IT

6    DOESN'T CONSIDER COST.   AND YOU'VE GOT -- ESPECIALLY IN

7    INDUSTRY WHERE IT'S NECESSARY TO HAVE A NUMBER OF DIFFERENT

8    PATENTS TO MAKE THE SYSTEM WORK.   YOU'VE GOT THE -- WELL, THE

9    GEM STAR, THE IMPEG, THE DOLBY, WHATEVER GETS INVOLVED IN THE

10   DISH ITSELF, AND THE SET TOP BOX STUFF.   THERE'S A LOT OF

11   PATENTS INVOLVED THERE, AND IF EVERY ONE OF THEM HAD, SAY,

12   THERE'S 10 OR 15 OR MORE, A FEW PERCENT OF REVENUE, DIRECTV

13   COULD NEVER RUN A BUSINESS BECAUSE IT HAS NOTHING TO DO WITH

14   COST.   AND THIS IS AN INDUSTRY WITH HUGE COSTS, AT LEAST THE

15   BIG NUMBERS.

16                  BUT I HEARD NO TESTIMONY THAT SHOWED ME HOW THE

17   ECONOMIC WAS WORKABLE BUT BASE IT ON GROSS REVENUE OR THAT

18   ANYBODY ELSE EVER BASED ON GROSS REVENUE.   IT WOULD SEEM TO ME

19   TO BE A VERY FOOLISH BUSINESS DECISION TO DO IT ON THAT WHEN

20   YOU COULD HAVE GROSS REVENUE OF A BILLION DOLLARS A YEAR, BUT

21   COST OF 1.2 BILLION.   AND YOU'RE GOING TO GIVE ANOTHER THREE

22   PERCENT OF THAT UP.   THAT DOESN'T MAKE -- THAT DOESN'T SEEM TO

23   BE GOOD BUSINESS SENSE.   THE COURT HAS TO COME UP WITH

24   SOMETHING ELSE.

25                  LOOKING AT FACTOR TWO, THE RATES PAID BY

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
129

1    LICENSEE FOR USE OF OTHER PATENTS, COMPARABLE TO THE PATENT

2    SUIT, WE HAVE A RANGE, IMPEG STARTING AT $4 GOING DOWN TO 2.50

3    BASED ON VOLUME.   STARSIGHT, 3.50 TO 5.50 PER BOX.   THAT'S A

4    GROUP OF SEVEN PATENTS; THE DOLBY, 12 CENTS TO $1.65 PER UNIT

5    BASED ON VOLUME; AND THOMPSON, 2.50 PER BOX; GEM STAR, 20 CENTS

6    PER SUBSCRIBER PER MONTH; MACROVISION, THAT ONE IS NOT REALLY

7    RELATED.   THAT'S BASED ON INCOME FROM A SPECIFIC THING, NAMELY,

8    PAY PER VIEW MOVIES OR PAY PER VIEW THINGS.   SO THAT'S, I

9    THINK, IMPORTANT FACTORS IN THERE LOOKING AT THAT RANGE IN

10   THERE, AND THEN COMPARING THIS PARTICULAR PATENT, WHICH

11   OBVIOUSLY IS IMPORTANT BASED ON THE JURY'S FINDINGS.   AND BASED

12   ON THE COURT'S OWN REVIEW OF THE PATENT ITSELF.   THAT WOULD

13   SUPPORT A COMPULSORY LICENSE BASED ON A ROYALTY PER SET TOP

14   BOX, ESPECIALLY IN LINE WITH WHAT WE SEE IN THE IMPEG LICENSE

15   WHERE THEY'VE TAKEN CARE OF THE PROBLEM.   PLAINTIFFS PROPERLY

16   BROUGHT UP ABOUT WHAT YOU CALL A SET TOP BOX.

17            WELL, EVIDENTLY IT SEEMS THAT THAT WAS BROUGHT

18   UP BEFORE BY OTHER PEOPLE, AND IT DEPENDS ON THE -- I DON'T

19   REMEMBER IF IT WAS ENCODERS OR -- ENCODERS OR TRANSPONDERS.

20   THEY'RE -- I'M SORRY, I'M DRAWING A BLANK ON A WORD, BUT

21   MR. TOUTON BROUGHT THAT UP, AND I ALSO SAW IT IN THE IMPEG

22   LICENSE.   SO THAT MAKES A USEFUL FRAMEWORK.

23            THEN WE LOOK AT THE THIRD FACTOR, NATURE AND

24   SCOPE OF THE LICENSE IS EXCLUSIVE OR NONEXCLUSIVE OR RESTRICTED

25   BY TERRITORY OR WITH RESPECT TO WHERE PRODUCTS MAY BE SOLD.

1    NOT GOING TO BE AN EXCLUSIVE LICENSE.  OBVIOUSLY, THEY CAN SELL

2    IT TO OTHERS.  DOESN'T SEEM TO RESTRICT THEM BY TERRITORY.

3    THAT WOULD INDICATE TO HAVE A LOWER VALUE BECAUSE IT'S NOT

4    EXCLUSIVE, AND IT'S PROBABLY IN VIOLATION OF ANTI-TRUST IF IT'S

5    ACTUALLY COVERED EVERYBODY ELSE TO BE PUTTING RESTRICTIONS ON

6    NOT BEING ABLE TO GO TO ECHOSTAR OR ANYBODY ELSE.  THE LICENSOR

7    ESTABLISHED POLICY IN MARKETING PROGRAMS TO MAINTAIN THIS

8    PATENT MONOPOLY BY NOT LICENSING OTHERS TO USE THE PATENT OR BY

9    IMPOSING SPECIAL CONDITIONS SINCE LICENSOR NEVER HAS LICENSED

10   THIS PARTICULAR PATENT, HAS MADE NO ATTEMPTS TO PRESERVE THE

11   MONOPOLY.  AND, ACTUALLY, THERE IS TESTIMONY THEY WENT OUT AND

12   TRIED AND TRIED AND TRIED TO SELL IT.  NEVER COULD.  BUT THEY

13   WEREN'T TRYING TO MAKE IT EXCLUSIVE, AND THEY WEREN'T DOING IT

14   THEMSELVES.  THEY WEREN'T TRYING TO MAINTAIN THEIR OWN

15   MONOPOLY.  SO THAT FACTOR WOULD TEND TO LOWER THE RATE.

16            THE COMMERCIAL RELATIONSHIP BETWEEN LICENSER AND

17   LICENSEE, ARE THEY COMPETITORS?  NO, THEY'RE NOT COMPETITORS.

18   ARE THEY INVENTOR AND PROMOTER?  NOT EXACTLY, BUT OBVIOUSLY THE

19   MORE THESE BOXES AND THE BETTER BUSINESS THAT DIRECTV DOES, THE

20   BETTER OFF IT'S GOING TO BE FOR FINISAR, SO THAT AGAIN WORKS

21   SOMEWHAT IN FINISAR'S FAVOR.

22            AND GETTING INTO THE TESTIMONY ABOUT VOLUME,

23   LOWERING THE NUMBER, OBVIOUSLY FINISAR IS GOING TO HOPE FOR

24   HIGHER VOLUME.  SO YOU WOULDN'T WANT TO SET THE PRICE SO HIGH

25   THAT YOUR ELASTICITY DEMAND WOULD COME -- WOULD SET IN.  YOU

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

131

1   DON'T WANT TO SET IT SO LOW THAT THEY'RE NOT REALIZING FULL

2   VALUE.

3           NUMBER SIX, THE EFFECT OF SELLING THE PATENT

4   SPECIALITY AND PROMOTING SALE OF OTHER PRODUCTS OF LICENSEE.   I

5   DIDN'T SEE ANY EVIDENCE AT ALL THAT USE OR NONUSE OF THE PATENT

6   IS GOING TO HELP THE CABLE BUSINESS FINISAR IS IN, THE KIND OF

7   BUSINESS THEY ALREADY HAVE ALONG WITH THEIR PATENTS THEY HAVE.

8   THE EXISTING VALUE, THE INVENTIONS, THE LICENSOR, THE GENERATOR

9   OF SALES, THE NONPATENTED ITEMS, DOESN'T SEEM -- NO EVIDENCE OF

10  THAT -- OR EVEN THEIR PATENTED ITEMS DOESN'T SEEM TO HELP.   THE

11  EXTENT THAT SUCH DERIVATIVE OR CONVEYED SALES, THAT'S AT ZERO.

12  THAT WOULD TEND TO DRIVE THE VALUE OF THIS DOWN.

13          THE DURATION OF THE PATENT AND THE TERMS OF THE

14  LICENSE, WE'VE TAKEN CARE OF PAST DAMAGES, AND NOW IT GOES UP

15  ANOTHER SIX YEARS.   OBVIOUSLY, FINISAR SHOULD BE ENTITLED TO

16  RECEIVE THE FULL VALUE THAT IT HAS.

17          THE ESTABLISHED PROFITABILITY OF THE PRODUCT

18  MADE UNDER THE PATENT, IT'S A COMMERCIAL SUCCESS IN ITS CURRENT

19  POPULARITY.   OBVIOUSLY, IT'S POPULAR.   WE GOT 15 MILLION

20  VIEWERS.   WE'VE GOT REVENUES DEPENDING ON WHO YOU'RE BELIEVING,

21  VERY, VERY HIGH.   PROFITS AGAIN DEPENDING ON WHICH KIND

22  YOU'RE -- OPERATING PROFITS OR OTHER PROFITS, PROFITS ARE QUITE

23  HIGH.   OBVIOUSLY, DIRECTV WANTS TO MAINTAIN THOSE.   AND IT IS

24  ALSO OBVIOUSLY FINISAR'S -- OR PROFIT IF FINISAR GETS ITS FAIR

25  SHARE.   AND THIS, I GUESS, IS ONE REASON WHY THE REVENUE MODEL

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

132

1   DOESN'T WORK BECAUSE REGARDLESS OF WHAT IT IS PER SET TOP BOX,

2   DIRECTV AND REGARDLESS OF HOW MANY PATENTS DIRECTV HAS TO BUY

3   PER SET TOP BOX, HE CAN ALWAYS DEAL WITH THAT COST IN ITS FEE

4   STRUCTURE.  BUT WHEN YOU'RE DOING IT ON A REVENUE BASIS, IT

5   DOESN'T MATTER HOW YOU RAISE FEES; YOU ALWAYS CREATE MORE

6   PERCENTAGE OF THAT GROSS REVENUE REGARDLESS OF WHAT YOUR COST

7   WERE.  AND THAT'S BEEN A -- THAT'S PROBLEMATIC IN THE COURT'S

8   MIND AS TO WHY -- IT'S GOT TO BE BASED ON SOME -- SOME SUM THAT

9   THEN CAN BE DEALT WITH.  AND GEM STAR DEALS WITH IT ON A

10  MONTHLY BASIS PER SUBSCRIBER.  THAT'S ANOTHER WAY OF DOING IT.

11  AT LEAST YOU'VE GOT A COST THAT'S KNOWN AND THEN CAN BE HANDLED

12  IN YOUR FEE STRUCTURE.  BUT FOR ALL THE OTHER TECHNOLOGY, IT

13  DOES SEEM TO BE PER SET TOP BOX.

14              THIS IS A PROFITABLE BUSINESS.  AND WHATEVER FEE

15  IS SET CAN BE DEALT WITH.  IT DOESN'T -- THERE IS NO INDICATION

16  THAT DEMAND IS INELASTIC BASED ON PRICE OR IN THE RANGE WE'RE

17  TALKING ABOUT HERE.  UTILITY AND ADVANTAGE OF THE PATENT

18  PROPERTY OVER THE OLD MODE OF DEVICES, IF ANY, IT WOULD BE

19  USEFUL LOOKING UP SIMILAR RESULTS.  NOT MUCH TESTIMONY ABOUT

20  THAT AT ALL OTHER THAN MR. EATON TELETEXT BEING SOMEWHAT

21  SIMILAR AND PERHAPS SOME FURTHER INVESTIGATION IT WOULD BE MORE

22  SIMILAR THAN WHAT WAS BROUGHT OUT.  BUT OBVIOUSLY THERE'S SOME

23  UTILITY HERE AS SEEN BY THE SUCCESS OF THE DIRECTV.

24              THE NATURE OF THE PATENT INVENTION, IT'S A

25  METHOD, THE CHARACTER OF THE COMMERCIAL IMBIBEMENT AS OWNED AND

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

133

```
 1   PRODUCED BY THE LICENSOR, NONE, THEY HAVEN'T USED IT.  THE
 2   BENEFITS TO THOSE WHO USED HAVE USED INVENTION, ALREADY GOT THE
 3   TESTIMONY IN OF THEIR LARGE REVENUES ALONG WITH HIGH COST, OF
 4   COURSE, RESULTING IN A HEALTHY PROFIT.
 5              ELEVEN, EXTENT TO WHICH THE INFRINGERS MADE USE
 6   OF THE INVENTION.  BASED ON THE JURY'S VERDICT, THEY HAVE BEEN
 7   USING THAT INVENTION SINCE -- SINCE DAY ONE AND USING IT TO
 8   THEIR ADVANTAGE TO GROW A VERY HEALTHY BUSINESS.  ANY EVIDENCE
 9   PROBATIVE AS TO VALUE OF THAT USE, WE'VE ALREADY GOT THAT IN.
10   THE COURT HAS ALREADY DISCUSSED THAT IN TERMS OF THE REVENUES
11   AND THE PROFITS.  THE PORTION OF PROFIT OR THE SELLING PRICE
12   MAY BE CUSTOMARY IN A PARTICULAR BUSINESS OR IN COMPARABLE
13   BUSINESSES TO USE -- FOR THE USE OF THE INVENTION OR ANALOGOUS
14   INVENTIONS, VERY LITTLE TESTIMONY ABOUT THAT.  BOTH -- ALL THE
15   EXPERTS WERE BASICALLY SAYING THEY COULDN'T REALLY TELL -- EVEN
16   FINISAR EXPERTS COULDN'T REALLY TELL HOW IMPORTANT THIS WAS.
17   IT WAS IMPORTANT, BUT IS IT MORE IMPORTANT THAN THIS?  IS IT
18   MORE IMPORTANT THAN THE SATELLITE, IS IT MORE IMPORTANT THAN
19   IMPEG, IS IT MORE IMPORTANT THAN GEM STAR OR DOLBY OR ANY OF
20   THESE OTHERS?  BASED ON THE EVIDENCE BEFORE THE COURT, IF YOU
21   REMOVE ANY ONE OF THESE KEY ITEMS, THE SYSTEM BREAKS DOWN.  SO
22   IT'S IMPORTANT, BUT NOT NECESSARILY MORE IMPORTANT THAN THE 200
23   SOME-ODD PATENTS IN THE IMPEG SYSTEM OR THE OTHERS.  SO THAT
24   WOULD AGAIN GO TOWARDS KEEPING THE RATE WITHIN THE RANGE
25   DISCUSSED IN ITEM NUMBER TWO, THE RATES PAID BY THE LICENSEE
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

134

1    FOR USE OF OTHER PATENTS.

2              THIRTEEN -- FACTOR 13 IS VERY SIMILAR.  THE

3    COURT IS GOING TO REALIZE THE PROFIT SHOULD BE CREDITED TO THE

4    INVENTION AS DISTINGUISHED FROM NONPATENTED ELEMENT.   THE

5    MANUFACTURING PROCESS, BUSINESS RISK SIGNIFICANT FEATURES OR

6    IMPROVEMENT HEADED BY INFRINGER.  I THINK THIS IS IMPORTANT

7    BECAUSE AS MR. DONALDSON AGREED, VERY HIGH COST OF ENTRY,

8    VARIOUS ENTRY IN THIS CASE.  LITERALLY BILLIONS OF DOLLARS TO

9    GET INTO THIS BUSINESS.  I MEAN, PUTTING UP THREE SATELLITES.

10   THERE WAS A LOT OF TALK ABOUT, WELL, THEY HAVE ON HAND CASH OF

11   SEVERAL BILLION DOLLARS.  DEFENDANT NEVER REALLY CAME BACK AND

12   SPENT MUCH TIME ON THAT, BUT THE COURT HAS -- YOU KNOW, AT

13   LEAST NOT DIRECTLY TO THE JURY.  BUT THE COST AS BROUGHT OUT

14   WERE ALSO VERY, VERY HIGH.  SO HOW MUCH CASH DO THEY HAVE ON

15   TIME AND ONE PARTICULAR TIME IS NOT A KEY HERE, AND NO ONE, I

16   THINK, CAN REASONABLY SAY THAT THIS INVENTION SHOULD BE

17   CREDITED WITH 25 PERCENT OF OR SOME OTHER HUGE PERCENT OF THOSE

18   GROSS REVENUES THAT CAME IN THAT HAVE TO BE INVOLVED IN

19   AMORTIZATION.  YOU GOT A SATELLITE UP THERE THAT'S GOING TO

20   HAVE A DECAYING ORBIT.  IT SOMETIMES IS GOING TO HAVE TO BE

21   REPLACED.  I DON'T KNOW WHAT IT COSTS NOW TO LAUNCH A

22   SATELLITE, BUT IT'S SOMETHING IN A VERY HIGH RANGE.  SO YOU

23   TALK ABOUT YOUR REALIZABLE PROFIT.  YOU CAN'T JUST BE LOOKING

24   AT TOTAL CASH ON HAND.  YOU HAVE TO CONSIDER AMORTIZATION.  YOU

25   HAVE TO BE LOOKING AT ONE OF THE PROFIT MEASURES, WHETHER IT'S

1    THE 560 MILLION -- YOU CALL IT OPERATING PROFIT OR THE ONE

2    BILLION SOME ODD DEPENDING ON WHICH YOU LOOKED AT.  YOU'RE

3    LOOKING AT THAT.  AND AGAIN THE PROBLEMS OF DOING IT BY

4    REVENUE, I'VE ALREADY EXPLAINED.  BUT SEEING AS THIS -- IS THIS

5    PATENT SEEMS TO BE COMPARABLE TO SOME OF THE OTHERS IN THE

6    RANGE OF THOSE SEEMS -- SEEMS TO BE PRACTICAL AND JUSTIFIABLE.

7               FINALLY GET TO THE OPINION TESTIMONY OF

8    QUALIFIED EXPERTS, AND THE COURT HAS CONSIDERED THAT.  THERE'S

9    OBVIOUSLY A WIDE VARIANCE.  I EXPLAINED WHY I DON'T THINK THE

10   USE OF A FACTOR BASED ON REVENUE IS APPROPRIATE.  ON THE OTHER

11   HAND, GIVEN THE RATES, FACTOR NUMBER TWO, THE 30 CENTS PER BOX

12   OR EVEN THE 60 CENTS PER BOX IS APPROPRIATE EITHER.  BASED ON

13   THE JURY'S VERDICT, THIS IS -- THIS IS INFRINGEMENT, AND BASED

14   ON ALL THE EVIDENCE IT'S AN IMPORTANT PATENT.

15              AND THEN THE LAST FACTOR THAT'S SET OUT IN IN

16   THE GEORGE-PACIFIC CASE IS THE -- WHAT A REASONABLE BUYER WOULD

17   HAVE ACCEPTED IT.  BASICALLY WHAT A REASONABLE BUYER WOULD

18   ACCEPT IT OR REASONABLE SELLER WOULD HAVE SOLD FOR OR WHAT THEY

19   WOULD HAVE AGREED UPON AT THE TIME THE INFRINGEMENT BEGAN.

20   BASICALLY THE REASONABLE BUYER, REASONABLE SELLER TEST.  HAVE

21   TO LOOK AT THAT.  IT'S A LITTLE BIT ARTIFICIAL IN THAT NOW

22   WE'VE ALREADY GOT A JURY VERDICT.  BUT AGAIN LOOKING AT WHAT IS

23   COMMERCIALLY REASONABLE, FACTOR TWO RAISED -- COMES UP PRETTY

24   HEAVILY.

25              BASED ON ALL OF THAT, THE COURT IS GOING TO IN

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

136

```
1    LIEU OF ENJOINING DIRECTV FROM OPERATING ENTER JUDGMENT THAT

2    THERE WILL BE A COMPULSORY LICENSE AT THE RATE OF $1.60 PER SET

3    TOP BOX.

4             NOW, TO EXPLAIN, I GUESS, FOR THE HIGHER COURT

5    HOW THE COURT ARRIVES AT THAT, THERE IS EVIDENCE THAT IMPEG,

6    FOR EXAMPLE, IS AT 2.50 NOW BASED ON THE VOLUME BECAUSE IMPEG

7    INVOLVES SOME 200 PATENTS.  THE STARSIGHT IS A HIGHER PER BOX,

8    BUT IT HAD ABOUT SEVEN PATENTS RELATED TO THE PROGRAM.  DOLBY,

9    WHICH THE COURT'S UNDERSTANDING, WAS BASICALLY A SOUND

10   ENHANCEMENT SYSTEM, HAS A LOWER RATE THAN THE 12 CENTS GIVEN

11   CURRENT VOLUME.  BUT THAT'S PROBABLY NOT AS IMPORTANT AS THE

12   METHOD FOR THE ENTIRE SYSTEM.  SO PERCEIVING WHAT THE EVIDENCE

13   IS AND WHAT HAS BEEN DONE IN OTHER PATENTS FOR MULTIPLE GROUPS

14   OF PATENTS WHICH SEEM JUST AS IMPORTANT, AND THEN TAKING A LOOK

15   AT THE TOTAL PROFITS THAT WERE ACTUALLY INVOLVED, THE COURT

16   CONCLUDES THAT A REASONABLE ROYALTY OF $1.60 PER SET TOP BOX

17   GOING INTO THE FUTURE WOULD BE REASONABLE.

18             NOW AN ARGUMENT COULD BE MADE, WELL, THAT SEEMS

19   TO BE MORE THAN WHAT THE JURY DID.  WELL, FIRST OF ALL, WE

20   DON'T KNOW WHAT THE JURY DID.  SECOND, WE'RE NOT -- EVEN IF YOU

21   MULTIPLY OR DIVIDE IT OUT TO COME UP WITH $1.32, THAT'S IN THE

22   PAST.  A DOLLAR BACK IN 1999 OR WHATEVER ISN'T WORTH AS MUCH AS

23   A DOLLAR TODAY.  AND SO THEY'RE LOOKING AT THE PAST; I'VE GOT

24   TO LOOK ON UP TO THE FUTURE.  I WILL STATE RIGHT NOW THAT IT'S

25   THE COURT'S INTENT THAT THIS PROBLEM OF SET TOP BOX,
```

1  ENTERTAINMENT CENTERS AND SO FORTH CONTROLLING MULTIPLE TV'S IS

2  GOING TO BE SUBJECT TO THE SAME KIND OF ACCOUNTING AS IN THE

3  IMPEG LICENSE WHERE IF THAT OCCURS, THEN IT WINDS UP BEING

4  CONSIDERED AS TWO SET TOP BOXES OR THREE SET TOP BOXES.  I'M

5  STATING THAT AS MY INTENT BECAUSE I'M NOT SURE IN TERMS OF THE

6  JUDGMENT I CAN CRAFT OUT THE ENTIRE LICENSE AGREEMENT.  BUT IF

7  A DISAGREEMENT COMES UP, I WANT BOTH SIDES TO UNDERSTAND THAT

8  THAT'S THE KIND OF THING I'M GOING TO BE LOOKING AT.

9  OBVIOUSLY, THE COURT RETAINS JURISDICTION.  IF A PROBLEM COMES

10 UP, I'LL HAVE TO DEAL WITH IT.  I'M HOPING THAT WON'T BE

11 NECESSARY, IF YOU'VE GOT AN IDEA OF WHAT MY INTENT IS AT THAT

12 TIME.

13            AGAIN, THE COURT CONSIDERS THAT FINISAR IS THE

14 PREVAILING PARTY AND IS ENTITLED TO COST.  RECOVERY OF COSTS IN

15 A FEDERAL SUIT IS SET OUT IN FEDERAL STATUTES.  THOSE ARE TO

16 BE, AS ALWAYS, THEY WIND UP BEING SUBMITTED TO THE CLERK OF THE

17 COURT.  I MEAN, THE RULE -- COUNSEL ARE WELL FAMILIAR WITH THE

18 RULES ON THAT.  COSTS DO NOT INCLUDE ATTORNEY'S FEES.  THIS

19 ISN'T A CIVIL RIGHTS CASE.  YES, SIR.

20            MR. ROBERTS:  ONE POINT OF CLARIFICATION.  I

21 KNOW SOME COURTS AWARD EXPERT WITNESS FEES AS PART OF THE COST.

22 OBVIOUSLY THOSE ARE IN PATENT CASE.  THE COURT HAS HEARD

23 TESTIMONY ABOUT THE AMOUNT THAT OUR WITNESSES HAVE CHARGED.  I

24 THINK IT WAS VERY REASONABLE.  WE'D ASK THAT THOSE BE INCLUDED

25 WITHIN THE AWARD OF COST.

```
 1            THE COURT:  YOU CAN SUBMIT THAT AND REQUEST

 2    THAT.  I CAN TELL YOU IN THE PAST CASES I'VE HAD, I'VE NOT

 3    AWARDED THAT GENERALLY.  PART OF THE ENHANCEMENT IS INTENDED TO

 4    PUT PLAINTIFF IN A POSITION IT WOULD HAVE BEEN HAD THERE -- IN

 5    OTHER WORDS, HAD INFRINGEMENT NOT OCCURRED OR HAD THE LICENSE

 6    BEEN TAKEN.  AND THE AMOUNT THAT'S INVOLVED THERE SHOULD COVER

 7    THAT.  IN OTHER WORDS, IT WAS PRETTY OBVIOUS THAT COUNSEL ON

 8    BOTH SIDES COULD HAVE CHOSEN TO HIRE EXPERTS AT A COUPLE

 9    HUNDRED DOLLARS AN HOUR OR $500 AN HOUR AND LET THEM WORK 100

10    HOURS OR 800 HOURS, AND THAT -- THAT KIND OF DISCREPANCY IS, I

11    THINK, THE REASON THE STATUTE GENERALLY DOESN'T ALLOW THAT.

12            NOW, THERE IS -- BASICALLY WHAT I TEND TO DO IS

13    GO STRICTLY BY THE STATUTE.  THAT COULD ALLOW CERTAIN FEES FOR

14    WITNESSES AND EXPENSES AND THINGS LIKE THAT, BUT NOT

15    NECESSARILY FOR THEIR HOURLY FEE.

16            ANY POINT OF -- AND I'LL HAVE THE WRITTEN

17    JUDGMENT, ALTHOUGH I'M NOT GOING TO TRY TO REDUCE THIS OPINION

18    ON A RECORD FOR -- TO WRITING.  I STATED MY REASONS, AND THE

19    JUDGMENT WILL BE ENTERED BASED ON THAT.  IS THERE SOME ELEMENT

20    OR MOTION -- ALL MOTIONS, OTHER MOTIONS OTHER THAN -- I MISSED

21    ONE ON JMOL, PRECEDING MOTIONS AT THIS TIME WILL BE DENIED.  IF

22    THERE'S SOME -- ONE OF THE JMOL MOTIONS, THERE'S SOME POINT

23    I'VE MISSED COVERING RIGHT NOW FROM PLAINTIFF'S POINT OF VIEW,

24    LET ME KNOW.  IS THERE ANYTHING YOU THINK I'VE MISSED?

25            MR. ROBERTS:  THAT'S ALL WE CAN THINK OF, YOUR
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

139

1    HONOR.

2                    THE COURT:   WHAT ABOUT DEFENDANTS?   ANYTHING

3    THAT I'VE MISSED ON ANY OF YOUR JMOL'S OR OTHER MOTIONS, POST

4    TRIAL MOTIONS THAT I'VE MISSED?

5                    MR. SAVIKAS:   NO, YOUR HONOR.

6                    THE COURT:   ALL RIGHT.   THEN ANY OF THE OTHER

7    PROCEDURAL MOTIONS AND SO FORTH AT THIS TIME ARE DENIED.   AND I

8    WILL GO AHEAD AND GET THE JUDGMENT OUT AS QUICKLY AS WE CAN.

9    AT THIS TIME, THE COURT IS IN RECESS.

10                    (COURT IS IN RECESS.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

140

1   THE STATE OF TEXAS :

2   COUNTY OF JEFFERSON:

3

4       I, ADA V. CHRISTY, A CERTIFIED SHORTHAND REPORTER IN AND

5   FOR THE STATE OF TEXAS, DO HEREBY CERTIFY THAT THE FACTS AS

6   STATED BY ME IN THE CAPTION HERETO ARE TRUE; THAT THE ABOVE AND

7   FOREGOING CONTAINS A TRUE AND CORRECT TRANSCRIPTION OF ALL

8   PORTIONS OF EVIDENCE AND OTHER PROCEEDINGS REQUESTED IN WRITING

9   BY COUNSEL FOR THE PARTIES TO BE INCLUDED AND SAME WERE REDUCED

10  TO TYPEWRITING UNDER MY DIRECTION.

11          I FURTHER CERTIFY THAT I AM NOT, IN ANY

12  CAPACITY, A REGULAR EMPLOYEE OF THE PARTY IN WHOSE BEHALF THIS

13  PROCEEDING IS TAKEN, NOR IN THE REGULAR EMPLOY; AND I CERTIFY

14  THAT I AM NOT INTERESTED IN THE CAUSE, NOR OF KIN OR COUNSEL TO

15  EITHER OF THE PARTIES.

16          GIVEN UNDER MY HAND AND SEAL OF OFFICE, ON THIS, THE 10TH

17  DAY OF JULY, 2006.

18

19                          ADA V. CHRISTY, CSR, RPR, CCR
                            TEXAS CERTIFICATION NO.:  5141
20                          EXPIRATION DATE: 12-31-07
                            8311 EARSEL LANE
21                          ORANGE, TEXAS 77632
                            (409) 745-5228
22

23

24

25

**$**

**$1.32** - 7:21, 9:22, 9:23, 20:25, 53:9, 54:23, 55:9, 62:13, 82:4, 84:15, 96:20, 127:5, 136:21
**$1.32.09** - 82:4
**$1.60** - 136:2, 136:16
**$1.65** - 60:14, 129:4
**$100** - 126:3
**$100,000** - 117:1
**$13** - 95:14
**$14** - 95:15
**$15** - 32:20
**$2.50** - 60:19, 62:22
**$20,250.25** - 81:22
**$23** - 8:13
**$25** - 117:20
**$400** - 116:18
**$5.50** - 62:23, 62:24
**$500** - 138:9
**$600** - 15:14
**$700,000** - 21:4
**$78,720,250** - 121:20
**$78,720,250.25** - 121:20
**$78,920,250.25** - 122:24
**$79** - 117:1
**$800,000** - 106:1, 111:4

**'**

**'95** - 84:25

**0**

**0.75** - 64:18, 64:22

**1**

**1** - 95:19, 96:1, 96:4
**1.14** - 87:11
**1.15** - 87:11
**1.2** - 128:21
**1.6** - 115:5
**1.7** - 42:3
**10** - 128:12
**10.5** - 99:19, 102:10
**100** - 138:9
**1020** - 103:17
**1032** - 103:22
**1033** - 103:24
**1037** - 105:8
**106** - 98:22
**10TH** - 140:16
**11** - 122:16
**11,163,697** - 96:5
**11.7** - 67:18, 67:24
**1195** - 118:20
**1197** - 118:20
**12** - 11:7, 55:4, 60:13, 60:14, 60:16, 129:4, 136:10
**12-31-07** - 140:20
**120** - 100:10
**1259** - 113:19
**126** - 123:18
**1274** - 113:19
**13** - 122:17, 134:2
**1317** - 126:25
**1317-1319** - 118:15
**1324** - 127:1
**133** - 100:10, 108:12
**1349** - 98:24
**1368** - 118:7
**138** - 118:11
**1380** - 118:7
**1389** - 1:21

**14** - 20:24, 97:12, 122:16, 128:2
**140** - 3:16
**1428** - 96:19
**1448** - 118:11
**1458** - 16:3
**1460** - 118:12
**14TH** - 94:9
**15** - 16:2, 23:5, 29:16, 32:5, 32:20, 75:21, 76:3, 76:8, 89:23, 92:14, 125:22, 127:11, 128:12, 131:19
**155** - 100:10
**1553** - 18:7
**1555** - 118:22
**1582** - 118:22
**160** - 94:11
**1837** - 123:18
**185** - 113:19
**19** - 17:15
**1961** - 123:3
**1974** - 127:2
**198** - 118:25
**1986** - 118:25
**1988** - 81:5
**1991** - 102:16
**1992** - 103:17, 106:24, 118:22
**1993** - 94:7
**1995** - 26:16, 26:18, 27:25, 28:4, 29:3, 29:12, 29:23, 30:5, 30:8, 30:12, 30:25, 31:1, 33:22, 34:1, 34:2, 35:11, 35:14, 35:16, 35:23, 36:8, 36:16, 36:17, 36:24, 37:12, 38:4, 38:21, 43:11, 43:13, 43:17, 61:12, 110:2
**1996** - 118:20
**1997** - 93:23, 101:12, 104:6, 104:20, 108:13
**1998** - 118:12
**1999** - 37:23, 75:24, 113:20, 136:22
**1:05-CV-00264** - 1:5
**1:05-CV-0264** - 4:3

**2**

**2** - 53:20, 95:20
**2.50** - 55:5, 55:6, 129:2, 129:5, 136:6
**20** - 45:15, 45:16, 60:22, 70:21, 129:5
**200** - 13:7, 59:10, 133:22, 136:7
**200-YEAR** - 6:3
**2000** - 26:25, 100:11
**2001** - 26:25, 98:25, 100:21
**2002** - 27:1, 34:4, 37:23, 38:20
**2003** - 27:1, 35:23, 105:21
**2004** - 33:25, 34:2, 38:19, 105:14, 109:2, 115:17, 115:24, 120:8
**2004-2005** - 34:18
**2005** - 70:18, 70:21, 118:7
**2006** - 1:7, 28:3, 29:7, 30:6, 34:3, 37:11, 38:6, 56:9, 56:25, 67:18, 67:23, 75:22, 85:3, 118:16, 140:17
**2007** - 10:14, 85:4
**201** - 118:25

**2012** - 11:9, 16:23, 35:10, 35:19, 67:18, 67:23
**2097** - 100:11
**2110** - 100:11
**212** - 100:21
**219** - 100:21
**2195** - 2:3
**222** - 86:15, 86:22
**223** - 86:15, 86:21, 86:22
**23** - 15:12
**26** - 65:24, 66:2, 67:2, 67:3, 67:5, 67:7, 67:10, 89:25, 123:1, 134:17
**25.161** - 79:16
**257** - 94:8
**258** - 101:5
**26** - 3:5
**265** - 98:24
**271** - 84:7, 100:20
**28** - 123:3
**283** - 123:15
**284** - 113:11, 116:7, 120:25, 121:1
**285** - 18:8, 22:18, 92:1, 92:17, 118:1, 120:10, 120:25, 121:6, 121:18
**288** - 95:7
**28TH** - 76:24, 90:17
**2D** - 94:6, 94:8, 103:17, 105:8, 113:15, 126:25
**2ND** - 118:22, 118:25

**3**

**3** - 64:23, 64:24
**3.60** - 55:7, 55:18, 129:3
**30** - 40:20, 46:20, 46:25, 62:25, 63:8, 63:16, 70:21, 85:2, 85:3, 117:21, 135:11
**326** - 101:5
**35** - 95:8, 113:11, 117:25, 123:15
**360** - 100:14
**382** - 94:6
**39** - 3:6
**3M** - 98:24
**3RD** - 89:12, 100:14, 100:20, 101:5, 108:13, 113:19, 118:7, 118:11, 118:15, 118:20
**4**

**4** - 55:5, 108:14, 129:2
**400** - 105:14
**409** - 140:21
**432** - 118:6
**436** - 118:15
**47** - 79:15
**483** - 100:14
**492** - 126:25

**5**

**5** - 3:3, 53:20, 63:4
**5.3** - 67:18, 67:24
**5.50** - 55:7, 55:18, 129:3
**50** - 50:1
**500** - 1:19
**505** - 29:11, 36:12, 43:16, 43:17, 52:22, 89:6, 95:5
**5141** - 140:19

**52** - 3:9
**530** - 100:10
**55** - 76:1, 84:15
**56-MILLION** - 127:8
**55-PAGE** - 89:7
**550** - 1:19
**555** - 1:25
**56** - 29:14, 31:12
**560** - 135:1
**580** - 101:11
**584** - 101:11
**59** - 75:24, 76:1
**59-MILLION** - 127:10
**5:00** - 13:10
**5TH** - 1:25

**6**

**6** - 1:7
**60** - 1:16, 89:12, 135:12
**61** - 3:10
**612.8** - 15:13, 15:17
**68** - 3:11
**69** - 3:13

**7**

**70** - 70:23
**72** - 3:14
**720,000** - 122:22
**745-5228** - 140:21
**76** - 118:20
**77** - 3:15
**77632** - 2:5, 140:21
**77701** - 1:19
**77706** - 2:3
**781** - 118:24
**79** - 15:16, 18:4, 93:8, 115:1
**7TH** - 9:5

**8**

**80** - 59:14, 70:23, 111:10
**800** - 138:10
**816** - 113:15
**824** - 94:8
**826** - 113:15
**827** - 113:15
**8311** - 2:5, 140:20
**84111** - 1:17
**849** - 16:2
**859** - 94:6
**860** - 108:13
**862** - 94:11
**867** - 108:14
**892** - 18:6
**893** - 94:2
**894** - 94:2

**9**

**9** - 28:13
**90071** - 2:1
**920,000** - 122:22
**94089** - 1:22
**95** - 70:9
**960** - 103:17, 105:8
**965** - 94:2, 101:10
**970** - 92:7, 113:14
**977** - 118:21
**9:30** - 1:7

**A**

**ABACK** - 102:4
**ABILITY** - 7:18, 14:24, 18:18, 32:3, 32:19, 33:16, 37:5, 57:6, 90:25

**ABLE** - 7:10, 14:21, 37:16, 58:7, 97:15, 104:8, 130:6
**ABROGATE** - 119:10
**ABSENCE** - 42:5
**ABSENT** - 119:14, 121:2
**ABSOLUTE** - 49:13, 62:7, 107:1, 116:25, 117:23
**ABSOLUTELY** - 26:15, 41:19, 42:4
**ABUSE** - 116:17
**AC** - 103:16
**ACCEPT** - 135:18
**ACCEPTED** - 85:24, 119:9, 135:17
**ACCESS** - 36:13
**ACCIDENT** - 94:10
**ACCOMPANIED** - 117:12
**ACCOMPLISH** - 121:4
**ACCORDING** - 30:20, 126:6
**ACCOUNT** - 30:9, 41:2, 47:7, 47:9, 49:7, 101:9
**ACCOUNTING** - 83:23, 137:2
**ACCURACY** - 19:16, 72:2
**ACCURATE** - 19:14, 71:20, 71:22, 72:1
**ACCUSATION** - 92:20
**ACCUSATIONS** - 92:19
**ACCUSED** - 41:20
**ACKNOWLEDGE** - 17:20
**ACKNOWLEDGED** - 63:21
**ACQUISITION** - 36:10, 44:1, 70:17
**ACT** - 79:7, 121:8, 125:1
**ACTED** - 18:25
**ACTING** - 13:7
**ACTION** - 1:4, 5:8, 5:9, 10:6, 11:7, 11:8, 105:4, 111:1, 115:23
**ACTIONS** - 88:6
**ACTIVATED** - 60:6, 76:16
**ACTIVITIES** - 16:15
**ACTIVITY** - 5:13, 111:1
**ACTUAL** - 8:22, 116:13
**ADA** - 2:4, 140:4, 140:19
**ADD** - 36:1, 94:13
**ADDED** - 23:7, 56:23
**ADDING** - 76:9
**ADDITION** - 20:1, 34:4, 34:9, 35:15, 78:19, 89:23, 90:7, 95:5
**ADDITIONAL** - 20:10, 33:21, 33:23, 34:23, 51:15, 66:23, 80:15, 114:24
**ADDRESS** - 21:23, 77:1, 77:8, 91:19, 91:22, 94:20
**ADDRESSED** - 10:24, 89:10, 126:14
**ADDUCE** - 25:6
**ADEQUACY** - 77:20
**ADEQUATELY** -

125:14
**ADJUST** - 63:15
**ADMINISTRATION** - 124:23
**ADMINISTRATIONS** - 124:24
**ADMITTED** - 97:23
**ADOPT** - 11:4, 22:22, 111:7
**ADOPTED** - 10:11, 46:22, 62:5
**ADVANCED** - 118:21
**ADVANTAGE** - 30:2, 114:22, 132:17, 133:8
**ADVISORY** - 103:13
**ADVOCATES** - 9:5
**AFFECT** - 28:7
**AFFECTS** - 37:5, 124:18
**AFFIDAVIT** - 99:21, 100:1
**AFFIRMANCE** - 80:9, 80:12
**AFTERNOON** - 61:4, 97:19
**AGGREGATED** - 113:15
**AGGRIEVED** - 22:9
**AGREE** - 30:23, 31:15, 33:6, 57:6, 58:6, 58:14, 66:7
**AGREED** - 16:22, 20:23, 21:24, 121:22, 134:7, 135:19
**AGREEING** - 21:7, 21:8, 21:9
**AGREEMENT** - 23:22, 28:12, 28:16, 28:21, 28:24, 30:25, 33:25, 34:4, 35:8, 38:1, 38:19, 38:20, 38:21, 39:1, 41:25, 42:18, 56:7, 64:2, 64:4, 64:8, 64:11, 64:12, 64:14, 65:11, 65:15, 137:6
**AGREEMENTS** - 28:20, 34:9, 34:10, 37:23, 37:25, 38:5, 38:23, 46:20, 47:1, 60:3, 62:20, 63:22, 64:1
**AGREES** - 82:1
**AHEAD** - 4:21, 21:18, 29:2, 33:18, 48:16, 54:11, 55:21, 65:10, 73:19, 77:6, 83:14, 86:8, 87:13, 97:19, 97:23, 139:8
**AIR** - 66:3
**AL** - 1:8, 4:2
**ALIGNED** - 53:3
**ALLEGATION** - 90:16
**ALLEGED** - 82:21
**ALLOCATE** - 58:2
**ALLOCATED** - 57:23
**ALLOW** - 5:25, 16:10, 39:15, 72:25, 73:1, 73:15, 73:17, 73:18, 88:21, 126:8, 138:11, 138:13
**ALLOWED** - 6:25, 16:6, 16:7, 107:24
**ALLOWS** - 93:25
**ALMOST** - 13:5, 14:13, 16:21, 49:10, 49:12, 53:18, 79:5, 101:7
**ALONE** - 17:9
**ALTER** - 90:3
**ALTERNATE** -

102:21
**ALTERNATIVE** - 4:16, 26:11, 79:22, 115:18
**ALTERNATIVES** - 8:8, 8:19, 51:7, 61:9, 61:15, 63:15, 106:1, 111:4, 111:7
**AMEND** - 19:17
**AMENDMENTS** - 37:24
**AMERICA** - 94:6
**AMERICAN** - 119:10, 119:11, 126:25
**AMORTIZATION** - 35:10, 134:19, 134:24
**AMOUNT** - 17:21, 45:9, 45:19, 47:10, 47:17, 47:22, 49:6, 49:25, 53:7, 53:14, 62:1, 62:25, 67:16, 76:11, 83:2, 85:11, 89:3, 102:19, 114:25, 120:2, 122:9, 123:12, 125:9, 127:17, 137:23, 138:6
**AMOUNTS** - 63:10, 122:13
**AMPLE** - 107:11, 107:21
**ANALOGOUS** - 133:13
**ANALYSIS** - 7:8, 12:6, 12:17, 14:1, 14:2, 20:13, 29:5, 41:6, 42:5, 48:22, 52:11, 56:14, 56:15, 58:5, 59:24, 61:11, 63:16, 97:5, 111:9, 111:12, 112:4, 112:13, 113:18, 113:21, 114:3, 115:17, 115:18, 115:22, 117:3, 128:3
**ANALYST** - 35:15, 35:17, 35:24
**ANALYZE** - 27:16, 38:8
**ANALYZED** - 61:12, 61:17, 104:25, 119:23
**ANALYZING** - 120:25, 127:16
**ANGELES** - 2:1
**ANIMATION** - 102:10, 102:22
**ANIMATION** - 102:8, 102:9
**ANIMATIONS** - 112:25
**ANNOUNCEMENTS** - 97:19
**ANNUAL** - 22:3, 22:19
**ANNUALLY** - 22:3, 22:13, 22:17, 22:21, 95:14, 122:7, 122:12, 122:19
**ANNUM** - 94:1, 94:4
**ANOMALY** - 58:25, 96:23
**ANSWER** - 13:22, 13:25, 74:2, 74:7, 76:19, 86:10, 95:23
**ANSWERED** - 77:19, 78:4
**ANSWERS** - 80:23
**ANTI** - 44:1, 78:2, 124:17, 124:22, 126:9, 130:4
**ANTI-BARGAINING** - 126:9
**ANTI-TRUST** - 44:1, 78:2, 124:17, 124:22,

130:4
**ANTICIPATED** - 30:12, 99:8
**ANTICIPATING** - 99:7
**ANTICIPATION** - 89:20, 98:23, 99:1, 99:3, 100:1, 101:17, 101:19, 110:5, 110:15, 112:13, 115:10, 119:7
**ANYTIME** - 90:5
**ANYWAY** - 49:14
**APART** - 21:4
**APOLOGIZE** - 28:23
**APPEALS** - 14:14, 15:8, 94:7, 94:9
**APPEAR** - 122:5
**APPEARANCES** - 1:14
**APPEARED** - 111:24
**APPELLATE** - 4:23, 80:25
**APPLICABLE** - 46:16
**APPLIED** - 27:2, 66:10, 85:16
**APPLY** - 29:21, 49:17, 67:7
**APPLYING** - 27:5
**APPOINTMENT** - 97:18
**APPRECIATES** - 77:1
**APPROACH** - 5:15, 11:5, 16:20, 22:13, 22:21, 25:19, 27:8, 50:13, 62:14, 74:8, 83:12, 85:21, 88:9
**APPROPRIATE** - 6:6, 6:11, 20:6, 26:9, 27:1, 38:7, 38:8, 39:7, 52:11, 52:21, 56:6, 57:24, 58:4, 59:17, 62:25, 79:9, 87:24, 91:1, 92:18, 113:13, 118:10, 121:23, 127:17, 135:10, 135:12
**APPROPRIATELY** - 23:3, 126:7
**APPROVED** - 113:18
**APPROXIMATE** - 6:3, 9:24, 82:7
**APPROXIMATED** - 24:23
**APRIL** - 43:17
**ARBITRARILY** - 126:15
**ARCENEAU** - 106:23
**ARCENEAUX** - 19:11
**ARCHITECTURE** - 89:20
**AREAS** - 33:3, 33:4, 33:7, 33:16
**ARGUE** - 62:18, 125:11
**ARGUED** - 12:7, 17:25, 32:3, 62:19, 89:9, 104:24, 116:16
**ARGUES** - 18:3
**ARGUING** - 79:25, 84:14, 104:14
**ARGUMENT** - 12:18, 12:20, 13:24, 31:2, 49:9, 50:12, 84:4, 90:19, 104:24, 123:23, 136:18
**ARGUMENTS** - 5:10, 51:25, 78:4
**ARISE** - 51:17
**ARISES** - 103:25,

104:2
**ARISING** - 51:20
**ARRANGEMENT** - 59:21
**ARRANGEMENTS** - 59:25
**ARRIVE** - 100:19
**ARRIVES** - 136:5
**ART** - 102:15, 113:1, 113:3
**ARTICLE** - 13:13
**ARTICULATING** - 65:18
**ARTIFICIAL** - 135:21
**ASCERTAIN** - 60:6
**ASLEEP** - 122:25
**ASPECT** - 27:4, 38:1
**ASPECTS** - 91:15
**ASSERTS** - 127:2
**ASSESS** - 29:17
**ASSIGNED** - 34:10
**ASSIST** - 6:17, 88:24
**ASSISTED** - 27:4
**ASSOCIATED** - 105:3
**ASSUME** - 41:17, 41:22, 105:2
**ASSUMED** - 41:13, 121:8
**ASSUMING** - 53:6
**ATTACHED** - 11:10, 44:5, 44:6, 44:13, 78:7, 95:10
**ATTEMPT** - 111:2, 112:22, 115:16, 115:17, 116:5
**ATTEMPTED** - 114:11, 116:4
**ATTEMPTING** - 111:1
**ATTEMPTS** - 119:18, 130:10
**ATTENTION** - 6:25, 22:14, 71:23, 104:6
**ATTORNEY** - 18:14, 90:19, 109:12, 124:25
**ATTORNEY'S** - 17:4, 17:7, 17:10, 18:10, 22:18, 77:10, 87:16, 91:20, 91:22, 91:24, 92:6, 92:10, 118:1, 118:9, 119:2, 119:9, 119:11, 119:13, 119:22, 120:12, 120:18, 121:5, 121:9, 121:18, 137:18
**ATTORNEY-CLIENT** - 109:12
**ATTORNEYS** - 4:13, 14:15, 119:19, 121:12, 121:15
**AUSPICES** - 36:11
**AUTHORITIES** - 116:11
**AUTHORITY** - 84:8, 84:9, 107:1
**AUTHORIZATION** - 79:17
**AUTOMATIC** - 79:17, 124:12
**AVAILABILITY** - 63:14, 125:23
**AVAILABLE** - 35:4, 47:12, 54:21, 75:8, 75:11, 125:6, 125:7
**AVERAGE** - 23:10
**AVERSION** - 124:17
**AVOID** - 19:24, 110:25, 111:2, 111:14, 114:11, 119:18
**AWARD** - 11:11, 15:4, 17:10, 18:13,

18:18, 18:19, 18:22, 22:8, 43:10, 92:1, 116:13, 116:19, 117:4, 118:1, 120:15, 120:17, 125:11, 127:4, 137:21, 137:25
**AWARDED** - 4:13, 15:12, 22:11, 84:16, 119:2, 121:19, 121:20, 122:9, 138:3
**AWARDING** - 89:3
**AWARE** - 39:24, 40:9, 42:15, 43:22, 43:25, 44:25, 45:2, 55:22, 61:22, 66:2, 67:17, 72:25, 73:21, 73:24, 74:3, 75:11

**B**

**BACHMAN** - 113:16
**BAD** - 81:16, 114:12, 118:13
**BAG** - 5:18, 50:14
**BALANCE** - 78:8, 78:11, 97:6
**BANK** - 22:7
**BAR** - 13:13
**BARELY** - 20:4
**BARGAINING** - 124:12
**BARGAINING** - 126:9
**BARRIER** - 31:16, 79:21
**BARRIERS** - 33:1
**BASE** - 27:2, 29:16, 30:3, 41:22, 42:19, 82:17, 128:17
**BASED** - 19:9, 20:25, 27:17, 38:24, 39:6, 42:11, 42:13, 42:16, 43:3, 45:10, 45:11, 55:23, 56:3, 59:24, 60:14, 67:13, 67:16, 82:22, 84:15, 87:19, 87:20, 89:20, 98:21, 102:18, 104:9, 114:13, 117:17, 117:19, 122:9, 122:11, 122:18, 128:18, 129:3, 129:5, 129:7, 129:11, 129:13, 132:8, 132:16, 133:6, 133:20, 135:10, 135:12, 135:13, 135:25, 136:6, 138:19
**BASIC** - 17:18, 64:18
**BASING** - 62:9, 62:12
**BASIS** - 7:12, 7:16, 7:25, 8:3, 11:3, 12:3, 14:10, 17:6, 20:25, 21:1, 23:1, 23:18, 33:15, 34:11, 38:25, 39:2, 39:5, 39:10, 42:14, 42:22, 67:14, 86:17, 94:19, 96:20, 100:24, 105:12, 107:15, 117:23, 128:1, 132:4, 132:10
**BB4** - 57:1
**BEANS** - 102:10
**BEARS** - 77:21
**BEAUMONT** - 1:3, 1:6, 1:19, 2:3
**BECAME** - 8:17
**BECKMAN** - 18:6, 22:15
**BECOMES** - 15:3
**BECOMING** - 32:11
**BEGAN** - 135:19
**BEGINNING** - 24:11,

106:22
**BEHALF** - 21:21, 61:7, 68:18, 140:12
**BEHAVIOR** - 114:8, 118:14, 118:17, 119:15
**BEHIND** - 18:8, 120:25
**BELIEF** - 108:25, 114:2
**BELIEVABLE** - 111:24
**BELIEVES** - 100:18
**BELLS** - 45:3
**BEND** - 118:20
**BENEFIT** - 110:21, 111:12, 115:18
**BENEFITS** - 74:20, 133:2
**BEST** - 67:9, 69:25, 70:4, 89:13, 112:17
**BETTER** - 82:13, 115:3, 130:19, 130:20
**BETWEEN** - 8:23, 9:8, 22:23, 23:10, 24:14, 28:4, 29:23, 32:11, 34:2, 35:8, 37:8, 38:10, 38:20, 38:22, 66:18, 76:1, 115:12, 119:8, 121:11, 130:16
**BIG** - 54:7, 54:8, 114:23, 128:2, 128:15
**BILL** - 24:13, 68:16, 122:1
**BILLION** - 42:3, 115:5, 116:20, 128:20, 128:21, 134:11, 135:2
**BILLIONS** - 31:18, 31:21, 121:10, 134:8
**BINKS** - 89:12
**BIT** - 30:1, 34:1, 82:15, 87:1, 94:19, 117:20, 135:21
**BIWEEKLY** - 23:18
**BLANK** - 129:20
**BLESSING** - 125:24, 125:25
**BLIND** - 116:21, 117:22
**BLIP** - 18:20
**BOARD** - 102:4
**BOILS** - 87:25
**BOOK** - 101:21, 101:24, 102:7, 102:8, 102:12
**BORROWING** - 22:6
**BOUND** - 121:24
**BOX** - 21:1, 32:11, 34:14, 34:19, 34:21, 36:21, 38:13, 39:1, 39:2, 39:3, 39:5, 45:23, 46:4, 53:2, 53:9, 53:20, 54:16, 54:17, 54:23, 55:4, 55:19, 59:19, 60:2, 60:20, 62:5, 62:19, 63:1, 63:4, 63:10, 68:9, 68:12, 68:19, 70:1, 70:2, 70:3, 70:7, 70:13, 72:15, 72:19, 72:20, 73:5, 73:8, 73:11, 74:1, 74:16, 74:25, 75:9, 76:12, 76:17, 82:22, 82:23, 83:12, 84:14, 84:19, 84:22, 84:23, 84:24, 85:1, 85:2, 85:3, 85:19, 85:21, 86:5, 86:6, 86:7, 86:18, 87:4, 87:5, 96:20, 96:21, 104:25, 122:4,

122:12, 127:6, 128:1, 128:10, 129:3, 129:5, 129:14, 129:16, 132:1, 132:3, 132:13, 135:11, 135:12, 136:3, 136:7, 136:16, 136:25
**BOXES** - 32:6, 34:12, 42:14, 44:15, 44:16, 44:18, 45:25, 46:3, 53:15, 53:21, 54:19, 55:7, 60:6, 68:16, 69:16, 69:17, 69:19, 69:21, 69:22, 70:8, 70:9, 70:11, 70:16, 70:19, 70:22, 71:15, 72:11, 72:14, 72:16, 72:22, 72:25, 74:3, 74:4, 75:3, 75:5, 75:8, 75:16, 75:25, 76:9, 76:16, 82:11, 82:12, 82:13, 83:1, 83:3, 85:4, 98:12, 111:21, 127:8, 127:10, 130:19, 137:4
**BRANDED** - 69:19
**BREAK** - 48:12, 97:18
**BREAKER** - 83:13
**BREAKS** - 133:21
**BRIAN** - 3:4, 20:5, 25:14, 25:22
**BRIEF** - 7:11, 17:13, 17:19, 18:17, 49:23, 57:7, 58:7, 74:12, 74:14, 76:24, 78:1, 78:5, 78:9, 78:16, 79:24, 80:8, 80:10, 88:2, 89:10, 90:3, 90:17, 92:8, 92:20, 93:12, 93:15, 97:15, 102:8, 127:2
**BRIEFLY** - 5:3, 21:6, 54:14, 77:8, 92:19, 94:21
**BRIEFS** - 4:9, 20:18, 76:24, 80:6, 89:1, 92:25, 95:11, 125:24
**BRING** - 25:20
**BRINGING** - 32:14
**BROADCASTING** - 43:6, 43:9, 43:15, 43:16, 57:17, 78:17
**BROADCOM** - 74:4, 74:12, 75:1
**BROADER** - 38:1
**BROKEN** - 28:24, 35:2, 35:5
**BROOK** - 118:21
**BROUGHT** - 43:25, 82:10, 84:20, 104:6, 104:7, 104:25, 106:10, 129:16, 129:17, 129:21, 132:22, 134:13
**BROWN** - 98:24
**BUBBLE** - 105:7
**BUCKETS** - 35:5
**BUILD** - 11:16, 16:12
**BUILT** - 16:8
**BULK** - 97:21
**BULLET** - 74:21
**BUNCH** - 30:19, 106:17
**BURDEN** - 92:3, 100:13, 101:9, 101:16, 103:1, 103:2, 103:4, 103:6, 103:18, 107:4, 107:10, 107:20, 108:5, 112:14, 113:5, 118:5, 119:22
**BURDENS** - 101:13, 105:15

**BURSTING** - 105:7
**BUSINESS** - 10:7, 16:9, 16:12, 16:15, 19:23, 23:3, 23:14, 23:24, 23:25, 24:20, 25:3, 30:16, 31:14, 35:25, 42:16, 43:6, 55:23, 65:19, 65:20, 85:20, 115:19, 128:13, 128:19, 128:23, 130:19, 131:6, 131:7, 132:14, 133:8, 133:12, 134:5, 134:9
**BUSINESSES** - 133:13
**BUY** - 43:22, 58:10, 69:25, 70:4, 70:9, 127:22, 132:2
**BUYER** - 135:16, 135:17, 135:20
**BUYERS** - 30:19
**BUYS** - 54:18, 68:9, 69:15

# C

**C15** - 121:7
**CA** - 1:22, 2:1
**CABINET** - 91:9
**CABLE** - 30:10, 30:21, 31:24, 33:1, 33:2, 33:5, 33:11, 33:12, 33:14, 45:1, 110:1, 131:6
**CALCULATE** - 4:17, 9:15, 21:12, 82:24
**CALCULATED** - 23:11, 84:19, 86:16, 94:13
**CALCULATING** - 23:17, 38:12
**CALCULATION** - 20:24, 22:24, 23:2, 26:12, 39:8, 54:4, 54:20, 63:5, 63:19, 83:20, 93:2, 95:12, 122:12
**CALCULATIONS** - 22:24, 26:3, 63:23, 66:1, 94:15, 94:17, 122:4
**CANCER** - 16:6
**CANNOT** - 5:17, 11:17, 42:4, 62:3
**CAP** - 36:9
**CAPACITY** - 140:12
**CAPITAL** - 32:4
**CAPITALIZATION** - 36:7
**CAPTION** - 140:6
**CARD** - 72:23
**CARE** - 125:15, 131:14
**CAREFUL** - 104:13, 117:3
**CAREFULLY** - 37:25
**CARRIED** - 87:22, 89:18
**CARRIES** - 76:12, 82:5
**CARRY** - 87:23, 90:8
**CARTER** - 118:24
**CASE** - 4:12, 5:3, 5:4, 5:5, 5:7, 5:10, 6:11, 7:20, 8:9, 8:11, 8:12, 8:23, 9:2, 9:3, 9:6, 9:20, 10:20, 11:1, 11:20, 13:6, 15:9, 15:14, 16:2, 16:4, 16:11, 16:17, 16:24, 17:2, 17:7, 17:21, 18:6, 18:13, 18:24,

19:13, 20:3, 22:15, 22:17, 26:24, 27:3, 27:18, 39:24, 40:19, 40:25, 44:7, 44:13, 46:13, 46:19, 47:24, 48:23, 49:17, 49:19, 49:21, 51:9, 51:18, 52:2, 57:21, 58:24, 77:15, 78:7, 80:6, 80:11, 80:13, 81:1, 81:5, 81:6, 81:8, 81:13, 81:14, 81:18, 82:20, 83:19, 83:25, 87:25, 88:10, 88:11, 88:18, 88:20, 89:5, 89:13, 89:16, 90:8, 90:13, 90:19, 91:3, 91:24, 92:2, 92:3, 92:4, 92:7, 92:11, 92:14, 92:16, 93:11, 93:12, 93:15, 93:22, 93:23, 94:6, 94:10, 95:9, 96:22, 96:23, 97:2, 97:3, 97:4, 98:25, 99:12, 100:14, 101:8, 101:10, 101:12, 101:13, 101:19, 103:15, 103:22, 103:24, 105:9, 109:14, 109:22, 113:14, 113:16, 114:17, 114:19, 115:1, 115:8, 115:9, 116:12, 116:21, 117:19, 118:2, 118:4, 118:8, 118:10, 118:13, 119:1, 119:5, 120:2, 120:3, 121:9, 121:10, 121:15, 121:17, 121:24, 123:12, 123:17, 124:8, 127:2, 134:8, 135:16, 137:19, 137:22
**CASES** - 6:4, 12:12, 12:13, 13:17, 14:4, 14:6, 15:24, 17:8, 17:11, 40:3, 48:20, 49:23, 98:13, 100:12, 101:2, 113:18, 114:15, 116:11, 119:11, 120:11, 120:20, 121:8, 121:12, 121:13, 138:2
**CASH** - 124:12, 134:10, 134:14, 134:24
**CASTANIAS** - 1:24, 51:25, 76:22, 76:23, 77:7, 78:15, 78:24, 79:8, 79:11, 80:22, 81:23, 82:18, 83:8, 83:15, 85:7, 86:1, 86:10, 86:13, 86:22, 87:2, 87:14, 92:23, 93:4, 93:7, 95:17, 95:23, 96:1, 96:4, 96:7, 97:12
**CAT** - 2:7
**CATEGORICAL** - 5:15, 5:16, 50:13, 50:24, 77:14
**CATEGORIES** - 64:25
**CATEGORIZE** - 29:6
**CAUSED** - 60:5
**CAUSES** - 103:25
**CAUTIOUS** - 47:15
**CCR** - 2:4, 140:19
**CEASING** - 111:1
**CENT** - 45:16
**CENTER** - 73:22
**CENTERS** - 131:17
**CENTS** - 45:15, 55:3, 55:4, 60:13, 60:14,

60:17, 60:22, 62:21, 62:25, 63:4, 63:8, 63:16, 82:6, 85:2, 85:3, 129:4, 129:5, 135:11, 135:12, 136:10
**CEO** - 106:20
**CERTAIN** - 29:13, 76:11, 76:14, 138:13
**CERTAINLY** - 29:19, 30:3, 32:22, 33:12, 35:17, 59:15, 61:12, 62:7, 62:9, 85:17, 85:22, 101:19, 105:19
**CERTAINTY** - 29:12, 29:20, 62:7
**CERTIFICATION** - 3:16, 140:19
**CERTIFIED** - 140:4
**CERTIFY** - 140:5, 140:11, 140:13
**CETERA** - 27:14, 36:2
**CFR** - 79:15
**CHAIN** - 69:10, 70:2
**CHALLENGE** - 22:6, 47:8
**CHALLENGED** - 33:13
**CHALLENGES** - 36:1
**CHANCE** - 30:18, 111:10
**CHANGE** - 7:8, 10:17, 52:17, 53:17, 80:3, 91:10, 106:18, 115:16, 118:15, 120:10
**CHANGED** - 52:14, 54:16, 56:22, 71:3, 80:16
**CHANGES** - 27:25, 33:22, 58:9, 82:16, 84:21
**CHARACTER** - 132:25
**CHARACTERIZED** - 64:7
**CHARGED** - 42:22, 45:19, 64:19, 137:23
**CHARGING** - 83:4
**CHARLES** - 1:15, 72:9
**CHART** - 99:23, 99:24
**CHARTED** - 99:21, 101:25
**CHARTERED** - 99:25
**CHARTS** - 21:1
**CHEAP** - 111:3
**CHECK** - 23:21, 24:7, 98:17
**CHECKED** - 50:7
**CHECKS** - 24:25
**CHEMICAL** - 94:8
**CHIP** - 74:4, 74:15
**CHIPS** - 75:1
**CHOICE** - 109:13
**CHOICES** - 109:13, 119:20
**CHOOSE** - 63:10
**CHOOSES** - 57:13, 57:14
**CHOOSING** - 108:9
**CHOSE** - 102:1, 109:9
**CHOSEN** - 11:16, 138:8
**CHRIS** - 21:17
**CHRISTY** - 2:4, 140:4, 140:19

CHURN - 76:7, 76:15
CIRCUIT - 9:6, 11:22, 11:25, 12:1, 12:2, 12:15, 12:21, 39:25, 69:25, 70:4, 80:21, 81:5, 88:3, 88:9, 98:24, 100:21, 103:17, 108:13, 113:20, 118:7, 118:12, 118:16, 118:20, 118:22, 118:25, 127:1
CIRCUIT'S - 5:9, 81:14
CIRCUITRY - 87:4
CIRCUMSTANCES - 8:21, 57:24, 88:5, 95:3, 103:15, 119:2
CITATION - 81:13
CITE - 17:10, 18:6
CITED - 17:12, 92:7, 93:12, 93:15
CITES - 94:5
CITIZENS - 14:8
CITY - 1:17, 33:2, 69:25, 70:4
CIVIL - 1:4, 121:7, 121:9, 121:11, 137:19
CLAIM - 18:25, 92:12, 93:7, 93:9, 96:13, 102:2, 102:6, 103:20, 112:24, 115:18, 120:21
CLAIMED - 89:25, 99:4
CLAIMING - 95:1, 95:2
CLAIMS - 18:11, 18:12, 83:16, 87:18, 89:24, 90:5, 92:14, 93:11, 95:1, 95:6, 110:13, 110:14, 117:16, 120:6, 120:7, 120:22, 124:10
CLAIRVOYANCE - 96:15
CLARIFICATION - 137:20
CLARIFY - 63:17
CLARK - 1:12, 26:8
CLASS - 30:17
CLAUSE - 88:22
CLEAN - 81:22, 82:23, 85:22
CLEAR - 13:11, 16:11, 17:8, 50:21, 92:4, 99:15, 99:22, 100:2, 101:17, 102:5, 102:25, 103:2, 103:6, 103:9, 108:6, 112:14, 112:17, 113:4, 113:6, 116:12, 118:5, 123:8, 124:11
CLEARED - 23:22
CLEARLY - 29:12, 38:20, 102:13, 102:14, 109:1, 109:5, 111:21
CLERK - 73:14, 95:22, 97:25, 137:16
CLERK'S - 97:25
CLIENT - 109:12
CLIENT - 24:6
CLIENT'S - 119:16
CLOSE - 21:5, 21:7, 53:18, 73:17, 89:17, 89:22, 90:11, 92:13, 99:14, 100:1, 109:22, 109:23, 110:4, 110:5, 112:13, 115:9, 115:10, 115:11, 119:6
CLOSED - 92:11
CLOSELY - 22:4, 22:10, 24:3, 24:22,

53:3, 108:9
CLOSENESS - 90:7, 115:8, 119:5
CLOSEST - 118:17
CLUSTER - 55:1, 62:12, 62:19
CODE - 79:2, 79:12, 84:7
COLLAPSED - 31:5
COLLEGE - 14:9
COLUMN - 74:16, 74:20
COMBINATION - 59:7, 112:17
COMBINE - 99:23, 99:24, 112:18
COMBINED - 114:22
COMBINING - 112:16
COMING - 27:1, 32:15, 41:18, 41:19, 53:14, 75:17, 127:11, 127:12
COMMENCES - 57:2
COMMENT - 54:14, 75:6, 92:19
COMMENTARIES - 11:11
COMMENTS - 48:18, 50:7, 50:9, 51:5
COMMERCIAL - 5:13, 13:6, 22:4, 23:14, 24:3, 24:23, 130:16, 131:18, 132:25
COMMERCIALIZE - 77:17
COMMERCIALLY - 135:23
COMMODITY - 32:11
COMMON - 57:11, 66:20, 100:7
COMMONLY - 65:25, 66:2, 66:5, 67:12
COMMUNICATIONS - 79:14
COMODITIZE - 44:18
COMPANIES - 7:15, 7:20, 30:2, 30:4, 31:4, 31:16, 32:11, 33:15, 36:19, 59:14, 114:19
COMPANY - 19:7, 34:17, 37:9, 42:24, 57:13, 94:6, 94:8, 103:16, 108:12, 118:6, 118:20, 120:9, 124:21, 126:25
COMPARABLE - 129:1, 133:12, 135:5
COMPARE - 54:24
COMPARED - 115:5
COMPARING - 129:10
COMPARISON - 18:18
COMPATIBLE - 44:19
COMPENSATE - 24:16, 77:21, 116:8, 116:15, 122:6, 125:14
COMPENSATED - 125:12
COMPENSATING - 117:15
COMPETENCE - 88:13, 89:15
COMPETENT - 89:7, 91:11
COMPETING - 30:19

COMPETITION - 29:22, 31:24
COMPETITIVE - 33:17
COMPETITOR - 7:5, 7:7, 7:9, 14:20, 14:23, 14:25, 15:6, 30:6, 30:11, 30:16, 31:12, 33:11, 43:20, 45:1
COMPETITOR'S - 7:23, 93:13
COMPETITORS - 124:4, 124:16, 130:17
COMPLAIN - 11:17
COMPLAINE - 44:5, 44:6, 44:7, 44:13, 78:7
COMPLETE - 54:18, 54:19
COMPLETELY - 28:3, 80:3, 98:11
COMPLEXITY - 20:13
COMPLICATED - 13:6, 120:2
COMPONENT - 10:25, 36:18, 36:20
COMPORT - 58:23
COMPOUND - 22:2, 22:12, 22:20
COMPOUNDED - 22:1, 22:17, 22:18, 22:25, 23:8, 95:13, 122:7, 122:12, 122:19
COMPOUNDING - 22:3, 22:7, 22:21, 94:12, 94:15
COMPRISED - 73:22
COMPROMISE - 24:15
COMPULSORY - 4:15, 7:16, 8:3, 21:12, 38:10, 40:12, 40:14, 40:20, 40:24, 46:7, 46:9, 46:13, 46:22, 47:6, 49:5, 50:3, 52:23, 56:2, 58:17, 77:9, 81:16, 81:19, 82:8, 83:17, 84:6, 84:18, 85:13, 97:1, 106:9, 123:10, 125:13, 126:7, 126:21, 126:22, 129:13, 136:2
COMPUTE - 52:21, 53:8
CONCEAL - 90:14, 116:4, 116:5
CONCEIVE - 31:1
CONCEPT - 27:25
CONCERN - 128:2
CONCERNED - 10:24, 12:24, 30:2, 124:14
CONCERNING - 26:3
CONCLUDE - 113:8
CONCLUDES - 107:13, 107:15, 107:25, 112:5, 136:16
CONCLUSION - 63:8, 90:19, 102:8
CONCLUSIONARY - 39:14
CONCRETE - 39:9
CONDITION - 114:18
CONDITIONS - 130:9
CONDUCT - 56:8, 88:20, 90:20, 90:21, 91:3, 91:4, 116:5, 119:22
CONDUCTING -

40:9
CONFERRED - 14:18
CONFESS - 80:3
CONFIDENCE - 54:8
CONFIRM - 19:15, 72:2
CONFIRMED - 34:8
CONFLICT - 104:22
CONFLICTING - 100:9, 104:14, 104:16
CONFLICTS - 113:6
CONFUSING - 99:18, 102:3
CONFUSION - 112:24
CONGRESS - 120:10, 121:5, 124:16, 125:1
CONGRESS'S - 116:14
CONNECTION - 4:9, 46:6
CONSERVATIVE - 22:13, 22:21
CONSIDER - 6:23, 26:13, 27:21, 33:23, 34:24, 37:24, 38:3, 38:4, 38:7, 47:17, 47:20, 47:23, 51:1, 51:3, 56:15, 63:4, 91:1, 102:21, 116:23, 125:19, 126:6, 134:24
CONSIDERATION - 36:16, 47:11, 101:21, 110:18, 117:10, 123:25
CONSIDERED - 6:14, 16:16, 26:13, 28:22, 40:1, 53:11, 55:1, 56:14, 62:20, 63:22, 74:1, 110:19, 112:9, 114:14, 114:24, 135:8, 137:4
CONSIDERING - 26:7, 26:10, 110:18, 112:8
CONSIDERS - 137:13
CONSISTENT - 53:4, 88:21
CONSTITUTE - 75:3
CONSTRUCT - 26:16, 33:22, 34:1, 34:5, 34:7, 34:8, 35:11
CONSTRUCTION - 93:20, 103:16
CONSTRUED - 96:16
CONSUMER - 43:11, 52:18, 53:1, 59:18
CONSUMERS - 36:23, 37:16, 46:3
CONTACTED - 61:19
CONTACTING - 61:23, 109:16
CONTAINS - 140:7
CONTEND - 127:5
CONTENDS - 21:25
CONTENT - 36:18, 36:19, 36:23, 37:5, 37:8, 37:9, 37:16, 125:21
CONTENTS - 64:17
CONTEXT - 47:20
CONTINENTAL - 5:18, 50:14
CONTINUATION - 28:23
CONTINUE - 11:8, 48:14, 59:21, 85:9,

106:8, 126:8
CONTINUED - 53:10, 85:11, 88:1, 89:16, 90:8
CONTINUES - 87:22
CONTINUING - 115:19
CONTRACT - 37:10
CONTRACTS - 36:15, 36:17, 36:23, 37:4, 37:8, 37:11, 37:12, 37:13, 37:14, 37:17, 37:18
CONTRARY - 90:2, 100:19
CONTRASTING - 36:8
CONTRIBUTORY - 107:20, 108:2, 108:3
CONTROL - 54:19, 79:7, 82:16
CONTROLLING - 137:1
CONTROVERSIAL - 28:25
CONTROVERSY - 20:19
CONVENTION - 23:2
CONVERGENCE - 32:10, 44:18
CONVERTERS - 32:15
CONVEYED - 131:11
CONVINCED - 107:5, 110:17
CONVINCING - 92:4, 99:15, 100:2, 101:17, 102:6, 102:13, 102:14, 102:25, 103:2, 103:7, 103:9, 104:24, 108:6, 112:15, 112:17, 113:4, 113:6, 118:5, 124:11
COOPERATION - 98:7
COPIED - 113:22
COPIES - 106:15
COPY - 25:20, 98:3, 98:7, 108:18, 108:19
COPYING - 88:13, 89:5, 108:10, 112:6, 116:16, 119:24, 120:19
CORP - 59:14
CORPORATE - 19:21, 34:14, 34:20, 45:22
CORPORATION - 1:4, 1:21, 4:2, 106:18, 108:12, 115:7, 118:11
CORPORATIONS - 121:11, 125:20
CORRECT - 21:24, 26:4, 26:5, 29:24, 29:25, 32:16, 38:15, 41:12, 41:14, 41:18, 42:1, 42:9, 42:13, 43:7, 43:14, 43:17, 47:24, 50:22, 52:14, 53:6, 60:23, 62:2, 62:6, 62:11, 63:2, 63:24, 63:25, 64:2, 64:3, 64:6, 64:9, 64:10, 65:12, 65:13, 65:16, 65:22, 66:12, 67:4, 67:11, 67:14, 67:20, 71:4, 72:21, 72:24, 73:2, 73:13, 76:5, 79:13, 86:15, 98:18, 122:14, 122:21, 140:7
CORRECTLY - 122:14

**CORRELATES** - 38:25, 45:12
**COST** - 24:17, 30:15, 30:18, 33:5, 35:20, 36:13, 66:22, 68:15, 77:11, 93:2, 94:20, 95:3, 95:9, 106:1, 110:21, 111:12, 115:18, 117:12, 121:4, 125:10, 128:6, 128:14, 128:21, 132:3, 132:6, 132:11, 133:3, 134:7, 134:13, 137:14, 137:21, 137:25
**COSTS** - 24:10, 31:14, 36:10, 94:21, 95:8, 96:12, 111:8, 117:6, 128:14, 134:21, 137:14, 137:18
**COUNSEL** - 6:17, 6:25, 19:1, 19:3, 32:2, 48:11, 48:16, 49:9, 61:23, 64:15, 84:20, 85:15, 104:12, 109:16, 114:10, 119:17, 137:17, 138:7, 140:9, 140:14
**COUNT** - 17:15, 71:25
**COUNTRY** - 44:10, 124:25
**COUNTY** - 140:2
**COUPLE** - 14:9, 33:14, 48:18, 53:13, 82:12, 90:23, 98:9, 138:8
**COURSE** - 4:20, 4:23, 5:2, 17:6, 51:6, 51:8, 99:14, 100:6, 101:3, 102:16, 123:16, 127:23, 133:4
**COURT** - 1:2, 2:4, 4:1, 4:6, 4:8, 4:19, 4:23, 5:7, 5:14, 5:16, 5:17, 5:21, 6:8, 6:9, 6:11, 6:13, 6:23, 7:16, 7:17, 8:1, 9:1, 10:25, 12:3, 12:4, 12:5, 12:9, 12:14, 12:15, 12:21, 13:5, 13:17, 14:8, 14:11, 14:14, 15:8, 16:11, 16:13, 17:3, 17:5, 17:11, 17:13, 18:1, 18:7, 20:8, 20:14, 20:17, 20:22, 21:5, 21:16, 21:17, 22:2, 22:12, 22:16, 22:22, 23:4, 23:13, 24:1, 24:5, 24:24, 25:3, 25:8, 25:13, 25:16, 25:21, 26:10, 27:7, 28:8, 28:10, 28:16, 28:20, 29:1, 30:14, 31:7, 31:10, 31:18, 32:1, 32:13, 32:25, 33:10, 33:18, 33:24, 35:13, 37:3, 37:19, 39:15, 39:18, 40:9, 40:21, 46:22, 47:6, 47:13, 47:17, 47:18, 48:4, 48:8, 48:11, 48:13, 48:16, 48:18, 49:4, 49:9, 49:16, 49:24, 50:2, 50:9, 50:12, 50:15, 50:21, 51:4, 51:22, 52:1, 52:23, 53:12, 53:25, 54:5, 54:11, 54:22, 54:8, 55:10, 55:13, 55:17, 55:21, 56:2, 56:8, 57:8, 57:21, 57:23, 58:8,

58:14, 60:11, 60:18, 60:21, 60:24, 64:13, 64:21, 65:9, 67:22, 68:22, 71:13, 71:14, 73:15, 74:10, 75:15, 75:19, 75:23, 76:6, 76:13, 76:18, 76:20, 76:23, 77:1, 77:2, 77:5, 77:15, 77:17, 77:23, 78:13, 78:20, 79:2, 79:10, 80:15, 80:18, 80:19, 81:7, 81:15, 81:18, 81:21, 82:9, 82:18, 82:19, 82:25, 83:2, 83:14, 83:23, 83:24, 84:1, 84:4, 84:10, 84:13, 84:17, 85:9, 85:10, 85:24, 86:3, 86:11, 86:19, 86:21, 86:25, 87:9, 87:11, 88:4, 88:8, 88:16, 88:23, 88:24, 89:17, 89:21, 89:24, 90:8, 91:2, 91:13, 92:2, 92:5, 92:21, 92:25, 93:6, 93:17, 94:3, 94:7, 94:9, 94:18, 95:10, 95:17, 95:21, 95:25, 96:3, 96:6, 96:10, 97:11, 97:17, 98:3, 98:6, 98:23, 99:22, 100:8, 100:10, 100:18, 100:23, 101:2, 101:11, 103:8, 103:14, 104:22, 104:23, 105:18, 106:5, 107:5, 107:12, 107:15, 107:18, 107:25, 108:6, 108:15, 109:22, 112:5, 113:5, 113:8, 113:11, 113:20, 114:12, 114:14, 114:16, 116:23, 117:9, 117:13, 117:17, 117:19, 118:1, 118:3, 118:9, 118:23, 119:6, 119:18, 121:1, 121:17, 121:22, 121:24, 122:2, 122:23, 122:25, 123:11, 123:18, 123:21, 123:14, 124:19, 124:23, 125:2, 125:10, 125:11, 125:13, 126:11, 126:18, 127:3, 127:12, 127:16, 128:4, 128:23, 133:10, 133:20, 134:3, 134:12, 135:8, 135:25, 136:4, 136:5, 136:15, 137:9, 137:13, 137:17, 137:22, 138:1, 139:2, 139:6, 139:9, 139:10
**COURT'S** - 5:8, 22:8, 22:14, 50:7, 79:6, 85:12, 88:20, 92:3, 99:17, 102:25, 104:11, 115:10, 119:21, 127:22, 129:12, 132:7, 136:9, 136:25
**COURTS** - 11:24, 12:25, 15:21, 16:16, 40:14, 50:16, 79:10, 94:1, 119:10, 120:20, 123:15, 124:7, 137:21
**COVER** - 4:17, 111:15, 111:16, 111:18, 138:6
**COVERED** - 4:18, 113:21, 130:5
**COVERING** - 138:23
**COVERS** - 11:2
**CRAFT** - 137:6

**CREATE** - 27:8, 132:5
**CREATES** - 9:7
**CREATIVE** - 79:25
**CREDENCE** - 52:20, 101:5
**CREDIBILITY** - 100:8, 102:18
**CREDIBLE** - 105:13
**CREDIT** - 112:20
**CREDITED** - 134:3, 134:17
**CRITERIA** - 118:16
**CRITICAL** - 16:1, 16:5, 16:9, 51:10
**CRITICISMS** - 89:12, 89:14
**CROOK** - 88:5, 89:7, 91:6, 91:11, 109:2, 110:20, 111:5, 112:3, 115:20
**CROSS** - 3:6, 3:9, 3:14, 39:16, 103:5, 104:7, 105:11, 110:16
**CROSS-EXAMINATION** - 3:6, 3:9, 3:14, 39:16
**CROSSING** - 19:19
**CSR** - 2:4, 140:19
**CULPABILITY** - 88:25, 89:2, 118:17, 120:5, 120:13
**CURRENT** - 10:15, 29:17, 29:18, 36:5, 36:7, 69:6, 72:14, 72:22, 72:25, 131:18, 136:11
**CUSTOMARY** - 133:12
**CUSTOMER** - 23:21, 64:19, 65:3, 65:4, 69:21, 70:11, 70:25, 76:12
**CUSTOMERS** - 32:5, 76:15, 82:11
**CUT** - 13:11, 15:10, 41:20
**CYBER** - 118:11

## D

**DAILY** - 22:20, 22:25, 23:20, 24:25, 71:25, 94:19
**DAMAGE** - 52:11, 60:4, 62:1, 65:18, 116:19, 127:10
**DAMAGES** - 10:7, 18:24, 20:6, 26:4, 26:7, 26:14, 26:16, 26:17, 38:12, 38:16, 39:8, 41:15, 41:19, 41:20, 42:3, 49:4, 49:19, 49:23, 49:25, 51:14, 51:17, 51:19, 52:22, 53:7, 63:5, 65:25, 77:20, 84:3, 88:16, 88:18, 88:19, 88:20, 88:21, 89:3, 90:22, 96:18, 104:3, 113:10, 113:11, 113:13, 114:25, 116:13, 117:4, 117:21, 123:7, 123:8, 125:6, 125:12, 127:5, 131:14
**DARE** - 18:19
**DARN** - 21:6
**DATA** - 28:6, 29:4, 59:5, 105:5
**DATE** - 52:13, 52:22, 58:3, 70:19, 123:13, 125:12, 140:20

**DAVIS** - 10:5, 16:20, 51:18, 80:4
**DAVIS'S** - 11:4, 13:4
**DAYS** - 105:15
**DBS** - 29:8, 30:3, 30:11, 31:3, 31:23, 43:20, 66:11
**DE** - 16:21
**DEACTIVATED** - 76:17
**DEAD** - 76:17
**DEAL** - 6:18, 13:8, 82:9, 117:11, 132:3, 137:10
**DEALING** - 12:16, 15:15, 79:16
**DEALS** - 132:9
**DEALT** - 85:18, 114:15, 119:20, 132:9, 132:15
**DEATH** - 104:1
**DECAYING** - 134:20
**DECIDE** - 8:6, 49:4, 125:2
**DECIDED** - 9:4, 58:18, 79:19, 81:5, 84:1, 110:19
**DECIDING** - 47:6, 110:10, 121:5
**DECISION** - 5:17, 5:18, 5:19, 9:19, 19:4, 19:23, 50:15, 50:18, 50:24, 80:5, 80:24, 81:3, 88:24, 110:20, 122:2, 123:14, 128:19
**DECISIONS** - 114:13
**DECLARE** - 124:6, 124:7
**DECLARED** - 93:13, 95:6
**DECLARING** - 118:13
**DECODER** - 74:16, 74:18, 86:17
**DECODERS** - 42:8, 42:10, 87:3, 87:7
**DECODING** - 87:12
**DECREASED** - 55:6
**DEDUCTS** - 66:23
**DEFEND** - 110:15
**DEFENDANT** - 4:6, 15:25, 96:25, 103:3, 103:6, 103:18, 103:21, 103:22, 104:2, 106:6, 108:4, 108:5, 112:22, 114:21, 115:23, 116:4, 134:11
**DEFENDANT'S** - 86:14, 86:23, 95:11, 95:13, 98:21, 101:16, 103:2, 106:6, 107:17, 109:13, 114:18, 115:13, 116:1
**DEFENDANTS** - 1:9, 1:23, 3:15, 55:16, 76:23, 94:25, 107:12, 107:14, 107:17, 107:22, 107:23, 114:20, 127:5, 139:2
**DEFENSE** - 103:14, 103:23, 108:2, 110:11, 110:12, 120:6
**DEFENSES** - 110:9, 110:13, 110:15
**DEFINED** - 42:18
**DEFINITENESS** - 110:14
**DEFINITION** - 87:10, 93:14
**DEGREE** - 30:12, 30:21, 88:25, 99:14, 118:16

**DEGREES** - 108:7
**DEHAVEN** - 94:8
**DELAY** - 103:21, 103:25, 107:2, 107:3, 114:11, 117:10
**DELAYED** - 103:19
**DELAYS** - 119:17
**DELIBERATE** - 108:10, 116:2, 119:24, 120:19
**DELIBERATELY** - 108:10, 108:18, 108:19, 112:6, 113:22
**DELIVERED** - 46:3
**DEMAND** - 130:25, 132:16
**DEMONSTRATIVES** - 28:12
**DENIAL** - 112:20
**DENIED** - 14:4, 16:4, 92:11, 94:23, 95:9, 100:4, 100:16, 103:11, 107:7, 112:11, 113:9, 126:20, 138:21, 139:7
**DENYING** - 12:25, 50:13
**DEPARTMENT** - 43:25, 44:6, 44:9, 78:2, 78:6
**DEPARTURE** - 5:20, 22:23
**DEPOSITION** - 19:13
**DEPRECIATION** - 35:10
**DEPUTY** - 97:25
**DERIVATIVE** - 131:11
**DERIVED** - 42:20
**DESCRIBE** - 69:15
**DESCRIBED** - 66:4, 117:15
**DESCRIBING** - 89:18
**DESCRIPTION** - 91:18, 99:23, 99:24
**DESIGN** - 51:7
**DESIGNATION** - 81:1
**DESIRE** - 44:18
**DESIRED** - 41:6
**DESTROY** - 57:19
**DESTROYED** - 57:7, 106:17
**DESTROYING** - 111:19
**DETAIL** - 53:24, 54:15
**DETAILED** - 89:7
**DETAILS** - 20:15, 25:10
**DETER** - 18:22, 116:14, 121:2
**DETERMINATION** - 15:11, 15:19, 47:1, 47:22, 85:9, 92:6
**DETERMINATIONS** - 100:8
**DETERMINE** - 10:1, 10:6, 56:20, 58:1, 105:1, 118:3, 118:9, 120:24
**DETERMINED** - 8:21, 47:10, 49:2, 53:8, 63:16, 91:2, 94:23, 109:4, 127:24
**DETERMINES** - 26:8
**DETERMINING** - 9:18, 26:14, 38:9, 41:21, 46:2, 62:1, 96:12, 118:8
**DETERRING** -

117:14
**DETRIMENT** - 51:5
**DEVELOPMENT** - 126:5
**DEVICES** - 118:21, 132:18
**DEVISED** - 111:25
**DEVOTED** - 91:15
**DEXA** - 89:20
**DIAGRAM** - 99:19, 102:9, 102:11, 102:22
**DIAGRAMS** - 102:22
**DICTATING** - 40:7
**DIFFER** - 100:15
**DIFFERENCE** - 25:9, 29:22, 66:18, 95:15, 95:19
**DIFFERENCES** - 21:9, 32:9, 32:12, 32:18, 65:23
**DIFFERENT** - 4:10, 7:2, 10:4, 13:5, 13:8, 13:15, 14:17, 21:17, 24:22, 26:13, 28:3, 29:7, 30:7, 32:7, 36:24, 37:11, 44:20, 46:25, 63:7, 63:20, 64:16, 65:19, 65:20, 69:18, 74:5, 82:12, 85:4, 99:22, 104:18, 106:15, 110:16, 117:2, 128:7
**DIFFERING** - 27:8
**DIFFICULT** - 12:4, 121:13, 127:25
**DIFFICULTIES** - 96:20, 123:6
**DIFFICULTY** - 5:24, 13:22, 14:2, 20:10, 20:12, 46:2, 48:24, 51:19, 56:24, 60:5, 60:8, 121:14
**DIGITAL** - 72:17, 73:8
**DIGITS** - 82:5
**DIRECT** - 3:5, 3:8, 3:13, 6:19, 6:25, 22:14, 54:16, 70:11, 107:9, 109:4, 112:6
**DIRECTION** - 140:10
**DIRECTLY** - 59:10, 67:7, 69:18, 71:10, 134:13
**DIRECTS** - 68:17
**DIRECTV** - 1:8, 4:2, 7:5, 7:10, 8:5, 11:6, 11:15, 14:20, 14:21, 14:22, 17:18, 18:3, 21:25, 23:1, 23:4, 23:9, 24:4, 27:3, 27:12, 28:4, 29:10, 29:20, 30:1, 30:6, 30:25, 31:6, 31:12, 32:3, 32:21, 33:23, 33:24, 34:10, 34:13, 34:17, 34:19, 35:8, 35:18, 35:22, 35:24, 36:3, 36:8, 36:11, 36:17, 37:8, 37:10, 37:15, 37:18, 38:5, 38:10, 38:20, 38:22, 39:1, 41:11, 42:19, 42:21, 43:6, 43:22, 44:23, 45:13, 45:17, 45:19, 45:22, 45:25, 46:2, 49:3, 49:6, 51:7, 54:15, 54:18, 55:14, 57:18, 58:12, 59:13, 59:15, 61:8, 61:15, 61:22, 63:23, 64:2, 64:19, 65:5, 65:14, 65:18, 67:17, 68:9,

68:11, 68:17, 68:18, 69:7, 69:11, 69:14, 69:15, 69:19, 69:22, 70:1, 70:3, 70:8, 70:15, 70:22, 70:23, 71:13, 71:15, 72:10, 72:16, 73:7, 73:21, 74:3, 74:25, 75:4, 75:5, 76:15, 78:9, 78:14, 78:15, 79:18, 84:3, 88:1, 88:5, 89:6, 90:14, 91:10, 94:16, 102:5, 103:6, 103:17, 104:9, 104:24, 105:7, 105:21, 107:3, 109:9, 109:17, 110:7, 110:11, 110:19, 110:24, 111:15, 111:20, 111:22, 111:23, 112:14, 113:24, 115:14, 116:2, 116:5, 119:25, 120:5, 124:9, 124:10, 125:18, 126:12, 128:12, 130:19, 131:23, 132:2, 132:23, 136:1
**DIRECTV** - 68:8
**DIRECTV'S** - 7:23, 15:6, 16:18, 18:18, 20:4, 23:3, 23:24, 26:17, 28:6, 29:8, 36:7, 36:10, 41:15, 49:3, 44:16, 45:21, 49:2, 61:22, 90:25, 104:12, 104:18, 108:22, 112:21, 116:6, 117:4, 125:14
**DISAGREE** - 80:4, 83:22, 92:21
**DISAGREED** - 80:4
**DISAGREEMENT** - 137:7
**DISBELIEVE** - 102:17
**DISCLAIM** - 96:13, 96:14
**DISCLAIMED** - 95:7
**DISCLOSED** - 17:24
**DISCLOSURE** - 17:25, 114:11, 119:18
**DISCONTINUING** - 10:9
**DISCOUNT** - 60:16, 102:17
**DISCOURAGING** - 18:8
**DISCOVERY** - 123:8
**DISCREPANCY** - 127:7, 138:10
**DISCRETION** - 22:8, 22:20
**DISCUSS** - 19:21, 63:20
**DISCUSSED** - 53:5, 60:1, 116:10, 126:14, 133:10, 133:25
**DISCUSSES** - 81:3
**DISCUSSING** - 5:3, 91:15, 94:4
**DISCUSSION** - 20:19, 76:6, 110:20, 112:2, 112:15, 115:20, 123:6
**DISCUSSIONS** - 85:15
**DISH** - 32:13, 32:15, 44:22, 44:24, 72:11, 128:10
**DISK** - 97:24, 98:1
**DISMISS** - 32:24
**DISNEY** - 37:8
**DISPLAYS** - 74:23

**DISPOSAL** - 106:16
**DISPUTE** - 98:16
**DISPUTES** - 99:11
**DISREGARD** - 108:8
**DISTINCTION** - 10:18, 10:19
**DISTINCTIONS** - 10:8
**DISTINGUISHABLE** - 11:3, 16:20
**DISTINGUISHED** - 80:25, 134:4
**DISTORTION** - 57:2
**DISTRIBUTE** - 70:3
**DISTRIBUTED** - 70:20
**DISTRIBUTES** - 69:16
**DISTRIBUTING** - 70:25, 75:16
**DISTRIBUTION** - 70:18
**DISTRICT** - 1:2, 1:12, 5:8, 5:14, 9:2, 11:24, 81:1, 81:18, 93:23, 94:7, 94:9, 94:10, 101:11, 118:3, 118:9, 124:6, 125:2
**DIVIDE** - 96:18, 136:21
**DIVIDING** - 84:15
**DIVISION** - 1:3, 78:3, 93:24
**DIVORCED** - 45:18
**DOCTOR'S** - 97:18
**DOCUMENT** - 75:20, 98:22, 106:16
**DOCUMENTS** - 103:25, 106:13, 106:14, 106:15, 106:18, 106:19, 108:11, 111:19
**DOLBY** - 60:2, 60:12, 68:14, 128:9, 129:4, 133:19, 136:8
**DOLLAR** - 53:20, 136:22, 136:23
**DOLLARS** - 14:23, 21:2, 84:19, 116:20, 116:25, 128:20, 134:8, 134:11, 138:9
**DONALDSON** - 3:7, 51:24, 52:3, 52:4, 52:9, 52:10, 54:3, 61:5, 61:8, 63:21, 65:24, 68:1, 68:7, 83:11, 85:20, 127:9, 134:7
**DONE** - 12:3, 12:5, 12:11, 13:18, 13:20, 33:14, 54:6, 58:3, 82:21, 84:25, 95:24, 98:10, 98:14, 101:21, 122:23, 123:9, 136:13
**DOOR** - 7:23
**DOTTING** - 19:19
**DOUBLE** - 116:25
**DOUBLED** - 53:18
**DOUBLING** - 116:22
**DOWLEN** - 2:3
**DOWN** - 14:21, 14:22, 27:12, 27:16, 35:2, 48:5, 48:8, 56:21, 60:16, 64:15, 68:23, 76:20, 78:21, 87:25, 111:6, 115:6, 121:25, 129:2, 131:12, 133:21
**DOWNSIDE** - 116:9
**DOWNSTAIRS** - 98:11
**DOZEN** - 7:20

**DR** - 50:11, 77:18, 99:18, 99:21, 101:16, 101:25, 102:17
**DRAW** - 101:3
**DRAWER** - 19:3, 19:20, 91:7
**DRAWING** - 129:20
**DRAWN** - 102:16
**DRILLING** - 93:11
**DRIVE** - 1:21, 75:2, 75:9, 131:12
**DROP** - 70:7, 71:10, 71:12, 71:13
**DROPPED** - 89:25
**DROPPING** - 76:9
**DUE** - 87:7, 88:21
**DULY** - 25:23, 52:5, 69:2
**DURATION** - 41:13, 41:24, 115:13, 131:13
**DURING** - 28:22, 41:9, 42:8, 49:24, 50:6, 75:16, 127:10
**DVB/DIRECT** - 74:17
**DVR** - 72:19
**DWELL** - 18:2
**DYNAMICS** - 35:7, 40:7

# E

**EARLY** - 18:12, 65:1, 65:2, 65:7, 70:18, 109:8
**EARNED** - 45:12
**EARNING** - 35:20
**EARNINGS** - 35:24
**EARSEL** - 2:5, 140:20
**EASIER** - 82:15
**EAST** - 1:16
**EASTERBROOK** - 9:4, 9:6, 11:19, 80:24, 97:5
**EASTERN** - 1:2
**EASY** - 14:6, 54:20, 82:24, 82:25, 116:25, 124:4
**EATON** - 101:19, 102:23, 112:19, 112:22, 132:20
**EATON'S** - 102:24
**EBAY** - 5:3, 5:4, 5:5, 5:7, 5:19, 12:5, 12:23, 15:11, 50:13, 80:2, 80:9, 80:11, 80:16, 81:8, 123:17
**ECHOSTAR** - 30:3, 30:7, 31:6, 32:2, 32:7, 32:20, 32:22, 33:8, 43:19, 43:22, 44:1, 44:15, 130:6
**ECONOMIC** - 78:11, 78:19, 97:5, 104:2, 105:23, 105:25, 106:10, 128:17
**ECONOMICS** - 9:5
**EDEN'S** - 99:17
**EDGES** - 89:14
**EDUCATED** - 62:15, 62:16
**EDUCATION** - 14:9
**EFFECT** - 7:17, 10:10, 44:12, 49:21, 50:11, 58:16, 58:20, 65:1, 80:21, 86:5, 125:21, 131:3
**EFFORT** - 90:14, 110:24, 111:13, 112:4, 124:1
**EFFORTS** - 58:15,

111:12
**EGREGIOUS** - 91:4
**EIGHT** - 69:18, 89:23, 89:25, 92:14, 94:25
**EIGHTH** - 93:11
**EITHER** - 8:5, 15:1, 21:11, 24:12, 38:8, 43:2, 44:11, 85:15, 135:12, 140:15
**ELAPSES** - 26:21
**ELASTICITY** - 130:25
**ELECTRICAL** - 33:15
**ELECTRONIC** - 55:20, 59:10, 98:6, 98:15, 98:16, 98:18
**ELECTRONICALLY** - 70:12
**ELECTRONICS** - 43:12, 52:19, 53:1, 53:6, 59:18
**ELEMENT** - 99:4, 134:4, 138:19
**ELEVEN** - 133:5
**ELIMINATE** - 32:3
**ELLIS** - 101:4, 101:7
**ELUCIDATION** - 4:25
**EMPHASIS** - 42:6, 47:11, 47:23
**EMPHASIZE** - 89:5
**EMPHASIZED** - 5:21
**EMPLOY** - 71:5, 140:13
**EMPLOYED** - 69:7, 104:20
**EMPLOYEE** - 140:12
**EMPLOYEES** - 108:11, 112:7, 119:25, 120:19, 125:20, 125:21
**EMPLOYMENT** - 83:24
**ENABLE** - 7:9, 51:7
**ENCODERS** - 42:8, 42:10, 129:19
**ENCOMPASSED** - 36:5
**ENCOUNTERED** - 17:22
**ENCOURAGE** - 121:12, 121:15
**ENCOURAGES** - 11:11, 14:2
**ENCUMBRANCES** - 58:11
**END** - 9:9, 103:5
**ENDING** - 12:19
**ENDLESS** - 14:15
**ENDORSEMENT** - 81:14
**ENFORCED** - 18:21
**ENFORCEMENT** - 27:13
**ENGAGED** - 57:12
**ENGENDER** - 83:16
**ENGINEER** - 19:11
**ENHANCE** - 18:21, 113:11
**ENHANCED** - 49:25, 88:16, 90:22, 124:11
**ENHANCEMENT** - 4:12, 18:15, 20:2, 77:10, 84:12, 87:15, 87:16, 87:20, 88:10, 90:24, 92:10, 113:12, 113:13, 114:5, 114:17, 115:12, 115:13, 115:23, 115:25, 116:4, 116:24, 117:18,

120:24, 121:1, 121:3, 122:25, 125:10, 136:10, 138:3
**ENHANCING** - 18:22
**ENJOIN** - 11:1, 16:14
**ENJOINED** - 10:22
**ENJOINING** - 125:17, 126:12, 136:1
**ENORMOUS** - 125:18
**ENTER** - 6:8, 8:15, 8:16, 9:13, 11:13, 11:20, 11:25, 13:23, 13:25, 16:19, 41:17, 49:5, 50:17, 51:20, 53:19, 65:14, 84:18, 136:1
**ENTERED** - 6:4, 8:5, 8:14, 13:20, 17:2, 63:23, 64:1, 64:4, 65:12, 138:19
**ENTERING** - 7:19, 10:1
**ENTERPRISE** - 43:3
**ENTERTAINMENT** - 84:21, 137:1
**ENTIRE** - 11:1, 11:3, 16:12, 57:22, 136:12, 137:6
**ENTIRELY** - 65:19, 117:2
**ENTITLED** - 7:6, 95:2, 102:17, 102:21, 104:12, 112:20, 120:12, 131:15, 137:14
**ENTITLEMENT** - 87:18
**ENTITLES** - 95:8
**ENTITY** - 34:10, 35:22, 39:3
**ENTRANT** - 31:23
**ENTRY** - 14:2, 30:15, 30:18, 31:14, 31:16, 32:23, 33:1, 79:21, 81:3, 97:1, 134:7, 134:8
**EQUAL** - 26:22
**EQUIPMENT** - 69:14, 69:17, 70:25, 71:2
**EQUIPPED** - 74:4
**EQUITABLE** - 83:23, 85:8, 103:13
**EQUITIES** - 103:15
**EQUITY** - 5:23, 16:14, 16:16, 93:21, 104:23, 123:17
**EQUIVALENT** - 86:17
**ESPECIALLY** - 98:12, 112:16, 117:14, 120:2, 124:18, 125:15, 126:4, 128:6, 129:14
**ESSENCE** - 38:23, 87:19, 88:12
**ESSENTIAL** - 89:15, 103:23
**ESSENTIALLY** - 26:19, 26:22, 27:1, 27:10, 27:11, 27:14, 28:2, 29:6, 29:17, 30:5, 35:21, 36:11, 37:6, 41:6, 46:25
**ESTABLISHED** - 9:20, 14:5, 20:18, 28:6, 40:21, 40:25, 46:18, 46:19, 46:23, 48:21, 48:22, 102:14, 130:7, 131:17
**ESTABLISHES** -

26:19
**ESTIMATE** - 53:18
**ET** - 1:8, 4:2, 27:13, 36:2
**ETHICALLY** - 28:17
**EVALUATE** - 37:21
**EVALUATED** - 110:21
**EVALUATING** - 20:10, 48:25, 88:24
**EVE** - 90:1
**EVENT** - 64:19, 77:7
**EVENTUALITY** - 30:9
**EVENTUALLY** - 15:12, 91:9
**EVIDENCE** - 6:15, 6:16, 7:2, 19:2, 19:9, 23:15, 24:24, 25:7, 47:12, 77:24, 80:15, 83:9, 85:17, 90:18, 92:4, 94:17, 97:7, 99:15, 100:9, 101:5, 101:8, 101:17, 102:6, 103:7, 103:8, 104:5, 104:7, 104:14, 104:16, 104:17, 105:19, 105:22, 105:24, 107:11, 107:13, 107:21, 107:22, 107:24, 108:6, 108:16, 108:20, 109:1, 109:6, 110:5, 110:18, 111:2, 111:4, 111:5, 111:16, 112:10, 112:15, 112:18, 113:6, 113:7, 113:23, 114:12, 114:16, 115:16, 116:1, 117:9, 118:5, 119:21, 122:3, 123:12, 123:21, 124:9, 124:11, 126:7, 127:23, 131:5, 131:9, 133:8, 133:20, 135:14, 136:5, 136:12, 140:8
**EVIDENTIARY** - 100:24, 103:25, 106:12
**EVIDENTLY** - 82:13, 109:19, 125:15, 129:17
**EXACTLY** - 8:10, 25:7, 35:4, 47:19, 50:3, 57:4, 77:15, 81:7, 81:15, 81:17, 82:2, 82:4, 89:17, 94:22, 99:21, 122:10, 130:18
**EXAMINATION** - 3:1, 3:5, 3:8, 3:10, 3:13, 50:7, 103:5, 104:8, 105:12, 110:16
**EXAMINATION** - 3:6, 3:9, 3:14, 39:16
**EXAMPLE** - 13:9, 23:15, 26:25, 29:13, 30:24, 32:6, 42:18, 46:8, 57:15, 59:23, 64:1, 79:19, 102:10, 106:16, 110:25, 116:18, 116:19, 136:6
**EXCELLENT** - 30:24, 80:22
**EXCEPT** - 81:22
**EXCEPTION** - 40:3, 40:11
**EXCEPTIONAL** - 4:13, 92:3, 92:5, 92:16, 118:2, 118:4, 118:8, 118:13, 119:1, 119:19, 120:1, 120:4, 120:11, 121:6, 121:18
**EXCEPTIONALITY** -

17:9
**EXCEPTIONALNES S** - 120:15, 120:24
**EXCEPTIONALS** - 119:5
**EXCHANGE** - 98:18
**EXCLUDE** - 5:25, 6:7, 7:10, 7:18, 9:15, 14:19, 15:1, 15:14, 15:17, 48:25, 80:1, 123:23, 124:13
**EXCLUDING** - 119:21
**EXCLUSION** - 9:10, 114:15, 124:15
**EXCLUSIVE** - 7:12, 7:25, 14:25, 56:17, 57:7, 57:14, 57:16, 57:19, 69:24, 79:23, 124:3, 129:24, 130:1, 130:4, 130:13
**EXCLUSIVE** - 7:16
**EXCUSE** - 10:15, 16:3, 16:18, 74:15, 93:21
**EXECUTED** - 41:11
**EXERCISE** - 15:2, 96:15
**EXHIBIT** - 74:9, 85:25, 86:15, 91:15, 95:19, 95:20, 96:1, 96:4, 98:5
**EXHIBITS** - 86:23, 97:22, 97:23, 122:10, 122:13, 127:8
**EXIST** - 8:9, 13:25
**EXISTING** - 35:13, 36:15, 37:7, 57:15, 131:8
**EXISTS** - 61:15
**EXPANSION** - 33:1
**EXPECT** - 106:19
**EXPECTED** - 17:19, 17:20
**EXPENSES** - 66:23, 138:14
**EXPENSIVE** - 106:4
**EXPERIENCE** - 14:14, 14:16, 73:10, 85:23
**EXPERT** - 20:6, 26:17, 32:17, 41:15, 53:16, 66:4, 66:9, 85:2, 109:9, 137:21
**EXPERTS** - 99:9, 133:15, 133:16, 135:8, 138:8
**EXPIRATION** - 41:14, 52:22, 140:20
**EXPIRES** - 16:23
**EXPLAIN** - 54:3, 102:9, 104:18, 136:4
**EXPLAINED** - 109:3, 135:4, 135:9
**EXPLAINING** - 35:25
**EXPLANATION** - 106:9, 109:17
**EXPLANATIONS** - 102:22
**EXPRESSED** - 6:9
**EXPRESSES** - 5:12
**EXPRESSION** - 11:5
**EXTEND** - 33:6
**EXTENSIVE** - 120:14
**EXTENT** - 85:14, 86:18, 131:11, 133:5
**EXTRAORDINARY** - 17:21
**EXTRAPOLATION** - 102:11
**EYE** - 115:3
**EYELASHES** - 46:20

**F**

**F.2ND** - 16:2, 18:6
**FACE** - 22:5, 80:16
**FACED** - 6:2, 13:1, 15:19, 117:13
**FACING** - 19:24, 50:20
**FACT** - 5:6, 5:21, 6:16, 7:7, 18:3, 19:1, 19:15, 29:13, 41:8, 48:23, 49:7, 49:14, 50:14, 51:16, 51:17, 53:15, 58:17, 58:18, 59:11, 88:3, 88:5, 88:8, 91:17, 93:24, 99:2, 114:22, 114:23, 125:6
**FACTO** - 16:21
**FACTOR** - 16:15, 50:1, 51:1, 51:3, 51:11, 90:13, 91:4, 91:21, 108:22, 110:10, 110:22, 111:13, 113:17, 113:23, 114:3, 114:4, 114:17, 115:12, 115:22, 115:24, 116:3, 119:8, 120:13, 120:17, 127:3, 128:25, 129:23, 130:15, 134:2, 135:10, 135:11, 135:15, 135:23
**FACTORS** - 7:4, 10:2, 11:15, 11:18, 12:6, 12:22, 16:17, 18:16, 20:1, 30:21, 41:24, 47:23, 50:23, 63:14, 87:19, 88:10, 88:23, 91:2, 102:18, 102:20, 103:18, 108:15, 112:8, 117:19, 118:18, 119:3, 120:21, 120:23, 123:20, 127:13, 127:15, 129:9
**FACTS** - 6:22, 29:10, 99:11, 100:17, 103:14, 140:5
**FAILED** - 7:8, 50:18, 124:10
**FAILING** - 104:23
**FAILURE** - 51:20
**FAIR** - 57:2, 66:7, 66:8, 131:24
**FAIREST** - 78:25
**FAIRLY** - 21:5, 21:9, 31:16, 92:15, 111:3
**FAITH** - 19:1, 90:21, 108:25, 110:24, 111:13, 114:1, 114:12, 118:14
**FALLING** - 62:13
**FALLS** - 55:1
**FAMILIAR** - 17:13, 40:12, 40:14, 40:16, 40:22, 46:8, 46:11, 65:24, 124:23, 137:17
**FAMOUS** - 8:11
**FANNIN** - 1:19
**FANTASY** - 14:10
**FAR** - 35:13, 52:18, 98:20, 104:18, 124:3, 124:6, 126:11
**FAULT** - 104:22
**FAVOR** - 16:18, 51:4, 99:12, 99:13, 100:18, 101:4, 108:23, 110:10, 111:13, 116:6, 130:21
**FAVORABLE** - 100:3
**FAVORS** - 111:22

**FAX** - 118:11
**FCC** - 78:17, 78:25, 79:12, 79:19, 97:7
**FCC'S** - 78:2
**FEATURES** - 74:17, 134:5
**FEBRUARY** - 43:11, 43:13
**FED** - 12:21, 89:12, 100:14, 100:20, 100:5, 101:11, 103:17, 105:8, 108:13, 113:15, 113:19, 113:20, 118:7, 118:11, 118:15, 118:20, 118:22, 118:24, 126:25, 127:1
**FED.3RD** - 98:24
**FEDERAL** - 5:9, 11:22, 11:25, 12:11, 12:2, 12:15, 39:25, 50:16, 79:3, 79:12, 81:5, 81:14, 88:3, 88:9, 121:24, 137:15
**FEE** - 20:25, 53:2, 77:22, 84:14, 87:16, 92:1, 118:18, 132:3, 132:12, 132:14, 138:15
**FEES** - 17:4, 17:7, 17:10, 18:10, 18:14, 22:18, 77:10, 91:21, 91:22, 91:24, 92:1, 92:6, 92:10, 92:13, 93:5, 118:1, 118:9, 119:2, 119:9, 119:11, 119:13, 119:22, 120:12, 120:18, 121:5, 121:9, 121:18, 132:5, 137:18, 137:21, 138:13
**FELL** - 115:11
**FERGUSON** - 106:14, 106:21
**FETCHED** - 124:3
**FEW** - 10:9, 73:18, 128:12
**FIBER** - 45:2
**FIELD** - 76:16, 76:17, 105:3, 109:3, 124:15
**FIFTH** - 80:21, 98:24, 100:21, 108:13, 118:7, 118:12, 118:16, 118:20, 118:22, 118:25
**FIGURE** - 14:10, 30:15, 63:5, 81:21, 102:10, 104:8, 127:25
**FIGURED** - 59:15, 122:24
**FIGURES** - 122:16
**FIGURING** - 123:6
**FILE** - 11:6, 11:8, 17:22, 91:9
**FILED** - 4:9, 17:15, 17:16, 17:18, 76:24, 78:1, 80:10, 93:12, 105:15, 112:1
**FILING** - 16:24, 96:15, 103:19
**FILL** - 87:1
**FINALLY** - 4:16, 5:4, 8:14, 8:17, 37:20, 51:12, 60:4, 77:11, 78:8, 84:2, 94:20, 96:22, 97:4, 135:7
**FINANCIAL** - 18:20, 35:3, 35:5, 35:6, 114:18
**FINDINGS** - 78:3, 96:18, 129:11
**FINE** - 82:6

**FINISAR** - 1:4, 1:21, 4:2, 21:22, 22:2, 22:5, 24:19, 24:25, 27:12, 28:4, 31:2, 35:8, 38:10, 41:11, 43:7, 51:4, 51:15, 57:16, 61:7, 71:13, 72:9, 77:17, 77:19, 77:21, 78:4, 78:11, 81:12, 88:15, 89:3, 89:9, 90:2, 90:3, 90:4, 90:16, 90:18, 90:24, 94:15, 94:21, 95:1, 95:8, 99:13, 104:20, 104:25, 105:16, 105:20, 107:10, 107:20, 110:23, 111:14, 114:20, 114:21, 116:2, 117:15, 120:8, 120:21, 124:11, 125:8, 125:14, 125:15, 126:2, 126:8, 130:20, 130:23, 131:6, 131:15, 131:24, 133:16, 137:13
**FINISAR'S** - 16:18, 24:21, 27:3, 31:5, 44:6, 44:13, 52:2, 57:6, 58:6, 58:15, 78:7, 79:23, 83:15, 87:18, 87:24, 88:6, 89:12, 90:16, 91:17, 92:12, 92:20, 93:12, 93:18, 95:9, 103:1, 110:10, 130:21, 131:24
**FINISH** - 73:19
**FINLAND** - 93:15
**FIOS** - 45:5
**FIRE** - 106:17
**FIRM** - 109:18, 109:21, 120:9
**FIRST** - 7:4, 11:12, 14:3, 15:20, 19:8, 27:24, 28:6, 28:13, 29:4, 29:15, 30:1, 47:24, 52:5, 52:24, 56:12, 69:2, 77:12, 85:15, 86:14, 94:7, 97:14, 97:21, 99:11, 101:3, 102:4, 106:20, 110:4, 112:3, 118:3, 136:19
**FIT** - 75:1
**FIVE** - 46:15, 46:17, 48:12, 48:14, 70:10, 77:8, 77:11, 96:24
**FIXED** - 45:9, 53:1
**FLAUNTING** - 121:14
**FLAW** - 84:5
**FLAWS** - 84:4
**FLOOR** - 1:25
**FLOW** - 126:8
**FLOWER** - 1:25
**FOCUS** - 6:18, 124:25
**FOCUSING** - 99:18
**FOLD** - 21:23
**FOLLOW** - 10:5, 64:14, 88:8
**FOLLOWING** - 6:4, 81:2, 89:5
**FOLLOWS** - 25:23, 52:5, 69:2
**FOOLISH** - 128:19
**FORBIDDEN** - 81:17
**FORCE** - 79:12
**FORECAST** - 67:24, 75:15
**FORECASTS** - 67:17, 67:20

**FOREGOING** - 140:7
**FOREGONE** - 31:5
**FOREMOST** - 9:5
**FORGET** - 60:15, 97:21
**FORM** - 36:12, 98:1, 108:21
**FORMED** - 108:25, 114:1
**FORTH** - 10:9, 13:14, 18:16, 31:19, 50:5, 76:7, 104:1, 106:13, 112:25, 123:7, 137:1, 139:7
**FORWARD** - 6:6, 15:17, 26:7, 26:25, 38:17, 49:5, 53:10, 56:1, 82:8, 84:11, 98:6
**FOSTER** - 126:24
**FOUGHT** - 119:12
**FOUNDRY** - 126:25
**FOUR** - 6:14, 6:23, 13:19, 30:4, 31:3, 44:2, 50:23, 65:7, 77:10, 82:11, 85:5, 96:23
**FOUR-PRONG** - 13:19
**FRAME** - 34:18, 35:16
**FRAMEWORK** - 129:22
**FREE** - 72:11
**FREQUENTLY** - 24:8, 127:13
**FRIDAY** - 13:11
**FRONT** - 41:16, 83:25, 96:1
**FULFILLMENT** - 70:17
**FULL** - 69:5, 70:17, 125:9, 131:1, 131:16
**FULLY** - 100:25, 116:7, 116:14, 116:15, 117:14, 125:12
**FUNCTIONALITY** - 73:5
**FUNDED** - 114:19, 121:11
**FUTURE** - 10:7, 36:5, 37:17, 49:11, 49:19, 54:2, 54:7, 54:9, 58:20, 85:14, 87:6, 117:7, 123:13, 125:6, 125:13, 136:17, 136:24

## G

**GATE** - 1:16
**GECSEI** - 98:21, 101:21, 102:7
**GEE** - 98:5
**GEM** - 33:25, 45:7, 58:22, 58:23, 58:25, 59:4, 59:6, 59:7, 59:8, 59:13, 59:14, 60:21, 82:14, 128:9, 129:5, 132:9, 133:19
**GENERAL** - 29:8, 42:11, 44:4, 80:9, 113:12, 121:13, 124:25
**GENERAL'S** - 80:8
**GENERALLY** - 40:13, 119:9, 138:3, 138:11
**GENERATES** - 45:17
**GENERATOR** - 131:8
**GEORGE** - 1:23,

135:16
**GEORGE-PACIFIC** - 135:16
**GEORGIA** - 41:24, 63:14, 127:3, 127:12, 128:3
**GEORGIA-PACIFIC** - 127:3, 127:12, 128:3
**GERMER** - 1:18
**GERTZ** - 1:18
**GIVEN** - 5:24, 21:19, 38:18, 53:16, 80:6, 81:21, 101:12, 102:22, 120:2, 120:13, 123:12, 125:5, 135:11, 136:10, 140:16
**GLASS** - 81:13, 81:14, 81:18, 96:22
**GOD** - 79:7
**GOODS** - 66:22
**GORMAN** - 94:5
**GOVERNMENT** - 8:16
**GOVERNMENTAL** - 78:10, 79:21
**GRAB** - 93:22
**GRACO** - 89:11
**GRANT** - 52:23, 57:7, 57:14, 57:16, 57:19, 78:14, 88:4, 123:16, 124:19
**GRANTED** - 38:2, 40:21, 40:24, 78:17, 87:24, 100:17, 100:23, 104:17, 107:18, 108:3, 110:14, 126:23
**GRANTING** - 40:15, 46:22
**GREAT** - 96:25, 117:11
**GREATER** - 76:10
**GREG** - 76:23
**GROGORY** - 1:24
**GROSS** - 42:16, 42:17, 42:19, 42:20, 42:24, 45:8, 45:11, 47:17, 55:24, 56:3, 65:4, 65:8, 66:21, 128:5, 128:17, 128:18, 128:20, 132:6, 134:18
**GROUND** - 11:23, 25:25
**GROUNDS** - 90:9, 92:11, 113:16
**GROUP** - 1:8, 4:2, 23:11, 129:4
**GROUPS** - 136:13
**GROW** - 133:8
**GROWING** - 29:16
**GROWTH** - 35:25, 36:6
**GUESS** - 20:8, 20:13, 24:16, 28:17, 30:17, 33:3, 42:17, 61:4, 62:15, 62:17, 76:7, 76:8, 80:18, 83:5, 83:6, 84:15, 115:2, 131:25, 136:4
**GUESSTIMATE** - 9:11
**GUESSTIMATES** - 15:10
**GUIDANCE** - 11:24, 12:20
**GUIDE** - 59:8, 59:9, 91:16, 91:18
**GUIDES** - 55:20, 59:11
**GUY** - 13:10

## H

**HACKERMAN** - 103:16, 103:22, 103:24, 105:9
**HAND** - 24:10, 83:2, 99:20, 101:20, 110:1, 117:4, 126:2, 134:10, 134:24, 135:11, 140:16
**HAND** - 74:16, 74:20
**HANDICAPPED** - 114:21
**HANDLE** - 13:12, 70:12, 70:13, 73:16, 82:12, 84:22, 84:25
**HANDLED** - 68:10, 70:24, 132:11
**HANDLING** - 93:13, 120:1
**HANG** - 98:19
**HAPPY** - 20:15
**HARD** - 75:9, 91:16, 106:14, 110:15, 114:9, 119:12, 119:16, 125:11, 126:2, 128:1
**HARD-FOUGHT** - 119:12
**HARDER** - 124:24
**HARDSHIP** - 125:17, 126:2
**HARDWARE** - 34:12, 36:22, 65:21
**HARM** - 13:14, 77:25, 78:11, 79:18, 80:1, 90:15, 90:17, 97:6, 116:1, 116:2
**HARMS** - 78:8, 78:12
**HARSKO** - 101:10
**HARTENSTEIN** - 106:21
**HARTFORD** - 94:10
**HEAD** - 79:15
**HEADED** - 134:6
**HEADING** - 91:22
**HEALTHY** - 117:6, 133:4, 133:8
**HEAR** - 43:4, 81:12, 106:5
**HEARD** - 11:17, 16:13, 58:22, 80:2, 90:25, 91:6, 93:8, 97:14, 100:11, 110:6, 128:16, 137:22
**HEARING** - 1:11, 28:22
**HEARINGS** - 17:14, 18:1, 109:8
**HEARTFIELD** - 2:2
**HEAVILY** - 135:24
**HEAVY** - 80:23, 100:13
**HELD** - 14:19, 18:12, 19:21, 120:22
**HELP** - 88:23, 105:6, 127:16, 131:6, 131:10
**HELPFUL** - 86:14, 86:18, 124:5
**HEPATITIS** - 16:6
**HEREBY** - 140:5
**HERETO** - 140:6
**HESITATE** - 42:17
**HI** - 39:22
**HIDING** - 111:19
**HIGH** - 66:11, 111:4, 117:12, 121:25, 130:24, 131:21, 131:23, 133:3, 134:7, 134:14, 134:22
**HIGHER** - 79:10, 98:2, 105:19, 130:24, 136:4, 136:7
**HIGHLIGHT** - 21:10
**HIGHLIGHTED** -

64:11
**HIGHLIGHTS** - 17:14, 48:23
**HIGHLY** - 62:14
**HIMSELF** - 106:25, 109:3
**HINT** - 106:14
**HIRE** - 138:8
**HISTORY** - 5:22, 6:3, 7:15, 13:17
**HNS** - 60:2
**HOLD** - 30:14, 55:8, 55:10, 91:7
**HOLDER** - 105:2, 121:1
**HOLDER'S** - 108:8
**HOME** - 36:20, 73:6, 73:22, 75:10, 84:21
**HONOR** - 4:5, 4:7, 5:1, 6:2, 11:13, 21:14, 25:18, 29:3, 30:24, 31:15, 32:19, 37:7, 39:14, 48:3, 48:7, 48:9, 48:10, 48:17, 51:21, 51:23, 52:20, 53:23, 61:1, 68:4, 72:6, 73:20, 74:9, 75:13, 75:14, 76:22, 77:7, 79:8, 80:23, 81:23, 82:7, 83:10, 85:7, 86:1, 86:14, 86:24, 87:14, 87:22, 88:19, 90:20, 93:21, 95:20, 95:23, 96:7, 96:9, 97:10, 97:12, 122:20, 139:1, 139:5
**HONORABLE** - 1:12
**HOPE** - 6:10, 116:9, 130:23
**HOPEFULLY** - 14:13
**HOPING** - 137:10
**HOSPITAL** - 100:20
**HOUR** - 73:18, 138:9
**HOURLY** - 138:15
**HOURS** - 138:10
**HOUSE** - 19:3
**HOUSEHOLD** - 83:5, 83:7
**HOUSTON** - 94:7, 94:9
**HUGE** - 128:14, 134:17
**HUGHES** - 34:16, 39:4, 55:15, 63:24, 64:4, 65:12, 65:18, 65:21, 104:6
**HUNDRED** - 17:11, 138:9
**HURRICANE** - 78:22
**HURT** - 16:15
**HYDROTECH** - 16:2
**HYPOTHETICAL** - 26:17, 26:21, 28:4, 31:1, 35:14, 39:25, 40:6, 40:10, 48:1, 48:19, 55:3, 56:9, 56:16, 56:23, 56:24, 57:1, 57:4, 57:25, 61:11, 127:14
**HYPOTHETICALLY** - 87:6

## I

**I'S** - 19:20
**IDEA** - 12:22, 75:7, 79:2, 122:5, 124:15, 137:11
**IDEAS** - 108:19, 112:6, 113:23, 116:17
**IDENTICAL** - 87:18, 91:24

IDENTIFIED - 77:23
IDENTIFY - 21:18
IDENTIFYING - 96:21
IGNORING - 6:19
ILLINOIS - 9:3
IMAGINE - 25:3, 32:16, 106:5
IMBIBEMENT - 132:25
IMMEDIATELY - 12:2
IMPACT - 29:5, 36:22, 36:23, 37:13, 37:17, 58:15, 97:9
IMPART - 28:1
IMPEG - 23:15, 42:8, 42:10, 55:4, 59:21, 59:24, 64:12, 65:11, 68:8, 68:14, 85:19, 85:24, 86:23, 87:2, 87:8, 128:9, 129:2, 129:14, 129:21, 133:19, 133:23, 136:5, 136:6, 137:3
IMPEG-DIRECTV - 68:8
IMPLEMENT - 8:7, 111:6, 116:14, 125:16
IMPLEMENTATION - 126:6
IMPLEMENTED - 111:5
IMPLEMENTING - 117:13
IMPORTANCE - 56:19
IMPORTANT - 4:22, 35:6, 36:16, 83:10, 114:14, 115:6, 115:15, 129:9, 129:11, 133:16, 133:17, 133:18, 133:19, 133:22, 134:6, 135:14, 136:11, 136:14
IMPORTANTLY - 105:23, 107:5, 117:11
IMPOSE - 7:16, 50:23, 111:7, 114:24
IMPOSED - 46:9, 81:18
IMPOSES - 116:10
IMPOSING - 18:9, 40:14, 49:23, 130:9
IMPOSITION - 26:7
IMPOSSIBILITY - 8:25, 9:16
IMPRESSION - 32:9, 99:23
IMPROVED - 33:16, 126:17
IMPROVEMENT - 134:6
IMPRUDENT - 125:2
IN-HOUSE - 19:3
INABILITY - 36:22
INAPPROPRIATE - 38:13, 77:16
INC - 1:8, 4:2, 69:7, 113:14, 118:19, 118:21, 118:24, 123:17
INCALCULABLE - 125:22
INCENTIVE - 116:8
INCLINED - 20:9, 20:14
INCLUDE - 68:12, 75:8, 118:16, 137:18
INCLUDED - 41:10, 59:4, 137:24, 140:9
INCLUDING - 35:13,

37:23, 64:8, 68:14, 102:19
INCOME - 117:12, 126:8, 129:7
INCOMPATIBLE - 44:16
INCOMPLETE - 19:9, 19:10
INCORPORATE - 85:6
INCORPORATING - 84:21
INCURRED - 104:3
INDEED - 92:23
INDEFINITE - 89:25, 109:7, 120:23
INDEFINITENESS - 110:9, 120:7
INDEMNITY - 94:11
INDEPENDENT - 74:22
INDEX - 3:1
INDICATE - 12:18, 108:21, 128:4, 130:3
INDICATED - 102:24, 124:17
INDICATES - 38:20, 74:16, 74:22, 106:7, 123:21
INDICATION - 19:7, 30:1, 79:4, 107:2, 109:5, 111:19, 123:5, 127:11, 132:15
INDICATIONS - 44:17, 119:24
INDIVIDUALS - 36:3
INDUCED - 107:8, 107:16, 107:18
INDUCING - 119:25
INDUSTRIES - 66:11, 118:19
INDUSTRY - 7:14, 38:5, 53:4, 56:4, 59:18, 59:22, 83:12, 85:16, 85:19, 85:21, 128:7, 128:14
INDUSTRY'S - 58:24
INELASTIC - 132:16
INEXPENSIVE - 8:8, 106:1
INFERENCE - 112:19
INFERENCES - 100:17, 101:4
INFORMATION - 19:9, 19:10, 19:16, 20:10, 26:13, 26:15, 26:20, 26:23, 26:25, 27:17, 27:18, 27:21, 34:23, 35:4, 35:21, 35:23, 36:2, 37:20, 38:7, 39:6, 42:5, 42:6, 47:1, 47:12, 47:16, 47:21, 58:19, 71:24, 72:1
INFORMED - 86:13
INFORMS - 86:16
INFRINGE - 88:1, 107:25, 116:8
INFRINGEMENT - 56:17, 104:9, 109:1, 111:25, 114:2, 120:5, 120:7, 120:22
INFRINGEMENT - 6:5, 16:13, 17:8, 18:7, 18:9, 18:13, 27:12, 40:5, 49:2, 49:7, 49:8, 49:10, 57:1, 81:6, 82:20, 84:2, 84:6, 84:9, 87:21, 89:8, 104:21, 105:10, 105:17, 105:20, 107:9,

107:12, 107:14, 107:16, 107:18, 107:20, 107:22, 108:2, 108:3, 108:4, 108:21, 109:4, 109:5, 110:6, 110:12, 110:14, 111:3, 111:16, 112:4, 114:6, 115:9, 115:18, 116:13, 116:15, 116:19, 117:11, 117:14, 118:13, 119:7, 120:16, 121:2, 126:13, 135:13, 135:19, 138:5
INFRINGEMENTS - 18:23, 105:1, 107:8
INFRINGER - 5:25, 9:10, 18:10, 46:10, 108:17, 108:18, 108:23, 113:22, 113:24, 113:25, 116:17, 120:5, 120:11, 120:13, 134:6
INFRINGER'S - 88:25, 114:8
INFRINGERS - 116:17, 133:5
INFRINGES - 99:6, 124:9
INFRINGING - 10:16, 11:6, 11:16, 16:14, 27:15, 43:3, 49:14, 91:12, 105:3, 105:5, 110:25, 111:1, 111:14, 120:14, 121:3
INFRINGING - 61:9, 61:15
INHERENTLY - 85:12
INJUNCTION - 4:14, 5:2, 5:15, 6:4, 6:7, 6:10, 7:6, 8:4, 8:14, 8:15, 9:7, 9:13, 9:15, 9:16, 9:24, 10:1, 10:11, 11:11, 11:14, 11:20, 11:21, 11:25, 12:6, 12:13, 12:17, 13:2, 13:3, 13:6, 13:14, 13:20, 13:22, 13:23, 13:25, 14:3, 15:5, 15:20, 16:1, 16:3, 16:4, 16:6, 16:10, 16:19, 16:21, 17:2, 20:10, 21:11, 26:8, 26:9, 27:6, 27:11, 37:15, 40:5, 40:11, 40:15, 41:3, 41:7, 41:17, 41:23, 48:24, 49:24, 50:4, 50:14, 50:17, 51:13, 51:20, 57:8, 58:8, 77:8, 77:13, 77:15, 78:14, 80:14, 81:4, 81:6, 84:11, 97:6, 123:5, 123:7, 123:10, 123:16, 124:19, 124:20, 125:3, 126:19
INJUNCTIONS - 12:11, 12:25, 14:4, 50:24, 80:20
INJUNCTIVE - 126:24
INJURY - 77:16, 103:21, 123:21, 123:22, 125:5
INQUIRY - 13:19
INSTALLATION - 69:21
INSTALLED - 29:16
INSTALLERS - 69:21
INSTALLING - 53:22
INSTANCES - 17:10

INSTANTLY - 104:21
INSTEAD - 18:6
INSTRUCTED - 102:5, 102:20
INSTRUCTING - 127:13
INSTRUCTIONS - 108:17
INSTRUMENT - 118:18
INSTRUMENTS - 18:6, 113:16
INSUFFICIENT - 107:13, 107:22, 108:1, 108:16, 113:7
INSURANCE - 93:23, 94:5
INSURE - 71:25
INTEGRATE - 51:7
INTEGRITY - 71:24, 72:1
INTELLECTUAL - 24:20, 68:10
INTEND - 28:1
INTENDED - 90:17, 120:12, 138:3
INTENDING - 36:4
INTENT - 136:25, 137:5, 137:11
INTENTIONALLY - 17:17
INTERCHANGEABLE - 32:6
INTEREST - 4:17, 15:23, 15:25, 16:2, 16:5, 16:8, 16:10, 20:16, 20:17, 20:22, 21:15, 21:23, 22:1, 22:2, 22:7, 22:9, 22:12, 22:17, 22:20, 22:25, 23:8, 23:11, 51:10, 77:11, 78:3, 78:18, 93:3, 93:17, 93:18, 93:20, 93:25, 94:2, 94:5, 94:13, 95:12, 95:18, 96:5, 121:4, 121:21, 123:2, 125:10, 126:12, 126:15, 126:17, 126:18
INTERESTED - 140:14
INTERESTING - 9:3, 40:2
INTERESTS - 114:10, 119:16, 126:11
INTERPRETATION - 100:16, 102:11, 102:15
INTERPRETED - 94:1
INTERRUPTING - 37:14
INTERVENING - 8:17
INTRODUCTION - 45:2
INVALID - 18:12, 89:25, 93:13, 95:6, 96:13, 96:14, 108:25, 109:7, 111:25, 114:2
INVALIDATED - 93:10
INVALIDITY - 89:11, 99:16, 110:9, 111:11, 114:7, 117:11, 124:10
INVALIDS - 125:25
INVENTION - 6:1, 10:10, 49:12, 50:19, 99:4, 99:8, 117:15, 132:24, 133:2, 133:6,

133:7, 133:13, 134:4, 134:16
INVENTIONS - 125:15, 131:8, 133:14
INVENTOR - 116:15, 130:18
INVENTORY - 71:5, 71:7, 71:9, 71:11, 71:24, 72:3, 73:5
INVESTED - 24:12, 126:5
INVESTIGATE - 105:3, 108:9
INVESTIGATED - 108:24, 110:8, 114:1
INVESTIGATION - 109:20, 114:5, 117:10, 132:21
INVESTMENT - 24:13, 32:22, 33:7
INVESTMENTS - 104:6
INVOLVED - 40:4, 57:21, 59:12, 107:14, 107:23, 115:7, 116:25, 120:3, 124:4, 125:17, 128:9, 128:11, 134:18, 136:15, 138:6
INVOLVEMENT - 85:11
INVOLVES - 136:7
INVOLVING - 76:7, 108:21
IRREPARABLE - 13:14, 77:16, 80:1, 123:20, 123:22, 125:5, 125:7
IRRESPECTIVE - 45:16
ISSUANCE - 126:6
ISSUE - 5:15, 12:13, 15:20, 17:4, 21:22, 24:16, 43:16, 77:8, 77:10, 77:11, 77:12, 77:14, 81:6, 83:25, 84:11, 85:14, 87:15, 87:16, 90:10, 90:12, 91:20, 92:13, 93:1, 93:16, 94:20, 95:3, 100:25, 103:4, 103:11, 104:15, 105:23, 105:24, 107:10, 110:14, 117:16, 123:4, 125:3
ISSUED - 4:15, 27:7, 40:5, 43:7, 48:24, 89:6, 106:11, 106:12, 115:15, 116:3
ISSUES - 4:10, 4:24, 6:23, 17:25, 20:8, 40:5, 42:21, 51:15, 51:16, 58:13, 77:8, 83:22, 97:2, 115:9, 119:6, 119:12
ITEM - 107:24, 133:25
ITEMS - 131:9, 131:10, 133:21
ITSELF - 19:15, 32:15, 79:3, 79:18, 92:13, 99:20, 102:2, 102:12, 125:16, 126:16, 128:10, 129:12

**J**

JEFFERSON - 140:2
JELLY - 102:10
JMOL - 87:23, 88:2, 88:4, 90:9, 92:12, 98:23, 100:7, 100:16,

104:17, 107:18, 108:3,
108:4, 112:12, 113:9,
138:21, 138:22
**JMOL'S** - 139:3
**JOB** - 106:22
**JOHNSON** - 118:23
**JOINT** - 107:12,
107:21
**JONES** - 1:25
**JOURNAL** - 13:13
**JR** - 2:2
**JUDGE** - 1:12, 8:14,
9:4, 9:6, 10:5, 11:4,
11:19, 13:4, 14:12,
15:8, 16:20, 26:8,
51:18, 80:4, 80:24,
80:25, 81:1, 97:5
**JUDGEMENT** -
101:15
**JUDGES** - 12:7,
12:16
**JUDGMENT** - 20:2,
20:3, 53:19, 89:19,
98:21, 99:10, 99:11,
100:3, 100:5, 100:12,
103:10, 107:6, 107:7,
112:11, 116:9, 121:19,
123:1, 124:6, 125:8,
126:10, 126:14, 136:1,
137:6, 138:17, 138:19,
139:8
**JUDGMENTS** - 4:11,
18:13
**JUDICIAL** - 9:11,
15:10, 23:4
**JULY** - 1:7, 28:3,
140:17
**JUMP** - 38:18
**JUNE** - 56:9, 76:24,
90:16
**JURIES** - 110:17
**JURISDICTION** -
123:16, 137:9
**JURY** - 4:4, 8:12,
9:17, 15:8, 15:12,
15:16, 18:18, 27:5,
31:10, 40:1, 40:10,
40:15, 41:16, 42:2,
42:6, 47:7, 47:9,
47:10, 49:10, 49:18,
50:8, 51:16, 52:20,
53:3, 53:7, 53:11,
54:6, 58:18, 61:19,
61:23, 62:1, 62:5,
62:11, 62:25, 63:3,
63:7, 63:9, 63:18,
73:17, 77:18, 81:11,
81:20, 83:21, 84:1,
84:16, 84:17, 89:10,
91:25, 96:24, 100:24,
101:24, 102:4, 102:16,
103:7, 103:9, 104:14,
104:22, 107:4, 107:9,
107:16, 108:2, 108:17,
112:9, 112:10, 112:20,
113:8, 113:12, 116:19,
117:4, 117:8, 117:21,
120:17, 121:19, 122:9,
125:9, 126:9, 127:13,
127:23, 127:24,
134:13, 135:22,
136:19, 136:20
**JURY'S** - 9:17, 17:7,
81:24, 82:7, 87:21,
96:17, 103:13, 104:11,
104:15, 109:19,
122:21, 129:11, 133:6,
135:13
**JUSTICE** - 5:22,
11:10, 11:19, 43:25,
44:6, 44:9, 78:2,
80:12, 118:19

**JUSTICE'S** - 78:6
**JUSTIFIABLE** -
135:6
**JUSTIFIED** - 18:14
**JUSTIFY** - 18:9, 89:3

## K

**KEEP** - 6:13, 7:13,
54:20, 71:9, 97:25,
98:14
**KEEPING** - 82:16,
98:2, 133:24
**KEPT** - 99:18,
106:19, 111:16
**KEY** - 106:19,
106:20, 133:21,
134:15
**KHCHAIDES** -
103:16
**KIN** - 140:14
**KIND** - 19:24, 24:15,
30:15, 31:14, 32:7,
32:14, 32:25, 36:3,
53:19, 71:5, 98:5,
104:22, 110:1, 112:7,
116:21, 124:23, 131:6,
131:21, 137:2, 137:8,
138:10
**KINDS** - 13:24,
122:1
**KIRKEN** - 101:10
**KITS** - 16:6, 16:7
**KNOCK** - 7:23
**KNOWING** - 108:21
**KNOWLEDGE** -
27:17, 40:18, 44:3,
46:1
**KNOWN** - 103:20,
104:21, 105:16, 113:3,
132:11
**KNOWS** - 54:12

## L

**LACED** - 92:19
**LACK** - 5:13, 36:13,
99:2
**LAID** - 77:13
**LAKE** - 1:17
**LAND** - 13:12
**LANE** - 2:5, 140:20
**LANGUAGE** - 50:18,
79:3, 100:15, 102:2
**LARGE** - 75:8,
114:19, 115:7, 133:3
**LARGER** - 114:20
**LAST** - 34:13, 36:15,
36:25, 50:8, 53:17,
75:23, 80:12, 135:15
**LATCHES** - 103:12,
103:23, 104:23, 107:7
**LATE** - 97:15
**LAUNCH** - 134:21
**LAUNCHED** - 43:13
**LAW** - 2:2, 4:11, 9:5,
49:10, 49:12, 50:22,
80:3, 80:7, 80:16,
80:19, 81:9, 88:3,
88:7, 88:11, 89:19,
95:18, 100:6, 100:7,
100:13, 101:15,
103:10, 107:7, 109:3,
109:18, 112:11, 120:9,
121:14, 124:17,
124:22, 125:8
**LAWRENCE** - 1:18
**LAWS** - 95:8
**LAWSUIT** - 112:1
**LAWYERS** - 12:7,
14:11, 82:1, 114:13
**LAY** - 76:25, 99:8

**LAYS** - 88:10
**LEADS** - 9:7, 90:18
**LEAST** - 19:5, 19:6,
23:24, 82:21, 90:11,
106:24, 128:14,
132:11, 134:13
**LEAVE** - 76:15
**LEFT** - 74:16, 91:21,
121:6
**LEFT-HAND** - 74:16
**LEGAL** - 108:1,
111:23, 117:9
**LEGALLY** - 100:24,
107:15, 108:1, 108:16,
112:10
**LENDING** - 22:5
**LENGTH** - 34:2,
103:19
**LESS** - 18:1, 24:8,
24:14, 26:22, 26:24,
29:12, 34:1, 35:12,
36:9, 36:17, 38:8,
64:22, 64:23
**LESSER** - 30:11,
30:21
**LETTER** - 88:13,
91:11, 91:14, 105:14,
109:2, 112:3, 115:16,
115:24, 120:8
**LETTING** - 10:2
**LEVEL** - 76:14,
82:22, 89:2, 117:1,
117:2
**LEVINSON** - 50:11,
77:18, 105:9
**LICENSE** - 4:15,
5:12, 7:9, 7:12, 7:17,
7:24, 8:2, 8:20, 8:22,
9:9, 14:25, 15:2,
21:12, 23:14, 23:16,
31:3, 38:10, 38:19,
40:12, 40:15, 40:20,
40:24, 41:10, 41:13,
41:25, 46:9, 46:14,
46:22, 46:25, 49:5,
50:3, 51:9, 52:23,
55:22, 56:3, 56:17,
57:13, 57:14, 57:15,
57:16, 58:12, 58:17,
58:22, 58:23, 59:3,
59:13, 59:24, 60:3,
77:9, 77:22, 79:3,
79:20, 79:23, 81:16,
81:19, 83:17, 84:6,
84:18, 85:13, 85:24,
87:2, 87:8, 87:13,
97:1, 97:7, 106:9,
123:10, 125:14, 126:7,
126:21, 126:23,
129:13, 129:14,
129:22, 129:24, 130:1,
131:14, 136:2, 137:3,
137:6, 138:5
**LICENSED** - 7:19,
55:14, 130:9
**LICENSEE** - 67:3,
129:1, 130:17, 131:4,
133:25
**LICENSER** - 130:16
**LICENSES** - 24:25,
33:23, 40:20, 42:10,
42:13, 55:2, 55:5,
55:6, 55:15, 57:7,
57:12, 57:20, 68:14,
68:15, 68:18, 78:17,
78:23, 85:18, 86:23
**LICENSING** - 7:15,
7:21, 7:22, 9:22,
24:20, 35:3, 35:6,
37:21, 38:2, 38:3,
49:8, 57:11, 58:15,
59:16, 59:25, 68:10,

90:17, 127:18, 130:8
**LICENSOR** - 130:6,
130:9, 131:8, 133:1
**LIEU** - 26:7, 136:1
**LIFE** - 35:18, 42:1,
56:18, 56:20, 57:22,
58:2, 58:21, 83:17,
93:22, 94:5
**LIGHT** - 100:2,
107:9, 122:2
**LIKELIHOOD** -
111:9
**LIKELY** - 53:4, 62:8,
62:9, 62:14, 105:17,
117:6, 127:11, 127:25
**LIMIT** - 4:22
**LIMITATION** - 99:4,
114:16
**LIMITED** - 6:18,
98:11
**LIMITING** - 119:21,
126:15
**LINE** - 80:12, 129:14
**LIST** - 5:2, 27:20,
109:9
**LISTEN** - 110:4
**LISTS** - 97:24
**LITERALLY** - 134:8
**LITIGATED** - 92:15,
97:3, 110:13
**LITIGATION** - 11:9,
16:25, 17:12, 18:4,
51:20, 57:3, 83:16,
87:25, 92:20, 114:9,
118:14, 118:17,
119:15
**LIVE** - 28:17
**LOAN** - 22:7
**LOCAL** - 17:24, 45:3
**LOGIC** - 5:22
**LOGICALLY** - 110:8
**LOOK** - 9:17, 13:16,
16:10, 21:1, 31:8,
34:6, 35:8, 36:6,
37:25, 56:13, 56:17,
56:18, 56:19, 63:14,
80:12, 80:19, 81:3,
91:13, 91:14, 98:23,
99:20, 100:5, 100:6,
100:13, 101:23,
103:14, 108:15,
109:21, 110:4, 113:10,
117:23, 119:5, 120:21,
121:21, 129:23,
135:21, 136:14,
136:24
**LOOKED** - 46:25,
63:13, 86:12, 110:21,
111:22, 119:4, 135:2
**LOOKING** - 11:24,
53:7, 55:2, 82:14,
95:20, 99:10, 100:22,
101:2, 101:23, 105:15,
119:3, 127:17, 128:25,
129:9, 132:19, 134:23,
134:25, 135:3, 135:22,
136:23, 137:8
**LOOKS** - 19:19,
109:24, 118:23
**LOS** - 2:1
**LOSE** - 36:12,
109:14, 119:13,
125:22
**LOSS** - 24:6, 78:16,
113:5, 122:6
**LOST** - 24:9, 24:17,
80:8, 104:1, 104:2
**LOUIS** - 1:18, 1:24,
86:24
**LOW** - 24:13,
116:13, 131:1
**LOWER** - 30:22,

130:3, 130:15, 136:10
**LOWERING** - 130:23
**LUDMILA** - 1:20
**LUMP** - 57:22, 57:25,
58:1, 58:3, 63:10,
67:14

## M

**MACHINE** - 126:25
**MACK** - 108:12
**MACROVISION** -
34:9, 38:22, 42:18,
42:20, 64:2, 64:7,
64:13, 129:6
**MAGNITUDE** - 19:5,
53:11
**MAHURKAR** - 9:2,
11:20, 15:9, 80:24,
81:2, 81:8, 97:4
**MAIN** - 73:22, 91:24,
92:20
**MAINTAIN** - 130:7,
130:14, 131:23
**MAINTAINED** - 8:9
**MAJOR** - 6:23, 7:23,
13:6, 115:13
**MAJORITY** - 6:3,
10:17, 12:13, 28:7
**MANAGE** - 71:11,
75:5
**MANAGED** - 21:3,
71:12
**MANAGEMENT** -
69:10, 71:5, 73:4,
110:21, 111:5, 112:2,
115:21
**MANILDRA** - 93:11
**MANUFACTURE** -
69:18
**MANUFACTURED** -
70:23
**MANUFACTURER** -
34:15, 34:19, 34:21,
41:4, 45:23, 46:5,
65:21, 70:11
**MANUFACTURERS**
- 36:21, 54:17, 68:9,
68:11, 69:18, 69:22,
70:7, 70:24, 71:15
**MANUFACTURING** -
92:7, 134:5
**MARKET** - 8:21,
8:24, 9:10, 9:18, 9:25,
11:14, 15:11, 15:21,
16:22, 28:6, 28:7,
29:7, 29:14, 30:1,
30:18, 31:12, 35:7,
36:7, 36:9, 40:7,
79:22, 81:11, 89:6,
126:8
**MARKETING** -
106:22, 130:7
**MARKETPLACE** -
28:3, 29:8, 29:9,
29:15, 30:5, 30:11,
31:23, 32:10, 32:23,
36:4, 36:8
**MARKMAN** - 113:18
**MARYLAND** -
101:12
**MATERIAL** - 103:23
**MATERIALIZE** -
30:10
**MATERIALS** - 68:16
**MATH** - 82:5
**MATHEMATICAL** -
83:19
**MATTER** - 4:11,
4:16, 23:19, 49:10,
49:12, 53:20, 83:4,
83:23, 84:12, 88:6,

88:11, 88:16, 89:19,
93:19, 100:6, 100:13,
101:15, 103:10,
104:23, 107:7, 112:11,
124:5, 132:5
**MAXIMUM** - 88:17
**MCGEORGE** - 3:12,
51:24, 68:25, 69:1,
69:6, 72:9, 74:11,
82:24
**MEAN** - 6:15, 6:19,
12:8, 13:7, 14:15,
17:16, 23:18, 23:22,
28:17, 46:13, 49:12,
49:20, 50:25, 54:13,
56:5, 58:20, 66:14,
78:21, 79:4, 79:18,
83:3, 84:20, 86:8,
88:7, 92:25, 98:7,
109:24, 110:3, 110:4,
111:21, 119:13, 134:9,
137:17
**MEANING** - 36:21,
92:16
**MEANINGFUL** -
47:16
**MEANS** - 62:4,
79:20, 99:2, 125:16
**MEANT** - 5:20
**MEASURE** - 29:21,
67:9, 79:6, 89:17
**MEASURES** - 66:20,
67:1, 87:3, 134:25
**MEDIA** - 36:19, 37:9,
73:22
**MEDICIS** - 118:6
**MEET** - 107:4
**MEETING** - 19:6,
19:21, 91:7, 94:1
**MEETS** - 93:14
**MEMORIZED** - 79:15
**MEMORY** - 42:12,
55:13, 104:1
**MEN** - 100:19
**MENTIONED** -
21:11, 35:12, 51:8,
78:5, 85:8, 91:23,
93:2, 99:25, 101:25,
114:14
**MERCEXCHANGE** -
80:10, 123:18
**MERE** - 105:4
**MERELY** - 50:11,
114:23, 116:10
**MERIT** - 92:13
**MERITED** - 92:6
**MERITS** - 90:22
**MET** - 103:8
**METHOD** - 70:15,
84:23, 85:1, 104:18,
107:24, 111:25, 122:4,
132:25, 136:12
**METHODIST** -
100:20
**METHODOLOGY** -
25:10, 38:13, 39:7,
61:25, 62:5, 65:25,
66:5, 66:10
**METHODS** - 115:14,
117:5
**METRIC** - 82:22,
85:16, 85:19
**METRICS** - 94:14
**MICRO** - 118:21
**MICROSOFT** - 10:8,
10:12, 10:19, 10:20,
10:21, 10:22, 16:22
**MID** - 23:2
**MID-MONTH** - 23:2
**MIDDLE** - 62:13
**MIGHT** - 4:16, 18:9,
21:6, 25:19, 30:8,

30:17, 32:3, 38:5,
38:9, 57:18, 58:10,
58:12, 67:6, 67:20,
84:1, 91:1, 93:1,
100:1, 101:20, 103:4,
108:7, 109:6, 109:10,
110:15, 110:17,
116:14, 120:20
**MILLION** - 8:13,
15:12, 15:13, 15:14,
15:16, 18:4, 21:2,
23:5, 29:16, 32:5,
32:20, 32:21, 60:15,
75:21, 75:24, 76:1,
76:3, 76:8, 84:16,
93:8, 95:14, 95:15,
115:2, 116:18, 117:2,
117:20, 122:16,
122:17, 123:1, 125:22,
126:3, 127:11, 131:19,
135:1
**MILLIONS** - 14:23,
15:7, 121:10, 125:25,
126:16
**MIND** - 6:13, 99:17,
124:16, 127:22, 132:8
**MINDFUL** - 108:6
**MINIMAL** - 85:11,
85:13
**MINOR** - 10:20, 21:9
**MINUS** - 66:22
**MINUTE** - 37:3,
53:17, 78:13
**MINUTES** - 73:16,
73:18, 96:8
**MISCONDUCT** -
17:12, 90:15, 92:20,
115:14, 118:14
**MISS** - 77:3
**MISSED** - 6:24, 7:1,
20:20, 138:20, 138:23,
138:24, 139:3, 139:4
**MISSING** - 7:22,
106:20
**MISSOURI** - 80:13
**MISSPOKE** - 37:7,
122:21
**MIT** - 104:17
**MODE** - 132:18
**MODEL** - 52:19,
53:1, 53:2, 53:3, 53:6,
59:17, 59:19, 128:5,
131:25
**MODELS** - 65:19,
65:20
**MODINE** - 92:7
**MODULE** - 10:21
**MOFFETT** - 1:21
**MOMENT** - 87:15
**MONETARY** - 5:25,
13:3, 15:4, 104:3
**MONEY** - 8:20, 22:6,
22:7, 22:11, 22:25,
23:1, 23:6, 23:8,
23:25, 24:10, 24:18,
24:21, 77:20, 80:2,
83:3, 94:16, 114:24,
115:4, 115:6, 120:3,
122:6, 126:14
**MONOPOLY** -
124:17, 124:18, 125:4,
130:8, 130:11, 130:15
**MONTH** - 23:2
**MONTH** - 23:6, 23:9,
24:11, 25:4, 45:9,
45:15, 45:16, 60:22,
129:6
**MONTHLY** - 23:18,
24:7, 24:9, 45:7,
71:14, 132:10
**MONTHS** - 10:18,
11:7, 21:9

**MOOT** - 107:10,
107:19
**MOREOVER** - 90:15,
91:13
**MORNING** - 26:1,
26:2, 39:21, 61:4,
61:6, 90:24
**MOST** - 4:22, 22:10,
43:11, 53:3, 66:10,
66:20, 67:12, 76:25,
83:10, 100:3, 105:7,
127:9, 127:25
**MOSTLY** - 4:19
**MOTION** - 8:11,
17:23, 87:23, 89:18,
98:21, 100:3, 100:16,
103:10, 107:6, 107:17,
108:2, 138:20
**MOTIONS** - 3:3,
3:15, 4:3, 17:14,
17:16, 88:2, 90:9,
90:10, 90:11, 98:22,
138:20, 138:21,
138:22, 139:3, 139:4,
139:7
**MOTIVATE** - 112:18
**MOTIVATION** -
90:15, 112:16, 116:1
**MOUTH** - 36:3
**MOVANT'S** - 101:9
**MOVE** - 17:4, 20:16,
69:19
**MOVED** - 112:12
**MOVEMENT** - 75:5,
101:6
**MOVIE** - 65:2
**MOVIES** - 129:8
**MOVING** - 70:14
**MULTIPLE** - 75:8,
83:16, 84:25, 136:13,
137:1
**MULTIPLY** - 136:21
**MULTIPLYING** -
84:3
**MUST** - 80:3, 96:16,
99:4
**MUTUAL** - 93:22
**MUTUALLY** - 98:18

## N

**NAME** - 52:8, 69:5,
69:6
**NAMED** - 107:12,
107:14, 107:17,
107:22, 107:23
**NAMELY** - 129:7
**NAMES** - 21:19, 77:6
**NAPPER** - 3:4, 20:5,
20:9, 25:11, 25:15,
25:19, 25:22, 26:1,
39:12, 39:21, 48:19,
58:22, 78:5
**NAPPER'S** - 23:10,
50:6, 56:7, 56:15
**NATION** - 125:4
**NATIONAL** - 118:19
**NATURE** - 36:15,
59:6, 60:3, 66:24,
68:15, 129:23, 132:24
**NEAR** - 90:21
**NEAT** - 49:9
**NECESSARILY** -
32:24, 51:17, 133:22,
138:15
**NECESSARY** -
31:21, 58:2, 68:14,
128:7, 137:11
**NECESSITY** - 51:3
**NEED** - 4:25, 12:20,
19:17, 19:23, 27:21,
40:6, 56:21, 81:10,

83:19, 111:11, 121:15
**NEEDED** - 20:11,
32:5, 48:23, 61:10
**NEEDING** - 35:5
**NEEDS** - 69:14,
75:9, 80:15, 86:12
**NEGLIGENT** - 108:8
**NEGOTIATE** - 8:6,
29:11
**NEGOTIATED** -
56:21
**NEGOTIATING** -
37:18, 51:9
**NEGOTIATION** -
8:22, 26:18, 26:21,
28:4, 35:14, 40:7,
48:1, 48:20, 56:9,
57:25
**NEGOTIATIONS** -
9:7, 9:8, 39:25, 40:10,
55:3, 56:16, 56:23,
56:24, 57:1, 57:5,
61:11
**NET** - 66:24, 66:25
**NETWORK** - 34:16,
39:4, 55:16, 63:24,
64:4, 65:12, 65:19,
65:21
**NETWORKS** - 33:2
**NEVER** - 19:12,
49:18, 50:10, 77:19,
80:1, 106:15, 109:3,
109:20, 123:25, 124:1,
125:15, 128:13, 130:9,
130:12, 134:11
**NEW** - 11:14, 11:23,
12:9, 12:10, 12:19,
12:20, 12:22, 12:24,
17:23, 32:23, 48:19,
52:17, 56:8, 56:23,
56:24, 57:4, 68:8,
72:10, 82:12, 83:1,
84:24, 86:18, 93:23
**NEWS** - 5:4, 59:14,
126:1
**NEXT** - 33:20, 34:25,
53:23, 53:25, 113:10,
117:25, 123:4, 124:8
**NIGHTMARE** - 16:25
**NINE** - 113:17,
113:21
**NINE-POINT** -
113:21
**NINETEEN** - 17:17
**NITPICKING** - 89:14
**NON** - 7:16, 61:9,
61:15
**NON-EXCLUSIVE** -
7:16
**NON-INFRINGING** -
61:9, 61:15
**NONE** - 42:10,
42:13, 56:22, 112:4,
115:24, 127:20, 133:1
**NONEXCLUSIVE** -
56:18, 129:24
**NONINFRINGEMEN
T** - 89:11
**NONINFRINGING** -
8:8, 8:19, 63:15,
79:22, 90:2
**NONINFRINGMENT**
- 90:9
**NONINJUNCTION** -
50:24
**NONMOVEMENT** -
99:12, 100:3, 101:4
**NONPATENTED** -
131:9, 134:4
**NONUSE** - 131:5
**NONWILLFULNESS**
- 87:23, 88:4

**NORMALLY** - 23:18,
24:7, 24:18, 25:1,
97:18, 100:23
**NORTH** - 94:6
**NORTHERN** - 9:2
**NOTE** - 18:17, 20:3,
46:1, 51:12, 74:14,
102:3, 108:14
**NOTED** - 5:23, 9:6,
77:17, 93:17, 120:18
**NOTES** - 11:11,
17:19, 121:22
**NOTHING** - 48:3,
60:10, 68:21, 72:5,
75:14, 77:14, 88:17,
106:7, 115:20, 119:19,
128:13
**NOTICE** - 23:4
**NOTING** - 80:6
**NOTWITHSTANDIN
G** - 90:16
**NOVELTY** - 99:2
**NOVEMBER** -
102:16
**NOWHERE** - 90:21
**NQ** - 118:15
**NTP** - 8:11
**NUMBER** - 4:10,
14:14, 20:12, 29:6,
37:12, 45:12, 45:20,
53:14, 53:16, 55:1,
56:12, 57:12, 59:1,
59:11, 63:11, 66:20,
72:11, 75:21, 75:25,
76:3, 76:9, 78:10,
82:22, 86:2, 86:3,
89:7, 91:14, 96:5,
98:12, 98:25, 102:18,
102:20, 128:7, 130:23,
131:3, 133:25, 135:11
**NUMBERS** - 54:21,
67:22, 76:2, 97:13,
116:20, 117:24,
128:15
**NUMEROUS** - 92:11
**NYDEGGER** - 1:16

## O

**O'CLOCK** - 13:10,
28:13
**OATH** - 72:2
**OBJECTED** - 53:17
**OBJECTION** - 28:9,
29:1
**OBLIGATION** -
17:25
**OBSERVATIONS** -
29:10
**OBTAIN** - 68:13,
68:17
**OBTAINED** - 19:19,
89:7
**OBVIOUS** - 110:15,
119:7, 138:7
**OBVIOUSLY** - 6:24,
33:8, 36:9, 45:20,
47:13, 78:21, 79:5,
84:17, 84:24, 94:19,
98:7, 112:12, 113:1,
121:23, 123:9, 129:11,
130:1, 130:18, 130:23,
131:15, 131:19,
131:23, 131:24,
132:22, 135:9, 137:9,
137:22
**OBVIOUSNESS** -
112:21, 113:9, 115:11
**OCCASION** - 40:23,
43:23, 58:4
**OCCUPY** - 8:1
**OCCUR** - 40:22

**OCCURRED** - 40:17, 138:5
**OCCURS** - 137:3
**ODD** - 133:23
**ODD** - 40:20, 110:3, 135:2
**ODETICS** - 113:19
**OFFER** - 7:13, 7:24, 39:13
**OFFERED** - 45:3, 88:17, 94:15, 97:13
**OFFERING** - 45:5
**OFFERS** - 84:8, 94:15, 127:21, 127:22
**OFFICE** - 10:22, 13:10, 95:7, 97:25, 140:16
**OFFICES** - 2:2
**OFFSET** - 95:3
**OFTEN** - 35:16, 36:2
**OLD** - 81:2, 81:9, 84:23, 86:6, 86:7, 132:18
**OLDER** - 119:1
**OLIGOPOLY** - 30:17
**ONCE** - 49:10, 81:6, 91:2
**ONE** - 8:7, 9:4, 10:11, 10:18, 14:6, 15:23, 19:7, 19:22, 21:12, 22:15, 22:24, 23:5, 23:9, 23:11, 23:16, 28:6, 30:6, 30:16, 30:20, 31:1, 31:12, 32:19, 37:25, 38:19, 38:21, 40:3, 40:11, 40:19, 41:24, 43:19, 43:22, 44:20, 46:8, 46:15, 50:9, 50:23, 54:1, 55:16, 56:25, 58:4, 59:3, 61:14, 64:1, 64:22, 64:23, 65:3, 65:23, 67:20, 68:3, 72:14, 72:23, 73:8, 73:9, 73:11, 75:1, 75:3, 75:9, 76:12, 77:8, 82:10, 83:7, 84:4, 84:14, 84:23, 85:5, 86:7, 86:8, 88:12, 89:5, 90:11, 91:21, 91:22, 93:5, 95:11, 97:12, 98:3, 98:17, 98:25, 99:23, 100:18, 100:25, 101:9, 102:15, 110:22, 111:22, 115:2, 116:6, 117:1, 124:21, 125:24, 128:11, 129:6, 131:25, 133:7, 133:21, 134:15, 134:25, 135:1, 137:20, 138:21, 138:22
**ONE'S** - 127:20
**ONES** - 112:9, 119:4
**ONGOING** - 8:24, 49:3, 51:14, 51:19
**ONSCREEN** - 74:23
**OPEN** - 4:25
**OPENING** - 13:13
**OPERATE** - 68:14
**OPERATED** - 103:21
**OPERATING** - 10:23, 35:9, 66:15, 66:16, 66:19, 67:17, 67:23, 116:2, 131:22, 135:1, 136:1
**OPERATION** - 23:24, 66:15, 117:12
**OPERATIONAL** - 67:3, 67:10, 67:15, 67:16
**OPERATIONS** -

66:11, 66:14, 66:22, 67:9
**OPINE** - 78:5
**OPINED** - 46:15, 46:21
**OPINION** - 5:7, 19:1, 19:2, 19:6, 19:7, 19:8, 19:10, 19:14, 19:15, 19:18, 19:22, 19:24, 26:12, 26:16, 27:9, 38:12, 38:16, 39:6, 42:3, 52:13, 52:21, 56:7, 59:17, 74:1, 75:2, 80:13, 88:13, 89:8, 89:10, 89:13, 91:7, 91:9, 91:11, 91:14, 94:3, 103:13, 109:10, 109:20, 109:23, 111:24, 112:1, 112:2, 128:4, 135:7, 138:17
**OPINIONS** - 109:10, 111:18
**OPPORTUNITY** - 12:2, 21:13, 24:9, 24:13, 24:17, 31:2, 31:5, 39:16, 109:15
**OPPOSE** - 93:17
**OPPOSED** - 24:18, 30:8, 36:16, 95:14, 96:25
**OPPOSING** - 51:6
**OPTIC** - 45:2
**OPTION** - 8:5
**OPTIONS** - 26:11
**ORANGE** - 2:5, 140:21
**ORBIT** - 134:20
**ORDER** - 51:7, 57:8, 97:22, 117:18, 123:8
**ORDERED** - 58:14
**ORDERS** - 58:8
**ORGANIZATION** - 70:2
**ORIGINAL** - 56:14
**ORIGINALLY** - 27:19
**ORIGINALS** - 98:2, 98:15
**OTHERWISE** - 49:13, 103:10
**OUTCOME** - 9:8
**OUTLINED** - 18:15, 92:9, 96:21
**OUTPUT** - 54:18, 68:9, 74:5, 87:4
**OUTSIDE** - 79:7, 109:16, 109:21
**OVERALL** - 59:16
**OVERCOME** - 99:15
**OVERHEAD** - 66:23
**OVERLAP** - 120:23
**OVERRULE** - 29:1
**OVERTURN** - 109:18
**OVERTURNED** - 92:12
**OVERWEIGHS** - 15:25
**OVERWHELMING** - 103:9
**OVERWHELMINGL Y** - 100:18
**OWN** - 63:6, 63:18, 98:16, 129:12, 130:14
**OWNED** - 59:14, 132:25
**OWNER** - 29:14, 38:22, 57:13
**OWNER'S** - 18:9

**P**

**PACIFIC** - 127:3,

127:12, 128:3, 135:16
**PACIFIC** - 41:24, 63:14
**PAGE** - 3:2, 5:22, 13:16, 98:9, 100:10, 100:11, 100:21, 101:11, 103:22, 103:24, 108:13, 108:14, 118:12, 118:22, 118:24, 118:25, 126:25
**PAGES** - 91:14, 113:15
**PAID** - 8:20, 26:19, 64:23, 65:3, 65:5, 78:11, 83:17, 83:25, 102:19, 128:25, 133:25
**PANEL** - 108:12
**PAPER** - 5:18, 50:14, 97:22
**PAPERS** - 4:9, 17:15, 17:17, 77:13, 96:17
**PARADIGM** - 56:1, 68:8
**PARAGRAPH** - 87:11
**PARCEL** - 100:14
**PARK** - 1:21
**PART** - 11:6, 15:25, 18:21, 24:20, 25:9, 26:6, 68:16, 73:3, 75:4, 79:9, 82:21, 85:12, 90:14, 110:7, 123:24, 137:21, 138:3
**PARTICULAR** - 9:9, 33:7, 41:7, 46:21, 79:16, 94:14, 103:14, 129:10, 130:10, 133:12, 134:15
**PARTICULARLY** - 66:11, 109:16, 115:10, 120:1
**PARTIES** - 8:23, 9:8, 15:12, 24:23, 27:15, 29:23, 56:21, 86:20, 90:4, 97:22, 98:1, 103:15, 104:12, 119:23, 121:22, 123:11, 140:9, 140:15
**PARTIES'** - 22:24
**PARTLY** - 31:13
**PARTNERS** - 115:2
**PARTS** - 71:25, 99:25, 101:24
**PARTY** - 5:6, 17:13, 18:1, 18:4, 18:5, 22:9, 35:15, 35:17, 80:11, 93:8, 93:9, 93:10, 93:14, 95:2, 100:18, 100:25, 114:8, 118:2, 118:4, 137:14, 140:12
**PASSING** - 35:12
**PAST** - 9:18, 12:12, 26:4, 26:14, 31:11, 38:12, 39:8, 49:18, 54:5, 54:7, 60:7, 124:2, 127:14, 127:20, 127:24, 131:14, 136:22, 136:23, 138:2
**PATENT** - 7:9, 7:12, 7:24, 7:25, 8:3, 9:21, 9:22, 10:20, 10:25, 11:2, 12:12, 13:17, 14:5, 14:18, 14:21, 14:25, 15:23, 16:23, 18:9, 27:4, 27:13, 27:15, 29:11, 35:10, 35:18, 36:13, 38:2, 38:19, 41:14, 42:1, 43:7, 43:16, 43:17,

49:3, 49:11, 50:9, 52:23, 56:18, 56:21, 57:3, 57:13, 57:23, 58:2, 58:7, 59:3, 59:6, 59:7, 59:12, 65:25, 81:6, 81:11, 81:12, 81:25, 83:18, 84:7, 88:1, 89:6, 93:13, 95:5, 95:7, 95:8, 96:13, 98:12, 99:1, 99:3, 99:6, 101:12, 101:13, 104:6, 104:19, 105:2, 106:11, 106:12, 108:8, 108:24, 109:3, 109:23, 110:25, 111:2, 111:14, 113:25, 114:1, 114:15, 115:15, 116:3, 120:6, 121:1, 121:9, 124:1, 124:2, 124:13, 125:16, 126:3, 126:9, 126:16, 127:18, 129:1, 129:10, 129:12, 130:8, 130:10, 131:3, 131:5, 131:13, 131:18, 132:17, 132:24, 135:5, 135:14, 137:22
**PATENT'S** - 79:25
**PATENTED** - 10:10, 131:10
**PATENTEE** - 50:17, 67:4, 126:23, 127:18
**PATENTEE'S** - 6:1
**PATENTS** - 5:12, 5:14, 7:18, 12:16, 55:19, 56:16, 59:9, 59:10, 59:11, 60:12, 124:7, 128:8, 128:11, 129:1, 129:4, 131:7, 132:2, 133:23, 134:1, 136:7, 136:8, 136:13, 136:14
**PATH** - 12:10
**PAY** - 18:18, 23:6, 39:1, 39:4, 42:22, 64:17, 64:19, 65:5, 68:18, 71:23, 84:1, 90:25, 120:12, 129:8
**PAYING** - 49:6, 80:10
**PAYMENTS** - 23:5, 23:7, 23:17
**PAYS** - 67:3, 68:17
**PENALTIES** - 78:10, 78:13, 78:18
**PENDENCY** - 8:9
**PENNSYLVANIA** - 101:12
**PENNY** - 126:5
**PEOPLE** - 76:9, 83:3, 115:1, 120:14, 124:18, 125:22, 126:1, 129:18
**PER** - 9:22, 20:25, 34:11, 36:10, 38:13, 38:24, 42:22, 45:9, 45:15, 45:16, 53:2, 53:9, 53:20, 54:23, 55:4, 55:18, 59:18, 60:14, 60:22, 62:5, 62:25, 63:4, 63:10, 64:18, 64:19, 72:15, 82:14, 83:12, 84:19, 84:23, 85:2, 85:5, 85:21, 86:17, 94:1, 94:4, 96:20, 122:4, 122:14, 127:5, 129:3, 129:4, 129:5, 129:6, 129:8, 129:13, 132:1, 132:3, 132:10, 132:13, 135:11, 135:12, 136:2, 136:7, 136:16
**PERCEIVED** - 29:23,

114:12, 119:19
**PERCEIVING** - 136:12
**PERCENT** - 20:24, 21:8, 21:25, 22:19, 24:14, 29:14, 31:12, 46:15, 46:17, 50:1, 59:14, 64:18, 64:22, 64:23, 64:24, 65:3, 65:4, 65:6, 65:7, 65:24, 66:2, 67:2, 67:3, 67:5, 67:7, 67:10, 67:18, 67:19, 67:24, 67:25, 70:9, 70:10, 70:21, 70:23, 93:25, 94:4, 96:19, 96:23, 96:24, 111:10, 117:21, 121:22, 122:5, 122:8, 127:4, 128:12, 128:22, 134:17
**PERCENTAGE** - 34:11, 39:10, 42:11, 42:14, 42:23, 45:8, 55:23, 56:3, 117:23, 132:6
**PERCENTAGES** - 116:24
**PERFECT** - 82:6
**PERFORM** - 20:11
**PERFORMED** - 41:6
**PERFUNCTORY** - 113:2, 113:4
**PERHAPS** - 32:2, 36:21, 37:7, 119:7, 121:10, 123:24, 125:2, 132:21
**PERIOD** - 26:23, 49:24, 50:3, 51:6, 78:20, 114:5, 114:6, 122:19, 124:20, 127:10
**PERMIT** - 72:14
**PERMITTING** - 31:21
**PERPETUAL** - 11:9, 16:25
**PERRICONE** - 118:6, 118:10
**PERSON** - 19:13, 91:8
**PERSONAL** - 73:10
**PERSONS** - 100:15
**PHARMACEUTICAL** - 118:6
**PHASE** - 10:14, 51:6
**PHONETIC** - 89:20
**PHYSICALLY** - 70:13
**PICK** - 4:24, 50:23
**PIECE** - 71:1, 90:18
**PIECES** - 36:3, 47:20
**PINEDA** - 100:13
**PIRATING** - 112:7
**PLACE** - 10:11, 11:12, 14:3, 15:20, 26:22, 26:24, 27:19, 34:3, 37:17, 38:8, 61:10, 70:15, 83:18, 106:17, 124:21, 125:1
**PLACED** - 35:12, 42:6, 47:5, 47:11, 82:23, 83:1
**PLACES** - 36:8, 82:23
**PLACING** - 26:19
**PLAIN** - 72:19
**PLAINTIFF** - 1:6, 1:15, 3:3, 4:4, 4:21, 5:12, 5:13, 40:4, 98:23, 98:24, 97:2, 103:3, 103:20, 116:8, 122:6, 123:22, 124:8,

127:2, 138:4
**PLAINTIFF'S** -
95:12, 138:23
**PLAINTIFFS** - 53:17,
86:11, 129:15
**PLAN** - 10:9, 10:13,
10:16, 11:5, 69:13,
116:2
**PLANNING** - 75:16
**PLANS** - 36:5, 73:21
**PLAY** - 10:2, 11:15,
11:18
**PLAYER** - 29:15
**PLUG** - 8:6, 8:20
**PLUMBING** - 100:9
**PLUS** - 53:4, 122:25,
125:9, 125:10
**POACHING** - 120:19
**POINT** - 113:21
**POINT** - 5:19, 6:19,
7:3, 8:12, 15:22,
23:23, 29:4, 29:15,
30:24, 31:4, 31:17,
32:19, 32:20, 34:13,
36:15, 37:10, 40:8,
48:23, 49:1, 49:15,
50:11, 51:2, 51:4,
54:12, 67:6, 67:8,
67:10, 74:21, 80:5,
81:10, 81:23, 83:10,
83:21, 84:2, 84:20,
86:11, 87:2, 89:16,
93:5, 94:11, 94:25,
95:6, 96:11, 97:12,
99:5, 100:17, 102:25,
103:8, 104:11, 104:15,
137:20, 138:16,
138:22, 138:23
**POINTED** - 6:13,
7:11, 12:8, 28:5, 78:9,
78:15, 79:24, 88:2,
94:18
**POINTS** - 6:14, 28:6,
76:25, 77:19, 77:23,
78:1, 90:23, 111:20
**POKE** - 115:3
**POLICIES** - 18:21,
117:13
**POLICY** - 18:8,
24:16, 116:7, 116:10,
116:14, 120:25,
126:13, 130:7
**POPULAR** - 33:3,
131:19
**POPULARITY** -
131:19
**PORTEC** - 18:16,
113:14
**PORTFOLIO** - 59:6
**PORTFOLIOS** -
59:7, 59:12
**PORTION** - 73:17,
81:3, 94:3, 133:11
**PORTIONS** - 140:8
**POSITION** - 7:9,
7:10, 8:1, 9:12, 15:18,
15:21, 22:9, 22:21,
24:2, 27:11, 58:6,
77:13, 121:2, 124:12,
138:4
**POSITIONING** - 29:9
**POSSIBILITY** - 32:2,
51:8
**POSSIBLE** - 72:19,
73:7, 96:12, 105:10
**POSSIBLY** - 31:25
**POST** - 4:3, 48:20,
51:18, 81:19, 83:22,
84:3, 97:1, 123:1,
139:3
**POST-TRIAL** - 4:3
**POSTED** - 17:23

**POSTJUDGMENT** -
20:16, 20:17
**POTENTIAL** - 37:14,
79:21, 105:20
**POTENTIALLY** -
31:5, 119:12
**PRACTICAL** - 124:5,
135:6
**PRACTICE** - 5:21,
5:23, 49:3, 50:19,
53:5, 58:4, 59:22
**PRACTICING** - 5:14
**PRECEDING** -
138:21
**PRECISE** - 63:11
**PRECISELY** - 62:3
**PRECLUDE** - 99:1,
99:3
**PREDICTING** - 35:18
**PREEXISTING** -
57:12
**PREFERABLE** -
9:10, 96:19
**PREGNANCY** - 16:7
**PREJUDGMENT** -
4:17, 20:16, 20:22,
21:15, 21:23, 22:8,
22:12, 22:17, 77:10,
93:3, 93:17, 95:12,
121:4, 121:21, 125:9
**PREJUDICE** -
103:21, 103:23,
103:25, 104:2, 105:24,
105:25, 106:10,
106:12, 107:3, 119:20
**PRELIMINARY** -
6:10, 16:3, 16:4
**PREMISE** - 81:4,
110:17
**PREPARED** - 20:9,
20:12, 27:20, 35:9
**PREPARING** - 19:12
**PREPONDERANCE**
- 105:19, 105:22,
107:11, 107:21, 124:9
**PRESENT** - 4:21,
7:1, 51:23, 69:12,
69:13, 89:2, 97:2,
102:6
**PRESENTATION** -
110:16
**PRESENTED** - 27:5,
42:7, 101:22, 101:23
**PRESENTS** - 25:11
**PRESERVE** - 130:10
**PRESIDENT** - 69:10,
106:21
**PRESS** - 8:16, 44:4,
44:12, 78:6
**PRESSED** - 126:2
**PRESTO** - 118:19
**PRESUMABLY** -
24:12
**PRESUMED** - 41:25
**PRESUMING** - 27:6
**PRESUMPTION** -
27:10, 40:17, 99:15,
105:6, 105:8
**PRESUMPTIONS** -
105:7
**PRETTY** - 4:18, 21:6,
29:21, 84:20, 88:20,
100:1, 100:7, 112:13,
121:8, 135:23, 138:7
**PREVAIL** - 94:25,
126:24
**PREVAILED** - 18:11,
40:4, 89:23, 92:13,
120:21
**PREVAILING** - 18:4,
18:5, 93:8, 93:9,
93:10, 93:14, 95:2,

111:10, 118:2, 118:4,
137:14
**PREVENT** - 44:1
**PREVENTED** - 104:4
**PREVERDICT** -
81:20
**PREVIOUS** - 29:13,
110:18
**PREVIOUSLY** - 6:9,
35:22, 37:22, 119:24,
126:14
**PRICE** - 130:24,
132:16, 133:11
**PRICELESS** -
123:24
**PRIMARILY** - 40:18,
87:21
**PRIMARY** - 17:6,
27:25, 33:22, 34:3,
34:5
**PRIME** - 121:25
**PRIMESTAR** - 30:3,
31:3
**PRINCIPLES** -
123:17
**PRIVATE** - 9:8,
121:12
**PRIVILEGE** - 109:12
**PROBATIVE** - 133:9
**PROBLEM** - 9:21,
10:3, 11:10, 14:18,
15:3, 15:15, 15:19,
19:24, 28:24, 50:19,
51:15, 53:14, 54:3,
54:7, 54:8, 71:1, 82:9,
98:5, 104:10, 129:15,
136:25, 137:9
**PROBLEMATIC** -
132:7
**PROBLEMS** - 13:1,
13:21, 13:24, 17:21,
111:9, 135:3
**PROCEDURAL** -
16:25, 139:7
**PROCEDURES** -
111:17
**PROCEED** - 12:3,
30:13, 33:19, 34:25,
36:25
**PROCEEDING** -
140:13
**PROCEEDINGS** -
2:6, 140:8
**PROCESS** - 88:22,
109:16, 118:3, 134:5
**PRODUCED** - 2:7,
133:1
**PRODUCES** - 87:4
**PRODUCT** - 29:17,
43:12, 74:12, 131:17
**PRODUCTS** - 10:15,
10:22, 16:4, 87:12,
129:25, 131:4
**PROFESSIONAL** -
114:10, 119:17
**PROFESSOR** -
106:17
**PROFIT** - 35:9,
45:17, 65:8, 66:10,
66:22, 66:24, 66:25,
67:8, 67:15, 67:16,
67:18, 117:6, 131:24,
133:4, 133:11, 134:3,
134:23, 134:25, 135:1
**PROFITABILITY** -
29:17, 29:19, 131:17
**PROFITABLE** -
29:20, 117:7, 132:14
**PROFITS** - 29:19,
65:4, 66:14, 66:15,
66:16, 66:19, 66:21,
67:4, 67:10, 67:24,

106:7, 106:8, 125:19,
131:21, 131:22,
133:11, 136:15
**PROGRAM** - 7:20,
55:20, 59:11, 85:13,
90:17, 105:5, 106:17,
136:8
**PROGRAMMING** -
65:5, 74:23, 106:25
**PROGRAMS** - 74:5,
130:7
**PROJECTED** -
26:23, 36:6
**PROJECTING** -
35:25
**PROJECTION** - 35:9
**PROJECTIONS** -
35:15
**PROJECTS** - 40:17
**PROMOTED** - 18:22
**PROMOTER** -
130:18
**PROMOTING** - 131:4
**PRONG** - 13:19
**PRONG** - 15:23
**PROOF** - 101:10,
101:13, 103:6, 105:16,
105:20, 113:6, 118:5
**PROOFS** - 82:20
**PROPER** - 12:6,
20:24, 56:8
**PROPERLY** - 17:24,
66:10, 93:1, 129:15
**PROPERTY** - 9:7,
24:21, 33:15, 68:10,
132:18
**PROPOSE** - 63:17
**PROPOSITION** -
50:16
**PROTECT** - 6:6,
109:14
**PROTECTING** - 5:24
**PROTECTION** -
64:17, 99:2, 99:3,
108:24, 113:25
**PROVE** - 102:5,
103:2, 103:18, 108:5,
124:10
**PROVED** - 124:8
**PROVEN** - 30:8
**PROVIDE** - 71:13,
71:16, 71:18, 74:5,
109:10
**PROVIDED** - 46:12,
97:5, 101:18
**PROVIDER** - 44:10,
124:21
**PROVIDERS** -
36:18, 36:21, 125:22
**PROVIDES** - 123:15
**PROVIDING** - 50:13,
85:10
**PROVISION** - 79:12,
121:7
**PUBLIC** - 15:23,
15:25, 16:1, 16:5,
16:8, 16:9, 35:22,
51:5, 51:10, 58:19,
78:1, 78:3, 78:17,
126:11, 126:12,
126:13, 126:15,
126:17, 126:18
**PULL** - 8:6, 8:19
**PUNISHABLE** - 91:3
**PUNITIVE** - 88:19,
88:20, 88:21, 89:3,
90:22
**PURCHASE** - 69:13,
69:17
**PURCHASED** - 59:8,
59:15, 70:22
**PURCHASES** -

54:16
**PURCHASING** -
70:16, 75:5
**PURPOSE** - 22:8,
112:22
**PURPOSES** - 124:7
**PURSUANT** - 17:24
**PUSH** - 124:24
**PUSHING** - 124:24
**PUT** - 7:25, 14:17,
19:3, 19:20, 20:7,
20:15, 22:9, 27:22,
61:9, 78:1, 79:1,
80:19, 88:15, 91:6,
92:25, 97:23, 106:25,
121:1, 138:4
**PUTS** - 27:11
**PUTTING** - 80:23,
130:5, 134:9

**Q**

**QUALIFIED** - 74:2,
74:7, 109:2, 109:8,
135:8
**QUARTERLY** -
22:19, 35:20, 35:24,
71:14
**QUESTIONING** -
73:16, 73:19
**QUESTIONS** - 17:3,
29:18, 48:4, 53:13,
60:25, 68:2, 68:3,
75:12, 84:10, 118:17
**QUIBBLE** - 43:8
**QUICK** - 109:17
**QUICKLY** - 21:24,
61:9, 71:18, 93:16,
108:9, 139:8
**QUITE** - 46:13, 88:4,
91:24, 122:10, 131:22
**QUOTE** - 16:2, 41:2,
90:3
**QUOTING** - 97:8

**R**

**R&D** - 66:23
**R3** - 71:6, 71:12
**RADAR** - 18:20, 20:4
**RADICAL** - 5:20
**RADIO** - 57:17
**RAISE** - 30:22, 132:5
**RAISED** - 123:23,
135:23
**RAISES** - 105:1
**RAMIFICATIONS** -
44:2
**RANGE** - 54:24,
55:3, 55:7, 55:17,
60:11, 62:21, 63:4,
63:5, 63:9, 63:11,
63:13, 63:15, 63:17,
75:21, 75:24, 129:2,
129:9, 132:16, 133:24,
134:22, 135:6
**RANGES** - 62:19,
64:17
**RANGING** - 67:18,
67:24, 108:7
**RATE** - 21:25, 22:19,
26:19, 27:2, 27:5,
38:9, 40:22, 40:24,
41:5, 41:10, 41:18,
41:21, 46:16, 46:17,
46:18, 46:19, 46:21,
46:23, 47:6, 52:14,
64:14, 64:24, 65:2,
81:19, 82:8, 84:12,
93:18, 93:19, 93:25,
96:19, 121:23, 121:25,
122:1, 122:5, 122:8,

FINISAR CORPORATION V DIRECTV GROUP, INC.
07/06/06

14

123:2, 130:15, 133:24,
136:2, 136:10
**RATES** - 36:6, 62:12,
63:7, 63:20, 122:1,
128:25, 133:25,
135:11
**RATHER** - 85:5,
99:19, 102:2
**RAW** - 121:14
**RAWLS** - 77:18,
105:9
**RE** - 9:1, 9:2, 80:24
**REACH** - 33:16
**REACQUIRE** - 36:14
**REACT** - 12:2
**READ** - 5:4, 5:5, 5:6,
14:13, 18:16, 91:10,
101:21, 109:23
**READILY** - 54:21
**READY** - 4:4, 4:6,
13:11
**REAL** - 58:21, 65:6,
65:7, 98:5, 105:12,
105:24, 106:9, 107:24,
109:20, 112:21,
112:25, 115:17,
115:21
**REALISTIC** - 32:4
**REALITIES** - 22:4,
24:3, 24:23
**REALITY** - 8:18,
115:6
**REALIZABLE** -
134:23
**REALIZE** - 5:7,
134:3
**REALIZED** - 5:6
**REALIZING** - 131:1
**REALLY** - 5:8, 5:21,
10:4, 11:23, 13:24,
29:10, 39:4, 48:23,
49:7, 50:19, 51:10,
54:12, 58:25, 61:25,
73:3, 73:4, 75:6, 80:2,
88:7, 88:18, 96:15,
96:22, 97:3, 97:7,
97:9, 99:19, 102:12,
105:6, 109:21, 110:8,
111:11, 114:24,
121:15, 123:22,
125:19, 127:22, 128:2,
129:6, 133:15, 133:16,
134:11
**REASON** - 8:15,
16:19, 39:4, 48:19,
114:24, 123:13,
127:15, 131:25,
138:11
**REASONABLE** -
14:11, 41:9, 52:14,
53:8, 53:11, 56:2,
56:20, 58:1, 58:18,
81:20, 88:6, 100:15,
100:19, 100:24, 101:3,
103:9, 112:4, 113:8,
116:10, 117:18, 118:1,
127:4, 127:14, 135:16,
135:17, 135:18,
135:20, 135:23,
136:16, 136:17,
137:24
**REASONABLY** -
88:14, 89:8, 110:12,
116:16, 134:16
**REASONS** - 18:5,
56:12, 59:1, 59:2,
88:12, 92:9, 93:9,
109:11, 114:4, 120:25,
121:17, 126:13,
138:18
**REBUKE** - 5:8, 5:9
**REBUTTAL** - 96:9,

97:14
**REBUTTLE** - 99:17
**RECALCULATION** -
95:11, 122:15, 122:17
**RECALCULATIONS**
- 95:13
**RECEIVE** - 23:25,
87:5, 131:16
**RECEIVED** - 4:8,
19:3, 127:18, 127:19
**RECEIVER** - 73:23,
73:25
**RECEIVING** - 126:3
**RECENT** - 8:10,
37:23, 38:5, 127:9
**RECENTLY** - 34:17
**RECESS** - 48:14,
48:15, 139:9, 139:10
**RECITED** - 122:21
**RECOGNITION** -
53:10
**RECOGNIZED** -
84:4, 100:12, 124:22
**RECOGNIZES** -
107:19, 127:12
**RECOLLECTION** -
43:18
**RECONCILE** - 42:2,
42:4, 71:25
**RECONSIDER** - 6:12
**RECORD** - 4:20,
6:15, 6:22, 6:24, 7:1,
21:13, 21:16, 21:20,
31:13, 50:22, 52:8,
65:17, 69:5, 71:8,
138:18
**RECORDED** - 2:6
**RECORDER** - 72:17,
73:8
**RECORDING** - 73:1,
73:9
**RECORPORATION** -
88:9, 88:22, 90:13,
91:1, 91:21, 113:14
**RECOVERY** - 137:14
**REDACTIONS** - 98:9
**REDIRECT** - 3:10,
48:6
**REDISTRIBUTE** -
69:20
**REDISTRIBUTED** -
70:22
**REDUCE** - 138:17
**REDUCED** - 140:9
**REED** - 113:17
**REENTRY** - 79:21
**REEVES** - 100:9,
100:22
**REFER** - 9:1
**REFERENCE** -
74:17, 99:5, 99:9
**REFERENCES** -
112:16
**REFERS** - 13:17,
98:24
**REFLECT** - 56:5
**REFRESH** - 55:13
**REGARD** - 77:16,
77:20, 79:9, 79:11,
83:1, 86:18, 90:24,
93:5, 94:11, 94:14
**REGARDING** - 29:18
**REGARDLESS** -
132:1, 132:2, 132:6
**REGARDS** - 92:10,
92:15
**REGULAR** - 82:25,
140:12, 140:13
**REGULATIONS** -
79:3, 79:12
**REIMBURSE** - 5:10
**REJECTED** - 50:12

**REJECTS** - 95:17
**RELATE** - 59:10,
67:8
**RELATED** - 34:13,
55:19, 129:7, 136:8
**RELATES** - 22:4,
45:11, 45:20
**RELATIONSHIP** -
34:14, 34:20, 38:1,
45:23, 54:17, 68:8,
70:24, 90:4, 130:16
**RELATIVELY** -
10:20, 114:6
**RELEASE** - 10:14,
44:12, 65:2, 78:6
**RELEASES** - 8:16
**RELEVANCE** - 38:6,
47:21
**RELEVANT** - 55:2,
56:13
**RELIANCE** - 19:22,
47:5, 80:24
**RELIED** - 35:16,
46:24, 88:14, 89:9,
91:10
**RELIEF** - 126:24
**RELY** - 9:18
**RELYING** - 19:7,
19:23
**REMAINS** - 83:18,
89:16
**REMAND** - 22:16
**REMANDED** - 80:14
**REMARKS** - 39:14
**REMEDIAL** - 110:25,
115:23
**REMEDIED** - 80:1
**REMEDIES** - 5:25,
125:8
**REMEDY** - 6:6, 9:14,
13:3, 16:24
**REMEMBER** - 4:19,
82:20, 129:19
**REMINDING** - 12:10,
12:15
**REMOVE** - 116:8,
133:21
**REMOVED** - 35:13,
39:2
**REPEAT** - 89:4
**REPEATING** - 77:21
**REPEATS** - 89:10
**REPLACED** - 134:21
**REPORT** - 60:4,
65:18, 66:4, 66:9,
127:9
**REPORTED** - 39:24
**REPORTER** - 2:4,
21:17, 48:13, 103:17,
140:4
**REPORTER'S** - 3:16
**REPORTS** - 5:4,
71:14, 71:16, 71:18,
71:20, 82:25, 85:10
**REPREHENSIBILIT**
**Y** - 89:2
**REPREHENSIBLE** -
88:21, 90:21, 91:3,
91:4
**REPRESENT** -
59:21, 114:9, 119:16
**REPRESENTS** -
53:4
**REQUEST** - 93:18,
95:9, 126:19, 126:24,
138:1
**REQUESTED** -
140:8
**REQUIRE** - 71:13,
119:2, 120:11
**REQUIRED** - 51:10,
83:22, 105:2

**REQUIREMENT** -
89:9
**REQUIREMENTS** -
32:4
**REQUIRING** - 8:2
**RESEARCH** - 8:11
**RESOLVED** - 85:15,
99:11, 99:13
**RESPECT** - 21:14,
22:3, 22:5, 22:18,
22:23, 28:21, 29:4,
29:22, 33:13, 33:21,
38:16, 39:8, 60:4,
65:11, 78:3, 78:8,
81:13, 83:15, 89:19,
91:18, 129:25
**RESPOND** - 80:17,
97:16, 120:8
**RESPONDENT'S** -
80:10
**RESPONSE** - 8:24,
52:2, 79:8, 81:12, 88:6
**RESPONSIBILITIES**
- 69:12
**RESPONSIBILITY** -
69:13, 73:4
**RESPONSIBLE** -
98:2, 98:4, 98:15,
106:24
**REST** - 48:13, 91:19
**RESTRICT** - 130:2
**RESTRICTED** -
129:24
**RESTRICTIONS** -
130:5
**RESULT** - 13:19,
27:9, 27:17, 36:12
**RESULTED** - 84:24
**RESULTING** - 133:4
**RESULTS** - 17:5,
117:6, 125:3, 132:19
**RETAINS** - 137:9
**RETURN** - 126:4
**RETURNED** - 4:4,
77:18
**REVENUE** - 27:3,
27:5, 34:11, 35:9,
38:25, 42:11, 42:14,
42:16, 42:21, 42:23,
45:8, 45:11, 45:12,
45:17, 55:24, 56:3,
67:13, 84:24, 96:18,
117:5, 127:4, 128:5,
128:12, 128:17,
128:18, 128:20,
131:25, 132:4, 132:6,
135:4, 135:10
**REVENUES** - 29:19,
41:20, 42:17, 42:19,
42:20, 42:24, 45:21,
66:21, 106:8, 131:20,
133:3, 133:10, 134:18
**REVERSED** - 80:13
**REVIEW** - 19:11,
27:16, 65:7, 91:8,
100:7, 129:12
**REVIEWED** - 19:4,
19:12, 19:13
**REVIEWING** - 127:3
**RICH** - 51:24
**RICHARD** - 3:7,
52:3, 52:4, 52:9, 52:10
**RICHARDSON** -
81:4
**RID** - 39:3
**RIGHT-HAND** -
74:20
**RIGHTS** - 29:11,
57:18, 59:4, 59:5,
104:8, 108:10, 121:7,
121:9, 121:11, 124:1,
124:3, 137:19

**RIM** - 8:18
**RIPPLE** - 125:21
**RISK** - 24:13, 30:9,
78:25, 115:17, 134:5
**ROAD** - 2:3
**ROBERT** - 106:23
**ROBERTS** - 1:15,
3:14, 4:5, 5:1, 5:23,
7:3, 12:12, 12:24,
13:16, 14:17, 17:6,
20:21, 21:3, 23:23,
24:2, 39:13, 39:17,
43:2, 48:10, 48:17,
49:15, 49:22, 50:6,
51:2, 72:8, 72:9,
73:14, 73:20, 73:21,
74:8, 74:11, 75:12,
87:20, 96:8, 96:11,
97:13, 122:20, 137:20,
138:25
**ROLL** - 73:22
**ROLLS** - 26:18
**RON** - 1:12
**ROOM** - 22:6, 62:11,
82:2, 82:3
**ROUGHLY** - 65:4,
70:10, 70:21
**ROYALTIES** - 9:18,
31:4, 54:24, 85:10,
87:7, 127:18, 127:19
**ROYALTY** - 7:22,
8:7, 8:25, 9:9, 9:11,
9:21, 14:5, 14:12,
20:25, 26:19, 27:2,
34:6, 38:13, 38:24,
39:7, 39:10, 40:21,
40:25, 41:10, 41:18,
45:7, 46:7, 46:16,
47:6, 48:21, 48:22,
49:5, 52:14, 52:18,
52:19, 52:25, 53:6,
53:8, 53:11, 56:20,
57:22, 58:1, 58:14,
58:18, 62:1, 62:12,
63:20, 64:8, 64:14,
64:24, 81:19, 81:20,
82:8, 84:12, 87:3,
116:10, 127:4, 127:14,
127:17, 128:2, 129:13,
136:16
**RPR** - 140:19
**RULE** - 5:17, 17:18,
65:24, 65:25, 66:2,
66:4, 66:10, 67:2,
67:3, 67:5, 67:7,
67:11, 81:2, 119:10,
119:11, 137:17
**RULES** - 10:16,
17:25, 56:25, 137:18
**RULING** - 114:14,
119:21
**RULINGS** - 109:9
**RUN** - 35:19, 42:1,
86:8, 128:13
**RUNNING** - 38:24,
39:7, 39:10, 64:8,
64:13
**RUNS** - 86:7
**RURAL** - 33:4, 33:7,
33:13, 33:16, 126:1

---

## S

**S.2D** - 92:7
**SALE** - 84:8, 107:24,
131:4
**SALES** - 39:10,
122:18, 131:9, 131:11
**SALESMAN** - 104:20
**SALT** - 1:17
**SANDERSON** -
100:9

**SAP** - 71:6, 71:12
**SAT** - 11:19
**SATELLITE** - 30:16, 33:3, 42:15, 44:10, 55:23, 57:16, 57:17, 59:18, 74:15, 109:25, 124:21, 125:4, 126:15, 133:18, 134:19, 134:22
**SATELLITES** - 31:21, 33:8, 105:4, 134:9
**SAUSVILLE** - 104:5, 104:19, 105:9
**SAVIKAS** - 1:23, 3:6, 3:9, 3:11, 3:13, 4:7, 28:9, 28:11, 39:18, 39:20, 39:22, 42:12, 43:14, 48:3, 51:23, 52:2, 52:7, 54:2, 54:10, 54:23, 55:22, 60:10, 68:3, 68:6, 68:20, 68:25, 69:4, 72:5, 75:14, 77:4, 86:2, 104:7, 139:5
**SAW** - 6:22, 8:10, 8:16, 19:2, 19:9, 129:21
**SCHEDULING** - 123:8
**SCHEME** - 20:23, 21:8
**SCOPE** - 108:24, 114:1, 129:24
**SCREEN** - 18:20, 20:4, 27:22
**SEAL** - 140:16
**SEATED** - 4:1
**SECOND** - 10:19, 30:14, 74:21, 81:10, 87:1, 93:21, 136:20
**SECONDLY** - 86:15
**SECRETS** - 119:25
**SECTION** - 18:8, 22:18, 79:16, 84:7, 92:1, 92:16, 95:7, 116:7, 117:25, 120:10, 121:18, 123:3, 123:15
**SECURES** - 45:25
**SECURITY** - 42:21
**SEE** - 4:23, 8:15, 13:4, 13:18, 19:14, 20:18, 28:11, 35:17, 51:19, 56:23, 58:9, 74:18, 74:23, 84:18, 97:7, 100:19, 105:8, 108:16, 113:14, 118:10, 118:14, 118:19, 122:20, 126:12, 126:18, 127:15, 129:14, 131:5
**SEEING** - 17:23, 28:14, 135:4
**SEEK** - 11:22, 12:1
**SEEKING** - 80:11
**SEELEY** - 1:16
**SEEM** - 12:18, 23:16, 47:8, 82:15, 110:8, 122:1, 122:3, 122:13, 125:2, 125:7, 128:18, 128:22, 130:2, 131:9, 131:10, 132:13, 136:14
**SEES** - 123:12
**SELL** - 7:24, 9:23, 30:19, 58:7, 58:10, 58:12, 69:19, 69:22, 72:16, 124:3, 127:21, 130:1, 130:12
**SELLER** - 135:18, 135:20
**SELLING** - 9:22,

10:22, 32:2, 85:4, 131:3, 133:11
**SELLS** - 84:8
**SEMANTICS** - 62:18
**SEMINARS** - 13:9
**SENDING** - 25:4
**SENSE** - 34:19, 101:14, 128:23
**SENT** - 23:21, 105:14, 109:2
**SEPARATE** - 12:17
**SERIALIZE** - 35:10
**SERIES** - 37:22
**SERIOUS** - 78:11, 78:19
**SERIOUSLY** - 118:12
**SERVE** - 118:18
**SERVED** - 33:4, 126:12, 126:19
**SERVER** - 73:22
**SERVICE** - 32:20, 37:15, 45:20, 82:23, 83:1, 111:8
**SERVICES** - 59:5, 100:14
**SET** - 10:9, 12:22, 18:16, 21:1, 32:6, 32:10, 34:12, 34:14, 34:18, 34:21, 36:21, 38:13, 38:25, 39:1, 39:3, 39:5, 42:14, 44:15, 44:18, 45:23, 45:25, 46:3, 46:4, 53:2, 53:9, 53:15, 53:20, 53:21, 54:16, 54:17, 54:19, 54:23, 55:4, 55:6, 55:18, 59:19, 60:2, 60:6, 60:12, 60:20, 62:5, 62:19, 62:25, 63:4, 63:9, 63:10, 68:11, 68:12, 68:16, 68:18, 69:16, 69:17, 70:7, 70:13, 70:19, 70:21, 71:14, 72:11, 72:14, 72:16, 72:19, 72:20, 72:22, 72:25, 73:7, 73:11, 74:1, 74:3, 74:15, 74:25, 75:3, 75:5, 75:7, 75:16, 82:21, 82:22, 83:1, 83:12, 84:14, 84:19, 84:21, 84:22, 85:1, 85:2, 85:3, 85:4, 85:18, 85:21, 86:4, 86:6, 86:7, 86:17, 96:20, 96:21, 98:6, 100:25, 101:10, 104:25, 108:16, 109:8, 111:21, 112:9, 113:13, 113:17, 117:20, 118:5, 121:23, 122:4, 122:11, 127:5, 127:8, 127:10, 128:1, 128:10, 129:13, 129:16, 130:24, 130:25, 131:1, 132:1, 132:3, 132:13, 132:15, 135:15, 136:2, 136:16, 136:25, 137:4, 137:15
**SETS** - 82:12
**SETTLEMENT** - 8:17, 8:18
**SEVEN** - 10:18, 14:8, 55:19, 69:17, 89:24, 90:4, 93:10, 95:1, 95:5, 117:16, 120:6, 120:22, 124:9, 129:4, 136:8
**SEVER** - 83:19
**SEVERAL** - 61:9, 82:5, 84:22, 90:8,

115:9, 119:6, 134:11
**SEVERE** - 108:21
**SEVERED** - 51:18
**SHAKE** - 109:17
**SHAPE** - 36:12
**SHARE** - 28:7, 29:14, 31:12, 131:25
**SHARP** - 115:3
**SHATTERPROOF** - 81:13, 81:14, 81:18, 96:22
**SHELF** - 126:4
**SHIFT** - 119:11
**SHIFTING** - 92:1, 119:22
**SHIP** - 70:7, 71:12, 74:15
**SHIPPED** - 71:10, 71:15
**SHOES** - 7:25
**SHORT** - 27:20, 50:3, 90:20, 104:20
**SHORTCOMING** - 33:17
**SHORTHAND** - 2:6, 99:6, 112:23, 140:4
**SHOW** - 13:8, 18:20, 20:4, 73:1, 73:2, 73:9, 104:19, 126:2
**SHOWED** - 128:16
**SHOWING** - 90:7, 112:25, 114:20, 122:13
**SHOWINGS** - 89:4
**SHOWN** - 89:1, 105:18, 105:21, 122:9, 122:12, 122:18
**SHOWS** - 81:8, 91:4, 96:4
**SHUT** - 14:21, 78:21, 125:25
**SHUT-INS** - 125:25
**SHUTDOWN** - 78:23, 79:19
**SHUTS** - 14:22
**SIDE** - 73:18, 103:4, 104:19
**SIDES** - 6:17, 6:25, 20:23, 92:15, 98:17, 99:9, 104:15, 104:16, 112:12, 114:9, 114:10, 119:15, 122:13, 137:7, 138:8
**SIFTING** - 118:18
**SIGN** - 39:1
**SIGNAL** - 32:14, 44:24
**SIGNED** - 23:22, 33:24, 34:4, 38:21, 41:4
**SIGNIFICANT** - 31:16, 134:5
**SIGNIFICANTLY** - 36:9
**SIGNS** - 72:10
**SILENT** - 103:3
**SIMILAR** - 4:23, 87:17, 88:4, 91:23, 119:4, 132:19, 132:21, 132:22, 134:2
**SIMILARLY** - 107:19
**SIMPLE** - 22:1, 81:2, 83:19, 92:1, 93:20, 94:2, 94:5, 94:12, 95:18, 96:4
**SIMPLY** - 45:8, 125:2
**SIMULATE** - 8:24, 11:14, 15:21
**SIMULTANEOUS** - 73:1
**SIMULTANEOUSLY**

- 73:9, 74:22
**SINGLE** - 44:10, 74:15, 85:2, 90:18, 99:5
**SIRIUS** - 57:17
**SISTER** - 34:17, 59:14
**SIT** - 27:16, 28:2, 30:6, 34:3, 37:24, 38:3, 38:6, 43:21, 44:19, 56:21
**SITS** - 9:5, 29:10
**SITTING** - 27:12, 80:25
**SITUATION** - 5:11, 6:5, 8:10, 16:7, 18:17, 18:25, 19:18, 30:7, 51:13, 127:14
**SITUATIONS** - 29:7, 47:14
**SIX** - 18:1, 20:23, 21:7, 21:25, 24:14, 35:19, 93:25, 94:4, 105:6, 105:11, 121:22, 122:4, 122:8, 131:3, 131:15
**SIX-YEAR** - 105:6
**SIZE** - 114:18, 114:22
**SKILLED** - 102:15, 113:1, 113:3
**SLATE** - 85:22
**SLIDE** - 27:24, 29:13, 33:20, 35:1, 37:1
**SLIDES** - 25:19, 28:25, 43:19
**SLIGHTEST** - 124:1
**SLOW** - 120:8
**SMALL** - 10:25, 18:19
**SMALLER** - 73:23, 73:25
**SMART** - 72:23, 104:10
**SOCIAL** - 121:16
**SOFTWARE** - 10:21, 87:12
**SOLD** - 15:12, 34:17, 123:25, 129:25, 135:18
**SOLE** - 34:10, 124:21
**SOLICITOR** - 80:8
**SOLID** - 115:21
**SOME-ODD** - 133:23
**SOMEONE** - 7:12, 57:15, 107:25, 113:1, 113:3
**SOMETIMES** - 102:9, 134:20
**SOMEWHAT** - 58:25, 87:17, 99:18, 128:5, 130:21, 132:20
**SOMEWHERE** - 75:21, 76:1, 115:11, 119:8
**SON** - 118:23
**SONY** - 68:12
**SORRY** - 33:12, 40:19, 44:5, 44:8, 46:18, 77:1, 77:5, 86:21, 87:9, 109:23, 111:13, 121:20, 129:20
**SORT** - 8:24, 32:10, 51:6, 83:22, 89:13, 90:21, 94:22
**SORTS** - 78:18, 92:9
**SOUND** - 136:9
**SOUNDED** - 5:5
**SOUTH** - 1:16

- 73:9, 74:22
**SOUTHERN** - 94:10
**SOUTHWESTERN** - 94:6, 94:8
**SPACE** - 98:11
**SPEAKER** - 21:18
**SPECIAL** - 130:9
**SPECIALITY** - 131:4
**SPECIFIC** - 46:1, 129:7
**SPECIFICALLY** - 108:13
**SPECIFICATION** - 68:13
**SPECIFIES** - 68:11
**SPECIFY** - 68:13
**SPECULATION** - 62:10
**SPELLED** - 21:22
**SPENT** - 134:12
**SPITE** - 19:14
**SPOKEN** - 22:16
**SQUARE** - 5:17
**ST** - 74:4
**STAFF** - 14:15, 109:4
**STAKE** - 121:10
**STAND** - 17:11, 20:7, 21:18, 49:16, 52:3
**STANDARD** - 12:17, 12:22, 58:24, 83:13, 85:19, 99:14, 100:7, 105:20, 123:20
**STANDARDS** - 87:17, 91:23
**STANDING** - 7:5
**STANDPOINT** - 24:21
**STANDS** - 50:15
**STAR** - 33:25, 45:7, 58:22, 58:23, 58:25, 59:4, 59:6, 59:7, 59:8, 59:13, 59:15, 60:21, 82:14, 128:9, 129:5, 132:9, 133:19
**STARSIGHT** - 55:6, 55:11, 55:12, 55:14, 55:19, 57:16, 59:8, 59:9, 60:2, 129:3, 136:7
**START** - 5:2, 12:18, 12:25, 23:19, 38:18, 87:12, 87:19, 98:20, 108:22
**STARTING** - 67:6, 67:8, 67:10, 129:2
**STARTS** - 81:4
**STATE** - 52:8, 69:5, 88:20, 121:23, 136:24, 140:1, 140:5
**STATEMENT** - 6:22, 43:4
**STATES** - 1:2, 1:12, 119:10
**STATING** - 137:5
**STATION** - 79:17
**STATUTE** - 20:18, 20:19, 92:2, 93:25, 94:4, 94:12, 96:12, 96:16, 97:8, 119:14, 138:11, 138:13
**STATUTES** - 137:15
**STATUTORILY** - 24:15
**STATUTORY** - 20:23, 21:8, 21:25, 93:18, 93:19, 93:20, 123:2
**STAY** - 11:21, 11:22, 12:1, 49:24, 50:5, 76:16
**STEALING** - 108:11,

112:6, 116:16
**STEEL** - 93:15
**STENOGRAPH** - 2:6
**STEP** - 118:2
**STEP** - 26:16, 48:5, 48:8, 68:23, 76:20, 99:23, 99:24, 102:6
**STEPS** - 102:1, 112:24
**STICK** - 115:4
**STILL** - 4:19, 4:24, 14:24, 21:3, 30:10, 32:12, 33:4, 33:13, 38:16, 58:11, 58:12, 59:17, 61:4, 62:17, 66:24, 72:16, 92:2, 101:17, 126:8
**STIPULATED** - 90:1
**STOP** - 10:17, 11:6, 11:17, 12:10, 12:16
**STOPPING** - 37:15
**STORAGE** - 98:11, 113:19
**STOREY** - 11:10
**STRAIGHTFORWARD** - 54:20
**STREAM** - 27:6, 36:22, 37:5, 37:16
**STREAMING** - 36:19
**STREET** - 1:25, 14:9
**STRICTLY** - 138:13
**STRONG** - 6:15, 77:24, 120:20
**STRONGLY** - 100:17, 115:12, 119:8
**STRUCK** - 30:25
**STRUCTURE** - 34:6, 52:18, 52:25, 53:6, 59:16, 64:8, 132:4, 132:12
**STRUCTURED** - 4:16
**STUDY** - 101:22
**STUFF** - 128:10
**SUBJECT** - 49:4, 57:15, 57:17, 57:20, 58:11, 90:11, 137:2
**SUBMIT** - 88:8, 138:1
**SUBMITTED** - 137:16
**SUBPARAGRAPH** - 74:21
**SUBSCRIBER** - 29:16, 34:11, 36:11, 38:24, 45:15, 45:16, 45:19, 60:22, 72:10, 75:9, 82:15, 82:17, 83:7, 85:5, 129:6, 132:10
**SUBSCRIBERS** - 23:5, 32:21, 36:2, 36:6, 36:12, 36:14, 45:12, 45:20, 76:3, 76:8, 76:10, 83:6
**SUBSEQUENT** - 57:19
**SUBSEQUENTLY** - 69:20
**SUBSTANTIAL** - 61:15, 110:11, 117:3, 117:5, 117:6, 125:10
**SUBSTITUTE** - 13:3, 15:4
**SUBTRACT** - 65:5
**SUCCESS** - 124:2, 131:18, 132:23
**SUCCESSFUL** - 43:11, 110:13
**SUDDENLY** - 13:9
**SUE** - 27:23
**SUFFER** - 78:10,

78:14, 78:16
**SUFFICIENT** - 17:9, 99:1, 100:24, 107:15, 108:1, 112:10
**SUFFICIENTLY** - 117:9
**SUGGEST** - 11:13, 48:18, 98:17
**SUGGESTING** - 77:14, 80:7, 81:15, 84:15
**SUGGESTION** - 10:4, 11:18, 88:17
**SUIT** - 18:11, 44:1, 89:24, 92:14, 96:15, 103:19, 104:4, 105:11, 105:15, 120:1, 124:4, 127:19, 129:2, 137:15
**SUITE** - 1:19, 10:22
**SUM** - 57:22, 57:25, 58:1, 58:3, 63:10, 67:14, 132:8
**SUMMARIES** - 102:1, 102:7
**SUMMARIZATION** - 112:23
**SUMMARY** - 18:12, 74:20, 89:18, 98:21, 99:10, 100:3, 107:6
**SUNNYVALE** - 1:22
**SUPP** - 94:2, 94:11, 101:11
**SUPPLY** - 69:10, 70:2
**SUPPLYING** - 37:9
**SUPPORT** - 87:6, 94:17, 114:17, 115:12, 115:22, 115:24, 116:3, 119:8, 119:22, 120:3, 120:15, 120:17, 120:19, 129:13
**SUPPORTED** - 111:24
**SUPPORTING** - 101:5
**SUPPORTS** - 74:22, 114:4
**SUPPOSE** - 17:10
**SUPPOSED** - 112:8, 123:9
**SUPPOSEDLY** - 104:10, 105:25, 106:1
**SUPPOSITIONS** - 94:16
**SUPREME** - 5:7, 5:16, 5:17, 5:21, 10:24, 12:3, 12:5, 12:9, 12:15, 12:21, 13:17, 50:12, 50:15, 80:19, 81:7, 88:19, 100:10, 100:22, 123:18
**SURELY** - 25:4, 79:7, 110:2
**SURFING** - 16:11
**SURPRISE** - 32:17, 44:15, 46:4
**SURPRISED** - 5:3, 31:22
**SURPRISING** - 5:24
**SURRENDERED** - 7:19
**SUSAN** - 33:19, 35:1, 37:1
**SUSTAINED** - 88:3
**SWORN** - 25:17, 25:23, 52:5, 69:2
**SYSTEM** - 2:7, 8:6, 10:23, 11:1, 11:3, 11:16, 34:16, 36:20, 44:22, 44:23, 45:5, 55:16, 63:24, 69:20,

70:10, 71:3, 71:5, 71:6, 71:7, 71:12, 71:24, 72:3, 73:22, 91:16, 91:18, 91:19, 100:20, 104:9, 105:1, 107:1, 126:16, 128:8, 133:21, 133:23, 136:10, 136:12
**SYSTEMS** - 39:4, 45:2, 64:5, 65:12, 65:19, 65:21, 89:21

---

**T**

**T'S** - 19:19
**T8** - 93:22
**TACTICAL** - 109:11, 109:13, 119:19, 119:20
**TALENTS** - 120:19
**TALLIES** - 22:25
**TALLYING** - 23:1
**TAX** - 66:25, 67:1
**TEACHES** - 98:25
**TECH** - 66:11
**TECHNICAL** - 19:10, 19:13, 19:16, 32:17, 75:4, 91:8, 91:15, 114:13
**TECHNICALLY** - 103:3
**TECHNOLOGIES** - 118:11
**TECHNOLOGY** - 11:16, 32:18, 38:2, 38:19, 38:22, 42:15, 42:21, 43:3, 55:14, 56:19, 82:17, 84:20, 84:22, 86:6, 86:19, 105:2, 113:19, 126:17, 132:12
**TELETEXT** - 132:20
**TELEVISION** - 42:16, 45:2, 55:23, 72:14, 73:2, 87:5
**TELEVISIONS** - 74:6, 75:2, 75:10, 87:6
**TEN** - 22:19, 55:3, 62:21, 63:4, 126:4
**TEND** - 30:22, 130:15, 131:12, 138:12
**TENDS** - 113:23
**TERM** - 17:17, 36:17, 40:12, 81:16, 126:13
**TERMINATE** - 79:20
**TERMINATION** - 79:17
**TERMS** - 6:21, 12:5, 23:13, 25:10, 31:18, 31:20, 32:4, 32:19, 34:20, 37:12, 37:14, 37:21, 41:7, 67:14, 87:3, 125:5, 127:13, 131:13, 133:10, 137:5
**TERRIBLY** - 81:8
**TERRITORY** - 129:25, 130:2
**TEST** - 135:20
**TESTIFIED** - 8:8, 19:12, 25:23, 26:3, 33:25, 38:11, 38:12, 41:9, 42:9, 43:10, 46:6, 46:12, 46:23, 48:19, 52:5, 52:10, 52:25, 54:24, 57:22, 61:18, 62:20, 62:24, 63:7, 65:14, 69:2, 82:24, 106:16, 106:23, 127:9
**TESTIFY** - 47:25, 58:22, 61:14, 109:15,

113:2
**TESTIMONY** - 4:19, 6:19, 25:11, 41:16, 42:9, 43:20, 46:12, 46:24, 47:5, 50:10, 51:24, 52:13, 53:5, 58:23, 60:1, 65:9, 77:17, 101:18, 102:1, 102:7, 102:24, 105:25, 106:2, 106:6, 106:19, 106:20, 110:7, 111:3, 112:21, 126:22, 127:21, 128:16, 130:11, 130:22, 132:19, 133:3, 133:14, 135:7, 137:23
**TESTING** - 42:12
**TEXAS** - 1:2, 1:6, 2:5, 20:23, 21:24, 93:18, 93:19, 93:25, 94:1, 94:4, 94:7, 94:9, 94:10, 94:12, 95:17, 121:23, 140:1, 140:5, 140:19, 140:21
**TEXT** - 14:13, 99:20, 99:25, 102:13, 112:20
**TEXTBOOK** - 89:21, 98:22
**THAD** - 2:2
**THAT'LL** - 98:7
**THEFT** - 119:24
**THEIRS** - 20:25, 33:17
**THEMSELVES** - 63:18, 111:20, 130:14
**THEORY** - 79:24
**THERE'LL** - 122:25
**THEREFORE** - 87:5
**THEY'VE** - 14:15, 39:2, 46:3, 80:6, 88:16, 129:15
**THINKS** - 35:25
**THIRD** - 31:23, 35:15, 35:17, 77:2, 129:23
**THIRTEEN** - 134:2
**THOMAS** - 3:12, 51:24, 68:25, 69:1, 69:6
**THOMAS'S** - 80:13
**THOMPSON** - 34:18, 60:2, 60:18, 60:19, 68:11, 129:5
**THOUSAND** - 86:8, 125:20
**THOUSANDS** - 125:20
**THREAT** - 57:3
**THREE** - 10:16, 25:19, 30:4, 31:3, 34:10, 38:23, 59:7, 59:12, 60:15, 64:16, 64:25, 65:3, 65:6, 70:6, 77:6, 77:10, 82:11, 85:5, 113:11, 116:14, 127:4, 128:21, 134:9, 137:4
**THROUGHOUT** - 8:9, 92:19
**THUMB** - 65:25, 67:3
**TICKET** - 124:12
**TIE** - 83:13
**TILTS** - 110:22, 111:14
**TIPPED** - 78:12
**TITLE** - 15:2, 35:4, 69:9, 79:13, 79:14, 95:8
**TIVO** - 34:4, 37:22, 37:25, 38:20
**TJADEN** - 99:18, 102:15, 102:17

**TJADEN'S** - 99:21, 101:16
**TODAY** - 6:8, 7:5, 7:12, 8:1, 9:12, 19:25, 20:5, 26:6, 27:11, 27:16, 29:10, 31:8, 35:8, 35:9, 35:19, 36:22, 37:24, 38:3, 38:18, 43:21, 44:19, 61:13, 61:16, 64:12, 69:15, 71:3, 74:4, 78:4, 80:2, 83:11, 88:16, 94:16, 126:22, 136:23
**TOGETHER** - 59:9, 87:17, 97:23, 115:21
**TOMORROW** - 7:24, 10:13
**TOOK** - 47:10, 70:17, 88:9, 102:19, 111:17, 114:21
**TOOL** - 67:6, 67:8, 126:9
**TOOLS** - 42:5
**TOP** - 5:1, 21:1, 32:6, 32:10, 34:12, 34:14, 34:18, 34:21, 36:21, 38:13, 39:1, 39:2, 39:3, 39:5, 42:14, 44:15, 44:18, 45:23, 45:25, 46:3, 46:4, 53:2, 53:9, 53:15, 53:20, 53:21, 54:16, 54:17, 54:19, 54:23, 55:4, 55:7, 55:19, 59:19, 60:2, 60:6, 60:20, 62:5, 62:19, 63:1, 63:4, 63:9, 63:10, 68:11, 68:12, 68:16, 68:19, 69:16, 69:17, 70:7, 70:13, 70:19, 70:22, 71:14, 72:11, 72:14, 72:16, 72:19, 72:20, 72:22, 72:25, 73:7, 73:11, 74:1, 74:3, 74:16, 74:25, 75:3, 75:5, 75:7, 75:16, 79:15, 82:21, 82:22, 83:1, 83:12, 84:14, 84:19, 84:21, 84:22, 85:1, 85:2, 85:3, 85:4, 85:19, 85:21, 86:5, 86:6, 86:7, 86:17, 96:20, 96:21, 104:25, 111:21, 122:4, 122:11, 127:5, 127:8, 127:10, 128:1, 128:10, 129:13, 129:16, 132:1, 132:3, 132:13, 136:3, 136:16, 136:25, 137:4
**TOTAL** - 53:14, 53:16, 76:3, 76:9, 76:10, 106:2, 117:23, 125:3, 134:24, 136:15
**TOTALLY** - 44:16, 71:3
**TOUCH** - 21:6
**TOUCHED** - 37:22
**TOUTON** - 1:24, 86:16, 86:24, 87:1, 87:10, 102:3, 129:21
**TOWARD** - 110:22, 113:24
**TOWARDS** - 111:14, 133:24
**TOWER** - 1:16
**TRACK** - 54:21, 71:9, 80:21
**TRACKED** - 24:3
**TRACKING** - 71:7, 82:13

TRACKS - 22:10, 23:3
TRADEMARK - 95:7
TRADEMARKS - 59:5
TRADITION - 5:23
TRADITIONALLY - 13:18, 13:20, 83:25
TRANSACTION - 70:12
TRANSCRIPT - 1:11, 2:6
TRANSCRIPTION - 140:7
TRANSFER - 15:1, 15:2, 116:23
TRANSPONDERS - 129:19
TREADING - 11:23
TREASURY - 24:13
TREATING - 87:16
TREBLE - 18:24, 49:4, 88:18
TREBLED - 20:2, 49:20
TREBLING - 20:3, 116:22
TREE - 118:21
TREMENDOUS - 53:14
TRIAL - 4:3
TRIAL - 4:19, 10:6, 11:2, 26:3, 27:6, 28:22, 28:23, 29:18, 38:11, 41:9, 42:9, 49:11, 50:8, 51:16, 52:11, 52:22, 53:17, 54:25, 58:3, 63:21, 65:17, 73:17, 76:7, 77:22, 83:11, 83:21, 88:4, 88:24, 90:1, 101:22, 139:4
TRIED - 43:22, 130:12
TRIES - 111:15
TRUE - 106:5, 114:19, 125:18, 140:6, 140:7
TRUST - 44:1, 78:2, 124:17, 124:22, 130:4
TRY - 11:7, 11:14, 33:9, 47:9, 76:23, 86:10, 95:23, 138:17
TRYING - 8:23, 30:19, 51:13, 51:14, 60:6, 79:6, 117:23, 119:18, 121:1, 121:12, 130:13, 130:14
TUNERS - 73:12, 75:8
TURMOIL - 120:9
TURN - 77:12, 77:25, 79:23, 84:12, 87:15, 91:20, 93:16, 95:19
TURNED - 5:16, 17:22
TURNING - 90:23
TV - 33:3, 41:4, 59:8, 72:15, 73:9, 73:23, 82:12, 84:23, 86:7, 105:4, 109:25, 110:1, 111:19, 125:4, 125:23, 126:1, 126:15
TV'S - 84:22, 84:25, 137:1
TVS - 74:22, 86:8
TWIN - 117:13
TWO - 6:14, 6:23, 8:23, 10:16, 11:2, 21:23, 22:24, 23:10, 24:11, 25:4, 27:15, 29:15, 32:11, 34:8,

35:5, 52:24, 64:25, 68:3, 73:11, 73:15, 74:5, 74:22, 75:2, 75:3, 77:4, 77:9, 77:23, 77:25, 80:6, 86:13, 87:6, 87:7, 87:19, 88:12, 88:13, 89:7, 96:8, 103:18, 105:25, 114:3, 118:2, 124:15, 128:25, 133:25, 135:11, 135:23, 137:4
TWO-FOLD - 21:23
TWO-PLAYER - 29:15
TWO-STEP - 118:2
TX - 1:19, 2:3
TYPE - 16:25, 38:7, 107:14
TYPES - 26:15, 37:11, 66:19
TYPEWRITING - 140:10
TYPICAL - 83:6, 83:9
TYPICALLY - 48:21, 76:15

U

ULTIMATE - 106:25
ULTIMATELY - 26:8, 45:10
UNABLE - 126:23
UNACCEPTED - 127:21
UNANIMOUS - 17:8
UNCONTESTED - 115:14, 123:25
UNCONTRADICTED - 101:6, 101:8
UNCONVERTED - 50:10
UNDER - 22:18, 27:12, 36:11, 49:6, 51:11, 57:24, 67:2, 67:11, 68:8, 72:2, 74:17, 74:20, 74:21, 86:6, 87:7, 88:22, 90:13, 91:1, 91:22, 93:24, 96:12, 113:10, 113:21, 117:25, 121:6, 121:18, 123:2, 128:3, 131:18, 140:10, 140:16
UNDERMINE - 89:14
UNDERSTOOD - 99:9
UNEXPLAINED - 117:10
UNFAIR - 114:22
UNFORTUNATELY - 14:7
UNIMPEACHED - 101:6, 101:8
UNIQUE - 87:4
UNIT - 55:4, 60:14, 84:21, 129:4
UNITED - 1:2, 1:12, 100:14, 119:9
UNITS - 60:15, 73:23, 73:25
UNJUSTIFIED - 116:22
UNKNOWN - 47:22
UNLESS - 49:21, 58:8, 84:10, 96:13
UNLIKE - 7:14, 121:11
UNLIKELY - 23:16
UNPOPULAR - 121:13

UNPROFESSIONAL - 118:14
UNREALITY - 94:19
UNREASONABLE - 103:19
UNREASONABLY - 50:18
UNRELIABILITY - 104:1
UNWILLING - 8:19
UNWORKABLE - 128:5
UP - 4:11, 10:3, 12:19, 18:20, 20:4, 21:18, 24:15, 27:1, 27:6, 27:22, 31:19, 31:21, 41:4, 41:18, 41:19, 49:16, 53:14, 55:4, 57:25, 60:14, 62:23, 62:24, 64:14, 66:3, 72:10, 73:14, 78:24, 82:10, 84:20, 85:14, 86:5, 86:9, 95:14, 95:22, 98:4, 98:11, 99:7, 102:4, 106:10, 109:18, 111:15, 111:18, 112:9, 113:11, 116:13, 127:11, 127:20, 128:22, 128:23, 129:16, 129:18, 129:21, 131:14, 132:19, 134:9, 134:19, 135:23, 136:21, 136:24, 137:3, 137:7, 137:10, 137:16
UPDATE - 35:5, 36:10
UPDATED - 34:23
UPS - 111:16
UPSET - 81:7
URGE - 22:12, 82:19, 91:13
USC - 113:11, 117:25, 123:3, 123:15
USEFUL - 35:16, 36:2, 81:8, 86:19, 97:4, 129:22, 132:19
USES - 81:15, 113:20
USUAL - 10:7, 115:19
UT - 1:17
UTILITY - 132:17, 132:23

V

VACATED - 80:14
VACATION - 21:17
VALID - 56:16, 119:12, 124:7
VALIDITY - 27:13, 40:5, 109:20, 112:5
VALUATION - 20:11, 81:25, 82:3
VALUE - 9:15, 10:11, 13:2, 13:4, 13:23, 14:1, 14:6, 15:3, 15:5, 15:9, 15:11, 30:22, 36:7, 41:2, 41:7, 48:25, 51:13, 51:14, 57:2, 81:11, 97:6, 130:3, 131:2, 131:8, 131:12, 131:16, 133:9
VALUED - 37:13, 81:11
VALUING - 13:22
VARIANCE - 41:5, 135:9
VARIED - 78:7
VARIOUS - 4:8,

4:11, 26:20, 33:1, 47:11, 67:1, 101:13, 114:11, 122:12, 122:16, 134:8
VARYING - 108:7
VAST - 6:3, 10:17, 12:13, 14:14
VASTLY - 33:16
VEDERKA - 21:14, 21:21, 21:22, 24:19, 25:2, 25:6, 25:9, 25:14, 25:18, 25:25, 26:2, 27:22, 27:24, 28:15, 28:19, 28:21, 29:3, 29:4, 33:19, 33:21, 34:25, 35:2, 36:25, 37:2, 37:20, 39:12, 43:2, 48:6, 61:1
VENTURE - 29:20
VERDICT - 4:4, 6:4, 8:13, 9:17, 40:1, 40:10, 40:15, 42:2, 47:7, 47:9, 47:25, 48:20, 50:8, 51:19, 52:20, 77:19, 81:19, 81:24, 82:7, 83:18, 83:23, 84:3, 97:1, 100:19, 103:13, 109:19, 122:22, 124:5, 126:10, 127:23, 133:6, 135:13, 135:22
VERIZON - 45:5
VERSION - 98:15, 98:16
VERSIONS - 98:8
VERSUS - 4:2, 8:11, 29:12, 93:22, 94:8, 98:24, 100:9, 100:14, 100:20, 101:4, 101:7, 101:10, 103:16, 108:12, 113:14, 113:16, 113:19, 118:6, 118:11, 118:15, 118:19, 118:21, 118:24, 123:18, 126:24
VEVERKA - 1:15, 3:5, 3:10, 61:3, 61:7, 65:11, 67:23, 68:7
VICE - 69:10
VICTOR - 1:23
VIDEO - 72:17, 73:8, 112:19
VIDEOTECH - 89:21
VIEW - 6:10, 6:12, 6:21, 42:22, 64:18, 64:19, 65:1, 86:17, 98:7, 98:12, 102:25, 104:11, 104:15, 115:10, 125:23, 129:8, 138:23
VIEWERS - 111:9, 126:16, 131:20
VIOLATION - 9:14, 15:3, 108:10, 108:22, 130:4
VIOLATIONS - 17:18
VIRGINIA - 108:12
VIRTUAL - 8:25, 9:16
VIRTUALLY - 40:3, 41:4, 76:17, 90:1, 110:7
VIS - 32:23
VIS - 32:23
VIS-A-VIS - 32:23
VOLUME - 5:22, 60:14, 60:16, 129:3, 129:5, 130:22, 130:24, 136:6, 136:11
VOLUNTARILY - 7:19, 79:5

VOLUNTARY - 10:11
VS - 1:7

W

WAIT - 37:3, 78:13
WAIVE - 109:12
WALLACE - 100:20, 118:24
WANDERING - 12:10
WANTS - 84:17, 131:23
WAREHOUSE - 70:3, 70:13, 70:14, 71:11
WAREHOUSES - 70:5, 70:6
WAREHOUSING - 69:20, 70:10
WASHES - 95:3
WASTE - 6:20
WASTING - 54:12
WATCH - 73:1
WATCHING - 73:8
WAYS - 85:20
WEAK - 127:22
WEALTH - 116:23
WEEK - 78:23
WEEKS - 11:2, 24:11, 25:4
WEESLER - 101:4, 101:7
WEIGH - 100:8, 103:15
WEIGHED - 110:21
WEIGHT - 26:22, 26:24, 27:19, 34:1, 34:3, 35:12, 38:8, 38:9
WEIGHTS - 26:20, 42:6
WELL-FUNDED - 114:19, 121:11
WEST - 118:20
WESTVIEW - 113:16
WHATSOEVER - 34:20
WHEREAS - 33:1
WHEREIN - 15:23, 18:13
WHOLE - 8:6, 24:6, 115:3, 126:16
WHOLEHEARTEDLY - 30:23
WIDE - 135:9
WIDGET - 9:22
WIDGETS - 7:21, 9:22, 9:23
WILDLY - 78:12
WILLFUL - 17:8, 18:8, 18:13, 18:23, 49:3, 49:7, 49:8, 49:13, 49:17, 49:20, 84:2, 87:21, 108:4, 108:18, 113:12, 114:3, 116:12, 117:14, 118:13, 120:16
WILLFULLY - 27:15
WILLFULNESS - 17:9, 27:14, 49:18, 87:25, 88:7, 88:11, 90:10, 91:25, 92:2, 92:12, 108:7, 109:10, 109:19, 110:6, 110:10, 112:5, 112:8, 112:10, 113:22, 115:11, 117:8, 119:7, 120:18
WILLINGNESS - 5:12
WIN - 121:8
WIND - 16:11,

FINISAR CORPORATION V DIRECTV GROUP, INC.
07/06/06

18

137:16
**WINDOW** - 65:1
**WINDOWS** - 10:14, 10:23
**WINDS** - 24:15, 98:4, 99:7, 137:3
**WIPES** - 78:22
**WISE** - 47:13
**WISH** - 79:14
**WISHES** - 6:1
**WITHDRAW** - 78:23
**WITNESS** - 3:4, 3:7, 3:12, 21:10, 25:17, 30:23, 31:9, 31:15, 31:20, 32:8, 32:16, 33:6, 33:12, 37:6, 48:5, 48:9, 53:23, 53:24, 53:25, 54:12, 54:14, 54:15, 55:12, 55:15, 55:18, 60:13, 60:19, 60:23, 64:16, 64:22, 68:24, 74:8, 75:18, 75:20, 76:5, 76:11, 76:14, 76:19, 77:3, 106:20, 137:21
**WITNESS'S** - 54:13
**WITNESSES** - 82:1, 104:1, 106:13, 112:21, 137:23, 138:14
**WON** - 5:5, 5:6, 93:11
**WONDERING** - 54:6
**WORD** - 89:17, 121:6, 129:20
**WORDED** - 126:7
**WORDS** - 16:5, 24:6, 88:23, 99:7, 138:5, 138:7
**WORKABLE** - 128:17
**WORKMAN** - 1:16
**WORKS** - 23:3, 91:16, 130:20
**WORLD** - 14:10, 31:1
**WORRIED** - 54:5, 82:10
**WORRY** - 82:16
**WORSE** - 111:8
**WORTH** - 5:22, 9:24, 14:20, 14:22, 15:6, 15:7, 15:14, 15:17, 51:14, 80:5, 87:15, 121:10, 136:22
**WRITE** - 64:15
**WRITING** - 85:22, 138:18, 140:8
**WRITTEN** - 138:16

### Y

**YAMALOVA** - 1:20
**YEAR** - 14:13, 26:25, 75:17, 122:14, 127:12, 128:20
**YEAR** - 105:6
**YEARLY** - 22:25
**YEARS** - 8:13, 10:16, 13:7, 35:19, 105:11, 110:2, 126:4, 131:15
**YESTERDAY** - 76:25, 78:1, 78:9, 78:16, 79:24, 90:3, 93:12
**YESTERDAY'S** - 88:2
**YORK** - 93:23
**YOU-ALL** - 122:24
**YOURSELF** - 28:17, 53:15, 125:19

### Z

**Z4** - 10:20, 10:21, 51:18, 80:5
**Z4-CASE** - 10:5, 10:8
**ZENITH** - 40:19
**ZERO** - 64:21, 131:11
**ZIMMERMAN** - 89:8, 91:7, 91:14
**ZIMMERMAN'S** - 89:12